## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **LEROY WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **STATE OF ALABAMA DEPARTMENT** | ) **CASE NO. 2:06-cv-658-ID** |
| **OF TRANSPORTATION, JOE MCINNES,** | ) |
| ***etc.*,** | ) |
| | ) |
| **Defendants.** | ) |

### DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, the State of Alabama Department of Transportation (ALDOT) and Joe McInnes, by and through their undersigned counsel, and file this memorandum brief in support of their motion for summary judgment, filed contemporaneously herewith, in this matter. Defendants state as follows:

### FACTS

Mr. Williams was employed by ALDOT on or about September 30, 1992 as a Seasonal Laborer, the job duties consisting of litter pickup, cutting bushes, mowing grass, pruning shrubs and trees at welcome centers and rest areas.  (Exhibit A.)  In September 1993, Mr. Williams applied for the position of Highway Maintenance Technician I.  (Exhibit B.)  On or about April 2, 1994, Mr. Williams was selected from an employment register for the position of Highway Maintenance Technician I.  (Exhibit C.)  On or about April 6, 1994, Mr. Williams applied for the position of Engineering Assistant I.  (Exhibit D.)  Mr. Williams was subsequently provisionally appointed to the position of Engineering Assistant I on or about May 11, 1994.  (See Exhibit E.) As indicated on Exhibit E, Mr. Williams' primary duties involved working on a survey crew

with job duties related to field work.  Mr. Williams continued in this capacity for a number of years.  Mr. Williams' performance appraisals for the period March 1, 1996 to March 1, 1997 indicates that he exceeded standards in the performance of his duties, but received unsatisfactory ratings due to his poor attendance.  (Exhibit F.)  Mr. Williams' performance appraisal for the period of March 1, 1997 to March 1, 1998 again reflects that he exceeded standards but again received unsatisfactory ratings due to poor attendance.  (Exhibit G.)  While remaining in the classification of Engineering Assistant, Mr. Williams' work title as Target Person for the Survey Crew changed to Data Editor, which significantly changed his job duties.  (Exhibit H.)

In April 1997, Mr. Williams filed an internal grievance alleging non-compliance with the existing consent decree (Reynolds) and requesting, as resolution, promotion to Engineering Assistant II/III with back pay and credit for time in grade.  (Exhibit I.)

Mr. Williams' first evaluation at the position of Data Editor reflected that he met standards rather than exceeded standards.  Mr. Williams' supervisor, in a memorandum dated February 19, 2002, reflects that Mr. Williams accepted the position of Data Editor on June 6, 2001.  The supervisor explained that Data Editor is a high level Engineering Assistant position and required a large amount of independence, knowledge, and understanding of practical application, which is very different from the manual labor required at the introductory Engineering Assistant level to which Mr. Williams had become accustomed.  (Exhibit J.)

Due to a manpower shortage, Mr. Williams, along with at least six other employees in his department, were temporarily reassigned from their duties back to basic field operations.  Mr. Williams filed an internal grievance based upon race and retaliation for this reassignment of his work duties.  (Exhibit K.)  This grievance was investigated, and Mr. Williams withdrew the grievance.  (Exhibit L.)

On February 28, 2005, Mr. Williams signed an acknowledgment that he had received and had read the Department's Attendance/Punctuality Guidelines.  (Exhibit M.)

Effective May 14, 2005, Mr. Williams was promoted to the classification of Transportation Technologist.  (Exhibit N.)  Mr. Williams submitted to the Department a letter of gratitude for this promotion to Transportation Technologist and outlined his experience with the Department and attached the numerous training opportunities that were provided him in order to help him attain this promotion.  (Exhibit O.)

The probationary promotion to Transportation Technologist brought with it a change in duties to that of a field supervisor overseeing field date and employees.  (Exhibit P.)

On July 26, 2005, Mr. Williams received a written reprimand for repeated tardiness.  Mr. Williams was advised that, as a field supervisor, he should be setting an example for the subordinates in his crew by at least being on time.  Mr. Williams was counseled by his supervisor on his work performance for the period of time he had been appointed as the Field Supervisor transportation Technologist.  (See Exhibit Q, Affidavit of Tommy Lewis.)

On July 26, 2005, Chief of Party, Tommy Lewis prepared a Reprimand for Repeated Tardiness to Mr. Williams for arriving late to the Tuscaloosa job site.  Before being formally issued, a counseling session was scheduled to discuss this and other matters pertaining to Mr. Williams' job performance and tardiness.  ( See Exhibit Q, Affidavit of Tommy Lewis.)

Joe E. Jones, Assistant Location Engineer, and Tommy L. Lewis, Party Chief and Mr. Williams' immediate supervisor, conducted a counseling session on July 28, 2005 wherein Mr. Williams' performance was discussed.  It was pointed out that Mr. Williams had a definite weakness in math skills relating to surveying despite the courses in geometry and trigonometry received by Mr. Williams and the practical experience Mr. Williams had in location surveying.

That Mr. Williams did not ensure the accuracy of field measurements was discussed as well as his lack of proficiency in working with Terramodel (a software program), despite having worked as a Data Editor, and Mr. Williams' lack of management skills in effectively supervising his crew. It was noted that Mr. Williams had a problem with following directives from his supervisor. Mr. Williams' tardiness was also discussed. At the time of this meeting, Mr. Williams had had four instances of tardiness, the last being a failure to arrive at the Tuscaloosa job site on time. The allotted time for the trip from Montgomery to Tuscaloosa was two hours, but Mr. Williams insisted that it took longer to make the trip. Mr. Jones delayed taking any action on Mr. Lewis' reprimand for the fourth instance of tardiness until such time as Mr. Lewis drove the route, observing all speed limits, and reporting back as to the time of the trip. (Exhibit R.) On August 2, 2005, Mr. Lewis drove the route, and reported to Mr. Jones that the trip had taken him under two hours. The reprimand was then made official. (See Exhibit S, Affidavits of Joe Jones and Tommy Lewis.)

On August 11, 2005, Mr. Williams received a reprimand from his supervisor, Tommy Lewis, for insubordination. As reflected in the reprimand, Mr. Lewis had attempted to counsel with Mr. Williams regarding his inadequate work performance and poor time management. Mr. Williams became argumentative with Mr. Lewis. Mr. Williams turned away from Mr. Lewis and began to walk away, but was told by Mr. Lewis not to walk away from him. Mr. Williams returned and Mr. Lewis attempted again to discuss matters with him, but Mr. Williams again started to walk away from Mr. Lewis, whereupon he was again admonished not to walk away. This time Mr. Williams did walk away from his supervisor. (See Exhibit T, Affidavit of Tommy Lewis.)

On August 15, 2005, Mr. Joe Jones, Assistant Location Engineer, Field, sent a memorandum to Mr. William F. Adams, Location Engineer, describing the recent incidence of insubordination and further discussing the other problems that had been brought to his attention regarding Mr. Williams' job performance and tardiness. Mr. Jones recommended that Mr. Williams' probation be ended and that he be reassigned to his former classification as Engineering Assistant II/III. (See Exhibit U, Affidavits of Joe Jones and William Adams.)

On August 19, 2005, Mr. Adams sent a memorandum to Mr. Don T. Arkle, Design Bureau Chief, describing Mr. Williams' poor job performance, tardiness and insubordination, attaching the memoranda from Mssrs. Jones and Lewis. By his signature affixed thereto, Mr. Arkle concurred with Mr. Adams' recommendation that Mr. Williams' probation be ended and that he be reassigned to his former classification. (See Exhibit V, Affidavits of William Adams and Don Arkle.)

On August 22, 2005, Mr. Arkle sent a memorandum to Mr. Ron Green requesting that Mr. Williams' probation be terminated and that he be reassigned to his former classification. (See Exhibit W, Affidavit of Don Arkle.)

On September 1, 2005, Mr. Arkle sent a letter to Mr. Williams advising him that his probation had been terminated effective September 3, 2005, that he would revert to his former classification as Engineering Assistant II/III and that he should report to Mr.Adenrele Odutola, Roadway Design Section, on September 6, 2005. (See Exhibit X, Affidavit of Don Arkle.)

On or around September 14, 2005, Mr. Williams filed a complaint with the Equal Employment Opportunity Commission alleging that he had been discriminated against on account of his race and that he had suffered retaliation for having previously filed an internal grievance based on race against his supervisor. (Exhibit Y.)

5

On December 7, 2005, Plaintiff sent materials by facsimile to Ms. McGhee, EEOC, including a document entitled "COMPLAINT FORM". (Exhibit Z.)

## ARGUMENT

### PLAINTIFF HAS FAILED TO PROVE A *PRIMA FACIE* CASE OF RACE DISCRIMINATION OR RETALIATION

As this Court has recently observed:

> An employee bringing a discrimination claim must initially establish a *prima facie* case of discrimination through one of three methods: by presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973)l and its progeny or by introducing statistical evidence of discrimination. *Walker v. NationsBank of Florida, N.A.* 53 F.3d.1548, 1556 (11thCir 1995).

*Sanders v. City of Montgomery*, 319, F.Supp. 2d, 1296 (M.D.Ala.2004). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without inference or presumption." *Hall v. Lowder Realty Co., Inc.*, 160 F.Supp 3d 1299, 1315 (M.D.Ala. 2001) (quoting *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998)). The Eleventh Circuit regards "only the most blatant remarks, whose intent could be nothing other than to discriminate" as direct evidence. *Damon v. Fleming Supermarkets, Inc*., 196 F.3d 1354, 1359 (11th Cir.1999). To be direct evidence, a comment must be made by the decision-maker about the particular employment decision at issue. See *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (O'Connor, J., concurring) ("stray remarks in the workplace….statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself" do not constitute direct evidence of discrimination).

In this case, having failed to prove his case by direct or statistical evidence, Plaintiff must rely on circumstantial evidence. See *McDonnell Douglas*, 411 U.S. at 802. Proving a case of employment discrimination by circumstantial evidence requires a plaintiff to first demonstrate a *prima facie* case of discrimination. *Id*. The defendant may then produce non-discriminatory reasons for having made the employment decision. *Id*. The plaintiff is then required to produce evidence to persuade the fact-finder either that the defendant's asserted reasons for the decision are pretextual or that the decision was motivated by a discriminatory intent. *Id*. at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The Eleventh circuit has applied the *McDonnell Douglas* burden-shifting framework to both discrimination claims and retaliation claims. See *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir.2002). Therefore, Defendants will first address whether Plaintiff has produced sufficient evidence of pretext to overcome Defendant's articulated reasons for their employment action.

### 1.     Plaintiff has failed to prove a *prima facie* case of race discrimination.

To prove a *prima facie* case of discrimination, Plaintiff must show that he was treated differently from "similarly situated" persons outside his protected class. See *Olmstead v. L.C. by Zimring*, 527 U.S. 581, 119 S.Ct. 2176, 2193, 144 L.Ed.2d 540 (1999)(Kennedy, J., concurring in the judgment)(the "normal definition of discrimination" is "differential treatment of similarly situated groups"); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S. Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)("*McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.")

Under *McDonnell Douglas*, a plaintiff establishes a *prima facie* case of race discrimination under Title VII by showing: (1) he or she belongs to a racial minority, (2) he or she was subjected to an adverse job action, (3) his or her employer treated similarly situated employees outside his classification more favorably, and (4) he was qualified to do the job. *Mizell v. Miami-Dade County, Florida,* 342, F.Supp.2d 1084 (S.D.Fla.2004); *Holifield v. Ren*o, 115 F.3d 1555(11th Cir.1997); *Coutu v. Martin County Bd. of Cty. Comm'rs*., 47 F.3d 1068, 1073 (11th Cir.1995); *Turnes v. AmSouth Bank, N.A*., 36 F.3d 1057, 1060 (11th Cir.1994).

Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination. *Williams v. Ford Motor Co*., 14 F.3d 1305, 1308 (8th Cir.1994); *Bass v. Bd. of County Comm'rs.* 242 F.3d 996, 1004 (11th.Cir.2001).

In *Holifield*, *supra*, the defendants noted than the plaintiff had failed to point to a similarly situated non-minority employee who was treated more favorably that the plaintiff. The *Holifield* court noted that:

> As part of the Title VII plaintiff's *prima facie* case, the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably that herself....To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects….In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways...

*Holifield*, 115 F.3d at 1562 (internal citations omitted.)  The Court went on to note:

> "*If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.*"  See, e.g. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.3d 179, 182 (1st Cir. 1989).

*Id*. (emphasis in the original).

As noted above, a plaintiff who fails to show that a comparator is actually similarly situated fails to demonstrate a *prima facie* case. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186-87 (11th Cir.1984). As this Court has held, "a plaintiff seeking to demonstrate that similarly situated white employees were treated differently must produce evidence that his comparators were 'similarly situated in all relevant respects.'" *Gibbons v. Auburn Univ. at Montgomery*, 108 F.Supp.2d 1311, 1318 (M.D.Ala.2000)(quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)). In the case at bar, Plaintiff has failed to produce such a comparator that complies with the above-mentioned case law.

Plaintiff's claim of discrimination is that, upon being promoted to the position of Transportation Technologist, he was not properly trained nor given sufficient data and information as necessary to be successful in the job. Plaintiff contends that he was subjected to harassment and intimidation by his supervisor and that he was not given enough time to learn the job. (Exhibit Y, Williams' deposition at page 5:15 through 53:22, page 88:13-18). Plaintiff alleges that he was "demoted" on September 1, 2006; however, he was actually reassigned to his previously held classification of Engineering Assistant II/III. As a probationary employee, Plaintiff did not enjoy the merit system protections possessed by an employ who had achieved permanent status in the classification. ALA. CODE § 36-26-21(b) (1975).

### Training

Included in the qualifications for the classification to Transportation Technologist is that applicants possess a high school diploma/GED and six years of experience as an Engineering Assistant at ALDOT in any work area. (Exhibit AA.) Plaintiff met this requirement having worked as and EA I and/or EA II/III since May 1994. (See Exhibits E and Z.) Plaintiff was aware of his job responsibilities as a Transportation Technologist (Williams' deposition at page

59:15 through page 60:15). As a Transportation Technologist , the plaintiff supervised a crew performing similar work to that which he had performed as an EA during the previous ten years and he knew what to expect from his subordinates. Plaintiff felt that he was good as an EA II/III. (Williams' deposition as page 63:7-16, page 85:6 through 86:7). Plaintiff felt that he could get his point across fairly easily to his subordinates (Williams' deposition at page 87:3-7) and got along well with his crew. (Williams' deposition at page 102:20-22). In the resume (Exhibit O) submitted with the application for the Transportation Technologist/Design option position, Plaintiff indicated that during his tenure with ALDOT, he had "learned to operate instruments such as total stations, levels, global positioning system (GPS), and notebook/desktop computers that used software such as Terramodel, MicroStation, etc." Plaintiff further stated that after having worked in the Roadway Design section, he had "acquired even more experience with computer software applications, completed training on the updated version of MicroStation V8" and had familiarized himself with InRoads. The Employee Training History printout attached to Plaintiff's resume reflects the extensive training courses offered to Plaintiff during his employment. Plaintiff states that he should have been trained on TerraModel, but concedes that as data editor he used TerraModel and had knowledge of it. Plaintiff states that there were courses on TerraModel but did not indicate that any such courses were offered during his probationary period as a Transportation Technologist. Plaintiff alleges that there was some training on this when he was a data editor but that he did not get called to take the course. Plaintiff also alleges that white employees, e.g. S. Nichols, T. Nichols, Austin, Harris and Kirkland had received this training; importantly, however, this occurred before the time that he was promoted to Transportation Technologist. (Williams' deposition at page 77: 16 through 80:13, page 81:13-23). Of those white employees named above, Harris received TerraModel

training in 1993 and 1994 and Kirkland received TerraModel training in 1994. There is no record that S. Nichols, T. Nichols or Austin received such training. (Exhibit BB.)

Plaintiff contends that he should have received training on how to supervise, but concedes that the Department had no specific courses on this, as far as he knew. He contends that his supervisor, Lewis, should have taught him how to supervise his crew. (Williams' deposition at page 79:11-17, page 83:2-12), yet the Plaintiff states that he knew what to expect from the EA's on his crew, that he felt that he could get his point across and that he got along well with his crew.(Williams' deposition at page 86:4-6, page 87:3-4, page 102:20-21) Plaintiff states that when he asked Lewis for training, Lewis responded that he (Plaintiff) should already know how to do the work. (Williams' deposition at page 89:5-9, 13-16). Plaintiff did not go to anyone else to request training. (Williams' deposition at page 90:19-23).

As noted above, as a Transportation Technician, Plaintiff was tasked with the supervision of employees in the EA I and II/III classification, the job that he had just left. Plaintiff's training was comparable to other Transportation Technologists, and he was expected to know this job. As Lewis noted, Plaintiff was deficient in areas in which he should have been proficient, based upon his training and time on the job; it was not unreasonable to expect such. Nor should Lewis have been tasked with re-training Plaintiff on skills, procedures, and other matters that Plaintiff should have known how to perform and on which the Department had already spent time and resources during Plaintiff's employment.

### Insufficient Time To Learn The Job

Generally, a promoted employee is afforded a probationary period of six months in order to assess whether or not the promotion will be made permanent. However, there is no mandate that the full six months be permitted when the probationary employee's performance, conduct

and proficiency are deficient.  As reflected above, within the first three months of his probation,

Plaintiff had been noted for tardiness, failure to perform duties properly, inability to perform

basic tasks, lack of skills and knowledge in basic procedures, and insubordination to his

supervisor.  Terminating his probation before the six months had elapsed was not unreasonable.

**<u>Harassment</u>**

Plaintiff's allegations of harassment are directed toward his immediate supervisor,

Tommy Lewis.  (Williams' deposition at page 91:8).  Plaintiff claims that Lewis yelled at him

and disrupted his work, but concedes that no racial slurs were directed toward him.  (Williams'

deposition at page 92:1-15).  Plaintiff claims that Lewis didn't want to acknowledge his work

and stated that "everybody does their work different.  As long as you come up with the same

results, I think it's okay."  (Williams' deposition at page 95:5-16)  Plaintiff claims that Lewis

would instruct his crew not to do the work the way that he (Plaintiff) had told them to do it.

(Williams deposition at page 97:7-23).  Plaintiff claims that Lewis belittled him but offered no

specific examples.  (Williams' deposition at page 98:15 through page 99:3).

"Not all conduct taken by an employer which causes a negative effect on an employee

constitutes an adverse employment action."  *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232

(11th Cir.2001).  "There must be some threshold level of substantiality that must be met for

unlawful discrimination to be recognizable."  *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453,

1456 (11th Cir.1998).  "This limitation is consistent with the basic principle that Title VII

is…neither a general civility code nor a statute making actionable the 'ordinary tribulations of

the workplace.'"  *Davis,* 245 F.3d at 1239 (quoting Gupta, 212 F.3d at 587); see also *Wu v.*

*Thomas*, 996 F.2d 271, 273-274 (11th Cir.1993)(noting that an adverse employment action does

not result from every unkind act, even those without economic consequences).  Assuming

arguendo that Lewis was a hard and demanding taskmaster, as a supervisor, he certainly had authority to direct Plaintiff on how to perform his tasks and to counsel him when he failed to perform his tasks properly or on time.  Plaintiff's statement that " *everybody does their work different...as long as you come up with the same results, I think it's okay*" (Williams' deposition at page 95:11-15)(*emphasis added*) underscores his poor attitude toward his job.  In *Smith v. State of Alabama,* 252 F.Supp.2d 1317 (M.D.Ala.2003), the D.H.R. Director's alleged acts of verbal assault, humiliation, lashing out, and writing up the plaintiff, were not held to have constituted adverse employment actions.

Plaintiff further alleges that similarly situated white employees who had committed similar infractions to those alleged against him were not demoted nor disciplined.  When asked to identify those white employees similarly situated to him, he responded with the names of several employees.  Plaintiff stated that William McKinnon was promoted to the position of Transportation Technologist and "as far as my knowledge, they got him through all the steps to become a Transportation Technologist."  Plaintiff could not identify who supervised Mr. McKinnon (Williams' deposition at page 137:23 through page 138:16).  Plaintiff stated that Chan Granthem was a white employee and that Granthem was temporarily placed in the position that he (Plaintiff) had just vacated.(Williams'deposition at page 138:13 through 139:1).  Plaintiff stated that Scott Blake had "problems", needed help on supervising, and argued with a supervisor; but was given a second chance.  (Williams' deposition at page 139:3-10, page 141:1-14).  Plaintiff stated that Dodd Austin would call in , but was not written up for tardiness.  Plaintiff says that Austin would use his time (leave time) on such occasions.  (Williams' deposition at page 141:21 through page 142:6).  Plaintiff states that McKinnon would also call in and was permitted to use his leave time for such absence. (Williams' deposition at page 143:8-

10).  And Plaintiff cites one occasion wherein Granthem was late for work but was not written up.  Plaintiff was Granthem's immediate supervisor at the time.  (Williams' deposition at page 143:16 through page 144:5).

As stated above, in order for Plaintiff to compare himself and his situation to those of non-minorities to prove racial discrimination, his situation and that of the non-minorities must be similar in all relevant aspects.  The comparator must be "nearly identical" to Plaintiff to prevent courts from second-guessing a reasonable decision by the employer.  *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1091(11[th]Cir. 2004).  Plaintiff has failed to meet this burden.  Plaintiff, in the short time that he was a probationary supervisory employee, had four instances of tardiness, had not performed his job adequately, lacked the skills normally associated with an employee with his experience and training, and had engaged in blatant insubordination with his supervisor. The actions attributed to the employees named above, even if factual, do not rise to the same level of severity as those of Plaintiff.  In the cases of *Dodd* and *McKinnon*, the alleged misconduct, i.e. calling in and being placed on leave, was not misconduct at all.  Granthem's tardiness appears to be a one-time situation.  Defendants argue that vague generalities and conclusory allegations, which are not supported by significant probative evidence, should not be considered.  *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371 (11th Cir.1996).

2.    **Plaintiff has failed to prove a *prima facie* case of retaliation.**

Retaliation is a separate offense under Title VII, 42 U.S.C.A. § 2000e-3(a).  To prove his retaliation claim, Plaintiff must first prove a *prima facie* case by showing that (1) he engaged in protected activity, (2) he was subjected to an adverse employment action, and (3) the adverse employment action was causally related to the protected activity.  *Little v. United Technologies,*

*Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir.1997)(citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir.1995).

Plaintiff's records indicate that, at the time of his reassignment to his former classification, he had filed two internal grievances with ALDOT.  The first was filed in 1997 and was resolved.  (Exhibit I.)  The second grievance was filed in November 2000 and was withdrawn by Plaintiff.  (Exhibit K.)  There is no record of a grievance having been filed by Plaintiff in December 2003 as alleged in his complaint.  Plaintiff identifies the December 2003 grievance as being the grievance of Mr. Reynolds.  (Williams' deposition at page 135:14-23, page 110:18-19.)

Defendants assert that the two internal grievances (1997 and 2000) provide no basis for Plaintiff's claim of retaliation.  The temporal proximity between the protected activity and the adverse action must be close in order to show a causal connection required to prove retaliation. *Grier v. Snow,* 2006 WL 3026129 (C.A.11(Ga.) October 26, 2006) citing *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th.Cir.2004).  In *Grier*, the court held that an eight-month time period between the alleged adverse action and the employee's protected activity was insufficient to demonstrate a causal connection, as required to establish a *prima facie* claim of Title VII retaliation.  In *Higdon*, a three-month time period between the alleged adverse action and the protected activity was found insufficient.  In *Hammons v. G.C. Wallace State Community College*, 174 Fed. Appx. 459, 2006 WL 655061 (C.A.11 (Ala.) March 16, 2006), a five-month time period between adverse action and protected activity was found insufficient.

The time period between the 1997 and 2000 grievances is far longer that the time periods above which were found insufficient.  These two grievances cannot be considered to demonstrate

a causal connection, particularly when considering Plaintiff's probationary promotion in the interim period between the grievances and his reversion to his former position.

Plaintiff alleges that he was retaliated against because of the *Reynolds* case. Plaintiff, a black man, was a member of the certified class in *Reynolds*; but that alone, should not provide the causal connection required to prove retaliation. There is no evidence that Plaintiff, individually, asserted any claims pursuant to *Reynolds*, and none after his probationary promotion to Transportation Technologist.

Plaintiff alleges that he filed another internal grievance or complaint which he claims to have handed to Ron Green, ALDOT Personnel Director; however he did not recall the date. (Williams' deposition at page 49:21 through page 50:11). Contained within Plaintiff's Initial Disclosures was a document entitled "COMPLAINT FORM" and Bates stamped 0025-37. (Exhibit Z.) Ron Green denies that this complaint was ever filed with the Human Resources Bureau and further denies that the complaint was given to him by Plaintiff. (See affidavit of Ron Green). The document is undated; however, it is obviously part of a packet of material sent to a Ms. McGhee, EEOC, Birmingham, Alabama on December 7, 2005 as evidenced by a letter addressed to Ms. McGhee dated December 7, 2005. The document, on its second page, references certain attachments, which include YAHOO printouts for driving directions, clearly related to the dispute concerning Plaintiff's driving time to Tuscaloosa. At the bottom of the YAHOO printout is the date 8/14/2005, indicating that the information was printed on that date. Since August 14, 2005 fell on a Sunday, it may be concluded and Defendants so argue, that the earliest date that this complaint could have been submitted, if at all, was August 15, 2005.

Prior to August 14, 2005, Plaintiff had been tardy four times and his deficiencies on the job had already become of serious concern with Mssrs. Jones and Lewis. (See affidavits of Joe

Jones and Thomas Lewis).  On August 11, 2005, Plaintiff was blatantly insubordinate to Mr.

Lewis and was issued a reprimand, in which it was suggested that Mr. Jones review this matter

further.  On the same date, Mr. Jones met with Plaintiff and Mr. Lewis and on August 15, 2005,

Mr. Jones sent a recommendation to William Adams that Plaintiff not be allowed to continue in

the Transportation Technologist.  None of the decision-makers, Jones, Adams or Arkle, were

aware of any internal grievance that had been filed by Plaintiff when they made the decision to

reassign him to his former classification.  (See affidavits of Joe Jones, William Adams and Don

Arkle.)  Nor was Mr. Lewis aware of any such grievance.  (See affidavit of Thomas Lewis).

Plaintiff cannot prove otherwise.  The decision to reassign Plaintiff was set into motion on

August 11, 2005 by Plaintiff's insubordination.  Temporal proximity alone is insufficient to

create a genuine issue of fact as to a causal connection where there is unrebutted evidence that

the decision-maker did not have knowledge that the employee had engaged in protected activity.

*Brungart v. BellSouth Telecommunications, Inc.,* 231 F.3d 791 (11th Cir.2000).

      Plaintiff has failed to make a *prima facie* case of retaliation.

## PLAINTIFF HAS FAILED TO PROVE THAT THE LEGITIMATE REASONS STATED BY DEFENDANTS FOR THEIR ACTIONS WERE A PRETEXT FOR UNLAWFUL DISCRIMINATION

      Once a plaintiff establishes a *prima facie* case of race discrimination or retaliation, the

burden shifts to the defendant to present a legitimate, nondiscriminatory reason for its action.

*Rojas v. Florida*, 285 F. 3d 1339, 1342 (11th Cir.2002) (citing *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824 (1973).  Once the defendant does so, the plaintiff bears

the burden of showing that the reasons given by the defendant were a mere pretext for unlawful

discrimination or retaliation.  *Id.* See *Texas Dept. of Community Affairs v. Burdine,* 450 U.S.248,

256 (1981)(a plaintiff may establish pretext "either directly by persuading the court that a

discriminatory reason more likely [than not] motivated the employer or indirectly by showing the employer's proffered explanation is unworthy of credence"): see also *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir.1984). Plaintiff's conclusory assertions that his reassignment was discriminatory and/or retaliatory are not a substitute for concrete evidence in the form of specific facts showing that the Defendants' proffered reason for his termination was mere pretext. See *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990).

     The Eleventh Circuit cautions that, in analyzing Title VII discrimination and retaliation claims:

> "[W]e must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees. The factual issue to be resolved is not the wisdom or accuracy of [the defendant's] conclusion that [the plaintiff] was an unsatisfactory employee. We are not interested in whether the conclusion is a correct one, but whether it is an honest one. Like all Title VII cases where pretext is an issue, the question the factfinder must answer is whether Fleming's proffered reasons were a 'coverup for ….a discriminatory decision.' *McDonnell Douglas*, 93 S.Ct. at 1826. 'We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.' *Damon v. Fleming Supermarkets of Fla. Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999)."

*Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir.2002).

     The undisputed evidence establishes that Plaintiff has failed to establish a *prima facie* case for either discrimination or retaliation. However, assuming that a *prima facie* case was established, Defendants' "legitimate, nondiscriminatory reasons for its action" are clearly established.

     Plaintiff was a probationary employee; thus he was in the midst of a "test" period to determine whether or not he should remain in the classification of Transportation Technologist in

permanent status.  Although Plaintiff touted his prior experience and knowledge of the job and training in his application, it soon became apparent that he lacked the basic skills that one with his experience and training should have possessed.  Plaintiff didn't follow the directives of his supervisor, opining that as long as the job got done, how it was done didn't matter.  Plaintiff, in the short time he was on probation had developed a problem with tardiness.  And, lastly, Plaintiff engaged in blatant insubordination toward his immediate supervisor.

Plaintiff's position as a Transportation Technologist was a supervisory position, one in which he was expected to set an example for his subordinates.  Chronic tardiness, lack of basic skills required by the job and insubordination are not the kind of examples that ought to be presented to one's subordinates.

Simply stated, as a probationary employee, plaintiff failed the test, and the reasonable and proper decision was to reassign him to his former classification.

The Eleventh Circuit, in *EEOC v. Total Sys. Serv., Inc.,* 221 F.3d 1171 (11th Cir.2000), recognized that employers have the authority to act on information provided to them, even if their conclusions about the facts are wrong. (Defendants are not acknowledging false or incorrect statements on the part of any management personnel; they are asserting, however, that the Court's rationale is pertinent in that it reflects that mistake or reliance on incorrect information does not give rise to a claim of discrimination.  Nor is a showing of error sufficient to overcome defendants proffer of a nondiscriminatory reason for their action).  "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct. *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3rd Cir.1995).  As noted above , "Pretext is not demonstrated by showing simply that the employer was mistaken." *Total Sys .Servs., Inc*., 221 F.3d at 1176.

The recommendation to terminate Plaintiff's probationary period and to reassign him to his former position was first made by Joe Jones, relying upon Mr. Lewis' reports and by personal discussions with Plaintiff.  Mr. Adams and, ultimately, Mr. Arkle, likewise, relied upon Mr. Lewis' reports in making their decision to reassign Plaintiff.  Even if Mr. Lewis' information proved incorrect, Jones, Adams and Arkle's honest impression was that Plaintiff had proven unsuitable to continue toward permanent status as a Transportation Technologist.

## <u>CONCLUSION</u>

Defendants argue that Plaintiff has failed to make a *prima facie* case for either Title VII race discrimination or retaliation.  Assuming, *arguendo*, that a *prima facie* was made, Defendants argue that Plaintiff has failed to meet his burden to prove that the legitimate reasons given by the Defendants for their actions were mere pretext.  Summary judgment should be granted in favor of Defendants ALDOT and McInnes.

Defendants further argue that Plaintiff's claims under 42 U.S.C. § 1981 have the same requirements of proof and are subject to the same analytical framework as the Title VII claims of discrimination and retaliation.  *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir.1995); *Turnes v. AmSouth Bank N.A.*, 36 F.3d 1057, 1060 (11th Cir.1994); *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 n.2 (11th Cir.1994).

Defendants, assert, therefore, the same facts and arguments as presented are dispositive of Plaintiff's § 1981 claims of race discrimination and retaliation.

RESPECTFULLY SUBMITTED
TROY KING
ATTORNEY GENERAL

s/ Andrew W. Redd
Jim R. Ippolito, Jr. (IPP001)
Assistant Attorney General
Chief Counsel

Andrew W. Redd (RED001)
R. Mitchell Alton, III (ALT003)
Assistant Attorneys General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
Telephone:  (334) 242-6350
Facsimile:  (334) 264-4359
redda@dot.state.al.us

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **LEROY WILLIAMS,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **STATE OF ALABAMA DEPARTMENT** | )   **CASE NO. 2:06-cv-658-ID** |
| **OF TRANSPORTATION, JOE MCINNES,** | ) |
| *etc.*, | ) |
| | ) |
|     **Defendants.** | ) |

**CERTIFICATE OF SERVICE**

      I hereby certify that, on **March 26, 2007**, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECT system, which will send notification to the following:

Mr. Russell W. Adams, Esq.
Wiggins, Childs, Quinn & Pantazis, L.L.C.
Attorneys at Law
301 19th Street, North
Birmingham, Alabama  35203
ATTORNEY FOR PLAINTIFF

                           s/ Andrew W. Redd
                           Andrew W. Redd (RED001)
                           Assistant Attorney General
                           Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
(334) 242-6350 (office)
(334) 264-4359 (facsimile)
altonm@dot.state.al.us

22