# Excerpts

# from the deposition of

# Plaintiff Leroy Williams

# February 21, 2007

1        IN THE UNITED STATES DISTRICT COURT FOR
          THE MIDDLE DISTRICT OF ALABAMA
2                  NORTHERN DIVISION

3

         LEROY WILLIAMS,
4
               Plaintiff,
5
         Vs.                          CIVIL ACTION NO.
6                                     2:06-CV-658-ID

7        STATE OF ALABAMA DEPARTMENT
         OF TRANSPORTATION and JOE
8        McINNES, in his official
         capacity as Director of the
9        State of Alabama Department
         of Transportation,
10
               Defendants.
11

12              *       *       *       *       *

13

14       **DEPOSITION OF LEROY WILLIAMS,**

15       taken pursuant to notice and stipulation

16       on behalf of the Defendant, in the offices

17       of Wiggins, Childs, Quinn & Pantazis, 301

18       Nineteenth Street North, Birmingham,

19       Alabama, before Nicole Paulk, Certified

20       Shorthand Reporter and Notary Public in

21       and for the State of Alabama at Large, on

22       February 21, 2007, commencing at 10:16

23       a.m.

LEROY WILLIAMS -- 02/21/2007

1                           APPEARANCES

2

3         FOR THE PLAINTIFF:

4                     **Russell W. Adams, Esquire**

5                     Wiggins, Childs, Quinn &

6                          Pantazis, PC

7                     301 Nineteenth Street North

8                     Birmingham, Alabama 35203

9

10        FOR THE DEFENDANTS:

11                    **Andrew W. Redd, Esquire**

12                    Assistant Attorney General

13                    Assistant Counsel

14                    State of Alabama Department of

15                         Transportation

16                    1409 Coliseum Boulevard

17                    Montgomery, Alabama 36110

18

19

20

21

22

23

*LEROY WILLIAMS -- 02/21/2007*

1   Q.   Are there any other grievances that you've

2        filed subsequent to the filing of that

3        particular grievance?

4   A.   There are other ones in that -- in that --

5   Q.   Is there another grievance that was filed

6        after that one that you can show me today?

7        Because I only found two in your files,

8        and you've seen both of those, Exhibits 2

9        and 3.  I just want to know if there's

10       another grievance in there that I'm not

11       aware of that I haven't found, because I

12       only know of two.  And I haven't looked

13       through all of those in depth.

14  A.   You haven't?

15  Q.   Haven't had time.  That's an EEOC filing.

16       I'm talking about an internal grievance

17       with the Department of Transportation.

18       I'm aware of the EEOC file.  I want to

19       know if you filed an internal grievance

20       besides the two I've given you.

21  A.   I filed a grievance and gave it to

22       Mr. Green.

23  Q.   When?

1    A.    Prior to the accident, this last --

2    Q.    Prior to when?

3    A.    The accident.  My promotion to TT.

4    Q.    Besides those two that you have in front

5          of you, are you saying that you filed

6          another complaint form, internal

7          grievance, with the Department of

8          Transportation?

9    A.    Yes.

10   Q.    And do you know when that was?

11   A.    I don't know the dates.

12   Q.    Do you have a copy of them?

13   A.    Not in front of me right now.

14   Q.    Did you keep a copy of it?

15   A.    I'm quite sure I did.

16   Q.    Where is the copy located?

17   A.    Right now I don't know.

18   Q.    Did you personally keep a copy for

19          yourself?

20   A.    It could be I did, but I'm not sure where

21          it is.

22   Q.    Well, do you know what became of that

23          particular grievance?

*LEROY WILLIAMS -- 02/21/2007*

1    A.    No, I do not.

2    Q.    A minute ago you told me you had given

3          your lawyer everything you had; now we

4          have a grievance you have not furnished

5          that is subsequent to the only two

6          grievances that are in your file now, so

7          I'm just curious as to where that

8          grievance went to.

9    A.    I don't know, sir.  I have to research and

10         see where it is.

11   Q.    Well, would you do that and make sure your

12         lawyer gives me a copy of that particular

13         grievance?

14   A.    I sure will.

15   Q.    What was the nature of that grievance?

16               MR. ADAMS:  Let the record

17                    reflect the Department of

18                    Transportation is the

19                    custodian of records for all

20                    grievances filed by members

21                    of the Reynolds class.

22               MR. REDD:  And let the record

23                    reflect a search of the

*LEROY WILLIAMS -- 02/21/2007*

1           records has not revealed the

2           grievance that Mr. Williams

3           is referring to.

4    Q.    What was the nature of the grievance, this

5          last grievance that you've disclosed to

6          me?

7    A.    Discrimination.

8    Q.    That's a broad subject.  Would you be more

9          specific as to what you mean by

10         discrimination by specifying who

11         discriminated against you and how they

12         discriminated against you and when they

13         discriminated against you?

14   A.    Well, most of the paperwork would be in

15         here, but the discrimination act would be

16         I was denied trainings; I wasn't given

17         adequate time to perform my duties, to

18         learn my duties, when there were other

19         employees, white employees that gained the

20         title TT, was given adequate time and

21         trainings to do their duties and to have

22         success in that position.

23   Q.    And who was not giving you adequate time

```
 1              to get training or perform your duties?
 2              Is there a particular person that you
 3              are...
 4    A.        I would say Mr. Thomas Lewis, Mr. Jones,
 5              and Mr. Adams.
 6    Q.        Okay.  And all of this that you just told
 7              me and perhaps more was fully denoted on a
 8              form such as this one, a complaint form or
 9              a grievance form; is that what you're
10              telling me as we sit here?
11    A.        I handed it over to Mr. Green.
12    Q.        Okay.  And you don't recall when that
13              happened?
14    A.        Not the exact dates.
15    Q.        What about the month?  Have any idea what
16              month that was?
17    A.        Not right now, I do not.
18    Q.        Did you personally place that in
19              Mr. Green's hand?
20    A.        Yes.
21    Q.        In Mr. Green's office?
22    A.        Yes.
23    Q.        What did Mr. Green say to you when you
```

```
 1                        marked for identification
 2                 as    Defendants' Exhibit No.
 3                 5.)
 4   A.   Oh, okay.
 5   Q.   Is that correct?  I mean, is that --
 6   A.   The classification is transportation
 7        technologist.
 8   Q.   And the working title, I mean, what you're
 9        basically called is field supervisor?
10   A.   That one I had was, and several others.
11   Q.   Okay.  So you could be a transportation
12        technologist and not be a field supervisor
13        then?
14   A.   That's correct.
15   Q.   Okay.  Now, this document appears to give
16        a description of your duties, what the job
17        is, things of that nature, does it not?
18   A.   Yes.
19   Q.   And it appears that you reviewed this and
20        signed it on May 25th of '05, by looking
21        at the last page of that document; is that
22        correct?
23   A.   Let me look at it here.  Okay.  Yes.
```

1    Q.    Okay.  So you were aware of your job

2          responsibilities, what they wanted you to

3          do on a daily basis and what the nature of

4          your job was?

5    A.    Yes.

6    Q.    At least by May 25th, correct?

7    A.    On the job title?

8    Q.    Yes.

9    A.    Yes.

10   Q.    And what your duties were?

11   A.    What, I knew what my duties were?

12   Q.    Yes, as described on this form that you

13         signed?

14   A.    Well, at the time, I was -- I read over

15         them, but -- and am aware, but I didn't

16         get a chance to go through all those

17         duties.

18   Q.    Okay.  But at the bottom, you said, I

19         certify I have read the above and verify

20         that it is to the best of my knowledge

21         correct and accurate.  And you signed

22         that, correct?

23   A.    Yes, agreeing to those are the duties that

*LEROY WILLIAMS -- 02/21/2007*

```
 1          transportation tech?

 2   A.     During the time I was a transportation

 3          tech, I was transferred to a different

 4          crew.  Tommy was transferred to a

 5          different crew, so he supervised someone

 6          else.

 7   Q.     Okay.  Did the work that your crew was

 8          performing after you became a tech, was

 9          that similar to work that you had

10          previously performed when you were an EA?

11   A.     Yes.

12   Q.     Okay.  And you've indicated I think

13          briefly that you were good at your job as

14          an EA, or you think you were good as --

15          did a good job as an EA?

16   A.     To the best of my knowledge, yes.

17   Q.     Okay.  Who was your -- immediately before

18          you got promoted to tech, who was your

19          supervisor?

20   A.     Theresa Barksdale (phonetic).

21   Q.     Is Theresa Barksdale black or white?

22   A.     She's white.

23   Q.     Did you have any problems with Theresa
```

*LEROY WILLIAMS -- 02/21/2007*

```
 1        find any of them now.
 2                    MR. ADAMS:  If you've got extra
 3                        copies, I'd appreciate
 4                        getting one.
 5                    MR. REDD:   There you go.
 6   Q.   Paragraph 1, Page 2 on this particular
 7        exhibit.  The third sentence you say, upon
 8        being promoted, I was not properly trained
 9        or given sufficient data and information
10        as necessary to be successful on the job.
11        Okay.  I want you to tell me what training
12        that you -- let's start with training.
13        What training do you think that you should
14        have received in order to be successful on
15        the job?
16   A.   In the software department, I should -- I
17        say that I should have been trained in
18        Terramodel.
19   Q.   Okay.  So you should have been trained on
20        that.  Is that a program or a device
21        that's utilized in the work to input data?
22   A.   It's a program that we utilize to input
23        data and bring it to the -- inside the
```

```
 1              office.

 2    Q.        Okay.  And had you had any training on or

 3              experience with Terramodel when you were

 4              working as an EA II/III?

 5    A.        I've had some self-training.

 6    Q.        Okay.  As a data editor, did you -- were

 7              you required to or did you use Terramodel

 8              at all in the performance of that

 9              particular job?

10    A.        Yes.

11    Q.        Okay.  So you had some knowledge of

12              Terramodel before you ever came to TT?

13    A.        No training, but I had some knowledge.

14    Q.        Okay.  A working knowledge?

15    A.        I would say -- I was sat in front of a

16              data editor's position and told, here it

17              is; do it.

18    Q.        Well, do you believe -- you said you were

19              proficient in your job as an EA II/III.

20              Were you proficient in the ability to use

21              Terramodel as an EA II/III?

22    A.        And that's why I had a complaint about the

23              training.
```

*LEROY WILLIAMS -- 02/21/2007*

1 Q. No, answer my question first.  Do you

2   believe you were proficient in that as an

3   EA II/III?

4 A. No.

5 Q. Okay.  So you believe you should have been

6   given training in the software in the use

7   of Terramodel.  Okay.  That's one

8   training.  Is there any other training you

9   think you should have received and did not

10   receive as a TT?

11 A. Yes.  Supervisional training.

12 Q. What, training on how to be a boss or

13   supervisor?

14 A. Some experience in it.

15 Q. Okay.  Does the department offer courses

16   in that?

17 A. The department does not, as far as I know.

18 Q. Okay.  Now, who would you have -- well,

19   let me back up one minute.  Let's go back

20   to the Terramodel software training.  Who

21   would have given you that training?

22 A. The Terramodel training?

23 Q. Uh-huh.

*LEROY WILLIAMS -- 02/21/2007*

1    A.    There have been classes that -- and who

2          would have given it to me, I wouldn't have

3          -- I don't know, but they had classes that

4          -- prior, to white employees that was data

5          editors before I was and during my time

6          that had training in Montgomery and I

7          guess other areas, wherever the training

8          was, but I never was called to one of

9          those trainings.

10   Q.    Do you know any white employees who got

11         Terramodel training?

12   A.    Stacy Nichols, Troy Nichols, Dodd Austin,

13         Robert Harris, Keith Kirkland.

14   Q.    Okay.  Anybody else?

15   A.    Yes, it's several others, but I can't

16         think of all of them right now.

17   Q.    Okay.  To your knowledge, had any of the

18         people you just named had any training

19         whatsoever or had they worked with

20         Terramodel before they went to this

21         training you indicated that they had?

22   A.    Had they worked with it before?

23   Q.    Yeah.

```
 1   A.    I don't know.

 2   Q.    If you know?

 3   A.    I don't know right now.

 4   Q.    Okay.  So their training might have been

 5         the first time they were associated with

 6         Terramodel at all?

 7   A.    I'm not going to say that.  I wouldn't

 8         know.

 9                   MR. ADAMS:  Are you at a spot for

10                     a break?

11                   MR. REDD:  Yeah.

12                   (Brief recess.)

13   Q.    When we left, you were giving me the names

14         of some people that -- some coworkers or

15         workers who you believe were given

16         Terramodel training.  I can't recall, but

17         did I ask you when this training was given

18         to any of the individuals you named?

19   A.    I don't think you asked me that, but I

20         can't recall.

21   Q.    Was it during the time you were

22         transportation technologist or before?

23   A.    Before.
```

```
  1           title.

  2   Q.      Okay.  But you believe that there should

  3           have been some -- is there a formal class

  4           that the department -- I think I asked you

  5           that already.  How would that training be

  6           conducted, by your supervisor?

  7   A.      It should have been by my supervisor.

  8   Q.      Your immediate supervisor?

  9   A.      And the department, both.

 10   Q.      Okay.  Your immediate supervisor being

 11           Tommy Lewis?

 12   A.      Yes.

 13   Q.      Do you know how long Tommy Lewis had

 14           actually been a supervisor at the time he

 15           became your supervisor?

 16   A.      No, I don't -- I don't know, but I know it

 17           had been quite some years.

 18   Q.      So you believe he had been a supervisor a

 19           while before he came to supervise you?

 20   A.      Yes.

 21   Q.      Okay.  Terramodel training, supervisory

 22           training.  What other training do you

 23           believe you should have been given but
```

1           communication skills before you took the

2           job?

3    A.     I know I wasn't trained to communicate

4           with -- as a supervisor.

5    Q.     Well, how does a supervisor communicate?

6    A.     To me, a supervisor should have very --

7           very much knowledge of what he should

8           expect out of his people and the time to

9           get his people trained to get used to

10          their jobs.

11   Q.     Okay.  But the people that you were

12          actually supervising, weren't they EA

13          II/IIIs or EA Is?

14   A.     Both.

15   Q.     Okay.  And that's the job that you had

16          worked at for several, several years

17          before you became a TT, correct?

18   A.     The job that I had worked in.

19   Q.     Yes.  So you knew what an EA -- what was

20          expected of an EA on the job, did you not?

21   A.     That's true.

22   Q.     As you say yourself, you performed your

23          job as an EA well?

*LEROY WILLIAMS -- 02/21/2007*

| | | |
|---|---|---|
| 1 | A. | Exactly. |
| 2 | Q. | And proficiently? |
| 3 | A. | Yes. |
| 4 | Q. | So you knew what was required of the job? |
| 5 | A. | Of an EA? |
| 6 | Q. | Yes. |
| 7 | A. | Yes. |
| 8 | Q. | So why would you need training to tell EAs |
| 9 | | what was expected of them when you had had |
| 10 | | the job yourself and knew it quite well? |
| 11 | A. | Well, that's people then I had to deal |
| 12 | | with certain circumstances that I wasn't |
| 13 | | -- could not be aware of. |
| 14 | Q. | Okay.  You just -- did you have poor |
| 15 | | interpersonal skills when you took that |
| 16 | | job as TT? |
| 17 | A. | As an EA II? |
| 18 | Q. | No, when you took the job, did you have |
| 19 | | poor interpersonal skills or communication |
| 20 | | skills? |
| 21 | A. | When you say poor, explain. |
| 22 | Q. | I mean are you able to get your point |
| 23 | | across to people in a relatively easy |

*LEROY WILLIAMS -- 02/21/2007*

```
 1            manner, or does that come difficult -- is
 2            that difficult for you to do?
 3    A.      I feel that I can get my point across to
 4            them fairly easily, but in the sense I
 5            feel that people have different thoughts
 6            different from mine so I can deal with
 7            them.
 8    Q.      And that's just part of being a human
 9            being working a job, isn't it, though?
10    A.      And there's a given time to learn it.
11    Q.      I'm just trying to ask what kind of
12            training would benefit you other than just
13            working with the people.  Some stuff can't
14            be taught, and I'm just wondering what you
15            could have been taught.  If you have good
16            work skills, what else could you be taught
17            that would enhance your job performance?
18    A.      Well, I mean, dealing with -- in a
19            position dealing with people, then I'm set
20            to a higher position, so I would have to
21            communicate with them on a different base
22            than what I would normally do.
23    Q.      Well, you're the boss now, right?
```

*LEROY WILLIAMS -- 02/21/2007*

```
 1   A.   Right, so the boss needs training and time
 2        to...
 3   Q.   And you just don't think you had enough
 4        time to learn the job; is that what you're
 5        telling me?
 6   A.   Exactly.
 7   Q.   Okay.  Not necessarily being trained, but
 8        just time to work into the job and be able
 9        to --
10   A.   Adjust.
11   Q.   -- feel comfortable with it?
12   A.   Correct.
13   Q.   So it sounds to me like your biggest
14        complaint is that you just weren't given
15        enough time as far as developing the
16        skills and communication skills to be a
17        good supervisor.
18   A.   Time and training.
19   Q.   Okay.  Well, what additional training are
20        we talking about?
21   A.   At the time, I don't know.  I'll just have
22        to...
23   Q.   Okay.  Any other kind of training that you
```

```
 1            think you did not get that you should have

 2            gotten as a transportation technologist,

 3            other than what you've already told me?

 4   A.       Not right now.

 5   Q.       Okay.  Did you ask anybody for some

 6            additional training?

 7   A.       Always.

 8   Q.       Who?

 9   A.       I asked Mr. Lewis.

10   Q.       What did you ask him to do for you?

11   A.       I asked him for his personal training

12            since he's been in that position longer.

13   Q.       And did he just refuse to give you any

14            help?

15   A.       His response was, you should already know

16            that.

17   Q.       Did he ever tell you that there's some

18            things on that job that because of your

19            prior job experience you shouldn't have to

20            retrain or shouldn't have to be taught to

21            do?

22   A.       He assumed.

23   Q.       But he told you that too, didn't he?
```

1    A.    He assumed.

2    Q.    Well, when I say he told you, I mean he

3          verbally said, Mr. Williams, you ought to

4          know how to do Terramodel or,

5          Mr. Williams, you ought to know how to

6          tell somebody to go do a job and them do

7          it right.  Didn't he verbally tell you

8          those kind of things?

9    A.    Mr. Lewis assumed that I should know that.

10         He never took the time to find out.

11   Q.    Okay.  Besides Mr. Lewis, who did you

12         request for additional training?  Who did

13         you make requests to for additional

14         training?

15   A.    That was the person I talked directly to

16         on most bases.

17   Q.    All I'm asking, was there anybody else?

18   A.    Not that I recall.

19   Q.    Did you ever go over Mr. Lewis's head and

20         try to get somebody else up the

21         supervisory chain to give you any kind of

22         training to help you?

23   A.    Not that I can recall.

```
 1    Q.    The next sentence in that EEOC complaint

 2          in Paragraph 1, it says, I was constantly

 3          subjected to harassment and intimidation

 4          by my supervisor.  Let's start with the

 5          harassment.  Can you explain to me what

 6          you mean by harassment and who harassed

 7          you?

 8    A.    Basically, Mr. Lewis was harassive.

 9    Q.    Okay.  Now, one man's harassment is

10          another man's criticism.  Could you be

11          more specific as to what Mr. Lewis did to

12          you or said to you that you consider to be

13          harassment?

14                    MR. ADAMS:  Object to form.  You

15                        can answer.

16    Q.    Do you understand my question?  Can you

17          give me any specific incidences that

18          involve Mr. Lewis where he harassed you?

19    A.    I'm thinking of it.  Can I object not to

20          answer this right now?

21    Q.    No.  You've got to answer my question,

22          unless you want to be redeposed, and I

23          don't think any of us wants that.
```

```
 1            voice to you, what other kind of

 2            harassment were you claiming that was

 3            received by you at the hands of Tommy

 4            Lewis?

 5   A.       My work performance.  To me, trying to

 6            take away from my work performance is a

 7            harassing situation I have to deal with

 8            every day.

 9   Q.       What do you mean taking away from your

10            work performance?

11   A.       He didn't want to acknowledge me for what

12            I knew or for what -- the ways I did my

13            work.  Everybody does their work

14            different.  As long as you come up with

15            the same results, I think it's okay.

16            But...

17   Q.       Well, let me ask -- okay.  Broach that

18            subject.  What about if your supervisor

19            told you how to do a job, would you go

20            about doing it another way even though you

21            had already been instructed on how he

22            wanted it done?

23   A.       If my supervisor told me the way he wanted
```

1       occasions in the performance of your job?

2    A.    As long as it wasn't life-threatening.

3    Q.    Okay.  We were talking about the

4          performance of your job.  Was there any

5          other things that he harassed you in the

6          performance of your job?

7    A.    Getting out of -- the way I got other

8          people to work and understand work.  He

9          was -- and I felt he would go over -- go

10         behind me and tell them not to do the work

11         the way I was telling them to do it or

12         that it wasn't needed that way.  And I was

13         in a new position, and I felt that he

14         should have let me -- as long as it was

15         the right way, he should have left me to

16         do my supervisor position and he should

17         have came to me and shown me the way he

18         would like for me to give out those

19         duties, but instead, he would like

20         belittle me and take me and go over there

21         and tell them how to do the job and

22         wouldn't let me learn and do my part of

23         it.

```
 1    Q.    Okay.  Let me just make sure I've got your
 2          pecking order quite right here.
 3    A.    Okay.
 4    Q.    Mr. Lewis is your boss on the job?
 5    A.    That's correct.
 6    Q.    And then you have some other people that
 7          you're their boss on the job?
 8    A.    That's correct.
 9    Q.    And you think it was wrong for Mr. Lewis,
10          who was over you and over those people
11          too, to tell them or give them orders on
12          how he wanted stuff done?
13    A.    I think it was wrong for him to belittle
14          me in front of them.
15    Q.    Well, how did he belittle you other than
16          just telling people to do it a different
17          way?  Did he call you names?  Did he call
18          you stupid?  Did he say, you're dumb; you
19          can't do this job; why are you doing it
20          this way or that?  I mean, explain to me
21          what you mean by belittle.
22    A.    He would raise his voice in front of the
23          crew to me on certain acts of the job --
```

*LEROY WILLIAMS -- 02/21/2007*

1  Q.   Give me an example, if you can, a specific

2       example.

3  A.   Right now I can't think of one.

4  Q.   Go ahead.  I'm sorry.  I didn't mean to

5       interrupt you.  What did you mean by

6       belittle?  If you can, be specific.

7  A.   He would try to make me look small in

8       front of my subordinates, and that

9       wouldn't let me have -- gain the respect

10      of my crew as their supervisor.

11 Q.   Okay.  Now, what you've given me is a

12      generality.  Is there any way you can put

13      some meat on what you just told me so I'll

14      understand what you're talking about?

15      It's one thing to use the word "belittle,"

16      but can you explain what you mean, how he

17      did it, what did he say, what the context

18      of the situation was?  Do you understand?

19 A.   For instance, I'm out and overseeing my

20      crew.  And they're working, and he steps

21      out and says, Leroy, what are you doing,

22      and starts to yelling and carrying on, and

23      there's no sense, no call for it.  And the

1     and phrases.  I'd like to know what the

2     actual action was if you can describe it.

3     Now, if you don't know, that's fine.

4              MR. ADAMS:  Object to the extent

5                 he's already described that

6                 he was yelled at in front of

7                 his subordinates for things

8                 that he wasn't doing wrong.

9              MR. REDD:  And we're on the

10                Talladega project now, and

11                I'd like to know what the

12                specific instance that I'm

13                hearing about was about.

14  A.    Well, I can't recall it right now, but it

15     is inside the paperwork.

16  Q.    So it's belittling you and talking down to

17     you?

18  A.    And trying to create a hostile environment

19     -- or creating a hostile environment.

20  Q.    Well, did you get along with your crew?

21  A.    Yes, I did.

22  Q.    Okay.  Any other things that you believe

23     were harassment on the part of Tommy

*LEROY WILLIAMS -- 02/21/2007*

```
 1            determining what is right under the laws.
 2   Q.    Did you ask Mr. Jones to get you some
 3            additional training?
 4   A.    I can't recall.
 5   Q.    Did Mr. Jones harass or intimidate you?
 6   A.    I can't recall.
 7   Q.    The last paragraph of the EEOC complaint
 8            says, I believe that I was discriminated
 9            against because of my race, black, and in
10            retaliation for having filed a previous
11            internal grievance based on race against
12            my supervisor.  Just to be clear, what
13            grievance are we talking about?  It's
14            singular, so I'm asking the question --
15                  MR. ADAMS:  Object to form.
16   Q.    -- which grievance are you being
17            retaliated for?
18   A.    I feel I was being retaliated for the
19            Reynolds decree.
20   Q.    Okay.  The consent order in Reynolds?
21   A.    Yes.  I feel --
22   Q.    Of which you are a class member by virtue
23            of the definition of class?
```

```
 1                    MR. ADAMS:  He's already stated

 2                         that he contends that he's

 3                         been retaliated against

 4                         based on all three of his

 5                         grievances.

 6                    MR. REDD:  So then Paragraph 10

 7                         is actually a misquote, a

 8                         misstatement of fact?

 9                    MR. ADAMS:  It appears that there

10                         may be more than one

11                         grievance that Mr. Williams

12                         is relying upon.

13   Q.    Is that correct, Mr. Williams?  Is that

14         your statement?

15   A.    To my best knowledge.

16   Q.    Okay.  Paragraph 13 on Page 3, you're

17         talking about similarly situated employees

18         who did not file grievances have not been

19         demoted or disciplined.  Can you attach a

20         name to any of the similarly situated

21         employees who had not filed grievances

22         that were treated differently than you?

23   A.    William McKinnon (phonetic).
```

1    Q.    And when you name them, would you please

2          specify their race and the nature of the

3          grievance, if you know, and their job

4          classification?

5    A.    William McKinnon, he's a white male.  He

6          was promoted to the job classification

7          that they demoted me from.  And as far as

8          my knowledge, they got him through all the

9          steps to become a transportation

10         technologist.

11   Q.    Who was his supervisor?

12   A.    William's supervisor?  I don't know at the

13         time.

14   Q.    When was he promoted to TT?  Was it the

15         same time you were?

16   A.    He was promoted when I was demoted.

17   Q.    Okay.

18   A.    Mr. Chan Granthem was one of the

19         subordinates that I was training.  They

20         temporarily put him into the position that

21         I was demoted from and they recently

22         promoted him to the transportation

23         technologist position.  He's a white

LEROY WILLIAMS -- 02/21/2007

1        employee.

2   Q.    Okay.  Who else?

3   A.    Scott Blake.  He's a white employee that

4        was promoted to the transportation

5        technologist position during -- right

6        before the period I was promoted, which I

7        know he had problems, but he was never

8        demoted; he was given the privilege to --

9        of a second chance and some other ways to

10        hold his position.

11  Q.    Let me back up to Granthem.  Who was

12        Granthem's supervisor?

13  A.    Who was his supervisor?

14  Q.    Or is?

15  A.    I was his supervisor when I was there.

16  Q.    Who is his supervisor now?

17  A.    I have no idea.

18  Q.    Do you know who Blake's supervisor is?

19  A.    I have no idea now.

20  Q.    Okay.  That's three people.  Anybody else?

21  A.    There was Stacy Nichols, Troy Nichols,

22        William Dodd Austin, and that's all I can

23        recall right now.

| | | |
|---|---|---|
| 1 | A. | Scott needed help on supervising, the same |
| 2 | | -- some of the same situations I was in. |
| 3 | Q. | But that's not a disciplinary infraction, |
| 4 | | though; that's just a -- |
| 5 | A. | I was disciplined for it. |
| 6 | Q. | Well, you were disciplined for |
| 7 | | insubordination and tardiness. |
| 8 | A. | And I was demoted. |
| 9 | Q. | Well, I'm going to ask you this:  Was |
| 10 | | Scott Blake disciplined or do you know of |
| 11 | | any disciplinary issue he had for any kind |
| 12 | | of infractions? |
| 13 | A. | I know he argued with his supervisor, |
| 14 | | Mr. Willy Primus. |
| 15 | Q. | Okay. |
| 16 | A. | I know he didn't follow Mr. Primus's |
| 17 | | directives. |
| 18 | Q. | And you don't believe he was disciplined |
| 19 | | for any of that? |
| 20 | A. | I know he wasn't. |
| 21 | Q. | What about Dodd Austin? |
| 22 | A. | Dodd, right now, would call in, and he |
| 23 | | never got written up for tardiness. |

*LEROY WILLIAMS -- 02/21/2007*

```
 1   Q.    He would call in?

 2   A.    Yes, he would call in and he wasn't coming

 3         that day, on a certain day.  And he would

 4         use his time and he was given the

 5         privilege to use his time in whatever the

 6         situation was.

 7   Q.    But that's not truly an infraction, is it?

 8         If you call in and you're approved for

 9         leave, that's not an infraction?

10   A.    Well, I called in and I was denied

11         approval.  So to me that's an infraction

12         because --

13   Q.    But you understand my point, though.  If

14         you call in -- and even though you say

15         it's unequal treatment to you, but it's

16         not an infraction, is it, with Austin, as

17         long as he called in properly and took

18         leave?

19   A.    Well, I thought I did.

20   Q.    Well, you may have.

21   A.    Okay.

22   Q.    But what he did was not an infraction in

23         the true sense?
```

*LEROY WILLIAMS -- 02/21/2007*

1    A.    On my write-up it says tardiness, and they

2          wrote me up for it and gave me a reprimand

3          for continuance -- or tardiness of some

4          sort.  So evidently, it is some kind of

5          infraction.

6    Q.    Okay.  So you're saying that when Austin

7          called in and took sick leave, that was an

8          infraction.  What about McKinnon?

9    A.    When McKinnon called in.

10   Q.    Same thing?

11   A.    Yes.

12   Q.    He would call in; they'd let him have

13         leave, but they wouldn't let you have

14         leave when you called in?

15   A.    No.

16   Q.    And Granthem, same kind of thing?

17   A.    Same thing.  Granthem was there when I was

18         there at 5 o'clock in the morning and I

19         had to wait 20 or 30 minutes on Granthem.

20         And I spoke to Tommy about it, but Tommy

21         wouldn't -- Tommy said I've got, you know,

22         he can handle this.

23   Q.    And you're the supervisor?

```
 1   A.    And I'm the supervisor.

 2   Q.    Could you have written him up?

 3   A.    Could I have written him up?

 4   Q.    Yeah, Granthem, for being late?

 5   A.    I really don't know.

 6   Q.    As a supervisor, you don't know?  Okay.

 7         Who else besides those four that you've

 8         listed white employees were treated

 9         differently?  Anybody else?

10   A.    Besides those I listed?

11   Q.    Uh-huh.

12   A.    I can't recall right now.  I'm quite sure

13         there is some more, but I can't recall

14         right now.

15   Q.    If you happen to recall their names, would

16         you tell your lawyer so he can tell me so

17         I'll know?

18   A.    Yes, I will.

19   Q.    Okay.  Have you identified to me all the

20         persons within the Department of

21         Transportation that discriminated against

22         you --

23   A.    That I can recall.
```

1                       * * * * * * * * * * * *

2                    REPORTER'S CERTIFICATE

3                      * * * * * * * * * * * *

4

5       STATE OF ALABAMA

6       COUNTY OF MONTGOMERY

7

8                       I, Nicole Paulk, Court Reporter

9       and Notary Public in and for the State of

10      Alabama at Large, do hereby certify that

11      the foregoing is a true and accurate

12      transcript of the proceedings as taken

13      stenographically by me at the time and

14      place aforementioned.

15                      This 28th day of February 2007.

16

17                      Nicole Paulk /mH
                        _____
18                      Nicole Paulk
                        Reporter and Notary Public
19                      State of Alabama at Large

20

21

22

23

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **LEROY WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:06-cv-658-ID** |
| | ) | |
| **STATE OF ALABAMA DEPARTMENT** | ) | |
| **OF TRANSPORTATION and JOE** | ) | |
| **McINNES, in his official capacity** | ) | |
| **as Director of the State of Alabama** | ) | |
| **Department of Transportation** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF DON T. ARKLE

Before me, the undersigned notary public in and for the State of Alabama at Large, this day personally appeared Don T. Arkle, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Don T. Arkle, I am a resident citizen of the State of Alabama and am over the age of nineteen (19) years.

I am presently an employee of the Alabama Department of Transportation (ALDOT) and was so employed at all times relevant to this lawsuit. I am currently serving as the Assistant Chief Engineer for Policy and Planning and at times relevant to this lawsuit, served as the Design Bureau Chief.

On, to-wit, August 19 2005, I received a memorandum from Location Engineer William F. Adams concerning probationary employee Leroy Williams. The memorandum from Mr. Adams, and the attachments thereto, cited a number of issues concerning Mr. Williams' performance during the probationary period, including tardiness, lack of knowledge of job skills, poor time management, failure to follow rules, and insubordination toward his supervisor. Mr.

Adams recommended that Mr. Williams' probationary period be ended and that he be reassigned to his former classification as Engineering Assistant II/III. See Exhibit 1.

I reviewed Mr. Adams' memorandum and attachments and was of the opinion that, based upon Mr. Williams' poor performance and conduct during the first three months' of his probationary period, his probationary period as Transportation Technologist should be terminated and that he should be reassigned to his former classification of Engineering Assistant II/III (EAII/III) in the Design Section. I indicated my concurrence with this recommendation by signature on the memorandum. See Exhibit 1.

On August 22, 2005, I sent a memorandum to Ron Green, Personnel Director, requesting that Mr. Williams' probation be terminated and that Mr. Williams be returned to his former classification as Engineering Assistant II/III. See Exhibit 2.

The request to end Mr. Williams' probation and to reassign him to his former position was approved and on September 1, 2005, I advised Mr. Williams, by letter, that his appointment to Transportation Technologist was terminated effective September 3, 2005 and that he was to report to Mr. Adenrele Odutola, Roadway Design Section, on September 6, 2005. see Exhibit 3.

It is my understanding that Mr. Williams complains that he was retaliated against for having filed a grievance complaining about having been discriminated against by his supervisor during the probationary period. . I have no knowledge of any grievance filed by Mr. Williams concerning this matter.

FURTHER THE AFFIANT SAITH NOT.

I signed this affidavit on *March 19*, 2007 in Montgomery, Alabama.

_____
Don T. Arkle

2

SWORN TO AND SUBSCRIBED before me on this _19th_ day of _March_ , 2007.

_Sabrina F. Gibson_
Notary Public, State at Large

My Commission Expires: _06-09-07_

3


DEFENDANT'S
EXHIBIT
1



## ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311      FAX: 334-262-8041*



*Bob Riley*
*Governor*

*J.D. McInnes*
*Transportation Director*

August 19, 2005

### M E M O R A N D U M:

TO:      Mr. Don T. Arkle
         Design Bureau Chief

FROM:    William F. Adams
         Location Engineer

RE:      Probationary Period of
         Leroy Williams

Mr. Williams was appointed to the classification of Transportation Technologist in the job title of Field Supervisor effective May 14, 2005. Mr. Williams was assigned to Mr. Tommy Lewis's crew. Since beginning with Mr. Lewis's crew, Mr. Williams has been reprimanded for excessive tardiness on July 26, 2005, and for insubordination on August 11, 2005, as shown in the attached documentation from Mr. Lewis and Mr. Joe Jones, Assistant Location Engineer.

Mr. Williams' lack of respect for the rules established by the Department, Bureau and Location Section and for his supervisor as shown by his actions is totally unacceptable. For these reasons, I am recommending that Mr. William's probation be ended at this time and that he be reassigned to his former classification of EA II/III in the Design Section.

Let me know if you have any questions or need additional information regarding this recommendation. Please indicate your concurrence with this recommendation by signing in the space provided below.

Concur:                                        Date:  8-19-05
         Don T. Arkle

Attachments



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311     FAX: 334-262-8041*



*J.D. McInnes*

Bob Riley
Governor

August 15, 2005



**ATTACHMENT A**

## MEMORANDUM

To:     William F. Adams, Location Engineer

From:   Joe E. Jones
        Asst. Location Engineer, Field

Re:     Recommendation of Discipline

        Leroy Williams, Transportation Technologist (Probationary Employee)
        Field Supervisor
        SECOND REPRIMAND by SUPERVISOR
        Charge: Insubordination

On August 11, 2005, Leroy Williams and Thomas Lewis met with me in my office to discuss the above referenced. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Tommy had called me from the field on the morning of August 11, 2005 to inform me that he was about to charge Leroy with insubordination. He briefly explained the situation to me. I then instructed him to bring Leroy with him and meet with me at 3:00 p.m.

Please see the attached written reprimand for details that led up to this disciplinary action. Generally, the insubordination charge was made because Leroy angrily walked off from Tommy during a meeting where Tommy was counseling/instructing Leroy on work matters. Tommy warned Leroy twice not to walk away and even warned him the second time that if he did, he would be charged with insubordination. Leroy walked away anyway.

During the meeting in my office, Leroy confirmed that he did walk away. However, Leroy said he did so only because Tommy was being demeaning and "talking down to him". Tommy denies this. I advised Leroy that a subordinate never terminates a meeting that a supervisor has called or disregards a directive unless it is unlawful or is dangerous. I also advised him that he should have finished listening to the supervisor, done what he asked, and then file a report/complaint as to the demeaning treatment that he said he received. I advised him that the reaction from him was unacceptable and shows a blatant disregard for the supervisor's authority to the point of insubordination.

At one point in our meeting, Leroy said that Tommy is "constantly" harassing him and "will not let him do his job". According to Tommy, he has never harassed Leroy but has indeed corrected him, trained him, and advised him of the rules and how they are to be followed. Tommy says that Leroy is defensive and has become more and more argumentative when he tries to instruct/train him. Tommy said that Leroy has threatened to "get a lawyer" during one of their sessions.

When I asked Leroy if he was accurate when he said, " Tommy constantly harasses and demeans me ALL the time", he said he was accurate. Leroy even said that ALL of the crew members had asked him, "...why does Tommy harass you like this ALL the time?" I asked Leroy was he sure that ALL members had asked him this and he said yes. I instructed Tommy to have a meeting with his crew as soon as possible and see if this accusation was accurate. Tommy said he would and would make a full report. On this date, Tommy had that meeting, with Leroy present, and has advised me that NONE of the personnel confirmed they had ever witnessed his harassing or demeaning Leroy. Please see the attached report on the meeting.

According to Tommy, Leroy is not handling the responsibilities of Field Supervisor well at all (see counseling session on July 28, 2005). This includes things like: he is not knowledgeable enough to handle the technical issues; not doing well at supervising his personnel; not managing time well; not following established rules concerning tardiness and lunch/break times; not retaining instructions/knowledge that Tommy is offering him. As a result, he reports that progress is being severely hampered. Tommy reports that the field operations are severely lacking in production and that even the minimal data being collected is often faulty because Leroy is not following procedures laid down by Tommy. In addition, field operations are lagging because Leroy is not managing time well at all.

For example, Tommy said that on August 11 one of the things (just prior to the insubordination) he was attempting to counsel Leroy on was his use of work time and making sure that the work effort was being maximized. Tommy said Leroy was defensive and said he was working hard. Tommy was trying to relate some times that were recorded in the Total Station that showed the work history on certain dates. Leroy stated that he didn't know what the clock on the instrument showed but that he was getting to work in the field in a timely manner. However, Tommy has presented documents (see attached) that show a history of the FIRST "setup" recorded in the instrument for several days. Those times are compared to another crew which is working out of the same office, doing similar work on the same project within a ¼ mile of each other. The document shows that the other crew consistently had a recorded setup time of roughly an hour BEFORE Leroy's crew did each morning. The document seems to exhibit a pattern of Leroy NOT getting to the job site in a timely manner. Tommy advised me that Leroy doesn't agree with the exhibit. Tommy has assured me that he checked the clock on the instrument and it is accurate.

Summary:

Leroy is a probationary employee in the classification of Transportation Technologist and is performing that probationary period in the job title of Field Supervisor. He is roughly at the three-month point in the period. Leroy has several years experience in Location Surveying, including experience as a Data Editor within a crew. Because of this experience and the training/classes Leroy has taken advantage of, I expected him to be a much more effective Field Supervisor. This is not proving to be the case. Tommy is a Party Chief with many, many years of Location Surveying experience. I have confidence in his knowledge and skills in Location Surveying because he was a successful Field Supervisor for all those years. Based on those years of experience, Tommy is attempting to help Leroy develop good technical skills along with good procedures to maximize efforts in the field. In essence, here is a successful and experienced supervisor attempting to train, advise, and counsel a subordinate who is a probationary employee in training. At the same time, he is attempting to cause Leroy to focus more on the responsibility of setting a good example for HIS subordinates by following all rules and regulations.

Leroy was not expected to "be up and running" since he is in a probationary period. However, he was expected to perform well in the technical areas and expected to stay open to critique and instruction by the Party Chief in those areas where he is weakest. Once he receives this critique/instruction, I would expect him to note it and react to it by conforming and by following those instructions. It seems, though, that Leroy takes offence to Tommy's critique and to his tutoring. It is apparent that Leroy interprets this as harassment. It seems to me that Leroy should concentrate more on being more receptive to learning all he can from Tommy's vast experience as a Location Surveyor (including all aspects of the job), as a long time Field Supervisor, and now as a Party Chief. Being argumentative and defensive when his supervisor is trying to counsel and train him is counterproductive and uncalled for. For some reason, Leroy seems to think that Tommy is being harassing when, according to Tommy, he is only trying to help Leroy learn how

to do the job in an accurate and timely manner with minimal effort. This seems like a reasonable approach to me.

Leroy has broken the rules pertaining to tardiness for which he received a written reprimand. Now, he has received a written reprimand for insubordination; all within the first three months of his probationary period. It seems that Leroy is resisting all supervision by Tommy and is ignoring the rules in place for things such as those for tardiness and other rules. According to Tommy, Leroy even was argumentative about the lunch hour and how it is to be handled. All of this is unacceptable for ANY employee of any job title but is surely not acceptable from a supervisor who needs to be setting the example for his subordinates. All other personnel are held to the same standards of following rules and for being cooperative. I see no reason for Leroy to be the exception. The rules and regulations set forth by State Personnel, ALDOT, and the Location Section seem to be fair to me. I don't consider the rules unreasonable and see no reason any employee would have trouble following them.

It is now my conclusion that Leroy has not represented himself well in his job title of Field Supervisor. However, his performance is fairly secondary to his seemingly hostile attitude of assuming a supervisor is being harassing when they are giving instructions and directives. Usually, this type attitude might be expected from a new employee who is making an adjustment to our rules and regulations and to our work habits at the ALDOT. Leroy, however, has worked several years in our survey crews and should be well aware of our rules and regulations. To be argumentative and insubordinate to his supervisor is just not acceptable. This attitude along with his weak job performance is, according to Tommy, causing a serious lack of progress on a job that has a very important timeline to be met. The evidence attached concerning the "late morning" setups recorded in the instrument and then the unsatisfactory response to Tommy's instructions seem to bear Tommy's feelings out. The reprimands for tardiness and for insubordination seem to make a case that this employee is not meeting standards at this point.

Tommy says in his written reprimand that he is not sure how severe the punishment should be. However, he says that he would recommend at least a suspension. I concur in that a suspension should be the minimum disciplinary result. I would suggest, however, that serious consideration be given to other choices. Since Leroy is a probationary employee and is being judged on his job performance, on his abilities to follow directives, and on his sense of cooperation, his successes and failures are magnified even more. It is during this time that the Department is depending on supervisors to judge whether or not a probationary employee meets or does not meet standards. It is then the supervisor(s) who should make a judgment based on good information and evidence, and then present a recommendation that is beneficial and reasonable to the Department.

Thus, it is my recommendation that Leroy not be allowed to continue in the Transportation Technologist classification. The reports given to me by his supervisor, Tommy Lewis, show that he is proving less than desirable as a Field Supervisor for which he was hired. If Leroy is unwilling to react positively to discipline, training, corrective counseling, or warnings, then his tenure in this probationary period should be stopped now.



**ALABAMA DEPARTMENT OF TRANSPORTATION**
*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
Phone: 334-242-6178      FAX: 334-269-0826



*Joe McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

July, 26 2005

```
ATTACHMENT
    B
```

## MEMORANDUM

To:     Leroy Williams, Transportation Technologist
        Field Supervisor

From:   Thomas W. Lewis
        Chief of Party

RE:     Reprimand for Repeated Tardiness

Mr. Williams, on Monday, July, 25 2005 you reported to this office in
Tuscaloosa at 7:14a.m. You are given 2 hours of driving time from the
Montgomery office to this office. Your reporting time in Montgomery is
5:00am and therefore if your report to the office here in Tuscaloosa any time
after 7:00am you are considered late for work (tardy).

This is the 4th time you have been tardy since May, 16th 2005, the day you
were assigned to this crew. Please refer to the following:

Occasion One:  On Wednesday June, 1 2005 you reported to the parking lot
in Montgomery at 5:05a.m. which was 5 minutes late. At that time I
informed you that being tardy was unacceptable.  This was a verbal warning.

Occasion Two:  The very next day I instructed the crew to meet in the
parking lot of the motel where everyone was staying in Auburn. You did not
report at that location and I had to be told by another crew member where
you were.  That in itself is an infraction because you did not do as instructed.
All other crew members reported just as I had instructed.  I told you on that
day you were late, because you were not where I told you to be at 7:00a.m. I

explained if you were late again you would be subjec· disciplinary actions. This was a second verbal warning.

Occasion Three: On Monday, June 20th you did not arrive at the office in Tuscaloosa until 7:30a.m. You called me that day and told me your stomach was bothering you. Even though you told me you were sick you went on out and worked the rest of the day like there wasn't anything wrong. I explained to you the importance of being on time to set an example for the crew members you supervise. This was a third verbal warning and a pattern had developed.

Occasion Four:   And now on Monday, July 25th, you did not report to the office here in Tuscaloosa until 7:14a.m.  You did not notify me even as I talked with you on the Southern Line BEFORE 7:00a.m. That in its self is grounds for a Reprimand. I am mystified as to why you did not mention to me that you were going to be late because you should have been very aware that being tardy is not acceptable.

The policies set down by our department plainly state that you must notify your supervisor if you are going to be late and that excessive tardiness will not be tolerated.

Consider this written reprimand as the next step in the disciplinary process concerning your being tardy. The first steps included the verbal warnings already mentioned.   Also consider this as a warning that the next time you are tardy you will be charged LWOP and you will receive another discipline (possibly another reprimand and/or a suspension).

This is a very serious matter and it will be reflected on your next grade sheet. I trust you understand that you must adhere to the rules set forth by the Department or you can cause serious injury to your career. I should also remind you that you are still in the early stages of your six-month probationary period as a Transportation Technologist and this type of behavior is detrimental to your being assessed as a dependable employee. And certainly as a Field Supervisor, you should be setting the example for the subordinates in your crew.

Thomas W. Lewis
Chief of Party

Mr. Leroy Williams
Work Performance
Counseling Session
July 28, 2005



A.   _Not Following directions_

1 May 16th, 2005, the first day you reported to this office we all sat down and discussed that you, as a supervisor, do not have the  authority to let people off with out my approval. We also discussed work times, and the importance of not being late.

   a. Work Times
      1. On May 16th, we discussed what the work times were:
      5:00 a.m. to 5:00 p.m. Monday
      7:00 a.m. to 5:00 p.m. Tuesday and Wednesday
      7:00 a.m. to 7:00 p.m. Thursday.

   b. May 24th I took you out and showed you the new project and what work we need to do, I explained when working around the Interchanges you should not set radial points with out checking them for accuracy. When we started checking our files an err was found. After going back checking I realized that you had set radial points to work off of. I told you go run a closure loop on the points, not once but twice before you did it the way I had told you to

   c. Tuesday, May 31st you came into the parking lot in Montgomery 5 minutes late.  On this same date, I instructed you to meet with me in the parking lot of the motel at 7 a.m.
   d. Wednesday, June 1st you were not at the motel parking lot, where I had instructed you to be the day before. You took this upon yourself not to follow my instructions and you did not notify me of this.  You informed Rodney instead of your supervisor. I do not know where you were, so as far as I'm concerned you were late that day also.
   e. Thursday, ~~July 28,~~ you let everyone go at 1:00 p.m. with out my approval, then you told me you let them go at 2:00 p.m. This is insubordination.
      June 30

*written by*
*T. Lewis*

B.  *Checking you work*
    I have told you time and time again time again about checking your field work. It's the only way you can be efficient. All of this could still fall under not following directives
    1   On May 17th, I found out you had had a problem the day before. I told you needed to be checking your work to keep things like that from happening.
    2.  June 15th, I had to tell you to check your work again to see if you had the sufficient information that was needed to cover the area in question.. I explained to you that all you had to do was load the information that you had gathered and see if it covered the area properly.

    3.  July 19th, once again I had to tell you to check your work after running some 3,000 ft of traverse without checking a previously established point. I explained that all you have to do is load one of the previously established coordinates and stake it out to find a point and see how much you have missed it. I have provided you with a laptop to keep in the truck to do this with. You have the files on the computer with this information. This is a tool that you need to use. Even as I was telling you this, you were telling me the information you were gathering was good " it looks good when I downloaded it. It must be good. After I made you go back and check the traverse what did you find? You found you had over a 1 foot err. Now you have spent almost 2 days trying to find the err. This is time wasted.

C.  *Working Skills*
    g.  Computer Skills
    1.  May 16th, the day that you first started on this job, I asked you what kind of experience you had with the computer.  You stated that you had been a data editor and you knew a good bit about terra model.
    2.  July 6th, I had to give you a lesson on how to draw a line in  terra Model and how to draw points by station offset.  I have also had to show you how to load image files into model.  These are basic skills in model that one of your standing should already know.
    3.  Monday, July 18th I had to show you how to write out a points file in a station offset format, but yet you told me that you were a data editor and you knew a good bit about the program.
    4.  July 27th, I had to explain how to draw an alignment up on the computer.  This is the same thing I had to show you back on July 6th.  How to draw a line.  The problem I saw on this day was. You had the information to draw the alignment with, but you did not know how to retrieve the information. The Terramodel file you

*written ū T. Lewis*

had open had a layer *Isolated* hiding all other layers with the information you were looking for. Evening after working with this file many times you did not recognize the information you had worked with in the past was not showing up.

h. Math skills
1. On June 2nd, I had to show you how to add and subtract angles. I also had to show you how to convert a bearing to an azimuth. I actually had to draw you a diagram to show you how to do this.

i. Managing you workers
1. You have come to me and said the reason you don't get as much work done as I think you should is because of the people you supervise. You say that they don't know what to do. You said to me that the men should know they need to cut the stub down low, so you think you don't have to tell them to do this. I tell you its not that they don't know this, it's that they are not going to do it unless you tell them to. It is easier to cut them up high. If you can't the worker's that you supervise to get the job done, then you are not doing your job as a supervisor. You can't take this personally it's a job and it has to be done correctly. It is your job to tell them to cut the stub down low. Don't assume that they should already know to do this. At some point you have to let these people know you mean business.

j. Training your workers
1. I have been confronted by one of your subordinates that they can't go to you and ask how to do something. They say that you want take the time to explain it to them where they can understand it. Now this employee has to go to some one else to learn the task. There again training employees is a skill you have to have in order to be a supervisor.

I. Prejudges
a. Accusing me of being prejudges will not be tolerated.
b. Nothing I have said to you has been in a prejudice manner.
c. We all must learn to communicate in a professional manner and that is the way I was speaking to you.
e. When you are a supervisor, you must learn how to speak to your employees and your employers, especially those that are over you. You are to treat your superiors just as what they are, supervisor.

*written by J. Tilow*

  f. Telling me the reason we are in a racial lawsuit is because we did not train employees is not an appropriate way to talk to your superior and it will not be tolerated.

II. Transfers
  a. There will be no transfers from the crew you are with now, at least not for the reason that you gave me earlier.
  b. Just because you think I'm being too hard on you is not reason enough to be asking for a transfer.

## Summary

It has become an every day thing. I have to show you how to do some miner task in Terramoldel, how to run a closure loop, how to set up files to work with. I am spending so much time trying to train you to do you job, I have to work late just to complete my work. I could understand spending this much time training a new Supervisor that had no experience in surveying. But you have been exposed to so much information in the past working with the Location Section along with the other Sections. I can not understand why you have not learned these skills in the past.

 In the interview with Mr. Jones, you told him you had the skills to be a supervisor. When you came out to the field you told me you had the skills to be a supervisor. Now, you are being held responsible for your work as a supervisor and you want to tell me you were not trained in the skills you need to be a supervisor. I know the people you worked under as a rodman, instrument operator, and data editor. I don't think it was that you weren't taught these skills, and I don't think you took it upon yourself to learn the skills that you were exposed to. In the event of this, now you are blaming every one else for your lack of skills. That to me, is not an excuse. If you want to continue being a supervisor you must improve you skill. There is a big gap between where you are now and where you need to be between now and the end of your probation. If you don't improve as much as need to your probation could be extended or you could be released. I want you to understand this is a serious matter and one you need to work hard on. I will work with you as much as I can to help you improve your skills but in the end it's up to you to learn and show me you can be a supervisor.



# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

Telephone: 334-242-6311    FAX: 334-262-8041



*J.D. McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

July 28, 2005

> **ATTACHMENT
> D**

## MEMORANDUM

Counseling Session

Leroy Williams, Transportation Technologist
Field Supervisor

Re:    Probationary Performance Concerns

On this date, a counseling session was held with Leroy Williams, referenced above. Also present was Mr. Thomas Lewis, Party Chief, who is Leroy's immediate supervisor. My concerns involved several areas that were well documented by Mr. Lewis (see attached). I felt it necessary to immediately discuss those concerns with Leroy so that he could concentrate on improving in those areas. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Leroy was promoted to Transportation Tech as a Field Supervisor and reported to Tommy on May 16, 2005. Leroy is presently being assessed during his six month probationary period and is now at his second month in the classification/job. Tommy has been keeping me informed on Leroy's progress or lack thereof. After two months, it has become obvious to me that Leroy is lacking in many areas as a Field Supervisor and this has me concerned. The following is a summation of the meeting and of the notes used for the session:

Working Skills

Leroy shows a definite weakness in math skills as related to surveying. For example, he was unable to calculate angles, azimuths until Tommy showed him how. Leroy told me he now knows how and can do them easily. My concern is that he writes all these things down as he is taught because he may forget. Since he has had high school geometry, three courses in geometry through the ALDOT, one course in trigonometry through the ALDOT, and several years in Location Surveying, I would have assumed that he would have garnered these skills necessary to do the job. I advised Leroy that he had to concentrate on improving these skills and that he should ask Tommy for hands on training. I also advised Leroy to take good notes and KEEP them to refer to so that he is not susceptible to losing the skill through a lack of good memory. We cannot have a crew standing around for an extended time because Leroy is spending too much time doing a calculation or is wasting time because Leroy doesn't know how to do a needed calculation.

He shows a lack of skills concerning checking his work in the field to ensure accuracy. Tommy had to instruct him several times about this and even to the point of demanding that he do the "checks". Leroy had been argumentative with Tommy concerning this directive which is unacceptable. There have been errors made that have caused a waste of time already because Leroy did not do as he was told. This is a common knowledge skill that Leroy should have learned through the years he has worked in a crew. I advised Leroy that he is being held responsible for doing the work accurately and timely....and for sure, to check his work if for no other reason than his supervisor told him to. I advised him to glean knowledge and

direction from Tommy on all work because Tommy has many years of experience as a Field Supervisor and is one who has a vast knowledge of Location Surveying procedures.

He shows a severe lack of skills in working with Terramodel. Even though this is not a highly required skill to be a good Field Supervisor, it is desirable. Since Leroy had been a Data Editor for over a year, I would have assumed that he had a pretty good working knowledge of Terramodel and could build basic alignments and/or retrieve data as needed. According to Tommy, this is not the case. Leroy had advised Tommy on his first day that he knew Terramodel and had a good understanding. Leroy noted on his resume and his application that he worked in the Data Editor job for a good while. I have advised Leroy to ask either Tommy or the Data Editor in the crew to show/teach him what he needs to know to work efficiently in the program….and to be able to find and retrieve data as needed without delaying the work process. I again advised making good notes and hanging on to them for reference in the future.

From discussions with Tommy over the last two months, I am concerned that Leroy does not have a really good grasp of what is required on a survey, even on a daily basis. Once again, Leroy should have accumulated enough knowledge and experience over his years in a survey crew to make him highly efficient and skilled and knowledgeable about what is needed to complete a survey. This is not the case according to the overall operations that Tommy has been reporting to me. Tommy says he is having to work late many nights just to catch up on his work because he is spending so much time teaching/showing Leroy how and what to do. Also, Tommy says he is spending too much time checking and correcting errors made in the field due to bad procedures. Again, Leroy told me in his interview that he was a better qualified candidate for the job because of his experience in Location Surveying AND because of the training that had been offered by the ALDOT. Leroy is not exhibiting the qualities that I expected from him because of his experience he talked about. I advised Leroy that the lack of knowledge pertaining to what is needed on a daily basis is a surprise to me after having interviewed him and having read his resume. I told him he needed to concentrate really hard on getting a better feel for what is required by asking questions and communicating closely with Tommy and the Data Editor. If he will do this, progress will not be hampered due to "floundering" caused by his ineptness.
Once again, I advise Leroy to take good notes and then hang on to them for reference.

Leroy shows a lack of management skills in that he cannot effectively supervise his subordinates. Leroy stated to Tommy that he was not getting as much work done as he could "…because his people didn't know what to do." I told Leroy that correcting this problem was his job. As a field supervisor, and according to his form 40, one of his tasks is to train subordinates so the surveys are done efficiently and accurately and without delay. I advised Leroy that he must separate himself from the "worker" mentality and become more aggressive in the supervision and training aspect of the job. If the subordinate doesn't know what to do, then he must show him. If the subordinate doesn't perform well or is "dragging around" then he must approach that individual and square him away. One of the subordinates even complained to Tommy that they couldn't get Leroy to explain things to them. That subordinate then would have to ask somebody else how to do a certain chore. I advised Leroy to be focused on his subordinates' weaknesses and do all that he can to teach them. The very least Leroy should do is make sure that he communicates clearly to them what it is he wants them to do at any given time. After a while, they too will be expected to catch on and do their work without specific and continuous directives when performing redundant tasks.

## Doesn't Follow Directives

This concerns me greatly. Tommy noted several directives that he had given Leroy at different times and that Leroy had ignored them or did not react to them. (see attachments). This is not acceptable. I informed Leroy that if Tommy gives a directive and it is not illegal or harmful, then he must do his best to do exactly what was told him. If he ignores or simply does not do what the supervisor asks or directs, then he actually is being insubordinate. I made sure Leroy understood that insubordination is one of those things that can cause termination on the FIRST offence. I asked Leroy if he would allow a subordinate to ignore or disobey a directive. He answered "No". He then seemed to understand that he should be then cooperative with Tommy and do as he directed EVERY time. I told Leroy that if he did not agree with the directive, not to ignore it, but go ahead and do it. THEN, while alone with Tommy, voice his suggestion that the task be done a different way. Tommy may not change his mind but then again, he might.

Example: Leroy said he did not hear one of the directives to meet at a motel on a particular morning (see attachment). Since ALL other crew members heard the directive, and even the man sitting beside Leroy heard the directive, it is a mystery to me how he did not hear it as well. It seems to me that Leroy simply wanted to do what HE wanted to do and ignored the directive. This is not acceptable. I advised Leroy that he must always be cooperative and do what he is told. Since he is the Field Supervisor, he must be the example for the rest. I also told Leroy that it is his responsibility to be informed EVERY day as to matters such as this. It is a shame that all subordinates reported as instructed and Leroy, the Field Supervisor, did not.

Tardiness

We discussed all FOUR times Leroy has been noted as arriving for work late by Tommy. Leroy did not deny that he was late but only that he was not as late as Tommy had noted. I advised Leroy that the amount of time he is late is not the issue but, rather, the fact that he was late is the issue. First, his being the second in charge of a crew as a supervisor demands that he set the example by NEVER being late and certainly not being late often. I made sure he understood that work rules are to be adhered to without question. Being tardy is not acceptable and will be dealt with swiftly if a pattern develops...which in Leroy's case, the pattern has developed. Secondly, since every crew works as a "unit", it is imperative that all members be at work on time or the whole crew suffers.

Since Leroy had been warned THREE previous times about tardiness infractions, Tommy gave a written reprimand the fourth time when Leroy arrived at the office late on Monday morning (see attached reprimand for details). However, because Leroy stated that the allotted drive time from Montgomery to Tuscaloosa is not a reasonable drive time, I have asked Tommy to withhold the reprimand UNTIL he personally makes the drive himself under the same conditions that Leroy made. Leroy says the drive takes 2 hours and 25 minutes if you drive the speed limit. The difference in the drive time allowed and what Leroy says it takes is roughly 25 minutes. The allotted time is two hours but Tommy tells me the crew is always there on Mondays around 6:40 to 6:50 a.m. If this is true, then according to Leroy, the crew has to be driving at a high rate of speed and this is not acceptable. If Tommy proves the drive to be less than two hours under the same conditions that Leroy describes, then the reprimand stands. If the drive is proven to take more than two hours, then I recommended to Tommy that he rescind the reprimand. HOWEVER, I advised Leroy that the first three warnings will remain on record and that the next infraction of tardiness WILL RESULT in a reprimand. He said he understood and seemed to have no problem with that approach.

What causes concern for me is that this "two hour" drive time has been in place for MORE than a year now and was put in place by the previous Party Chief, Joe King. Not one time has any individual in that crew ever mentioned that the drive time was not long enough. We will assess this carefully as Leroy's career could be adversely affected if the two-hour drive time is accurate. A reprimand is not given lightly because it is such a negative on one's grade sheet. An addendum will be inserted below on the results of the drive/test that Tommy has been instructed to do.

Within this entire subject is an included fact that Leroy was driving his personal vehicle those times he was late. I made sure he understood that if he chooses to drive his private vehicle (we furnish transportation in the Carryall), then he is obligated to arrive at the allotted time and for sure BEFORE the carryall. He said he understood. I also advised him that this privilege of driving his private vehicle could be revoked if he persisted in being late while driving his own vehicle. By his traveling in the Carryall, we can assure that he will arrive on time and his problem will be should be solved.

I warned Leroy that arriving at the parking lot on Mondays at 5:00 a.m. is mandatory and is not debatable. If a person arrives later than 5:00 a.m., then he is late. If the time for arrival at the Field Office is set at 7:00 a.m. by the Party Chief, and it is an accurate allotment, then if one arrives AFTER 7:00 a.m., he is late. Those are the rules and they are not up for question. He said he understood.

SUMMARY:

After having talked with Leroy as summarized above, I feel confident he now understands that Tommy and I are concerned about his lack of performance and his weaknesses in certain areas. One of the main things that I repeatedly suggested that he do concerning retaining training that Tommy provides, is to take good notes and refer back to them as needed. I feel confident that he now understands fully what is expected and how he needs to go about improving. I assured him that Tommy will be right there to help him with areas where he is weak. However, Leroy now understands that he is ultimately responsible for his performance, for his retention of knowledge. He is ultimately responsible for doing his best to at least meet standards required to earn the right to become a permanent employee in the Transportation Technologist classification at the end of the six month probationary period. I told Leroy that his "mid appraisal" (three months) was approaching in about a month and that we would reassess at that time. I told him that we would be meeting often if Tommy did not report vast improvements in all areas. He said he understood. I assured Leroy that it is our desire to see him improve and we will try our best to help him do that.

NOTE: As noted above, I am recommending to Tommy to delay submitting the written reprimand pertaining to tardiness until he makes the drive directly from Montgomery to Tuscaloosa. He is to leave at 5:00 a.m. sharp and be very conscious to drive the speed limit at all times and note the time it takes to make the trip. If the time is more than the allotted two hours, then the reprimand will be rescinded. If the drive proves to fall within the two hours, then the reprimand will become an official disciplinary action on Leroy Williams. Leroy had been explained this during the counseling session and he agreed to this approach.

_____

Joe E. Jones, Asst. Location Engineer, Field

Witness:

Thomas L. Lewis, Party Chief

Cc:        Mr. Don Arkle
           Mr. William Adams
           Mr. Thomas Lewis



**ALABAMA DEPARTMENT OF TRANSPORTATION**
*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
Phone: 334-242-6178    FAX: 334-269-0826



*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

August, 11 2005

<div style="border:1px solid">

**ATTACHMENT
E**

</div>

## MEMORANDUM

To: Leroy Williams
    Transportation Technician
    Field Supervisor

From: Thomas W. Lewis
    Transportation Technician
    Chief of Party

RE: Reprimand for Insubordination

Mr. Williams, on Thursday morning August 11th 2005, I was reviewing the work the crew had done in the field on Wednesday August 10th 2005. I was very concerned when I found so little progress had been made in the field that day. As you know, this project is a high priority job and its deadline is fast approaching. The completion of this project, on time, is a must and we must do what we can to prevent any unnecessary delays.

While in the process of reviewing the raw data file, I found that it was 9:19 a.m. before the first setup was made that morning. I also found that only three cross sections were taken from 9:19 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) The file shows that only 1 hour 45 minutes was spent collecting field data from 7:00 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) I decided to take a look at the area in question again to see if I could determine the cause of the delay. I was very concerned with what I found. The area in question had break lines that had not been shot and large areas that were not covered densely enough to correctly show the contours. This is when I came to you to discuss this matter. I called you aside to show you the break lines that

1

needed to be shot. .. Walked you around the ridge and . .owed you the toes
that need to be shot. I explained that as an alternative of working off the
centerline points, you could have set one remote to cover the majority of the
area in question, saving valuable time.

I also talked to you about time management. I explained that if you stop at a
store on the way out to the job site, you just took your morning break. I
asked you about your lunch hour. You explained that your lunch hour began
when you got to the truck and ended when you got back out of the truck. I
then explained that this was not correct. Lunch started when you finished in
the field. The walk out of the woods was part of your lunch hour. At this
point you began to question my interpretation of the lunch hour. I explained
that this was set down by the department, not me. You then began to become
argumentative. You told me I was just being picky and I was just looking for
something to harass you about. You then told me if I didn't have anything
else to say you were going back to work. You turned and started to walk
away. I told you not to walk away that I was not finished. You then told me
"if you are going to talk to me I'm going to sit down and then you can talk."
I started to explain that the progress made on Wednesday was unacceptable.
Then you jumped up and started saying I was harassing you and not letting
you do your job and you were going to have to talk to someone about it. You
told me you were working hard and doing a good job. You also told me you
could not work like this. You again started to walk away I told you "Leroy,
if you walk away I am going to write you up for insubordination. Do you
understand?" But you walked away with out me having the opportunity to
explain why it was unacceptable.

It is very discouraging to see a supervisor on probation have so little respect
for his supervisor, that he walk away when there is clear concern about the
progress of the project. The loss of any time on this project is detrimental to
the deadline being met. I have tried to impress the importance of time
management and accuracy on this project. I have spent time with you trying
to share my experience and knowledge with little results. I have explained
rules that you question. I have spent time in the field with you trying to show
you the most efficient way to produce highly accurate maps. But, the
product you turn in on a daily basis consistently has errors, and is lacking in
quantity.

The only reason I can find for this is, mismanagement of your time, and
inability to lead your people properly. This does not only affect you, but it
reflects upon the entire crew. Your work performance does not reflect the

2

experience that you \_ave indicated or the experience y \_ suggest you have acquired while working with other crews in the Location Section.

Mr. Williams, it is with regret that it has come down to reprimanding you for insubordination, but you walking away from me or any other supervisor when there are such critical issues to confront and discuss is unacceptable and will not be tolerated. This being the second reprimand in the past month along with you still on probation is very disturbing. It shows a pattern of disregard for your job. As a supervisor, it is your job to set an example for your subordinates; this is not setting a good example. You have to realize this will not be allowed to continue.

In this situation I am at a loss at what punishment to suggest. The severity of your actions could have more than one form of punishment. You could receive this letter of reprimand; receive the letter of reprimand plus a suspension, demotion, or dismissal, on the first offence of insubordination.

At the least, this letter will go into your personnel records and an additional 7 points will be subtracted from your next performance appraisal. I would like to suggest at the least, a suspension be imposed, but I would like my supervisor to review this matter and ask him for a recommendation. Again, I regret having to reprimand any employee, but your actions as a supervisor, warrant strong disciplinary action.


*Thomas W Lewis*
Thomas W. Lewis
Transportation Technician
Chief of Party


Cc: William Adams
    Joe E. Jones
    Location file

3



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone:* 334-242-6311    *FAX:* 334-262-8041



*Bob Riley*
*Governor*

*J.D. McInnes*
*Transportation Director*

August 4, 2005

**ATTACHMENT F**

## MEMORANDUM

To:        Leroy Williams
           Field Supervisor

From:      Joe E. Jones,
           Asst. Location Engineer, Field

Re:        Drive Time from Montgomery Office to Lewis Crew Tuscaloosa Field Office

Purpose:   Verify drive time related to Leroy Williams Written Reprimand

In my counseling session with you dated July 28, 2005, I discussed with you the written reprimand given you by Mr. Thomas Lewis, Party Chief. Mr. Lewis, your immediate supervisor had instigated the reprimand due to excessive tardiness. The fourth tardy involved you arriving late on a Monday morning after driving from Montgomery to Tuscaloosa. You stated that it took 2 hours and 25 minutes to make the drive which would make the reporting time 7:25 a.m. I directed Mr. Lewis to make this drive himself, under the same conditions you described (time and speed limit) and report back to me. If the drive proved to be more than the allotted 2 hours, I would instruct Mr. Lewis to rescind the reprimand. However, if the drive proved to be within the allotted 2 hours, the reprimand would stand. Below is the result of the drive made by Mr. Lewis:

On August 2, 2005, Tommy drove from the Montgomery office to his Tuscaloosa office. He left promptly at 5:00 a.m. and was consciously driving the posted speed limit on the different roads along the route. Tommy noted his trip as follows:

"I left Montgomery this morning at 5:00 a.m. stopped one time at the rest area for about 5 minutes and arrived here at the office in Tuscaloosa at 6:55 a.m. This was driving the speed limit all the way. I set the cruse at 55 mph when I got just north of Prattville and when I hit the 4 lane in Centerville I set it at 65 mph. The total distance is 106.5 miles form Office to Office. This is an average speed of 55.55 mph. In no way did I exceed the speed limit."

Based on this driving time test and his report, I am now advising Mr. Lewis to proceed with the written reprimand by submitting it as an official disciplinary action on tardiness. You have already been counseled by Mr. Lewis on this matter and advised of the charge. I have advised you, as noted in my counseling report, about the consequences of being tardy and went over the rules pertaining to the matter. I also advised you that this would affect your grade sheet because it would cause a seven point deduction in your upcoming grade on your Employee Performance Appraisal.

Cc:    Mr. Don Arkle
       Mr. William Adams
       Mr. Thomas Lewis



DEFENDANT'S
EXHIBIT
2



# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone:* 334-242-6311     *FAX:* 334-262-8041



Bob Riley
Governor

*Joe McInnes*
*Transportation Director*

August 22, 2005

<u>MEMORANDUM</u>

TO:     Mr. Ron Green
        ALDOT Personnel Director

FROM:   Don T. Arkle
        Design Bureau Chief

RE:     Probationary Employee
        Leroy Williams, Transp. Tech.
        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

This is a request to terminate a probationary employee's appointment. Mr. Leroy Williams was appointed to the classification of Transportation Technologist on May 14, 2005. Since that time he has been reprimanded for excessive tardiness and insubordination. The attached documentation explains in great detail the events that led up to this request.

It would be appreciated if this action can be taken as quickly as possible and Mr. Williams returned to his previous Engineering Assistant II/III classification.

If you have questions or need additional information, please let me know.

DTA/cj

DEFENDANT'S
EXHIBIT

3





## ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

September 1, 2005

Mr. Leroy Williams
Alabama Department of Transportation
Design Bureau
1409 Coliseum Blvd.
Montgomery, AL  36110

Re:  Transportation Technologist Appointment

Dear Mr. Williams:

This is to inform you that your appointment in the Transportation Technologist classification that was effective May 14, 2005, has been terminated as of September 3, 2005. You will revert back to your Engineering Assistant II/III position in the Roadway Design Section of the Design Bureau and should report to Adenrele Odutola at 8 a.m. on Tuesday, September 6, 2005.  Your salary will also be reduced to the rate you were making at the time of the appointment ($966.20 plus the 6% cost of living increase).

This action is being taken because of your continual excessive tardiness and repeated insubordination. You were given numerous warnings and two written reprimands all with no noted improvement in your behavior.

As you know, any new appointment carries a six-month probationary period before it becomes permanent. At this time you are just over three months into that test period. For the above reasons it has been determined that you have not satisfactorily performed and/or responded to our efforts to correct your behavior. Therefore, this appointment should be terminated at this point.

We regret that this action is necessary, but trust that you will use it for the betterment of your career.

Sincerely,

Don T. Arkle
Design Bureau Chief

DTA
cc:  Mr. William Adams
    Mr. Joe Jones
    Mr. Ron Green
    State Personnel

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **LEROY WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:06-cv-658-ID** |
| | ) | |
| **STATE OF ALABAMA DEPARTMENT** | ) | |
| **OF TRANSPORTATION and JOE** | ) | |
| **McINNES, in his official capacity** | ) | |
| **as Director of the State of Alabama** | ) | |
| **Department of Transportation** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF WILLIAM F. ADAMS

Before me, the undersigned notary public in and for the State of Alabama at Large, this day personally appeared William F. Adams, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is William F. Adams, I am a resident citizen of the State of Alabama and am over the age of nineteen (19) years.

I am presently an employee of the Alabama Department of Transportation (ALDOT) and was so employed at all times relevant to this lawsuit. At times relevant to this lawsuit I was assigned to the Design Bureau as the Location Engineer.

On, to-wit, August 15, 2005, I received a memorandum from Assistant Location Engineer Joe E. Jones concerning probationary employee Leroy Williams. The memorandum from Mr. Jones cited a number of issues concerning Mr. Williams' performance during the probationary period, including tardiness, lack of knowledge of job skills, poor time management, failure to follow rules, and insubordination toward his supervisor. Mr. Jones recommended that Mr.

Williams' not be allowed to continue in the Transportation Technologist classification. See Exhibit 1.

I reviewed Mr. Jones' memorandum and attachments and was of the opinion that, based upon Mr. Williams' poor performance and conduct during the first three months' of his probationary period, his probationary period as Transportation Technologist should be terminated and that he should be reassigned to his former classification of Engineering Assistant II/III (EAII/III)  in the Design Section.

On August 19, 2005 I sent a memorandum to Don T. Arkle, Design Bureau Chief, in which I recommended that Mr. Williams' probation be ended and that he be reassigned to his former classification as EA II/III.  Mr. Arkle concurred with my recommendation as evidenced by his signature on the memorandum dated August 19, 2005. See Exhibit 2.

It is my understanding that Mr. Williams complains that he was retaliated against for having filed a grievance complaining about having been discriminated against by his supervisor during the probationary period. . I have no knowledge of any grievance filed by Mr. Williams concerning this matter.

FURTHER THE AFFIANT SAITH NOT.

I signed this affidavit on ___3/19___, 2007 in Montgomery, Alabama.

_____
William F. Adams

SWORN TO AND SUBSCRIBED before me on this __19th__ day of __March__ 2007.

_____
Notary Public, State at Large

My Commission Expires:__2|1|08__

2





# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

Telephone: 334-242-6311     FAX: 334-262-8041

*J.D. McInnes*
*Transportation Director*



*Bob Riley*
*Governor*

August 15, 2005

## MEMORANDUM

To:     William F. Adams, Location Engineer

From:   Joe E. Jones
        Asst. Location Engineer, Field

Re:     Recommendation of Discipline

        Leroy Williams, Transportation Technologist (Probationary Employee)
        Field Supervisor
        SECOND REPRIMAND by SUPERVISOR
        Charge: Insubordination

On August 11, 2005, Leroy Williams and Thomas Lewis met with me in my office to discuss the above referenced. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Tommy had called me from the field on the morning of August 11, 2005 to inform me that he was about to charge Leroy with insubordination. He briefly explained the situation to me. I then instructed him to bring Leroy with him and meet with me at 3:00 p.m.

Please see the attached written reprimand for details that led up to this disciplinary action. Generally, the insubordination charge was made because Leroy angrily walked off from Tommy during a meeting where Tommy was counseling/instructing Leroy on work matters. Tommy warned Leroy twice not to walk away and even warned him the second time that if he did, he would be charged with insubordination. Leroy walked away anyway.

During the meeting in my office, Leroy confirmed that he did walk away. However, Leroy said he did so only because Tommy was being demeaning and "talking down to him". Tommy denies this. I advised Leroy that a subordinate never terminates a meeting that a supervisor has called or disregards a directive unless it is unlawful or is dangerous. I also advised him that he should have finished listening to the supervisor, done what he asked, and then file a report/complaint as to the demeaning treatment that he said he received. I advised him that the reaction from him was unacceptable and shows a blatant disregard for the supervisor's authority to the point of insubordination.

At one point in our meeting, Leroy said that Tommy is "constantly" harassing him and "will not let him do his job". According to Tommy, he has never harassed Leroy but has indeed corrected him, trained him, and advised him of the rules and how they are to be followed. Tommy says that Leroy is defensive and has become more and more argumentative when he tries to instruct/train him. Tommy said that Leroy has threatened to "get a lawyer" during one of their sessions.

When I asked Leroy if he was accurate when he said, " Tommy constantly harasses and demeans me ALL the time", he said he was accurate. Leroy even said that ALL of the crew members had asked him, "…why does Tommy harass you like this ALL the time?" I asked Leroy was he sure that ALL members had asked him this and he said yes. I instructed Tommy to have a meeting with his crew as soon as possible and see if this accusation was accurate. Tommy said he would and would make a full report. On this date, Tommy had that meeting, with Leroy present, and has advised me that NONE of the personnel confirmed they had ever witnessed his harassing or demeaning Leroy. Please see the attached report on the meeting.

According to Tommy, Leroy is not handling the responsibilities of Field Supervisor well at all (see counseling session on July 28, 2005). This includes things like: he is not knowledgeable enough to handle the technical issues; not doing well at supervising his personnel; not managing time well; not following established rules concerning tardiness and lunch/break times; not retaining instructions/knowledge that Tommy is offering him. As a result, he reports that progress is being severely hampered. Tommy reports that the field operations are severely lacking in production and that even the minimal data being collected is often faulty because Leroy is not following procedures laid down by Tommy. In addition, field operations are lagging because Leroy is not managing time well at all.

For example, Tommy said that on August 11 one of the things (just prior to the insubordination) he was attempting to counsel Leroy on was his use of work time and making sure that the work effort was being maximized. Tommy said Leroy was defensive and said he was working hard. Tommy was trying to relate some times that were recorded in the Total Station that showed the work history on certain dates. Leroy stated that he didn't know what the clock on the instrument showed but that he was getting to work in the field in a timely manner. However, Tommy has presented documents (see attached) that show a history of the FIRST "setup" recorded in the instrument for several days. Those times are compared to another crew which is working out of the same office, doing similar work on the same project within a ¼ mile of each other. The document shows that the other crew consistently had a recorded setup time of roughly an hour BEFORE Leroy's crew did each morning. The document seems to exhibit a pattern of Leroy NOT getting to the job site in a timely manner. Tommy advised me that Leroy doesn't agree with the exhibit. Tommy has assured me that he checked the clock on the instrument and it is accurate.

Summary:

Leroy is a probationary employee in the classification of Transportation Technologist and is performing that probationary period in the job title of Field Supervisor, He is roughly at the three-month point in the period. Leroy has several years experience in Location Surveying, including experience as a Data Editor within a crew. Because of this experience and the training/classes Leroy has taken advantage of, I expected him to be a much more effective Field Supervisor. This is not proving to be the case. Tommy is a Party Chief with many, many years of Location Surveying experience. I have confidence in his knowledge and skills in Location Surveying because he was a successful Field Supervisor for all those years. Based on those years of experience, Tommy is attempting to help Leroy develop good technical skills along with good procedures to maximize efforts in the field. In essence, here is a successful and experienced supervisor attempting to train, advise, and counsel a subordinate who is a probationary employee in training. At the same time, he is attempting to cause Leroy to focus more on the responsibility of setting a good example for HIS subordinates by following all rules and regulations.

Leroy was not expected to "be up and running" since he is in a probationary period. However, he was expected to perform well in the technical areas and expected to stay open to critique and instruction by the Party Chief in those areas where he is weakest. Once he receives this critique/instruction, I would expect him to note it and react to it by conforming and by following those instructions. It seems, though, that Leroy takes offence to Tommy's critique and to his tutoring. It is apparent that Leroy interprets this as harassment. It seems to me that Leroy should concentrate more on being more receptive to learning all he can from Tommy's vast experience as a Location Surveyor (including all aspects of the job), as a long time Field Supervisor, and now as a Party Chief. Being argumentative and defensive when his supervisor is trying to counsel and train him is counterproductive and uncalled for. For some reason, Leroy seems to think that Tommy is being harassing when, according to Tommy, he is only trying to help Leroy learn how

to do the job in an accurate and timely manner with minimal effort. This seems like a reasonable approach to me.

Leroy has broken the rules pertaining to tardiness for which he received a written reprimand. Now, he has received a written reprimand for insubordination: all within the first three months of his probationary period. It seems that Leroy is resisting all supervision by Tommy and is ignoring the rules in place for things such as those for tardiness and other rules. According to Tommy, Leroy even was argumentative about the lunch hour and how it is to be handled. All of this is unacceptable for ANY employee of any job title but is surely not acceptable from a supervisor who needs to be setting the example for his subordinates. All other personnel are held to the same standards of following rules and for being cooperative. I see no reason for Leroy to be the exception. The rules and regulations set forth by State Personnel, ALDOT, and the Location Section seem to be fair to me. I don't consider the rules unreasonable and see no reason any employee would have trouble following them.

It is now my conclusion that Leroy has not represented himself well in his job title of Field Supervisor. However, his performance is fairly secondary to his seemingly hostile attitude of assuming a supervisor is being harassing when they are giving instructions and directives. Usually, this type attitude might be expected from a new employee who is making an adjustment to our rules and regulations and to our work habits at the ALDOT. Leroy, however, has worked several years in our survey crews and should be well aware of our rules and regulations. To be argumentative and insubordinate to his supervisor is just not acceptable. This attitude along with his weak job performance is, according to Tommy, causing a serious lack of progress on a job that has a very important timeline to be met. The evidence attached concerning the "late morning" setups recorded in the instrument and then the unsatisfactory response to Tommy's instructions seem to bear Tommy's feelings out. The reprimands for tardiness and for insubordination seem to make a case that this employee is not meeting standards at this point.

Tommy says in his written reprimand that he is not sure how severe the punishment should be. However, he says that he would recommend at least a suspension. I concur in that a suspension should be the minimum disciplinary result. I would suggest, however, that serious consideration be given to other choices. Since Leroy is a probationary employee and is being judged on his job performance, on his abilities to follow directives, and on his sense of cooperation, his successes and failures are magnified even more. It is during this time that the Department is depending on supervisors to judge whether or not a probationary employee meets or does not meet standards. It is then the supervisor(s) who should make a judgment based on good information and evidence, and then present a recommendation that is beneficial and reasonable to the Department.

Thus, it is my recommendation that Leroy not be allowed to continue in the Transportation Technologist classification. The reports given to me by his supervisor, Tommy Lewis, show that he is proving less than desirable as a Field Supervisor for which he was hired. If Leroy is unwilling to react positively to discipline, training, corrective counseling, or warnings, then his tenure in this probationary period should be stopped now.



**ALABAMA DEPARTMENT OF TRANSPORTATION**
Design Bureau
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
Phone: 334-242-6178      FAX: 334-269-0826



*Joe McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

August, 11 2005

**ATTACHMENT A**



## MEMORANDUM

To: Leroy Williams
      Transportation Technician
      Field Supervisor

From: Thomas W. Lewis
      Transportation Technician
      Chief of Party

RE: Reprimand for Insubordination

Mr. Williams, on Thursday morning August 11th 2005, I was reviewing the work the crew had done in the field on Wednesday August 10th 2005. I was very concerned when I found so little progress had been made in the field that day. As you know, this project is a high priority job and its deadline is fast approaching. The completion of this project, on time, is a must and we must do what we can to prevent any unnecessary delays.

While in the process of reviewing the raw data file, I found that it was 9:19 a.m. before the first setup was made that morning. I also found that only three cross sections were taken from 9:19 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) The file shows that only 1 hour 45 minutes was spent collecting field data from 7:00 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) I decided to take a look at the area in question again to see if I could determine the cause of the delay. I was very concerned with what I found. The area in question had break lines that had not been shot and large areas that were not covered densely enough to correctly show the contours. This is when I came to you to discuss this matter. I called you aside to show you the break lines that

1

needed to be shot. ⸳ walked you around the ridge and . owed you the toes that need to be shot. I explained that as an alternative of working off the centerline points, you could have set one remote to cover the majority of the area in question, saving valuable time.

I also talked to you about time management. I explained that if you stop at a store on the way out to the job site, you just took your morning break. I asked you about your lunch hour. You explained that your lunch hour began when you got to the truck and ended when you got back out of the truck. I then explained that this was not correct. Lunch started when you finished in the field. The walk out of the woods was part of your lunch hour. At this point you began to question my interpretation of the lunch hour. I explained that this was set down by the department, not me. You then began to become argumentative. You told me I was just being picky and I was just looking for something to harass you about. You then told me if I didn't have anything else to say you were going back to work. You turned and started to walk away. I told you not to walk away that I was not finished. You then told me "if you are going to talk to me I'm going to sit down and then you can talk." I started to explain that the progress made on Wednesday was unacceptable. Then you jumped up and started saying I was harassing you and not letting you do your job and you were going to have to talk to someone about it. You told me you were working hard and doing a good job. You also told me you could not work like this. You again started to walk away I told you "Leroy, if you walk away I am going to write you up for insubordination. Do you understand?" But you walked away with out me having the opportunity to explain why it was unacceptable.

It is very discouraging to see a supervisor on probation have so little respect for his supervisor, that he walk away when there is clear concern about the progress of the project. The loss of any time on this project is detrimental to the deadline being met. I have tried to impress the importance of time management and accuracy on this project. I have spent time with you trying to share my experience and knowledge with little results. I have explained rules that you question. I have spent time in the field with you trying to show you the most efficient way to produce highly accurate maps. But, the product you turn in on a daily basis consistently has errors, and is lacking in quantity.

The only reason I can find for this is, mismanagement of your time, and inability to lead your people properly. This does not only affect you, but it reflects upon the entire crew. Your work performance does not reflect the

2

experience that you  .ve indicated or the experience y   i suggest you have acquired while working with other crews in the Location Section.

Mr. Williams, it is with regret that it has come down to reprimanding you for insubordination, but you walking away from me or any other supervisor when there are such critical issues to confront and discuss is unacceptable and will not be tolerated. This being the second reprimand in the past month along with you still on probation is very disturbing. It shows a pattern of disregard for your job. As a supervisor, it is your job to set an example for your subordinates; this is not setting a good example. You have to realize this will not be allowed to continue.

In this situation I am at a loss at what punishment to suggest. The severity of your actions could have more than one form of punishment. You could receive this letter of reprimand; receive the letter of reprimand plus a suspension, demotion, or dismissal, on the first offence of insubordination.

At the least, this letter will go into your personnel records and an additional 7 points will be subtracted from your next performance appraisal.  I would like to suggest at the least, a suspension be imposed, but I would like my supervisor to review this matter and ask him for a recommendation. Again, I regret having to reprimand any employee, but your actions as a supervisor, warrant strong disciplinary action.


*Thomas W. Lewis*

Thomas W. Lewis
Transportation Technician
Chief of Party


Cc: William Adams
    Joe E. Jones
    Location file

3



**ALABAMA DEPARTMENT OF TRANSPORTATION** ATTACHMENT
1409 Coliseum Boulevard, Montgomery, Alabama 36110          **B**
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311      FAX: 334-262-8041*

*J.D. McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

August 4, 2005

## MEMORANDUM

| | |
|---|---|
| To: | Leroy Williams<br>Field Supervisor |
| From: | Joe E. Jones,<br>Asst. Location Engineer, Field |
| Re: | Drive Time from Montgomery Office to Lewis Crew Tuscaloosa Field Office |
| Purpose: | Verify drive time related to Leroy Williams Written Reprimand |

In my counseling session with you dated July 28, 2005, I discussed with you the written reprimand given you by Mr. Thomas Lewis, Party Chief. Mr. Lewis, your immediate supervisor had instigated the reprimand due to excessive tardiness. The fourth tardy involved you arriving late on a Monday morning after driving from Montgomery to Tuscaloosa. You stated that it took 2 hours and 25 minutes to make the drive which would make the reporting time 7:25 a.m. I directed Mr. Lewis to make this drive himself, under the same conditions you described (time and speed limit) and report back to me. If the drive proved to be more than the allotted 2 hours, I would instruct Mr. Lewis to rescind the reprimand. However, if the drive proved to be within the allotted 2 hours, the reprimand would stand. Below is the result of the drive made by Mr. Lewis:

On August 2, 2005, Tommy drove from the Montgomery office to his Tuscaloosa office. He left promptly at 5:00 a.m. and was consciously driving the posted speed limit on the different roads along the route. Tommy noted his trip as follows:

"I left Montgomery this morning at 5:00 a.m. stopped one time at the rest area for about 5 minutes and arrived here at the office in Tuscaloosa at 6:55 a.m. This was driving the speed limit all the way. I set the cruse at 55 mph when I got just north of Prattville and when I hit the 4 lane in Centerville I set it at 65 mph. The total distance is 106.5 miles form Office to Office. This is an average speed of 55.55 mph. In no way did I exceed the speed limit."

Based on this driving time test and his report, I am now advising Mr. Lewis to proceed with the written reprimand by submitting it as an official disciplinary action on tardiness. You have already been counseled by Mr. Lewis on this matter and advised of the charge. I have advised you, as noted in my counseling report, about the consequences of being tardy and went over the rules pertaining to the matter. I also advised you that this would affect your grade sheet because it would cause a seven point deduction in your upcoming grade on your Employee Performance Appraisal.

| | |
|---|---|
| Cc: | Mr. Don Arkle<br>Mr. William Adams<br>Mr. Thomas Lewis |



Written by WD

Mr. Leroy Williams
Work Performance
Counseling Session
July 28, 2005

**ATTACHMENT C**

A.  _Not Following directions_

1  May 16th, 2005, the first day you reported to this office we all sat down and discussed that you, as a supervisor, do not have the authority to let people off with out my approval. We also discussed work times, and the importance of not being late.

  a. Work Times
      1. On May 16th, we discussed what the work times were:
         5:00 a.m. to 5:00 p.m. Monday
         7:00 a.m. to 5:00 p.m. Tuesday and Wednesday
         7:00 a.m. to 7:00 p.m. Thursday.

  b. May 24th I took you out and showed you the new project and what work we need to do, I explained when working around the Interchanges you should not set radial points with out checking them for accuracy. When we started checking our files an err was found. After going back checking I realized that you had set radial points to work off of. I told you go run a closure loop on the points, not once but twice before you did it the way I had told you to

  c. Tuesday, May 31st you came into the parking lot in Montgomery 5 minutes late. On this same date, I instructed you to meet with me in the parking lot of the motel at 7 a.m.

  d. Wednesday, June 1st you were not at the motel parking lot, where I had instructed you to be the day before. You took this upon yourself not to follow my instructions and you did not notify me of this. You informed Rodney instead of your supervisor. I do not know where you were, so as far as I'm concerned you were late that day also.

  e. Thursday, ~~July 28,~~ you let everyone go at 1:00 p.m. with out my approval, then you told me you let them go at 2:00 p.m. This is insubordination.
     June 30

*written by*
*T. Lewis*

B.  *Checking you work*

I have told you time and time again time again about checking your field work. It's the only way you can be efficient. All of this could still fall under not following directives

1  On May 17th, I found out you had had a problem the day before. I told you needed to be checking your work to keep things like that from happening.

2.  June 15th, I had to tell you to check your work again to see if you had the sufficient information that was needed to cover the area in question.. I explained to you that all you had to do was load the information that you had gathered and see if it covered the area properly.

3.  July 19th, once again I had to tell you to check your work after running some 3,000 ft of traverse without checking a previously established point. I explained that all you have to do is load one of the previously established coordinates and stake it out to find a point and see how much you have missed it. I have provided you with a laptop to keep in the truck to do this with. You have the files on the computer with this information. This is a tool that you need to use. Even as I was telling you this, you were telling me the information you were gathering was good " it looks good when I downloaded it. It must be good. After I made you go back and check the traverse what did you find? You found you had over a 1 foot err. Now you have spent almost 2 days trying to find the err. This is time wasted.

C.  *Working Skills*

g. Computer Skills

1.  May 16th, the day that you first started on this job, I asked you what kind of experience you had with the computer. You stated that you had been a data editor and you knew a good bit about terra model.

2.  July 6th, I had to give you a lesson on how to draw a line in  terra Model and how to draw points by station offset. I have also had to show you how to load image files into model. These are basic skills in model that one of your standing should already know.

3.  Monday, July 18th I had to show you how to write out a points file in a station offset format, but yet you told me that you were a data editor and you knew a good bit about the program.

4.  July 27th, I had to explain how to draw an alignment up on the computer. This is the same thing I had to show you back on July 6th. How to draw a line. The problem I saw on this day was. You had the information to draw the alignment with, but you did not know how to retrieve the information. The Terramodel file you

*written*
*T. Lewis*

had open had a layer *Isolated* hiding all other layers with the information you were looking for. Evening after working with this file many times you did not recognize the information you had worked with in the past was not showing up.

h. Math skills
   1. On June 2nd, I had to show you how to add and subtract angles. I also had to show you how to convert a bearing to an azimuth. I actually had to draw you a diagram to show you how to do this.

i. Managing you workers
   1. You have come to me and said the reason you don't get as much work done as I think you should is because of the people you supervise. You say that they don't know what to do. You said to me that the men should know they need to cut the stub down low, so you think you don't have to tell them to do this. I tell you its not that they don't know this, it's that they are not going to do it unless you tell them to. It is easier to cut them up high. If you can't the worker's that you supervise to get the job done, then you are not doing your job as a supervisor. You can't take this personally it's a job and it has to be done correctly. It is your job to tell them to cut the stub down low. Don't assume that they should already know to do this. At some point you have to let these people know you mean business.

j. Training your workers
   1. I have been confronted by one of your subordinates that they can't go to you and ask how to do something. They say that you want take the time to explain it to them where they can understand it. Now this employee has to go to some one else to learn the task. There again training employees is a skill you have to have in order to be a supervisor.

I. Prejudges
   a. Accusing me of being prejudges will not be tolerated.
   b. Nothing I have said to you has been in a prejudice manner.
   c. We all must learn to communicate in a professional manner and that is the way I was speaking to you.
   e. When you are a supervisor, you must learn how to speak to your employees and your employers, especially those that are over you. You are to treat your superiors just as what they are, supervisor.

*written by T. Lee*

    f.  Telling me the reason we are in a racial lawsuit is because we did not
train employees is not an appropriate way to talk to your superior and it
will not be tolerated.

II.    Transfers

    a.  There will be no transfers from the crew you are with now, at least not
for the reason that you gave me earlier,

    b.  Just because you think I'm being too hard on you is not reason enough
to be asking for a transfer.

Summary

It has become an every day thing. I have to show you how to do some miner task in
Terramoldel, how to run a closure loop, how to set up files to work with. I am spending
so much time trying to train you to do you job, I have to work late just to complete my
work. I could understand spending this much time training a new Supervisor that had no
experience in surveying. But you have been exposed to so much information in the past
working with the Location Section along with the other Sections. I can not understand
why you have not learned these skills in the past.

    In the interview with Mr. Jones, you told him you had the skills to be a supervisor.
When you came out to the field you told me you had the skills to be a supervisor. Now,
you are being held responsible for your work as a supervisor and you want to tell me you
were not trained in the skills you need to be a supervisor. I know the people you worked
under as a rodman, instrument operator, and data editor. I don't think it was that you
weren't taught these skills, and I don't think you took it upon yourself to learn the skills
that you were exposed to. In the event of this, now you are blaming every one else for
your lack of skills. That to me, is not an excuse. If you want to continue being a
supervisor you must improve you skill. There is a big gap between where you are now
and where you need to be between now and the end of your probation. If you don't
improve as much as need to your probation could be extended or you could be released. I
want you to understand this is a serious matter and one you need to work hard on. I will
work with you as much as I can to help you improve your skills but in the end it's up to
you to learn and show me you can be a supervisor.



# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone:  334-242-6311      FAX:  334-262-8041*



*J.D. McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

July 28, 2005

## MEMORANDUM

<div style="border:1px solid;">
**ATTACHMENT
D**
</div>

Counseling Session

Leroy Williams, Transportation Technologist
Field Supervisor

Re:    Probationary Performance Concerns

On this date, a counseling session was held with Leroy Williams, referenced above. Also present was Mr. Thomas Lewis, Party Chief, who is Leroy's immediate supervisor. My concerns involved several areas that were well documented by Mr. Lewis (see attached). I felt it necessary to immediately discuss those concerns with Leroy so that he could concentrate on improving in those areas. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Leroy was promoted to Transportation Tech as a Field Supervisor and reported to Tommy on May 16, 2005. Leroy is presently being assessed during his six month probationary period and is now at his second month in the classification/job. Tommy has been keeping me informed on Leroy's progress or lack thereof. After two months, it has become obvious to me that Leroy is lacking in many areas as a Field Supervisor and this has me concerned. The following is a summation of the meeting and of the notes used for the session:

### Working Skills

Leroy shows a definite weakness in math skills as related to surveying.  For example, he was unable to calculate angles, azimuths until Tommy showed him how.  Leroy told me he now knows how and can do them easily. My concern is that he writes all these things down as he is taught because he may forget. Since he has had high school geometry, three courses in geometry through the ALDOT, one course in trigonometry through the ALDOT, and several years in Location Surveying, I would have assumed that he would have garnered these skills necessary to do the job. I advised Leroy that he had to concentrate on improving these skills and that he should ask Tommy for hands on training. I also advised Leroy to take good notes and KEEP them to refer to so that he is not susceptible to losing the skill through a lack of good memory.  We cannot have a crew standing around for an extended time because Leroy is spending too much time doing a calculation or is wasting time because Leroy doesn't know how to do a needed calculation.

He shows a lack of skills concerning checking his work in the field to ensure accuracy.  Tommy had to instruct him several times about this and even to the point of demanding that he do the "checks".  Leroy had been argumentative with Tommy concerning this directive which is unacceptable. There have been errors made that have caused a waste of time already because Leroy did not do as he was told. This is a common knowledge skill that Leroy should have learned through the years he has worked in a crew.  I advised Leroy that he is being held responsible for doing the work accurately and timely….and for sure, to check his work if for no other reason than his supervisor told him to. I advised him to glean knowledge and

direction from Tommy on all work because Tommy has many years of experience as a Field Supervisor and is one who has a vast knowledge of Location Surveying procedures.

He shows a severe lack of skills in working with Terramodel. Even though this is not a highly required skill to be a good Field Supervisor, it is desirable. Since Leroy had been a Data Editor for over a year, I would have assumed that he had a pretty good working knowledge of Terramodel and could build basic alignments and/or retrieve data as needed. According to Tommy, this is not the case. Leroy had advised Tommy on his first day that he knew Terramodel and had a good understanding. Leroy noted on his resume and his application that he worked in the Data Editor job for a good while. I have advised Leroy to ask either Tommy or the Data Editor in the crew to show/teach him what he needs to know to work efficiently in the program....and to be able to find and retrieve data as needed without delaying the work process. I again advised making good notes and hanging on to them for reference in the future.

From discussions with Tommy over the last two months, I am concerned that Leroy does not have a really good grasp of what is required on a survey, even on a daily basis. Once again, Leroy should have accumulated enough knowledge and experience over his years in a survey crew to make him highly efficient and skilled and knowledgeable about what is needed to complete a survey. This is not the case according to the overall operations that Tommy has been reporting to me. Tommy says he is having to work late many nights just to catch up on his work because he is spending so much time teaching/showing Leroy how and what to do. Also, Tommy says he is spending too much time checking and correcting errors made in the field due to bad procedures. Again, Leroy told me in his interview that he was a better qualified candidate for the job because of his experience in Location Surveying AND because of the training that had been offered by the ALDOT. Leroy is not exhibiting the qualities that I expected from him because of his experience he talked about. I advised Leroy that the lack of knowledge pertaining to what is needed on a daily basis is a surprise to me after having interviewed him and having read his resume. I told him he needed to concentrate really hard on getting a better feel for what is required by asking questions and communicating closely with Tommy and the Data Editor. If he will do this, progress will not be hampered due to "floundering" caused by his ineptness.
Once again, I advise Leroy to take good notes and then hang on to them for reference.

Leroy shows a lack of management skills in that he cannot effectively supervise his subordinates. Leroy stated to Tommy that he was not getting as much work done as he could "...because his people didn't know what to do." I told Leroy that correcting this problem was his job. As a field supervisor, and according to his form 40, one of his tasks is to train subordinates so the surveys are done efficiently and accurately and without delay. I advised Leroy that he must separate himself from the "worker" mentality and become more aggressive in the supervision and training aspect of the job. If the subordinate doesn't know what to do, then he must show him. If the subordinate doesn't perform well or is "dragging around" then he must approach that individual and square him away. One of the subordinates even complained to Tommy that they couldn't get Leroy to explain things to them. That subordinate then would have to ask somebody else how to do a certain chore. I advised Leroy to be focused on his subordinates' weaknesses and do all that he can to teach them. The very least Leroy should do is make sure that he communicates clearly to them what it is he wants them to do at any given time. After a while, they too will be expected to catch on and do their work without specific and continuous directives when performing redundant tasks.

**Doesn't Follow Directives**

This concerns me greatly. Tommy noted several directives that he had given Leroy at different times and that Leroy had ignored them or did not react to them. (see attachments). This is not acceptable. I informed Leroy that if Tommy gives a directive and it is not illegal or harmful, then he must do his best to do exactly what was told him. If he ignores or simply does not do what the supervisor asks or directs, then he actually is being insubordinate. I made sure Leroy understood that insubordination is one of those things that can cause termination on the FIRST offence. I asked Leroy if he would allow a subordinate to ignore or disobey a directive. He answered "No". He then seemed to understand that he should be then cooperative with Tommy and do as he directed EVERY time. I told Leroy that if he did not agree with the directive, not to ignore it, but go ahead and do it. THEN, while alone with Tommy, voice his suggestion that the task be done a different way. Tommy may not change his mind but then again, he might.

Example: Leroy said he did not hear one of the directives to meet at a motel on a particular morning (see attachment). Since ALL other crew members heard the directive, and even the man sitting beside Leroy heard the directive, it is a mystery to me how he did not hear it as well. It seems to me that Leroy simply wanted to do what HE wanted to do and ignored the directive. This is not acceptable. I advised Leroy that he must always be cooperative and do what he is told. Since he is the Field Supervisor, he must be the example for the rest. I also told Leroy that it is his responsibility to be informed EVERY day as to matters such as this. It is a shame that all subordinates reported as instructed and Leroy, the Field Supervisor, did not.

Tardiness

We discussed all FOUR times Leroy has been noted as arriving for work late by Tommy. Leroy did not deny that he was late but only that he was not as late as Tommy had noted. I advised Leroy that the amount of time he is late is not the issue but, rather, the fact that he was late is the issue. First, his being the second in charge of a crew as a supervisor demands that he set the example by NEVER being late and certainly not being late often. I made sure he understood that work rules are to be adhered to without question. Being tardy is not acceptable and will be dealt with swiftly if a pattern develops…which in Leroy's case, the pattern has developed. Secondly, since every crew works as a "unit", it is imperative that all members be at work on time or the whole crew suffers.

Since Leroy had been warned THREE previous times about tardiness infractions, Tommy gave a written reprimand the fourth time when Leroy arrived at the office late on Monday morning (see attached reprimand for details). However, because Leroy stated that the allotted drive time from Montgomery to Tuscaloosa is not a reasonable drive time, I have asked Tommy to withhold the reprimand UNTIL he personally makes the drive himself under the same conditions that Leroy made. Leroy says the drive takes 2 hours and 25 minutes if you drive the speed limit. The difference in the drive time allowed and what Leroy says it takes is roughly 25 minutes. The allotted time is two hours but Tommy tells me the crew is always there on Mondays around 6:40 to 6:50 a.m. If this is true, then according to Leroy, the crew has to be driving at a high rate of speed and this is not acceptable. If Tommy proves the drive to be less than two hours under the same conditions that Leroy describes, then the reprimand stands. If the drive is proven to take more than two hours, then I recommended to Tommy that he rescind the reprimand. HOWEVER, I advised Leroy that the first three warnings will remain on record and that the next infraction of tardiness WILL RESULT in a reprimand. He said he understood and seemed to have no problem with that approach.

What causes concern for me is that this "two hour" drive time has been in place for MORE than a year now and was put in place by the previous Party Chief, Joe King. Not one time has any individual in that crew ever mentioned that the drive time was not long enough. We will assess this carefully as Leroy's career could be adversely affected if the two-hour drive time is accurate. A reprimand is not given lightly because it is such a negative on one's grade sheet. An addendum will be inserted below on the results of the drive/test that Tommy has been instructed to do.

Within this entire subject is an included fact that Leroy was driving his personal vehicle those times he was late. I made sure he understood that if he chooses to drive his private vehicle (we furnish transportation in the Carryall), then he is obligated to arrive at the allotted time and for sure BEFORE the carryall. He said he understood. I also advised him that his privilege of driving his private vehicle could be revoked if he persisted in being late while driving his own vehicle. By his traveling in the Carryall, we can assure that he will arrive on time and his problem will be should be solved.

I warned Leroy that arriving at the parking lot on Mondays at 5:00 a.m. is mandatory and is not debatable. If a person arrives later than 5:00 a.m., then he is late. If the time for arrival at the Field Office is set at 7:00 a.m. by the Party Chief, and it is an accurate allotment, then if one arrives AFTER 7:00 a.m., he is late. Those are the rules and they are not up for question. He said he understood.

SUMMARY:

After having talked with Leroy as summarized above, I feel confident he now understands that Tommy and I are concerned about his lack of performance and his weaknesses in certain areas. One of the main things that I repeatedly suggested that he do concerning retaining training that Tommy provides, is to take good notes and refer back to them as needed. I feel confident that he now understands fully what is expected and how he needs to go about improving. I assured him that Tommy will be right there to help him with areas where he is weak. However, Leroy now understands that he is ultimately responsible for his performance, for his retention of knowledge. He is ultimately responsible for doing his best to at least meet standards required to earn the right to become a permanent employee in the Transportation Technologist classification at the end of the six month probationary period. I told Leroy that his "mid appraisal" (three months) was approaching in about a month and that we would reassess at that time. I told him that we would be meeting often if Tommy did not report vast improvements in all areas. He said he understood. I assured Leroy that it is our desire to see him improve and we will try our best to help him do that.

NOTE: As noted above, I am recommending to Tommy to delay submitting the written reprimand pertaining to tardiness until he makes the drive directly from Montgomery to Tuscaloosa. He is to leave at 5:00 a.m. sharp and be very conscious to drive the speed limit at all times and note the time it takes to make the trip. If the time is more than the allotted two hours, then the reprimand will be rescinded. If the drive proves to fall within the two hours, then the reprimand will become an official disciplinary action on Leroy Williams. Leroy had been explained this during the counseling session and he agreed to this approach.

_____

Joe E. Jones, Asst. Location Engineer, Field

Witness:

_____

Thomas L. Lewis, Party Chief

Cc:        Mr. Don Arkle
           Mr. William Adams
           Mr. Thomas Lewis



**ALABAMA DEPARTMENT OF TRANSPORTATION**
*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
Phone: 334-242-6178    FAX: 334-269-0826

*Joe McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

July, 26 2005

**ATTACHMENT E**

## MEMORANDUM

To:    Leroy Williams, Transportation Technologist
       Field Supervisor

From:  Thomas W. Lewis
       Chief of Party

RE:    Reprimand for Repeated Tardiness

Mr. Williams, on Monday, July, 25 2005 you reported to this office in Tuscaloosa at 7:14a.m. You are given 2 hours of driving time from the Montgomery office to this office. Your reporting time in Montgomery is 5:00am and therefore if your report to the office here in Tuscaloosa any time after 7:00am you are considered late for work (tardy).

This is the 4th time you have been tardy since May, 16th 2005, the day you were assigned to this crew. Please refer to the following:

Occasion One:  On Wednesday June, 1 2005 you reported to the parking lot in Montgomery at 5:05a.m. which was 5 minutes late. At that time I informed you that being tardy was unacceptable.  This was a verbal warning.

Occasion Two:  The very next day I instructed the crew to meet in the parking lot of the motel where everyone was staying in Auburn. You did not report at that location and I had to be told by another crew member where you were.  That in itself is an infraction because you did not do as instructed. All other crew members reported just as I had instructed.  I told you on that day you were late, because you were not where I told you to be at 7:00a.m. I

explained if you were late again you would be subjec disciplinary actions. This was a second verbal warning.

Occasion Three: On Monday, June 20th you did not arrive at the office in Tuscaloosa until 7:30a.m. You called me that day and told me your stomach was bothering you. Even though you told me you were sick you went on out and worked the rest of the day like there wasn't anything wrong. I explained to you the importance of being on time to set an example for the crew members you supervise. This was a third verbal warning and a pattern had developed.

Occasion Four: And now on Monday, July 25th, you did not report to the office here in Tuscaloosa until 7:14a.m. You did not notify me even as I talked with you on the Southern Line BEFORE 7:00a.m. That in its self is grounds for a Repimand. I am mystified as to why you did not mention to me that you were going to be late because you should have been very aware that being tardy is not acceptable.

The policies set down by our department plainly state that you must notify your supervisor if you are going to be late and that excessive tardiness will not be tolerated.

Consider this written reprimand as the next step in the disciplinary process concerning your being tardy. The first steps included the verbal warnings already mentioned. Also consider this as a warning that the next time you are tardy you will be charged LWOP and you will receive another discipline (possibly another reprimand and/or a suspension).

This is a very serious matter and it will be reflected on your next grade sheet. I trust you understand that you must adhere to the rules set forth by the Department or you can cause serious injury to your career. I should also remind you that you are still in the early stages of your six-month probationary period as a Transportation Technologist and this type of behavior is detrimental to your being assessed as a dependable employee. And certainly as a Field Supervisor, you should be setting the example for the subordinates in your crew.

Thomas W. Lewis
Chief of Party


**DEFENDANT'S EXHIBIT**
**2**



## ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311      FAX: 334-262-8041*



*Bob Riley*
*Governor*

*J.D. McInnes*
*Transportation Director*

August 19, 2005

## M E M O R A N D U M:

TO:       Mr. Don T. Arkle
          Design Bureau Chief

FROM:     William F. Adams
          Location Engineer

RE:       Probationary Period of
          Leroy Williams

Mr. Williams was appointed to the classification of Transportation Technologist in the job title of Field Supervisor effective May 14, 2005. Mr. Williams was assigned to Mr. Tommy Lewis's crew. Since beginning with Mr. Lewis's crew, Mr. Williams has been reprimanded for excessive tardiness on July 26, 2005, and for insubordination on August 11, 2005, as shown in the attached documentation from Mr. Lewis and Mr. Joe Jones, Assistant Location Engineer.

Mr. Williams' lack of respect for the rules established by the Department, Bureau and Location Section and for his supervisor as shown by his actions is totally unacceptable. For these reasons, I am recommending that Mr. William's probation be ended at this time and that he be reassigned to his former classification of EA II/III in the Design Section.

Let me know if you have any questions or need additional information regarding this recommendation. Please indicate your concurrence with this recommendation by signing in the space provided below.

Concur:                                        Date:  8-19-05
          Don T. Arkle

Attachments

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LEROY WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **2:06-cv-658-ID** |
| | ) |
| **STATE OF ALABAMA DEPARTMENT** | ) |
| **OF TRANSPORTATION and JOE** | ) |
| **McINNES, in his official capacity** | ) |
| **as Director of the State of Alabama** | ) |
| **Department of Transportation** | ) |
| | ) |
| **Defendants.** | ) |

## AFFIDAVIT OF JOE E. JONES

Before me, the undersigned notary public in and for the State of Alabama at Large, this day personally appeared Joe E. Jones, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Joe E. Jones, I am a resident citizen of the State of Alabama and am over the age of nineteen (19) years.

I am presently an employee of the Alabama Department of Transportation (ALDOT) and was so employed at all times relevant to this lawsuit. At times relevant to this lawsuit I was assigned to the Design Bureau as Assistant Location Engineer, Field.

In May, 2006, Mr. Williams was promoted from the position of Engineering Assistant II/III to the position of Transportation Technologist and was assigned to my office. I assigned Mr. Williams to Tommy Lewis to serve as Field Supervisor for one of Tommy's crews. Mr. Williams reported to work on May 16, 2005. to begin a six month probationary period. During the first two months of this probationary period, Mr. Lewis kept me apprised of Mr. Williams'

progress in the job and I became aware that Mr. Williams was not progressing satisfactorily in many aspects of the job.

Mr. Williams had been tardy on several occasions, had not followed instructions properly and was lacking in basic skills that one should expect of an employee with his prior experience and in his supervisor position.

On July 26, 2005, Mr. Lewis prepared a reprimand for repeated tardiness on Mr. Williams, occasioned by Mr. Williams' fourth incidence of tardiness. This prompted me to conduct a counseling session with Mr. Williams and Mr. Lewis on July 28. 2005. See Exhibit 1. At this counseling session, we discuss Mr. Williams' working skills, his inability to follow directives and his tardiness.

On of the particular issues at the counseling session was the tardiness that had prompted Mr. Lewis's reprimand. Mr. Williams insisted that it took him two hours and twenty-five minutes to drive from Montgomery to the Tuscaloosa office. A two hour time allowance for this drive had been previously established; but, in order to give Mr. Williams the benefit of the doubt, I instructed Mr. Lewis to drive the route, observing all speed limits, and report to me the time it took him to travel from Montgomery and Tuscaloosa. I withheld the issuance of the reprimand pending a determination of the travel time. Mr. Lewis drove the route on August 2, 2005, taking one hour and fifty-five minutes, allowing for one five minute break at the rest area along the route. I then directed that the reprimand be issued. See Exhibit 2.

On August 11, 2005, Mr. Lewis issued a second reprimand to Mr. Williams, this time for insubordination. Mr. Williams had been insubordinate toward Mr. Lewis on the job site as more clearly described in Exhibit 3. On the same date, I met with Mr. Williams and Mr. Lewis, the discussion that ensued is more fully reflected in Exhibit 3. After careful consideration, I

2

prepared a recommendation of discipline (Exhibit 3) which was sent to William F. Adams,
Location Engineer, for further consideration. It was my recommendation to Mr. Adams that Mr.
Williams not be allowed to continue in the Transportation Technologist.

Mr. Williams' probationary appointment as Transportation Technologist was terminated
effective September 3, 2005 and he reverted to his previously held position of Engineering
Assistant II/III and reflected in Exhibit 4.

As I understand, Mr. Williams complains that he was discriminated against on account of
his race, black. I am not aware of such discrimination on the part of Mr. Lewis or others, nor
were any of my actions motivated by his race. The actions taken against Mr. Williams were
prompted by the inadequacy of his performance, lack of basic skills, his insubordination and his
tardiness, as reflected in the exhibits contained herein. My greatest concern was for the
disregard of established rules, tardiness and the hostility as exhibited by Mr. Williams'
insubordination to his supervisor.

As I further understand, Mr. Williams claims that the actions taken against him were in
retaliation for his having filed an internal complaint or grievance. Mr. Williams filed no such
grievance with me, nor am I aware of any grievances filed by Mr. Williams.

FURTHER THE AFFIANT SAITH NOT.

I signed this affidavit on _3 -19_, 2007 in Montgomery, Alabama.

_____
Joe E. Jones

SWORN TO AND SUBSCRIBED before me on this _19th_ day of _March_, 2007.

_____
Notary Public, State at Large

My Commission Expires: _9/18/2010_

3



**ALABAMA DEPARTMENT OF TRANSPORTATION**
*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
Phone: 334-242-6178     FAX: 334-269-0826



*Joe McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

July, 26 2005



DEFENDANT'S
EXHIBIT

## MEMORANDUM

To:      Leroy Williams, Transportation Technologist
         Field Supervisor

From:    Thomas W. Lewis
         Chief of Party

RE:      <u>Reprimand for Repeated Tardiness</u>

Mr. Williams, on Monday, July, 25 2005 you reported to this office in Tuscaloosa at 7:14a.m. You are given 2 hours of driving time from the Montgomery office to this office. Your reporting time in Montgomery is 5:00am and therefore if your report to the office here in Tuscaloosa any time after 7:00am you are considered late for work (tardy).

This is the 4th time you have been tardy since May, 16th 2005, the day you were assigned to this crew. Please refer to the following:

Occasion One:  On Wednesday June, 1 2005 you reported to the parking lot in Montgomery at 5:05a.m. which was 5 minutes late. At that time I informed you that being tardy was unacceptable. This was a verbal warning.

Occasion Two:   The very next day I instructed the crew to meet in the parking lot of the motel where everyone was staying in Auburn. You did not report at that location and I had to be told by another crew member where you were. That in itself is an infraction because you did not do as instructed. All other crew members reported just as I had instructed. I told you on that day you were late, because you were not where I told you to be at 7:00a.m. I

explained if you were late again you would be subject to disciplinary actions. This was a second verbal warning.

Occasion Three: On Monday, June 20th you did not arrive at the office in Tuscaloosa until 7:30a.m. You called me that day and told me your stomach was bothering you. Even though you told me you were sick you went on out and worked the rest of the day like there wasn't anything wrong. I explained to you the importance of being on time to set an example for the crew members you supervise. This was a third verbal warning and a pattern had developed.

Occasion Four: And now on Monday, July 25th, you did not report to the office here in Tuscaloosa until 7:14a.m. You did not notify me even as I talked with you on the Southern Line BEFORE 7:00a.m. That in its self is grounds for a Repimand. I am mystified as to why you did not mention to me that you were going to be late because you should have been very aware that being tardy is not acceptable.

The policies set down by our department plainly state that you must notify your supervisor if you are going to be late and that excessive tardiness will not be tolerated.

Consider this written reprimand as the next step in the disciplinary process concerning your being tardy. The first steps included the verbal warnings already mentioned. Also consider this as a warning that the next time you are tardy you will be charged LWOP and you will receive another discipline (possibly another reprimand and/or a suspension).

This is a very serious matter and it will be reflected on your next grade sheet. I trust you understand that you must adhere to the rules set forth by the Department or you can cause serious injury to your career. I should also remind you that you are still in the early stages of your six-month probationary period as a Transportation Technologist and this type of behavior is detrimental to your being assessed as a dependable employee. And certainly as a Field Supervisor, you should be setting the example for the subordinates in your crew.

Thomas W. Lewis
Chief of Party

Mr. Leroy Williams
Work Performance
Counseling Session
July 28, 2005



*written by*
*- Lewis*

A   ___Not Following directions___

1  May 16ᵗʰ , 2005, the first day you reported to this office we all sat down and discussed that you, as a supervisor, do not have the  authority to let people off with out my approval. We also discussed work times, and the importance of not being late.

   a. Work Times

      1.  On May 16ᵗʰ, we discussed what the work times were:

        5:00 a.m. to 5:00 p.m. Monday

        7:00 a.m. to 5:00 p.m. Tuesday and Wednesday

        7:00 a.m. to 7:00 p.m. Thursday.

   b. May 24ᵗʰ I took you out and showed you the new project and what work we need to do, I explained when working around the Interchanges you should not set radial points with out checking them for accuracy. When we started checking our files an err was found. After going back checking I realized that you had set radial points to work off of.  I told you go run a closure loop on the points, not once but twice before you did it the way I had told you to

   c. Tuesday, May 31ˢᵗ you came into the parking lot in Montgomery 5 minutes late.  On this same date, I instructed you to meet with me in the parking lot of the motel at 7 a.m.

   d. Wednesday, June 1ˢᵗ you were not at the motel parking lot, where I had instructed you to be the day before. You took this upon yourself not to follow my instructions and you did not notify me of this.  You informed Rodney instead of your supervisor. I do not know where you were, so as far as I'm concerned you were late that day also.

   e. Thursday, ~~July 28,~~ ᵗʰ you let everyone go at 1:00 p.m. with out my approval, then you told me you let them go at 2:00 p.m.  This is insubordination.

          June 30

written by
T. Lewis

B.    *Checking you work*
      I have told you time and time again time again about checking
      your field work. It's the only way you can be efficient. All of this
      could still fall under not following directives
  1   On May 17th, I found out you had had a problem the day before. I
      told you needed to be checking your work to keep things like that
      from happening.
  2.  June 15th, I had to tell you to check your work again to see if you
      had the sufficient information that was needed to cover the area in
      question.. I explained to you that all you had to do was load the
      information that you had gathered and see if it covered the area
      properly.

  3.  July 19th, once again I had to tell you to check your work after
      running some 3,000 ft of traverse without checking a previously
      established point. I explained that all you have to do is load one of
      the previously established coordinates and stake it out to find a
      point and see how much you have missed it. I have provided you
      with a laptop to keep in the truck to do this with. You have the
      files on the computer with this information. This is a tool that you
      need to use. Even as I was telling you this, you were telling me the
      information you were gathering was good " it looks good when I
      downloaded it. It must be good. After I made you go back and
      check the traverse what did you find? You found you had over a 1
      foot err. Now you have spent almost 2 days trying to find the err.
      This is time wasted.

C.    *Working Skills*
  g.  Computer Skills
  1.  May 16th, the day that you first started on this job, I asked you what
      kind of experience you had with the computer.   You stated that you
      had been a data editor and you knew a good bit about terra model.
  2.  July 6th, I had to give you a lesson on how to draw a line in  terra
      Model and how to draw points by station offset.  I have also had to
      show you how to load image files into model.  These are basic
      skills in model that one of your standing should already know.
  3.  Monday, July 18th I had to show you how to write out a points file
      in a station offset format, but yet you told me that you were a data
      editor and you knew a good bit about the program.
  4.  July 27th, I had to explain how to draw an alignment up on the
      computer. This is the same thing I had to show you back on
      July 6th. How to draw a line. The problem I saw on this day was.
      You had the information to draw the alignment with, but you did
      not know how to retrieve the information. The Terramodel file you

*written by*
*T. Lewis*

had open had a layer *Isolated* hiding all other layers with the information you were looking for. Evening after working with this file many times you did not recognize the information you had worked with in the past was not showing up.

h. Math skills
   1. On June 2nd, I had to show you how to add and subtract angles. I also had to show you how to convert a bearing to an azimuth. I actually had to draw you a diagram to show you how to do this.

i. Managing you workers
   1. You have come to me and said the reason you don't get as much work done as I think you should is because of the people you supervise. You say that they don't know what to do. You said to me that the men should know they need to cut the stub down low, so you think you don't have to tell them to do this. I tell you its not that they don't know this, it's that they are not going to do it unless you tell them to. It is easier to cut them up high. If you can't the worker's that you supervise to get the job done, then you are not doing your job as a supervisor. You can't take this personally it's a job and it has to be done correctly. It is your job to tell them to cut the stub down low. Don't assume that they should already know to do this. At some point you have to let these people know you mean business.

j. Training your workers
   1. I have been confronted by one of your subordinates that they can't go to you and ask how to do something. They say that you want take the time to explain it to them where they can understand it. Now this employee has to go to some one else to learn the task. There again training employees is a skill you have to have in order to be a supervisor.

I. Prejudges
   a. Accusing me of being prejudges will not be tolerated.
   b. Nothing I have said to you has been in a prejudice manner.
   c. We all must learn to communicate in a professional manner and that is the way I was speaking to you.
   e. When you are a supervisor, you must learn how to speak to your employees and your employers, especially those that are over you. You are to treat your superiors just as what they are, supervisor.

*written by T. Lee*

    f.  Telling me the reason we are in a racial lawsuit is because we did not train employees is not an appropriate way to talk to your superior and it will not be tolerated.

II.    Transfers

    a.  There will be no transfers from the crew you are with now, at least not for the reason that you gave me earlier.

    b.  Just because you think I'm being too hard on you is not reason enough to be asking for a transfer.

## Summary

It has become an every day thing. I have to show you how to do some miner task in Terramoldel, how to run a closure loop, how to set up files to work with. I am spending so much time trying to train you to do you job, I have to work late just to complete my work. I could understand spending this much time training a new Supervisor that had no experience in surveying. But you have been exposed to so much information in the past working with the Location Section along with the other Sections. I can not understand why you have not learned these skills in the past.

In the interview with Mr. Jones, you told him you had the skills to be a supervisor. When you came out to the field you told me you had the skills to be a supervisor. Now, you are being held responsible for your work as a supervisor and you want to tell me you were not trained in the skills you need to be a supervisor. I know the people you worked under as a rodman, instrument operator, and data editor. I don't think it was that you weren't taught these skills, and I don't think you took it upon yourself to learn the skills that you were exposed to. In the event of this, now you are blaming every one else for your lack of skills. That to me, is not an excuse. If you want to continue being a supervisor you must improve you skill. There is a big gap between where you are now and where you need to be between now and the end of your probation. If you don't improve as much as need to your probation could be extended or you could be released. I want you to understand this is a serious matter and one you need to work hard on. I will work with you as much as I can to help you improve your skills but in the end it's up to you to learn and show me you can be a supervisor.



**ALABAMA DEPARTMENT OF TRANSPORTATION**
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050



*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

September 1, 2005

Mr. Leroy Williams
Alabama Department of Transportation
Design Bureau
1409 Coliseum Blvd.
Montgomery, AL  36110

Re: Transportation Technologist Appointment

Dear Mr. Williams:

This is to inform you that your appointment in the Transportation Technologist classification that was effective May 14, 2005, has been terminated as of September 3, 2005. You will revert back to your Engineering Assistant II/III position in the Roadway Design Section of the Design Bureau and should report to Adenrele Odutola at 8 a.m. on Tuesday, September 6, 2005. Your salary will also be reduced to the rate you were making at the time of the appointment ($966.20 plus the 6% cost of living increase).

This action is being taken because of your continual excessive tardiness and repeated insubordination. You were given numerous warnings and two written reprimands all with no noted improvement in your behavior.

As you know, any new appointment carries a six-month probationary period before it becomes permanent. At this time you are just over three months into that test period. For the above reasons it has been determined that you have not satisfactorily performed and/or responded to our efforts to correct your behavior. Therefore, this appointment should be terminated at this point.

We regret that this action is necessary, but trust that you will use it for the betterment of your career.

Sincerely,

Don T. Arkle
Design Bureau Chief

DTA
cc: Mr. William Adams
    Mr. Joe Jones
    Mr. Ron Green
    State Personnel



# ALABAMA DEPARTMENT OF TRANSPORTATION
*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
*Phone: 334-242-6178    FAX: 334-269-0626*



*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

August, 11 2005



## MEMORANDUM

To: Leroy Williams
 Transportation Technician
 Field Supervisor

From: Thomas W. Lewis
 Transportation Technician
 Chief of Party

RE: Reprimand for Insubordination


Mr. Williams, on Thursday morning August 11th 2005, I was reviewing the work the crew had done in the field on Wednesday August 10th 2005. I was very concerned when I found so little progress had been made in the field that day. As you know, this project is a high priority job and its deadline is fast approaching. The completion of this project, on time, is a must and we must do what we can to prevent any unnecessary delays.

While in the process of reviewing the raw data file, I found that it was 9:19 a.m. before the first setup was made that morning. I also found that only three cross sections were taken from 9:19 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) The file shows that only 1 hour 45 minutes was spent collecting field data from 7:00 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) I decided to take a look at the area in question again to see if I could determine the cause of the delay. I was very concerned with what I found. The area in question had break lines that had not been shot and large areas that were not covered densely enough to correctly show the contours. This is when I came to you to discuss this matter. I called you aside to show you the break lines that

1

needed to be shot. ⌐ walked you around the ridge and ⌐ owed you the toes that need to be shot. I explained that as an alternative of working off the centerline points, you could have set one remote to cover the majority of the area in question, saving valuable time.

I also talked to you about time management. I explained that if you stop at a store on the way out to the job site, you just took your morning break. I asked you about your lunch hour. You explained that your lunch hour began when you got to the truck and ended when you got back out of the truck. I then explained that this was not correct. Lunch started when you finished in the field. The walk out of the woods was part of your lunch hour. At this point you began to question my interpretation of the lunch hour. I explained that this was set down by the department, not me. You then began to become argumentative. You told me I was just being picky and I was just looking for something to harass you about. You then told me if I didn't have anything else to say you were going back to work. You turned and started to walk away. I told you not to walk away that I was not finished. You then told me "if you are going to talk to me I'm going to sit down and then you can talk." I started to explain that the progress made on Wednesday was unacceptable. Then you jumped up and started saying I was harassing you and not letting you do your job and you were going to have to talk to someone about it. You told me you were working hard and doing a good job. You also told me you could not work like this. You again started to walk away I told you "Leroy, if you walk away I am going to write you up for insubordination. Do you understand?" But you walked away with out me having the opportunity to explain why it was unacceptable.

It is very discouraging to see a supervisor on probation have so little respect for his supervisor, that he walk away when there is clear concern about the progress of the project. The loss of any time on this project is detrimental to the deadline being met. I have tried to impress the importance of time management and accuracy on this project. I have spent time with you trying to share my experience and knowledge with little results. I have explained rules that you question. I have spent time in the field with you trying to show you the most efficient way to produce highly accurate maps. But, the product you turn in on a daily basis consistently has errors, and is lacking in quantity.

The only reason I can find for this is, mismanagement of your time, and inability to lead your people properly. This does not only affect you, but it reflects upon the entire crew. Your work performance does not reflect the

experience that you ˌ͏ve indicated or the experience y ͏ ˌsuggest you have acquired while working with other crews in the Location Section.

Mr. Williams, it is with regret that it has come down to reprimanding you for insubordination, but you walking away from me or any other supervisor when there are such critical issues to confront and discuss is unacceptable and will not be tolerated. This being the second reprimand in the past month along with you still on probation is very disturbing. It shows a pattern of disregard for your job. As a supervisor, it is your job to set an example for your subordinates; this is not setting a good example. You have to realize this will not be allowed to continue.

In this situation I am at a loss at what punishment to suggest. The severity of your actions could have more than one form of punishment. You could receive this letter of reprimand; receive the letter of reprimand plus a suspension, demotion, or dismissal, on the first offence of insubordination.

At the least, this letter will go into your personnel records and an additional 7 points will be subtracted from your next performance appraisal. I would like to suggest at the least, a suspension be imposed, but I would like my supervisor to review this matter and ask him for a recommendation. Again, I regret having to reprimand any employee, but your actions as a supervisor, warrant strong disciplinary action.


*Thomas W. Lewis*

Thomas W. Lewis
Transportation Technician
Chief of Party


Cc: William Adams
    Joe E. Jones
    Location file

3



# ALABAMA DEPARTMENT OF TRANSPORTATION
*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama  36110
P. O. Box 303050, Montgomery, Alabama  36130-3050
*Phone: 334-242-6178      FAX: 334-269-0826*



*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

August, 18 2005

## MEMORANDUM

To: Joe E. Jones
        Location Engineer Field

From: Thomas W. Lewis
        Chief of Party

RE: <u>Crew Meeting</u>

Mr. Jones on Monday the 15th of August I held a crew meeting before the crew went out to the field. Present was Leroy Williams, Field Supervisor, Transportation Technician,  Channin Grantham, EA-II/III, Rodney Sanders, EA-I, Robbie Jones, EA-I and Michel Crowe EA-I.

I started the meeting informing the crew that some very serious charges had been brought against me. They were that I had been harassing and degrading Mr. Williams in front of the crew on a regular basis. I asked each member of the crew one by one if they had seen this happen.

Mr. Sanders spoke first and he explained that he thought that I was holding Mr. Williams to too high of a standard for a new supervisor. He understood that I had been a supervisor for some time and he thought I should not expect as much out of Leroy because he was a new supervisor. Nothing was said about me harassing or degrading Mr. Williams.

Ms. Jones told me, I feel the same was as Mr. Sanders I feel like you should not expect quite so much out of Mr. Williams because he was a new supervisor.

1

I explained that I u... ...rstood their concerns but the qu... ion was "Have you seen me harass or degrade Mr. Williams at any time". They both told me, "No" they had not seen me do that.

I asked Mr. Crowe. He replied "No" I have not seen that. I then turned to Mr. Grantham he also told me he had not seen that take place.

Later that day I drove to Tuscaloosa where Mr. Austin was working. I explained the charges that were brought against me. He told me he had never seem me treat Mr. Williams in that manner.

Mr. Jones I do not understand why he would accuse me of that in front of you without proof. This bothers me. It makes me think it was all to take the attention away for the real problem; his insubordination. I think with further investigation you will come to the same conclusions.

Thomas W. Lewis
Chief of party

2



**ALABAMA DEPARTMENT OF TRANSPORTATION**
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

Telephone: 334-242-6311     FAX: 334-262-8041



*J.D. McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

August 4, 2005

## MEMORANDUM

To:      Leroy Williams
         Field Supervisor

From:    Joe E. Jones,
         Asst. Location Engineer, Field

Re:      Drive Time from Montgomery Office to Lewis Crew Tuscaloosa Field Office

Purpose: Verify drive time related to Leroy Williams Written Reprimand

In my counseling session with you dated July 28, 2005, I discussed with you the written reprimand given you by Mr. Thomas Lewis, Party Chief. Mr. Lewis, your immediate supervisor had instigated the reprimand due to excessive tardiness. The fourth tardy involved you arriving late on a Monday morning after driving from Montgomery to Tuscaloosa. You stated that it took 2 hours and 25 minutes to make the drive which would make the reporting time 7:25 a.m. I directed Mr. Lewis to make this drive himself, under the same conditions you described (time and speed limit) and report back to me. If the drive proved to be more than the allotted 2 hours, I would instruct Mr. Lewis to rescind the reprimand. However, if the drive proved to be within the allotted 2 hours, the reprimand would stand. Below is the result of the drive made by Mr. Lewis:

On August 2, 2005, Tommy drove from the Montgomery office to his Tuscaloosa office. He left promptly at 5:00 a.m. and was consciously driving the posted speed limit on the different roads along the route. Tommy noted his trip as follows:

"I left Montgomery this morning at 5:00 a.m. stopped one time at the rest area for about 5 minutes and arrived here at the office in Tuscaloosa at 6:55 a.m. This was driving the speed limit all the way. I set the cruse at 55 mph when I got just north of Prattville and when I hit the 4 lane in Centerville I set it at 65 mph. The total distance is 106.5 miles form Office to Office. This is an average speed of 55.55 mph. In no way did I exceed the speed limit."

Based on this driving time test and his report, I am now advising Mr. Lewis to proceed with the written reprimand by submitting it as an official disciplinary action on tardiness. You have already been counseled by Mr. Lewis on this matter and advised of the charge. I have advised you, as noted in my counseling report, about the consequences of being tardy and went over the rules pertaining to the matter. I also advised you that this would affect your grade sheet because it would cause a seven point deduction in your upcoming grade on your Employee Performance Appraisal.

Cc:      Mr. Don Arkle
         Mr. William Adams
         Mr. Thomas Lewis



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama  36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311*    *FAX: 334-262-8041*



*J.D. McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

**July 28, 2005**



## MEMORANDUM

Counseling Session

Leroy Williams, Transportation Technologist
Field Supervisor

Re:    Probationary Performance Concerns

On this date, a counseling session was held with Leroy Williams, referenced above. Also present was Mr. Thomas Lewis, Party Chief, who is Leroy's immediate supervisor. My concerns involved several areas that were well documented by Mr. Lewis (see attached). I felt it necessary to immediately discuss those concerns with Leroy so that he could concentrate on improving in those areas. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Leroy was promoted to Transportation Tech as a Field Supervisor and reported to Tommy on May 16, 2005. Leroy is presently being assessed during his six month probationary period and is now at his second month in the classification/job. Tommy has been keeping me informed on Leroy's progress or lack thereof. After two months, it has become obvious to me that Leroy is lacking in many areas as a Field Supervisor and this has me concerned. The following is a summation of the meeting and of the notes used for the session:

**Working Skills**

Leroy shows a definite weakness in math skills as related to surveying. For example, he was unable to calculate angles, azimuths until Tommy showed him how. Leroy told me he now knows how and can do them easily. My concern is that he writes all these things down as he is taught because he may forget. Since he has had high school geometry, three courses in geometry through the ALDOT, one course in trigonometry through the ALDOT, and several years in Location Surveying, I would have assumed that he would have garnered these skills necessary to do the job. I advised Leroy that he had to concentrate on improving these skills and that he should ask Tommy for hands on training. I also advised Leroy to take good notes and KEEP them to refer to so that he is not susceptible to losing the skill through a lack of good memory. We cannot have a crew standing around for an extended time because Leroy is spending too much time doing a calculation or is wasting time because Leroy doesn't know how to do a needed calculation.

He shows a lack of skills concerning checking his work in the field to ensure accuracy. Tommy had to instruct him several times about this and even to the point of demanding that he do the "checks". Leroy had been argumentative with Tommy concerning this directive which is unacceptable. There have been errors made that have caused a waste of time already because Leroy did not do as he was told. This is a common knowledge skill that Leroy should have learned through the years he has worked in a crew. I advised Leroy that he is being held responsible for doing the work accurately and timely....and for sure, to check his work if for no other reason than his supervisor told him to. I advised him to glean knowledge and

direction from Tommy on all work because Tommy has many years of experience as a Field Supervisor and is one who has a vast knowledge of Location Surveying procedures.

He shows a severe lack of skills in working with Terramodel. Even though this is not a highly required skill to be a good Field Supervisor, it is desirable. Since Leroy had been a Data Editor for over a year, I would have assumed that he had a pretty good working knowledge of Terramodel and could build basic alignments and/or retrieve data as needed. According to Tommy, this is not the case. Leroy had advised Tommy on his first day that he knew Terramodel and had a good understanding. Leroy noted on his resume and his application that he worked in the Data Editor job for a good while. I have advised Leroy to ask either Tommy or the Data Editor in the crew to show/teach him what he needs to know to work efficiently in the program....and to be able to find and retrieve data as needed without delaying the work process. I again advised making good notes and hanging on to them for reference in the future.

From discussions with Tommy over the last two months, I am concerned that Leroy does not have a really good grasp of what is required on a survey, even on a daily basis. Once again, Leroy should have accumulated enough knowledge and experience over his years in a survey crew to make him highly efficient and skilled and knowledgeable about what is needed to complete a survey. This is not the case according to the overall operations that Tommy has been reporting to me. Tommy says he is having to work late many nights just to catch up on his work because he is spending so much time teaching/showing Leroy how and what to do. Also, Tommy says he is spending too much time checking and correcting errors made in the field due to bad procedures. Again, Leroy told me in his interview that he was a better qualified candidate for the job because of his experience in Location Surveying AND because of the training that had been offered by the ALDOT. Leroy is not exhibiting the qualities that I expected from him because of his experience he talked about. I advised Leroy that the lack of knowledge pertaining to what is needed on a daily basis is a surprise to me after having interviewed him and having read his resume. I told him he needed to concentrate really hard on getting a better feel for what is required by asking questions and communicating closely with Tommy and the Data Editor. If he will do this, progress will not be hampered due to "floundering" caused by his ineptness.
Once again, I advise Leroy to take good notes and then hang on to them for reference.

Leroy shows a lack of management skills in that he cannot effectively supervise his subordinates. Leroy stated to Tommy that he was not getting as much work done as he could "...because his people didn't know what to do." I told Leroy that correcting this problem was his job. As a field supervisor, and according to his form 40, one of his tasks is to train subordinates so the surveys are done efficiently and accurately and without delay. I advised Leroy that he must separate himself from the "worker" mentality and become more aggressive in the supervision and training aspect of the job. If the subordinate doesn't know what to do, then he must show him. If the subordinate doesn't perform well or is "dragging around" then he must approach that individual and square him away. One of the subordinates even complained to Tommy that they couldn't get Leroy to explain things to them. That subordinate then would have to ask somebody else how to do a certain chore. I advised Leroy to be focused on his subordinates' weaknesses and do all that he can to teach them. The very least Leroy should do is make sure that he communicates clearly to them what it is he wants them to do at any given time. After a while, they too will be expected to catch on and do their work without specific and continuous directives when performing redundant tasks.

**Doesn't Follow Directives**

This concerns me greatly. Tommy noted several directives that he had given Leroy at different times and that Leroy had ignored them or did not react to them. (see attachments). This is not acceptable. I informed Leroy that if Tommy gives a directive and it is not illegal or harmful, then he must do his best to do exactly what was told him. If he ignores or simply does not do what the supervisor asks or directs, then he actually is being insubordinate. I made sure Leroy understood that insubordination is one of those things that can cause termination on the FIRST offence. I asked Leroy if he would allow a subordinate to ignore or disobey a directive. He answered "No". He then seemed to understand that he should be then cooperative with Tommy and do as he directed EVERY time. I told Leroy that if he did not agree with the directive, not to ignore it, but go ahead and do it. THEN, while alone with Tommy, voice his suggestion that the task be done a different way. Tommy may not change his mind but then again, he might.

Example: Leroy said he did not hear one of the directives to meet at a motel on a particular morning (see attachment). Since ALL other crew members heard the directive, and even the man sitting beside Leroy heard the directive, it is a mystery to me how he did not hear it as well. It seems to me that Leroy simply wanted to do what HE wanted to do and ignored the directive. This is not acceptable. I advised Leroy that he must always be cooperative and do what he is told. Since he is the Field Supervisor, he must be the FIRST to set the example for the rest. I also told Leroy that it is his responsibility to be informed EVERY day as to matters such as this. It is a shame that all subordinates reported as instructed and Leroy, the Field Supervisor, did not.

**Tardiness**

We discussed all FOUR times Leroy has been noted as arriving for work late by Tommy. Leroy did not deny that he was late but only that he was not as late as Tommy had noted. I advised Leroy that the amount of time he is late is not the issue but, rather, the fact that he was late is the issue. First, his being the second in charge of a crew as a supervisor demands that he set the example by NEVER being late and certainly not being late often. I made sure he understood that work rules are to be adhered to without question. Being tardy is not acceptable and will be dealt with swiftly if a pattern develops…which in Leroy's case, the pattern has developed. Secondly, since every crew works as a "unit", it is imperative that all members be at work on time or the whole crew suffers.

Since Leroy had been warned THREE previous times about tardiness infractions, Tommy gave a written reprimand the fourth time when Leroy arrived at the office late on Monday morning (see attached reprimand for details). However, because Leroy stated that the allotted drive time from Montgomery to Tuscaloosa is not a reasonable drive time, I have asked Tommy to withhold the reprimand UNTIL he personally makes the drive himself under the same conditions that Leroy made. Leroy says the drive takes 2 hours and 25 minutes if you drive the speed limit. The difference in the drive time allowed and what Leroy says it takes is roughly 25 minutes. The allotted time is two hours but Tommy tells me the crew is always there on Mondays around 6:40 to 6:50 a.m. If this is true, then according to Leroy, the crew has to be driving at a high rate of speed and this is not acceptable. If Tommy proves the drive to be less than two hours under the same conditions that Leroy describes, then the reprimand stands. If the drive is proven to take more than two hours, then I recommended to Tommy that he rescind the reprimand. HOWEVER, I advised Leroy that the first three warnings will remain on record and that the next infraction of tardiness WILL RESULT in a reprimand. He said he understood and seemed to have no problem with that approach.

What causes concern for me is that this "two hour" drive time has been in place for MORE than a year now and was put in place by the previous Party Chief, Joe King. Not one time has any individual in that crew ever mentioned that the drive time was not long enough. We will assess this carefully as Leroy's career could be adversely affected if the two-hour drive time is accurate. A reprimand is not given lightly because it is such a negative on one's grade sheet. An addendum will be inserted below on the results of the drive/test that Tommy has been instructed to do.

Within this entire subject is an included fact that Leroy was driving his personal vehicle those times he was late. I made sure he understood that if he chooses to drive his private vehicle (we furnish transportation in the Carryall), then he is obligated to arrive at the allotted time and for sure BEFORE the carryall. He said he understood. I also advised him that his privilege of driving his private vehicle could be revoked if he persisted in being late while driving his own vehicle. By his traveling in the Carryall, we can assure that he will arrive on time and his problem will be should be solved.

I warned Leroy that arriving at the parking lot on Mondays at 5:00 a.m. is mandatory and is not debatable. If a person arrives later than 5:00 a.m., then he is late. If the time for arrival at the Field Office is set at 7:00 a.m. by the Party Chief, and it is an accurate allotment, then if one arrives AFTER 7:00 a.m., he is late. Those are the rules and they are not up for question. He said he understood.

**SUMMARY:**

After having talked with Leroy as summarized above, I feel confident he now understands that Tommy and I are concerned about his lack of performance and his weaknesses in certain areas. One of the main things that I repeatedly suggested that he do concerning retaining training that Tommy provides, is to take good notes and refer back to them as needed. I feel confident that he now understands fully what is expected and how he needs to go about improving. I assured him that Tommy will be right there to help him with areas where he is weak. However, Leroy now understands that he is ultimately responsible for his performance, for his retention of knowledge. He is ultimately responsible for doing his best to at least meet standards required to earn the right to become a permanent employee in the Transportation Technologist classification at the end of the six month probationary period. I told Leroy that his "mid appraisal" (three months) was approaching in about a month and that we would reassess at that time. I told him that we would be meeting often if Tommy did not report vast improvements in all areas. He said he understood. I assured Leroy that it is our desire to see him improve and we will try our best to help him do that.

NOTE: As noted above, I am recommending to Tommy to delay submitting the written reprimand pertaining to tardiness until he makes the drive directly from Montgomery to Tuscaloosa. He is to leave at 5:00 a.m. sharp and be very conscious to drive the speed limit at all times and note the time it takes to make the trip. If the time is more than the allotted two hours, then the reprimand will be rescinded. If the drive proves to fall within the two hours, then the reprimand will become an official disciplinary action on Leroy Williams. Leroy had been explained this during the counseling session and he agreed to this approach.

_____

Joe E. Jones, Asst. Location Engineer, Field

Witness:

Thomas L. Lewis, Party Chief

Cc:    Mr. Don Arkle
       Mr. William Adams
       Mr. Thomas Lewis



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050



*Joe McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

May 12, 2005

Leroy Williams
3723 Bridlewood Drive
Montgomery, AL 36111

| | |
|---|---|
| Job Classification: | 20481 – Transp. Technologist |
| Biweekly Entrance Salary: | $1041.50 |
| Salary Range: | $1041.50 - $1741.80 Bi-weekly |
| Location: | Design/Montgomery |
| Number of Vacancies: | 7 |
| Rank: | 7 |

Dear Mr. Williams:

We want to congratulate you on being selected for the classification of Transportation Technologist in the Alabama Department of Transportation. Your appointment will be effective May 14, 2005, at a starting salary of $1041.50 bi-weekly.

As you have already discussed with Mr. Jones, you should report to your crew assignment at 5:00 a.m. in the NW parking lot on Monday, May 16, 2005.

We appreciate your interest in our Department and look forward to continuing our association.

Yours very truly,

Don T. Arkle
Design Bureau Chief

Form 40 - Revised 1/04

# POSITION CLASSIFICATION QUESTIONNAIRE
STATE OF ALABAMA
Personnel Department

PCQ# 2118416
(For Dept. Use Only)

1. Employee's Name _Leroy Williams_
2. Classification _Transportation Technologist_ .
3. Working Title _Field Supervisor_
4. Department _Department of Transportation_
5. Division or Bureau _Design_
6. Section or Unit _Location Section_
7. Work Location (County) _Statewide_
8. Name and title of immediate supervisor (person who assigns work) _Thomas W. Lewis  Chief of Party_
9. Position is: full-time [x], part-time [ ], permanent [x], temporary [ ].

10. SUPERVISION EXERCISED: Only complete this section if this position completes performance appraisals or actually participates in rating other employees. If the position functions as a lead worker and only assigns work, then list that responsibility on item 11B as a duty.

   a. Total number of employees that this position supervises: _3_
   b. Percentage of time spent on supervision and related duties: _100%_
   c. If this position DIRECTLY supervises 5 or less employees, give names and titles. If this position DIRECTLY supervises 5 or more employees give the number and official classification of each.

   | | |
   |---|---|
   | Channin Grantham | EA II/III |
   | Rodney Sanders | EA I |
   | Robbie Jones | EA I |

   d. As a supervisor, does this position: (Check the activities performed)

   | | | | |
   |---|---|---|---|
   | Make daily work assignments? | [x] | Interview and make hiring recommendations? | [ ] |
   | Approve and Disapprove leave requests? | [ ] | Recommend disciplinary actions? | x |
   | Reassign job duties on permanent basis? . | [ ] | Prepare and conduct performance appraisals? | [x] |

11. DESCRIPTION OF DUTIES PERFORMED:

   a. In one or two sentences, describe the major purpose of this position.

   To assign and oversee the daily operation of the Survey Crew.
   Being responsible for all calculations, equipment, and problem solving related to the survey work both in the field and in the office, must be completely knowledgeable on all equipment and mathematics involved in survey work.

DEFENDANT'S EXHIBIT

b. Duty Statement:   *(Complete Column "C" first)*
- In column A, indicate PERCENTAGE of time spent on each duty (total should not exceed 100%).
- In column B, rate the duties as to their IMPORTANCE.  VI-Very Important  I-Important  SI-Somewhat Important
- In column C, describe in detail each of the position's PERMANENT duties and responsibilities using your OWN words.

| A<br>% | B<br>rating | C<br>Description of Duties |
|---|---|---|
| 20 | VI | Instructs employees so that project productivity standards are established and met with each project being completed without valid delay. |
| 15 | VI | Assigns employees work so that all work is performed and productivity standards are met each day with each goal or project being completed without valid complaint or delay. |
| 15 | VI | Operates personal computer so that information is transferred, compiled, and provided to designers with minimal errors and without valid delay. |
| 15 | VI | Oversees the gathering of all field survey information so that all pertinent project data can be compiled and provided to designers with minimal errors and without valid delay. |
| 10 | VI | Compiles information so that field maps, utility maps, profile maps, and requires pertinent project data are provided to designers with minimal errors and without valid delay. |
| 10 | VI | Trains employees so they are afforded the opportunity to learn correct surveying methods, and are able to perform assigned tasks at a fully competent level with no valid complaints or delays. |
| 10 | VI | Communicates orally with individuals so that instructions are received, information is properly exchanged, and problems are solved with no valid complaints. |
| 5 | VI | Supervises and monitors employee work so that accurate performance appraisals are made and Discipline, if needed, is administered with no valid complaints from supervisors or employees. |

(Attach additional sheets if necessary)

12.  DECISION MAKING:  Give example(s) of the more important decisions made while performing the duties of this position.  Then list the possible effect of error(s) on the organization or general public.

| |
|---|
| Progress of Field work, crew assignments, calculation accuracy and tolerance as well as format for submission. |
| |
| |

13.  FINANCIAL RESPONSIBILITY:  If this position has responsibility for controlling and/or authorizing the expenditure of funds, please describe and indicate approximate amount controlled.

| |
|---|
| |
| |

14.  WORK GUIDELINES:  (Only include written guidelines)  List the specific laws, regulations, instructions, manuals, or procedures that must be followed in performing this job and describe how they are used.

| LIST ITEM | HOW USED |
|---|---|
| AASHTO Manual | Set controls and develop designs that meet standards |

| Equipment manual | Operating electronic level, H.P. 48, Geodimeter, and other electronic equipment |
|---|---|
| Guidelines for operation | Daily operational procedures for knowledge of the job, Governs data collection accuracy and tolerances as well as format for submission |
| Geometric Design of Highways and Streets | Guidelines and policies for State Survey |

How is this position's work reviewed? (Check one)
[ ] Supervisor reviews most or all of work while it is being done.
[X] Supervisor spot checks work as it is being done.
[ ] Supervisor reviews most or all of work after completion.
[ ] Supervisor spot checks work after completion.
[ ] Supervisor does not review work.
[ ] Other. (describe fully)

16.   WORK CONTACTS: With whom, outside of co-workers in this unit, must this position regularly come in contact?

| Who Contacted | How (Phone, in person, etc.) | Purpose of Contact | How Often |
|---|---|---|---|
| General public | Phone, in person, etc. | Survey | Monthly |
| Courthouse | Phone, in person, etc. | Survey | Monthly |
| Utility | Phone, in person, etc. | Survey | Often |
| Property Owners | Phone, in person, etc. | Survey | Often |

17.   EQUIPMENT USED: List any equipment used regularly. Give percent of time spent in operation of each. For vehicles and construction and maintenance equipment operated, indicate capacity, e.g., tonnage, yardage.

| Total Station | 20% | Electronic Level | 10% |
|---|---|---|---|
| Data Collector | 10% | Carry all | 5% |
| H.P. 48 Calculator | 10% | | |
| Digital Planimeter | 10% | | |

a.   Does this position require typing?
[ x ] NO
[ ] YES--Give % of time spent in typing [   ] %

b.   Does this position require taking shorthand?
[ x ] NO
[ ] YES--Give % of time spent in shorthand      %

ITEMS TO BE COMPLETED BY IMMEDIATE SUPERVISOR AND/OR APPOINTING AUTHORITY

18. Are the statements of the employee accurate and complete? (Indicate inaccuracies and incomplete items)
    YES

19. If duties listed are for reallocation of position, what additional and/or more complex duties have been added to this position to warrant reallocation. N/A

20. List any required licenses, registrations, certifications, or special requirements necessary to perform the job.
    N/A

21. Check below the type of supervision provided by the immediate supervisor to this position.
    [X ] CLOSE/HANDS ON    or    [ ] GENERAL/ADMINISTRATIVE

22. Additional information and comments (additional sheets may be attached, if necessary).

| Item # | The reason for this form 40 is to establish the duties of a newly promoted employee. |
|--------|-------------------------------------------------------------------------------------|
|        |                                                                                     |
|        |                                                                                     |
|        |                                                                                     |

VERIFICATION - READ CAREFULLY BEFORE SIGNING

I hereby certify that I have read the above and verify that it is , to the best of my knowledge, correct and accurate.
I understand that disciplinary action could be taken against anyone who knowingly provides false information.

_Leroy Willis_     05/25/05          242-6175
Signature of Incumbent    Date            Telephone # (ATTNET)

_Thomas W. Lewis_   5/25/05   Chief of Party   Trans. Tech. 242-6175
Signature of Supervisor   Date   Title/Classification   Telephone # (ATTNET)

_____ 06/17/05
Signature of Appointing Authority   Date        Telephone # (ATTNET)



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

Telephone: 334-242-6311      FAX: 334-262-8041



**Bob Riley**
Governor

J.D. McInnes
Transportation Director



DEFENDANT'S
EXHIBIT

August 15, 2005

## MEMORANDUM

To:      William F. Adams, Location Engineer

From:    Joe E. Jones
         Asst. Location Engineer, Field

Re:      Recommendation of Discipline

         Leroy Williams, Transportation Technologist (Probationary Employee)
         Field Supervisor
         SECOND REPRIMAND by SUPERVISOR
         Charge: Insubordination

On August 11, 2005, Leroy Williams and Thomas Lewis met with me in my office to discuss the above referenced. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Tommy had called me from the field on the morning of August 11, 2005 to inform me that he was about to charge Leroy with insubordination. He briefly explained the situation to me. I then instructed him to bring Leroy with him and meet with me at 3:00 p.m.

Please see the attached written reprimand for details that led up to this disciplinary action. Generally, the insubordination charge was made because Leroy angrily walked off from Tommy during a meeting where Tommy was counseling/instructing Leroy on work matters. Tommy warned Leroy twice not to walk away and even warned him the second time that if he did, he would be charged with insubordination. Leroy walked away anyway.

During the meeting in my office, Leroy confirmed that he did walk away. However, Leroy said he did so only because Tommy was being demeaning and "talking down to him". Tommy denies this. I advised Leroy that a subordinate never terminates a meeting that a supervisor has called or disregards a directive unless it is unlawful or is dangerous. I also advised him that he should have finished listening to the supervisor, done what he asked, and then file a report/complaint as to the demeaning treatment that he said he received. I advised him that the reaction from him was unacceptable and shows a blatant disregard for the supervisor's authority to the point of insubordination.

At one point in our meeting, Leroy said that Tommy is "constantly" harassing him and "will not let him do his job". According to Tommy, he has never harassed Leroy but has indeed corrected him, trained him, and advised him of the rules and how they are to be followed. Tommy says that Leroy is defensive and has become more and more argumentative when he tries to instruct/train him. Tommy said that Leroy has threatened to "get a lawyer" during one of their sessions.

When I asked Leroy if he was accurate when he said, " Tommy constantly harasses and demeans me ALL the time", he said he was accurate. Leroy even said that ALL of the crew members had asked him, "...why does Tommy harass you like this ALL the time?" I asked Leroy was he sure that ALL members had asked him this and he said yes. I instructed Tommy to have a meeting with his crew as soon as possible and see if this accusation was accurate. Tommy said he would and would make a full report. On this date, Tommy had that meeting, with Leroy present, and has advised me that NONE of the personnel confirmed they had ever witnessed his harassing or demeaning Leroy. Please see the attached report on the meeting.

According to Tommy, Leroy is not handling the responsibilities of Field Supervisor well at all (see counseling session on July 28, 2005). This includes things like; he is not knowledgeable enough to handle the technical issues; not doing well at supervising his personnel; not managing time well; not following established rules concerning tardiness and lunch/break times; not retaining instructions/knowledge that Tommy is offering him. As a result, he reports that progress is being severely hampered. Tommy reports that the field operations are severely lacking in production and that even the minimal data being collected is often faulty because Leroy is not following procedures laid down by Tommy. In addition, field operations are lagging because Leroy is not managing time well at all.

For example, Tommy said that on August 11 one of the things (just prior to the insubordination) he was attempting to counsel Leroy on was his use of work time and making sure that the work effort was being maximized. Tommy said Leroy was defensive and said he was working hard. Tommy was trying to relate some times that were recorded in the Total Station that showed the work history on certain dates. Leroy stated that he didn't know what the clock on the instrument showed but that he was getting to work in the field in a timely manner. However, Tommy has presented documents (see attached) that show a history of the FIRST "setup" recorded in the instrument for several days. Those times are compared to another crew which is working out of the same office, doing similar work on the same project within a ¼ mile of each other. The document shows that the other crew consistently had a recorded setup time of roughly an hour BEFORE Leroy's crew did each morning. The document seems to exhibit a pattern of Leroy NOT getting to the job site in a timely manner. Tommy advised me that Leroy doesn't agree with the exhibit. Tommy has assured me that he checked the clock on the instrument and it is accurate.

Summary:

Leroy is a probationary employee in the classification of Transportation Technologist and is performing that probationary period in the job title of Field Supervisor. He is roughly at the three-month point in the period. Leroy has several years experience in Location Surveying, including experience as a Data Editor within a crew. Because of this experience and the training/classes Leroy has taken advantage of, I expected him to be a much more effective Field Supervisor. This is not proving to be the case. Tommy is a Party Chief with many, many years of Location Surveying experience. I have confidence in his knowledge and skills in Location Surveying because he was a successful Field Supervisor for all those years. Based on those years of experience, Tommy is attempting to help Leroy develop good technical skills along with good procedures to maximize efforts in the field. In essence, here is a successful and experienced supervisor attempting to train, advise, and counsel a subordinate who is a probationary employee in training. At the same time, he is attempting to cause Leroy to focus more on the responsibility of setting a good example for HIS subordinates by following all rules and regulations.

Leroy was not expected to "be up and running" since he is in a probationary period. However, he was expected to perform well in the technical areas and expected to stay open to critique and instruction by the Party Chief in those areas where he is weakest. Once he receives this critique/instruction, I would expect him to note it and react to it by conforming and by following those instructions. It seems, though, that Leroy takes offence to Tommy's critique and to his tutoring. It is apparent that Leroy interprets this as harassment. It seems to me that Leroy should concentrate more on being more receptive to learning all he can from Tommy's vast experience as a Location Surveyor (including all aspects of the job), as a long time Field Supervisor, and now as a Party Chief. Being argumentative and defensive when his supervisor is trying to counsel and train him is counterproductive and uncalled for. For some reason, Leroy seems to think that Tommy is being harassing when, according to Tommy, he is only trying to help Leroy learn how

to do the job in an accurate and timely manner with minimal effort. This seems like a reasonable approach to me.

Leroy has broken the rules pertaining to tardiness for which he received a written reprimand. Now, he has received a written reprimand for insubordination: all within the first three months of his probationary period. It seems that Leroy is resisting all supervision by Tommy and is ignoring the rules in place for things such as those for tardiness and other rules. According to Tommy, Leroy even was argumentative about the lunch hour and how it is to be handled. All of this is unacceptable for ANY employee of any job title but is surely not acceptable from a supervisor who needs to be setting the example for his subordinates. All other personnel are held to the same standards of following rules and for being cooperative. I see no reason for Leroy to be the exception. The rules and regulations set forth by State Personnel, ALDOT, and the Location Section seem to be fair to me. I don't consider the rules unreasonable and see no reason any employee would have trouble following them.

It is now my conclusion that Leroy has not represented himself well in his job title of Field Supervisor. However, his performance is fairly secondary to his seemingly hostile attitude of assuming a supervisor is being harassing when they are giving instructions and directives. Usually, this type attitude might be expected from a new employee who is making an adjustment to our rules and regulations and to our work habits at the ALDOT. Leroy, however, has worked several years in our survey crews and should be well aware of our rules and regulations. To be argumentative and insubordinate to his supervisor is just not acceptable. This attitude along with his weak job performance is, according to Tommy, causing a serious lack of progress on a job that has a very important timeline to be met. The evidence attached concerning the "late morning" setups recorded in the instrument and then the unsatisfactory response to Tommy's instructions seem to bear Tommy's feelings out. The reprimands for tardiness and for insubordination seem to make a case that this employee is not meeting standards at this point.

Tommy says in his written reprimand that he is not sure how severe the punishment should be. However, he says that he would recommend at least a suspension. I concur in that a suspension should be the minimum disciplinary result. I would suggest, however, that serious consideration be given to other choices. Since Leroy is a probationary employee and is being judged on his job performance, on his abilities to follow directives, and on his sense of cooperation, his successes and failures are magnified even more. It is during this time that the Department is depending on supervisors to judge whether or not a probationary employee meets or does not meet standards. It is then the supervisor(s) who should make a judgment based on good information and evidence, and then present a recommendation that is beneficial and reasonable to the Department.

Thus, it is my recommendation that Leroy not be allowed to continue in the Transportation Technologist classification. The reports given to me by his supervisor, Tommy Lewis, show that he is proving less than desirable as a Field Supervisor for which he was hired. If Leroy is unwilling to react positively to discipline, training, corrective counseling, or warnings, then his tenure in this probationary period should be stopped now.





# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311     FAX: 334-262-8041*

**Bob Riley**
*Governor*

*J.D. McInnes*
*Transportation Director*

August 15, 2005

## MEMORANDUM

To:     William F. Adams, Location Engineer

From:   Joe E. Jones
        Asst. Location Engineer, Field

Re:     Recommendation of Discipline

        Leroy Williams, Transportation Technologist (Probationary Employee)
        Field Supervisor
        SECOND REPRIMAND by SUPERVISOR
        Charge: Insubordination

On August 11, 2005, Leroy Williams and Thomas Lewis met with me in my office to discuss the above referenced. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Tommy had called me from the field on the morning of August 11, 2005 to inform me that he was about to charge Leroy with insubordination. He briefly explained the situation to me. I then instructed him to bring Leroy with him and meet with me at 3:00 p.m.

Please see the attached written reprimand for details that led up to this disciplinary action. Generally, the insubordination charge was made because Leroy angrily walked off from Tommy during a meeting where Tommy was counseling/instructing Leroy on work matters. Tommy warned Leroy twice not to walk away and even warned him the second time that if he did, he would be charged with insubordination. Leroy walked away anyway.

During the meeting in my office, Leroy confirmed that he did walk away. However, Leroy said he did so only because Tommy was being demeaning and "talking down to him". Tommy denies this. I advised Leroy that a subordinate never terminates a meeting that a supervisor has called or disregards a directive unless it is unlawful or is dangerous. I also advised him that he should have finished listening to the supervisor, done what he asked, and then file a report/complaint as to the demeaning treatment that he said he received. I advised him that the reaction from him was unacceptable and shows a blatant disregard for the supervisor's authority to the point of insubordination.

At one point in our meeting, Leroy said that Tommy is "constantly" harassing him and "will not let him do his job". According to Tommy, he has never harassed Leroy but has indeed corrected him, trained him, and advised him of the rules and how they are to be followed. Tommy says that Leroy is defensive and has become more and more argumentative when he tries to instruct/train him. Tommy said that Leroy has threatened to "get a lawyer" during one of their sessions.

When I asked Leroy if he was accurate when he said, " Tommy constantly harasses and demeans me ALL the time", he said he was accurate. Leroy even said that ALL of the crew members had asked him, "…why does Tommy harass you like this ALL the time?" I asked Leroy was he sure that ALL members had asked him this and he said yes. I instructed Tommy to have a meeting with his crew as soon as possible and see if this accusation was accurate. Tommy said he would and would make a full report. On this date, Tommy had that meeting, with Leroy present, and has advised me that NONE of the personnel confirmed they had ever witnessed his harassing or demeaning Leroy. Please see the attached report on the meeting.

According to Tommy, Leroy is not handling the responsibilities of Field Supervisor well at all (see counseling session on July 28, 2005). This includes things like: he is not knowledgeable enough to handle the technical issues; not doing well at supervising his personnel; not managing time well; not following established rules concerning tardiness and lunch/break times; not retaining instructions/knowledge that Tommy is offering him. As a result, he reports that progress is being severely hampered. Tommy reports that the field operations are severely lacking in production and that even the minimal data being collected is often faulty because Leroy is not following procedures laid down by Tommy. In addition, field operations are lagging because Leroy is not managing time well at all.

For example, Tommy said that on August 11 one of the things (just prior to the insubordination) he was attempting to counsel Leroy on was his use of work time and making sure that the work effort was being maximized. Tommy said Leroy was defensive and said he was working hard. Tommy was trying to relate some times that were recorded in the Total Station that showed the work history on certain dates. Leroy stated that he didn't know what the clock on the instrument showed but that he was getting to work in the field in a timely manner. However, Tommy has presented documents (see attached) that show a history of the FIRST "setup" recorded in the instrument for several days. Those times are compared to another crew which is working out of the same office, doing similar work on the same project within a ¼ mile of each other. The document shows that the other crew consistently had a recorded setup time of roughly an hour BEFORE Leroy's crew did each morning. The document seems to exhibit a pattern of Leroy NOT getting to the job site in a timely manner. Tommy advised me that Leroy doesn't agree with the exhibit. Tommy has assured me that he checked the clock on the instrument and it is accurate.

Summary:

Leroy is a probationary employee in the classification of Transportation Technologist and is performing that probationary period in the job title of Field Supervisor. He is roughly at the three-month point in the period. Leroy has several years experience in Location Surveying, including experience as a Data Editor within a crew. Because of this experience and the training/classes Leroy has taken advantage of, I expected him to be a much more effective Field Supervisor. This is not proving to be the case. Tommy is a Party Chief with many, many years of Location Surveying experience. I have confidence in his knowledge and skills in Location Surveying because he was a successful Field Supervisor for all those years. Based on those years of experience, Tommy is attempting to help Leroy develop good technical skills along with good procedures to maximize efforts in the field. In essence, here is a successful and experienced supervisor attempting to train, advise, and counsel a subordinate who is a probationary employee in training. At the same time, he is attempting to cause Leroy to focus more on the responsibility of setting a good example for HIS subordinates by following all rules and regulations.

Leroy was not expected to "be up and running" since he is in a probationary period. However, he was expected to perform well in the technical areas and expected to stay open to critique and instruction by the Party Chief in those areas where he is weakest. Once he receives this critique/instruction, I would expect him to note it and react to it by conforming and by following those instructions. It seems, though, that Leroy takes offence to Tommy's critique and to his tutoring. It is apparent that Leroy interprets this as harassment. It seems to me that Leroy should concentrate more on being more receptive to learning all he can from Tommy's vast experience as a Location Surveyor (including all aspects of the job), as a long time Field Supervisor, and now as a Party Chief. Being argumentative and defensive when his supervisor is trying to counsel and train him is counterproductive and uncalled for. For some reason, Leroy seems to think that Tommy is being harassing when, according to Tommy, he is only trying to help Leroy learn how

to do the job in an accurate and timely manner with minimal effort. This seems like a reasonable approach to me.

Leroy has broken the rules pertaining to tardiness for which he received a written reprimand. Now, he has received a written reprimand for insubordination: all within the first three months of his probationary period. It seems that Leroy is resisting all supervision by Tommy and is ignoring the rules in place for things such as those for tardiness and other rules. According to Tommy, Leroy even was argumentative about the lunch hour and how it is to be handled. All of this is unacceptable for ANY employee of any job title but is surely not acceptable from a supervisor who needs to be setting the example for his subordinates. All other personnel are held to the same standards of following rules and for being cooperative. I see no reason for Leroy to be the exception. The rules and regulations set forth by State Personnel, ALDOT, and the Location Section seem to be fair to me. I don't consider the rules unreasonable and see no reason any employee would have trouble following them.

It is now my conclusion that Leroy has not represented himself well in his job title of Field Supervisor. However, his performance is fairly secondary to his seemingly hostile attitude of assuming a supervisor is being harassing when they are giving instructions and directives. Usually, this type attitude might be expected from a new employee who is making an adjustment to our rules and regulations and to our work habits at the ALDOT. Leroy, however, has worked several years in our survey crews and should be well aware of our rules and regulations. To be argumentative and insubordinate to his supervisor is just not acceptable. This attitude along with his weak job performance is, according to Tommy, causing a serious lack of progress on a job that has a very important timeline to be met. The evidence attached concerning the "late morning" setups recorded in the instrument and then the unsatisfactory response to Tommy's instructions seem to bear Tommy's feelings out. The reprimands for tardiness and for insubordination seem to make a case that this employee is not meeting standards at this point.

Tommy says in his written reprimand that he is not sure how severe the punishment should be. However, he says that he would recommend at least a suspension. I concur in that a suspension should be the minimum disciplinary result. I would suggest, however, that serious consideration be given to other choices. Since Leroy is a probationary employee and is being judged on his job performance, on his abilities to follow directives, and on his sense of cooperation, his successes and failures are magnified even more. It is during this time that the Department is depending on supervisors to judge whether or not a probationary employee meets or does not meet standards. It is then the supervisor(s) who should make a judgment based on good information and evidence, and then present a recommendation that is beneficial and reasonable to the Department.

Thus, it is my recommendation that Leroy not be allowed to continue in the Transportation Technologist classification. The reports given to me by his supervisor, Tommy Lewis, show that he is proving less than desirable as a Field Supervisor for which he was hired. If Leroy is unwilling to react positively to discipline, training, corrective counseling, or warnings, then his tenure in this probationary period should be stopped now.



# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311       FAX: 334-262-8041*



*Bob Riley*
*Governor*

*J.D. McInnes*
*Transportation Director*

**July 28, 2005**

# MEMORANDUM

Counseling Session

Leroy Williams, Transportation Technologist
Field Supervisor

Re:     Probationary Performance Concerns

On this date, a counseling session was held with Leroy Williams, referenced above. Also present was Mr. Thomas Lewis, Party Chief, who is Leroy's immediate supervisor. My concerns involved several areas that were well documented by Mr. Lewis (see attached). I felt it necessary to immediately discuss those concerns with Leroy so that he could concentrate on improving in those areas. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Leroy was promoted to Transportation Technician as a Field Supervisor and reported to Tommy on May 16, 2005. Leroy is presently being assessed during his six month probationary period and is now at his second month in the classification/job. Tommy has been keeping me informed on Leroy's progress or lack thereof. After two months, it has become obvious to me that Leroy is lacking in many areas as a Field Supervisor and this has me concerned. The following is a summation of the meeting and of the notes used for the session:

**Working Skills**

Leroy shows a definite weakness in math skills as related to surveying. For example, he was unable to calculate angles, azimuths until Tommy showed him how. Leroy told me he now knows how and can do them easily. My concern is that he writes all these things down as he is taught because he may forget. Since he has had high school geometry, three courses in geometry through the ALDOT, one course in trigonometry through the ALDOT, and several years in Location Surveying, I would have assumed that he would have garnered these skills necessary to do the job. I advised Leroy that he had to concentrate on improving these skills and that he should ask Tommy for hands on training. I also advised Leroy to take good notes and KEEP them to refer to so that he is not susceptible to losing the skill through a lack of good memory. We cannot have a crew standing around for an extended time because Leroy is spending too much time doing a calculation or is wasting time because Leroy doesn't know how to do a needed calculation.

He shows a lack of skills concerning checking his work in the field to ensure accuracy. Tommy had to instruct him several times about this and even to the point of demanding that he do the "checks". Leroy had been argumentative with Tommy concerning this directive which is unacceptable. There have been errors made that have caused a waste of time already because Leroy did not do as he was told. This is a common knowledge skill that Leroy should have learned through the years he has worked in a crew. I advised Leroy that he is being held responsible for doing the work accurately and timely….and for sure, to check his work if for no other reason than his supervisor told him to. I advised him to glean knowledge and

direction from Tommy on all work because Tommy has many years of experience as a Field Supervisor and is one who has a vast knowledge of Location Surveying procedures.

He shows a severe lack of skills in working with Terramodel. Even though this is not a highly required skill to be a good Field Supervisor, it is desirable. Since Leroy had been a Data Editor for over a year, I would have assumed that he had a pretty good working knowledge of Terramodel and could build basic alignments and/or retrieve data as needed. According to Tommy, this is not the case. Leroy had advised Tommy on his first day that he knew Terramodel and had a good understanding. Leroy noted on his resume and his application that he worked in the Data Editor job for a good while. I have advised Leroy to ask either Tommy or the Data Editor in the crew to show/teach him what he needs to know to work efficiently in the program….and to be able to find and retrieve data as needed without delaying the work process. I again advised making good notes and hanging on to them for reference in the future.

From discussions with Tommy over the last two months, I am concerned that Leroy does not have a really good grasp of what is required on a survey, even on a daily basis. Once again, Leroy should have accumulated enough knowledge and experience over his years in a survey crew to make him highly efficient and skilled and knowledgeable about what is needed to complete a survey. This is not the case according to the overall operations that Tommy has been reporting to me. Tommy says he is having to work late many nights just to catch up on his work because he is spending so much time teaching/showing Leroy how and what to do. Also, Tommy says he is spending too much time checking and correcting errors made in the field due to bad procedures. Again, Leroy told me in his interview that he was a better qualified candidate for the job because of his experience in Location Surveying AND because of the training that had been offered by the ALDOT. Leroy is not exhibiting the qualities that I expected from him because of his experience he talked about. I advised Leroy that the lack of knowledge pertaining to what is needed on a daily basis is a surprise to me after having interviewed him and having read his resume. I told him he needed to concentrate really hard on getting a better feel for what is required by asking questions and communicating closely with Tommy and the Data Editor. If he will do this, progress will not be hampered due to "floundering" caused by his ineptness. Once again, I advised Leroy to take good notes and then hang on to them for reference.

Leroy shows a lack of management skills in that he cannot effectively supervise his subordinates. Leroy stated to Tommy that he was not getting as much work done as he could "…because his people didn't know what to do." I told Leroy that correcting this problem was his job. As a field supervisor, and according to his form 40, one of his tasks is to train subordinates so the surveys are done efficiently and accurately and without delay. I advised Leroy that he must separate himself from the "worker" mentality and become more aggressive in the supervision and training aspect of the job. If the subordinate doesn't know what to do, then he must show him. If the subordinate doesn't perform well or is "dragging around" then he must approach that individual and square him away. One of the subordinates even complained to Tommy that they couldn't get Leroy to explain things to them. That subordinate then would have to ask somebody else how to do a certain chore. I advised Leroy to be focused on his subordinates' weaknesses and do all that he can to teach them. The very least Leroy should do is make sure that he communicates clearly to them what it is he wants them to do at any given time. After a while, they too will be expected to catch on and do their work without specific and continuous directives when performing redundant tasks.

**Doesn't Follow Directives**

This concerns me greatly. Tommy noted several directives that he had given Leroy at different times and that Leroy had ignored them or did not react to them. (see attachments). This is not acceptable. I informed Leroy that if Tommy gives a directive and it is not illegal or harmful, then he must do his best to do exactly what was told him. If he ignores or simply does not do what the supervisor asks or directs, then he actually is being insubordinate. I made sure Leroy understood that insubordination is one of those things that can cause termination on the FIRST offence. I asked Leroy if he would allow a subordinate to ignore or disobey a directive. He answered "No". He then seemed to understand that he should be then cooperative with Tommy and do as he directed EVERY time. I told Leroy that if he did not agree with the directive, not to ignore it, but go ahead and do it. THEN, while alone with Tommy, voice his suggestion that the task be done a different way. Tommy may not change his mind but then again, he might.

Example: Leroy said he did not hear one of the directives to meet at a motel on a particular morning (see attachment). Since ALL other crew members heard the directive, and even the man sitting beside Leroy heard the directive, it is a mystery to me how he did not hear it as well. It seems to me that Leroy simply wanted to do what HE wanted to do and ignored the directive. This is not acceptable. I advised Leroy that he must always be cooperative and do what he is told. Since he is the Field Supervisor, he must be the FIRST to set the example for the rest. I also told Leroy that it is his responsibility to be informed EVERY day as to matters such as this. It is a shame that all subordinates reported as instructed and Leroy, the Field Supervisor, did not.

**Tardiness**

We discussed all FOUR times Leroy has been noted as arriving for work late by Tommy. Leroy did not deny that he was late but only that he was not as late as Tommy had noted. I advised Leroy that the amount of time he is late is not the issue but, rather, the fact that he was late is the issue. First, his being the second in charge of a crew as a supervisor demands that he set the example by NEVER being late and certainly not being late often. I made sure he understood that work rules are to be adhered to without question. Being tardy is not acceptable and will be dealt with swiftly if a pattern develops…which in Leroy's case, the pattern has developed. Secondly, since every crew works as a "unit", it is imperative that all members be at work on time or the whole crew suffers.

Since Leroy had been warned THREE previous times about tardiness infractions, Tommy gave a written reprimand the fourth time when Leroy arrived at the office late on Monday morning (see attached reprimand for details). However, because Leroy stated that the allotted drive time from Montgomery to Tuscaloosa is not a reasonable drive time, I have asked Tommy to withhold the reprimand UNTIL he personally makes the drive himself under the same conditions that Leroy made. Leroy says the drive takes 2 hours and 25 minutes if you drive the speed limit. The difference in the drive time allowed and what Leroy says it takes is roughly 25 minutes. The allotted time is two hours but Tommy tells me the crew is always there on Mondays around 6:40 to 6:50 a.m. If this is true, then according to Leroy, the crew has to be driving at a high rate of speed and this is not acceptable. If Tommy proves the drive to be less than two hours under the same conditions that Leroy describes, then the reprimand stands. If the drive is proven to take more than two hours, then I recommended to Tommy that he rescind the reprimand. HOWEVER, I advised Leroy that the first three warnings will remain on record and that the next infraction of tardiness WILL RESULT in a reprimand. He said he understood and seemed to have no problem with that approach.

What causes concern for me is that this "two hour" drive time has been in place for MORE than a year now and was put in place by the previous Party Chief, Joe King. Not one time has any individual in that crew ever mentioned that the drive time was not long enough. We will assess this carefully as Leroy's career could be adversely affected if the two-hour drive time is accurate. A reprimand is not given lightly because it is such a negative on one's grade sheet. An addendum will attached on the results of the drive/test that Tommy has been instructed to do.

Within this entire subject is an included fact that Leroy was driving his personal vehicle those times he was late. I made sure he understood that if he chooses to drive his private vehicle (we furnish transportation in the Carryall), then he is obligated to arrive at the allotted time and for sure BEFORE the carryall. He said he understood. I also advised him that his privilege of driving his private vehicle could be revoked if he persisted in being late while driving his own vehicle. By his traveling in the Carryall, we can assure that he will arrive on time and his problem will be should be solved.

I warned Leroy that arriving at the parking lot on Mondays at 5:00 a.m. is mandatory and is not debatable. If a person arrives later than 5:00 a.m., then he is late. If the time for arrival at the Field Office is set at 7:00 a.m. by the Party Chief, and it is an accurate allotment, then if one arrives AFTER 7:00 a.m., he is late. Those are the rules and they are not up for question. He said he understood.

SUMMARY:

After having talked with Leroy as summarized above, I feel confident he now understands that Tommy and I are concerned about his lack of performance and his weaknesses in certain areas. One of the main things that I repeatedly suggested that he do concerning retaining training that Tommy provides, is to take good notes and refer back to them as needed. I feel confident that he now understands fully what is expected and how he needs to go about improving. I assured him that Tommy will be right there to help him with areas where he is weak. However, Leroy now understands that he is ultimately responsible for his performance, for his retention of knowledge. He is ultimately responsible for doing his best to at least meet standards required to earn the right to become a permanent employee in the Transportation Technologist classification at the end of the six month probationary period. I told Leroy that his "mid appraisal" (three months) was approaching in about a month and that we would reassess at that time. I told him that we would be meeting often if Tommy did not report vast improvements in all areas. He said he understood. I assured Leroy that it is our desire to see him improve and we will try our best to help him do that.

NOTE: As noted above, I am recommending to Tommy to delay submitting the written reprimand pertaining to tardiness until he makes the drive directly from Montgomery to Tuscaloosa. He is to leave at 5:00 a.m. sharp and be very conscious to drive the speed limit at all times and note the time it takes to make the trip. If the time is more than the allotted two hours, then the reprimand will be rescinded. If the drive proves to fall within the two hours, then the reprimand will become an official disciplinary action on Leroy Williams. Leroy had been explained this during the counseling session and he agreed to this approach.


Joe E. Jones, Asst. Location Engineer, Field


Witness:

Thomas L. Lewis, Party Chief


Cc:          Mr. Don Arkle
             Mr. William Adams
             Mr. Thomas Lewis



# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311      FAX: 334-262-8041*



*Bob Riley*
*Governor*

*J.D. McInnes*
*Transportation Director*

August 4, 2005

# MEMORANDUM

| | |
|---|---|
| To: | Leroy Williams<br>Field Supervisor |
| From: | Joe E. Jones,<br>Asst. Location Engineer, Field |
| Re: | Drive Time from Montgomery Office to Lewis Crew Tuscaloosa Field Office |
| Purpose: | Verify drive time related to Leroy Williams Written Reprimand |

In my counseling session with you dated July 28, 2005, I discussed with you the written reprimand given you by Mr. Thomas Lewis, Party Chief. Mr. Lewis, your immediate supervisor, had instigated the reprimand due to excessive tardiness. The fourth tardy involved you arriving late on a Monday morning after driving from Montgomery to Tuscaloosa. You stated that it took 2 hours and 25 minutes to make the drive which would make the reporting time 7:25 a.m. I directed Mr. Lewis to make this drive himself, under the same conditions you described (time and speed limit) and report back to me. If the drive proved to be more than the allotted 2 hours, I would instruct Mr. Lewis to rescind the reprimand. However, if the drive proved to be within the allotted 2 hours, the reprimand would stand. Below is the result of the drive made by Mr. Lewis:

On August 2, 2005, Tommy drove from the Montgomery office to his Tuscaloosa office. He left promptly at 5:00 a.m. and was consciously driving the posted speed limit on the different roads along the route. Tommy noted his trip as follows:

"I left Montgomery this morning at 5:00 a.m. stopped one time at the rest area for about 5 minutes and arrived here at the office in Tuscaloosa at 6:55 a.m. This was driving the speed limit all the way. I set the cruse at 55 mph when I got just north of Prattville and when I hit the 4 lane in Centerville I set it at 65 mph. The total distance is 106.5 miles form Office to Office. This is an average speed of 55.55 mph. In no way did I exceed the speed limit."

Based on this driving time test and his report, I am now advising Mr. Lewis to proceed with the written reprimand by submitting it as an official disciplinary action on tardiness. You have already been counseled by Mr. Lewis on this matter and advised of the charge. I have advised you, as noted in my counseling report, about the consequences of being tardy and went over the rules pertaining to the matter. I also advised you that this would affect your grade sheet because it would cause a seven point deduction in your upcoming grade on your Employee Performance Appraisal.

| | |
|---|---|
| Cc: | Mr. Don Arkle<br>Mr. William Adams<br>Mr. Thomas Lewis |

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LEROY WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **2:06-cv-658-ID** |
| | ) |
| **STATE OF ALABAMA DEPARTMENT** | ) |
| **OF TRANSPORTATION and JOE** | ) |
| **McINNES, in his official capacity** | ) |
| **as Director of the State of Alabama** | ) |
| **Department of Transportation** | ) |
| | ) |
| **Defendants.** | ) |

## AFFIDAVIT OF THOMAS W. LEWIS

Before me, the undersigned notary public in and for the State of Alabama at

Large, this day personally appeared Thomas W. Lewis, who being known to me and being by me

first duly sworn, deposes and says on oath as follows:

My name is Thomas W. Lewis, I am a resident citizen of the State of Alabama and am

over the age of nineteen (19) years.

I am presently an employee of the Alabama Department of Transportation (ALDOT) and

was so employed at all times relevant to this lawsuit. At times relevant to this lawsuit I was

assigned to the Design Bureau as a Transportation Technician and served as a Chief of Party.

Mr. Williams came under my direct supervision on, to-wit, May 16, 2005, after his

promotion to Transportation Technologist. As a Transportation Technologist (also referred to as

Field Supervisor), Mr. Williams was responsible for supervising a work crew comprised of

Engineering Assistants, the position from which he had been promoted. The day that Mr.

Williams reported to my office, we discussed the nature and responsibilities of his job, the scope

of his authority, his work hours and the importance of being on time for the job. I discussed with

Mr. Williams his prior experience with the computer and he advised me that he knew a good bit about TerraModel, a program utilized by ALDOT.

Soon after he was assigned to me, I began notice deficiencies in Mr. Williams work. On May 17, 2005, I found that Mr. Williams had had a problem the previous day and counseled him to check his work to prevent errors. On May 24th I had showed Mr. Williams a new project and what work needed to be done on it. In checking the files on the project, we detected an error, Mr. Williams had been instructed on what was required but had failed to do as instructed. On June 2, 2005 I had to show Mr. Williams how to add and subtract angles and how to convert a bearing to an azimuth. On June 15, 2005, I had to tell Mr. Williams to check his work again to insure that he had sufficient information to perform the task.On July 6, 2005, I had to show Mr. Williams how to draw a line in Terra Model, how to draw points by station offset and how to load image files into the model. On July 18, 2005, I had to show Mr. Williams how to write out a points file. On July 19, 2005, I had to tell Mr. Williams to check his work after he had run approximately 3000 feet of traverse without checking the established reference point. On July 27, 2005, I had to explain to Mr. Williams how to draw an alignment up on the computer; the same problem that I had instructed him on July 6, 2005. The problems described above involve basic skills that an employee with Mr. Williams' experience should have possessed. On occasions, Mr. Williams did not carry out the instructions that I had given him.See Exhibit 1

Mr. Williams displayed an inability to supervise his crew and to insure that the crew carried out the tasks assigned to them. See Exhibit 1

On May 31, 2005, Mr. Williams arrived late for work and was counseled about arriving on time for work.See Exhibit 1.

On June 1, 2005, Mr. Williams failed to report to the location where he had been instructed to meet and failed to notify me as to his whereabouts. I verbally warned Mr. Williams regarding his failure to follow my instructions. See Exhibit 1

On June 3, 2005, Mr. Williams allowed his crew to leave work early, despite having been instructed that he did not have the authority to do so. I verbally warned Mr. Williams regarding his lack of authority to allow the crew to leave early.See Exhibit 1

On June 20, 2005, Mr. Williams was late for work. Again, I verbally warned Mr. Williams about the importance to be at work on time.See Exhibit 1

On July 25, 2005, Mr. Williams was late for work. At this point, I prepared a reprimand for repeated tardiness as this was the fourth time that Mr. Williams had been tardy for work and I determined that a pattern was developing . (See Exhibit 2).

Prior to issuing the reprimand, a counseling session was conducted by Joe Jones, Assistant Location Engineer, at which time all of the work deficiencies that I had found with Mr. Williams were discussed. (See Exhibit 3). One of the issues discussed was the latest tardiness which involved the travel time between our Montgomery office and our work location in Tuscaloosa.  A two hour drive time had been established prior to my assignment to the position of Chief of Party and there had been no problems with employees making the drive in the required time. Mr. Williams insisted that the drive took him two hours and twenty-five minutes. Mr. Jones withheld the reprimand, but instructed me to make the drive, observing speed limits and report my time to him. On August 2, 2005 I left the Montgomery office at 5:00 a.m. and consciously observed the speed limits as posted arriving at the Tuscaloosa office at 6:55 a.m. I stopped at the rest area for approximately five minutes. I reported my findings to Mr. Jones. See Exhibit 4. Mr. Jones instructed me to proceed with the reprimand, which I did.

3

On August 11, 2005, I was reviewing the work done in the field on Wednesday, August 10, 2005 and became concerned that little progress had been made that day. I noted that Mr. Williams' crew had been late in getting set up that date and that insufficient field data had been collected. I went to Mr. Williams work site and called him aside to discuss this matter with him. I also discussed time management with him, as well as how he was taking his lunch breaks. Mr. Williams became argumentative with me and told me I was being picky and was harassing him. He then told me that if I didn't have anything else to say, he was going back to work. He then turned and started walking away. I told him that I was not finished. When I resumed the discussion, Mr. Williams again got up, accused me of harassing him and told me he was going to have to talk to someone else. He again began to walk away at which time I told him that if he walked away, I would write him up for insubordination. Mr. Williams ignored my warning, and walked away. This was unacceptable conduct by a subordinate so, I issued Mr. Williams a reprimand for insubordination See Exhibit 5.

Mr. Williams alleges that I belittled and harassed him on account of his race. I deny these allegations. My dealings with Mr. Williams were strictly professional. Mr. Williams performance on the job, as a supervisor, were deficient. As a Transportation Technologist, he lacked basic skills that he should have acquired during his tenure as an Engineering Associate II/III; his responsibility as a Transportation Technogist/Field Supervisor was to supervise EA's

As stated above, Mr. Williams had been tardy on several occasions which I felt was unacceptable for a Field Supervisor, particularly during his probationary period. Likewise, his failure to follow instructions and his insubordinate conduct toward me was unacceptable.

As I also understand, Mr. Williams complains that he was retaliated against for having filed a grievance complaining about his being discriminated against. I had no knowledge of any grievance that Mr. Williams had filed prior or during the time that I supervised him.

FURTHER THE AFFIANT SAITH NOT.

I signed this affidavit on _3/o/_, 2007 in Montgomery, Alabama.


_____
Thomas W. Lewis

SWORN TO AND SUBSCRIBED before me on this _1st_ day of _March_, 2007.

_____
Notary Public, State at Large

My Commission Expires: _9/18/2007_

Mr. Leroy Williams
Work Performance
Counseling Session
July 28, 2005



A    *Not Following directions*

1 May 16th, 2005, the first day you reported to this office we all sat down and discussed that you, as a supervisor, do not have the authority to let people off with out my approval. We also discussed work times, and the importance of not being late.

  a. Work Times

    1. On May 16th, we discussed what the work times were:
      5:00 a.m. to 5:00 p.m. Monday
      7:00 a.m. to 5:00 p.m. Tuesday and Wednesday
      7:00 a.m. to 7:00 p.m. Thursday.

  b. May 24th I took you out and showed you the new project and what work we need to do, I explained when working around the Interchanges you should not set radial points with out checking them for accuracy. When we started checking our files an err was found. After going back checking I realized that you had set radial points to work off of. I told you go run a closure loop on the points, not once but twice before you did it the way I had told you to

  c. Tuesday, May 31st you came into the parking lot in Montgomery 5 minutes late. On this same date, I instructed you to meet with me in the parking lot of the motel at 7 a.m.

  d. Wednesday, June 1st you were not at the motel parking lot, where I had instructed you to be the day before. You took this upon yourself not to follow my instructions and you did not notify me of this. You informed Rodney instead of your supervisor. I do not know where you were, so as far as I'm concerned you were late that day also.

  e. Thursday, ~~July 28,~~[Th] you let everyone go at 1:00 p.m. with out my approval, then you told me you let them go at 2:00 p.m. This is insubordination.

    June 30

written by
T. Lewis

B.  *Checking you work*
    I have told you time and time again time again about checking
    your field work. It's the only way you can be efficient. All of this
    could still fall under not following directives

1   On May 17th, I found out you had had a problem the day before. I
    told you needed to be checking your work to keep things like that
    from happening.

2.  June 15th, I had to tell you to check your work again to see if you
    had the sufficient information that was needed to cover the area in
    question.. I explained to you that all you had to do was load the
    information that you had gathered and see if it covered the area
    properly.

3.  July 19th, once again I had to tell you to check your work after
    running some 3,000 ft of traverse without checking a previously
    established point. I explained that all you have to do is load one of
    the previously established coordinates and stake it out to find a
    point and see how much you have missed it. I have provided you
    with a laptop to keep in the truck to do this with. You have the
    files on the computer with this information. This is a tool that you
    need to use. Even as I was telling you this, you were telling me the
    information you were gathering was good " it looks good when I
    downloaded it. It must be good. After I made you go back and
    check the traverse what did you find? You found you had over a 1
    foot err. Now you have spent almost 2 days trying to find the err.
    This is time wasted.

C.  *Working Skills*
    g. Computer Skills
1.  May 16th, the day that you first started on this job, I asked you what
    kind of experience you had with the computer.   You stated that you
    had been a data editor and you knew a good bit about terra model.

2.  July 6th, I had to give you a lesson on how to draw a line in  terra
    Model and how to draw points by station offset.  I have also had to
    show you how to load image files into model.  These are basic
    skills in model that one of your standing should already know.

3.  Monday, July 18th  I had to show you how to write out a points file
    in a station offset format, but yet you told me that you were a data
    editor and you knew a good bit about the program.

4.  July 27th, I had to explain how to draw an alignment up on the
    computer. This is the same thing I had to show you back on
    July 6th. How to draw a line. The problem I saw on this day was.
    You had the information to draw the alignment with, but you did
    not know how to retrieve the information. The Terramodel file you

*written*
*T. Lewis*

had open had a layer *Isolated* hiding all other layers with the information you were looking for. Evening after working with this file many times you did not recognize the information you had worked with in the past was not showing up.

h. Math skills
   1. On June 2nd , I had to show you how to add and subtract angles. I also had to show you how to convert a bearing to an azimuth. I actually had to draw you a diagram to show you how to do this.

i. Managing you workers
   1. You have come to me and said the reason you don't get as much work done as I think you should is because of the people you supervise. You say that they don't know what to do. You said to me that the men should know they need to cut the stub down low, so you think you don't have to tell them to do this. I tell you its not that they don't know this, it's that they are not going to do it unless you tell them to. It is easier to cut them up high. If you can't the worker's that you supervise to get the job done, then you are not doing your job as a supervisor. You can't take this personally it's a job and it has to be done correctly. It is your job to tell them to cut the stub down low. Don't assume that they should already know to do this. At some point you have to let these people know you mean business.

j. Training your workers
   1. I have been confronted by one of your subordinates that they can't go to you and ask how to do something. They say that you want take the time to explain it to them where they can understand it. Now this employee has to go to some one else to learn the task. There again training employees is a skill you have to have in order to be a supervisor.

l. Prejudges
   a. Accusing me of being prejudges will not be tolerated.
   b. Nothing I have said to you has been in a prejudice manner.
   c. We all must learn to communicate in a professional manner and that is the way I was speaking to you.
   e. When you are a supervisor, you must learn how to speak to your employees and your employers, especially those that are over you. You are to treat your superiors just as what they are, supervisor.

*written by J. Lee*

    f.  Telling me the reason we are in a racial lawsuit is because we did not train employees is not an appropriate way to talk to your superior and it will not be tolerated.

II.    Transfers
    a.  There will be no transfers from the crew you are with now, at least not for the reason that you gave me earlier.
    b.  Just because you think I'm being too hard on you is not reason enough to be asking for a transfer.

## Summary

It has become an every day thing. I have to show you how to do some miner task in Terramoldel, how to run a closure loop, how to set up files to work with. I am spending so much time trying to train you to do you job, I have to work late just to complete my work. I could understand spending this much time training a new Supervisor that had no experience in surveying. But you have been exposed to so much information in the past working with the Location Section along with the other Sections. I can not understand why you have not learned these skills in the past.

In the interview with Mr. Jones, you told him you had the skills to be a supervisor. When you came out to the field you told me you had the skills to be a supervisor. Now, you are being held responsible for your work as a supervisor and you want to tell me you were not trained in the skills you need to be a supervisor. I know the people you worked under as a rodman, instrument operator, and data editor. I don't think it was that you weren't taught these skills, and I don't think you took it upon yourself to learn the skills that you were exposed to. In the event of this, now you are blaming every one else for your lack of skills. That to me, is not an excuse. If you want to continue being a supervisor you must improve you skill. There is a big gap between where you are now and where you need to be between now and the end of your probation. If you don't improve as much as need to your probation could be extended or you could be released. I want you to understand this is a serious matter and one you need to work hard on. I will work with you as much as I can to help you improve your skills but in the end it's up to you to learn and show me you can be a supervisor.





# ALABAMA DEPARTMENT OF TRANSPORTATION

*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
Phone: 334-242-6178    FAX: 334-269-0826

**Bob Riley**
*Governor*

*Joe McInnes*
*Transportation Director*

July, 26 2005

# MEMORANDUM

To:         Leroy Williams, Transportation Technologist
            Field Supervisor

From:       Thomas W. Lewis
            Chief of Party

RE:         <u>Reprimand for Repeated Tardiness</u>

Mr. Williams, on Monday, July, 25 2005 you reported to this office in Tuscaloosa at 7:14a.m. You are given 2 hours of driving time from the Montgomery office to this office. Your reporting time in Montgomery is 5:00am and therefore if your report to the office here in Tuscaloosa any time after 7:00am you are considered late for work (tardy).

This is the 4th time you have been tardy since May, 16th 2005, the day you were assigned to this crew. Please refer to the following:

Occasion One:  On Wednesday June, 1 2005 you reported to the parking lot in Montgomery at 5:05a.m. which was 5 minutes late. At that time I informed you that being tardy was unacceptable.  This was a verbal warning.

Occasion Two:  The very next day I instructed the crew to meet in the parking lot of the motel where everyone was staying in Auburn. You did not report at that location and I had to be told by another crew member where you were.  That in itself is an infraction because you did not do as instructed. All other crew members reported just as I had instructed.  I told you on that day you were late, because you were not where I told you to be at 7:00a.m. I



DEFENDANT'S
EXHIBIT
2

explained if you were late again you would be subject disciplinary actions. This was a second verbal warning.

Occasion Three: On Monday, June 20th you did not arrive at the office in Tuscaloosa until 7:30a.m. You called me that day and told me your stomach was bothering you. Even though you told me you were sick you went on out and worked the rest of the day like there wasn't anything wrong. I explained to you the importance of being on time to set an example for the crew members you supervise. This was a third verbal warning and a pattern had developed.

Occasion Four: And now on Monday, July 25th, you did not report to the office here in Tuscaloosa until 7:14a.m. You did not notify me even as I talked with you on the Southern Line BEFORE 7:00a.m. That in its self is grounds for a Repimand. I am mystified as to why you did not mention to me that you were going to be late because you should have been very aware that being tardy is not acceptable.

The policies set down by our department plainly state that you must notify your supervisor if you are going to be late and that excessive tardiness will not be tolerated.

Consider this written reprimand as the next step in the disciplinary process concerning your being tardy. The first steps included the verbal warnings already mentioned. Also consider this as a warning that the next time you are tardy you will be charged LWOP and you will receive another discipline (possibly another reprimand and/or a suspension).

This is a very serious matter and it will be reflected on your next grade sheet. I trust you understand that you must adhere to the rules set forth by the Department or you can cause serious injury to your career. I should also remind you that you are still in the early stages of your six-month probationary period as a Transportation Technologist and this type of behavior is detrimental to your being assessed as a dependable employee. And certainly as a Field Supervisor, you should be setting the example for the subordinates in your crew.


Thomas W. Lewis
Chief of Party



# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama  36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311      FAX: 334-262-8041*



*J.D. McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

July 28, 2005

# MEMORANDUM

Counseling Session

Leroy Williams, Transportation Technologist
Field Supervisor

Re:    Probationary Performance Concerns

On this date, a counseling session was held with Leroy Williams, referenced above. Also present was Mr.
Thomas Lewis, Party Chief, who is Leroy's immediate supervisor. My concerns involved several areas that
were well documented by Mr. Lewis (see attached). I felt it necessary to immediately discuss those
concerns with Leroy so that he could concentrate on improving in those areas. I will refer to Mr. Williams
as Leroy and Mr. Lewis as Tommy.

Leroy was promoted to Transportation Tech as a Field Supervisor and reported to Tommy on May 16,
2005. Leroy is presently being assessed during his six month probationary period and is now at his second
month in the classification/job. Tommy has been keeping me informed on Leroy's progress or lack thereof.
After two months, it has become obvious to me that Leroy is lacking in many areas as a Field Supervisor
and this has me concerned. The following is a summation of the meeting and of the notes used for the
session:

**Working Skills**

Leroy shows a definite weakness in math skills as related to surveying. For example, he was unable to
calculate angles, azimuths until Tommy showed him how. Leroy told me he now knows how and can do
them easily. My concern is that he writes all these things down as he is taught because he may forget.
Since he has had high school geometry, three courses in geometry through the ALDOT, one course in
trigonometry through the ALDOT, and several years in Location Surveying, I would have assumed that he
would have garnered these skills necessary to do the job. I advised Leroy that he had to concentrate on
improving these skills and that he should ask Tommy for hands on training. I also advised Leroy to take
good notes and KEEP them to refer to so that he is not susceptible to losing the skill through a lack of good
memory. We cannot have a crew standing around for an extended time because Leroy is spending too
much time doing a calculation or is wasting time because Leroy doesn't know how to do a needed
calculation.

He shows a lack of skills concerning checking his work in the field to ensure accuracy. Tommy had to
instruct him several times about this and even to the point of demanding that he do the "checks". Leroy
had been argumentative with Tommy concerning this directive which is unacceptable. There have been
errors made that have caused a waste of time already because Leroy did not do as he was told. This is a
common knowledge skill that Leroy should have learned through the years he has worked in a crew. I
advised Leroy that he is being held responsible for doing the work accurately and timely....and for sure, to
check his work if for no other reason than his supervisor told him to. I advised him to glean knowledge and

DEFENDANT'S
EXHIBIT
3

direction from Tommy on all work because Tommy has many years of experience as a Field Supervisor and is one who has a vast knowledge of Location Surveying procedures.

He shows a severe lack of skills in working with Terramodel. Even though this is not a highly required skill to be a good Field Supervisor, it is desirable. Since Leroy had been a Data Editor for over a year, I would have assumed that he had a pretty good working knowledge of Terramodel and could build basic alignments and/or retrieve data as needed. According to Tommy, this is not the case. Leroy had advised Tommy on his first day that he knew Terramodel and had a good understanding. Leroy noted on his resume and his application that he worked in the Data Editor job for a good while. I have advised Leroy to ask either Tommy or the Data Editor in the crew to show/teach him what he needs to know to work efficiently in the program....and to be able to find and retrieve data as needed without delaying the work process. I again advised making good notes and hanging on to them for reference in the future.

From discussions with Tommy over the last two months, I am concerned that Leroy does not have a really good grasp of what is required on a survey, even on a daily basis. Once again, Leroy should have accumulated enough knowledge and experience over his years in a survey crew to make him highly efficient and skilled and knowledgeable about what is needed to complete a survey. This is not the case according to the overall operations that Tommy has been reporting to me. Tommy says he is having to work late many nights just to catch up on his work because he is spending so much time teaching/showing Leroy how and what to do. Also, Tommy says he is spending too much time checking and correcting errors made in the field due to bad procedures. Again, Leroy told me in his interview that he was a better qualified candidate for the job because of his experience in Location Surveying AND because of the training that had been offered by the ALDOT. Leroy is not exhibiting the qualities that I expected from him because of his experience he talked about. I advised Leroy that the lack of knowledge pertaining to what is needed on a daily basis is a surprise to me after having interviewed him and having read his resume. I told him he needed to concentrate really hard on getting a better feel for what is required by asking questions and communicating closely with Tommy and the Data Editor. If he will do this, progress will not be hampered due to "floundering" caused by his ineptness.
Once again, I advise Leroy to take good notes and then hang on to them for reference.

Leroy shows a lack of management skills in that he cannot effectively supervise his subordinates. Leroy stated to Tommy that he was not getting as much work done as he could "...because his people didn't know what to do." I told Leroy that correcting this problem was his job. As a field supervisor, and according to his form 40, one of his tasks is to train subordinates so the surveys are done efficiently and accurately and without delay. I advised Leroy that he must separate himself from the "worker" mentality and become more aggressive in the supervision and training aspect of the job. If the subordinate doesn't know what to do, then he must show him. If the subordinate doesn't perform well or is "dragging around" then he must approach that individual and square him away. One of the subordinates even complained to Tommy that they couldn't get Leroy to explain things to them. That subordinate then would have to ask somebody else how to do a certain chore. I advised Leroy to be focused on his subordinates' weaknesses and do all that he can to teach them. The very least Leroy should do is make sure that he communicates clearly to them what it is he wants them to do at any given time. After a while, they too will be expected to catch on and do their work without specific and continuous directives when performing redundant tasks.

## Doesn't Follow Directives

This concerns me greatly. Tommy noted several directives that he had given Leroy at different times and that Leroy had ignored them or did not react to them. (see attachments). This is not acceptable. I informed Leroy that if Tommy gives a directive and it is not illegal or harmful, then he must do his best to do exactly what was told him. If he ignores or simply does not do what the supervisor asks or directs, then he actually is being insubordinate. I made sure Leroy understood that insubordination is one of those things that can cause termination on the FIRST offence. I asked Leroy if he would allow a subordinate to ignore or disobey a directive. He answered "No". He then seemed to understand that he should be then cooperative with Tommy and do as he directed EVERY time. I told Leroy that if he did not agree with the directive, not to ignore it, but go ahead and do it. THEN, while alone with Tommy, voice his suggestion that the task be done a different way. Tommy may not change his mind but then again, he might.

Example: Leroy said he did not hear one of the directives to meet at a motel on a particular morning (see attachment). Since ALL other crew members heard the directive, and even the man sitting beside Leroy heard the directive, it is a mystery to me how he did not hear it as well. It seems to me that Leroy simply wanted to do what HE wanted to do and ignored the directive. This is not acceptable. I advised Leroy that he must always be cooperative and do what he is told. Since he is the Field Supervisor, he must be the FIRST to set the example for the rest. I also told Leroy that it is his responsibility to be informed EVERY day as to matters such as this. It is a shame that all subordinates reported as instructed and Leroy, the Field Supervisor, did not.

**Tardiness**

We discussed all FOUR times Leroy has been noted as arriving for work late by Tommy. Leroy did not deny that he was late but only that he was not as late as Tommy had noted. I advised Leroy that the amount of time he is late is not the issue but, rather, the fact that he was late is the issue. First, his being the second in charge of a crew as a supervisor demands that he set the example by NEVER being late and certainly not being late often. I made sure he understood that work rules are to be adhered to without question. Being tardy is not acceptable and will be dealt with swiftly if a pattern develops…which in Leroy's case, the pattern has developed. Secondly, since every crew works as a "unit", it is imperative that all members be at work on time or the whole crew suffers.

Since Leroy had been warned THREE previous times about tardiness infractions, Tommy gave a written reprimand the fourth time when Leroy arrived at the office late on Monday morning (see attached reprimand for details). However, because Leroy stated that the allotted drive time from Montgomery to Tuscaloosa is not a reasonable drive time, I have asked Tommy to withhold the reprimand UNTIL he personally makes the drive himself under the same conditions that Leroy made. Leroy says the drive takes 2 hours and 25 minutes if you drive the speed limit. The difference in the drive time allowed and what Leroy says it takes is roughly 25 minutes. The allotted time is two hours but Tommy tells me the crew is always there on Mondays around 6:40 to 6:50 a.m. If this is true, then according to Leroy, the crew has to be driving at a high rate of speed and this is not acceptable. If Tommy proves the drive to be less than two hours under the same conditions that Leroy describes, then the reprimand stands. If the drive is proven to take more than two hours, then I recommended to Tommy that he rescind the reprimand. HOWEVER, I advised Leroy that the first three warnings will remain on record and that the next infraction of tardiness WILL RESULT in a reprimand. He said he understood and seemed to have no problem with that approach.

What causes concern for me is that this "two hour" drive time has been in place for MORE than a year now and was put in place by the previous Party Chief, Joe King. Not one time has any individual in that crew ever mentioned that the drive time was not long enough. We will assess this carefully as Leroy's career could be adversely affected if the two-hour drive time is accurate. A reprimand is not given lightly because it is such a negative on one's grade sheet. An addendum will be inserted below on the results of the drive/test that Tommy has been instructed to do.

Within this entire subject is an included fact that Leroy was driving his personal vehicle those times he was late. I made sure he understood that if he chooses to drive his private vehicle (we furnish transportation in the Carryall), then he is obligated to arrive at the allotted time and for sure BEFORE the carryall. He said he understood. I also advised him that his privilege of driving his private vehicle could be revoked if he persisted in being late while driving his own vehicle. By his traveling in the Carryall, we can assure that he will arrive on time and his problem will be should be solved.

I warned Leroy that arriving at the parking lot on Mondays at 5:00 a.m. is mandatory and is not debatable. If a person arrives later than 5:00 a.m., then he is late. If the time for arrival at the Field Office is set at 7:00 a.m. by the Party Chief, and it is an accurate allotment, then if one arrives AFTER 7:00 a.m., he is late. Those are the rules and they are not up for question. He said he understood.

**SUMMARY:**

After having talked with Leroy as summarized above, I feel confident he now understands that Tommy and I are concerned about his lack of performance and his weaknesses in certain areas. One of the main things that I repeatedly suggested that he do concerning retaining training that Tommy provides, is to take good notes and refer back to them as needed. I feel confident that he now understands fully what is expected and how he needs to go about improving. I assured him that Tommy will be right there to help him with areas where he is weak. However, Leroy now understands that he is ultimately responsible for his performance, for his retention of knowledge. He is ultimately responsible for doing his best to at least meet standards required to earn the right to become a permanent employee in the Transportation Technologist classification at the end of the six month probationary period. I told Leroy that his "mid appraisal" (three months) was approaching in about a month and that we would reassess at that time. I told him that we would be meeting often if Tommy did not report vast improvements in all areas. He said he understood. I assured Leroy that it is our desire to see him improve and we will try our best to help him do that.

NOTE: As noted above, I am recommending to Tommy to delay submitting the written reprimand pertaining to tardiness until he makes the drive directly from Montgomery to Tuscaloosa. He is to leave at 5:00 a.m. sharp and be very conscious to drive the speed limit at all times and note the time it takes to make the trip. If the time is more than the allotted two hours, then the reprimand will be rescinded. If the drive proves to fall within the two hours, then the reprimand will become an official disciplinary action on Leroy Williams. Leroy had been explained this during the counseling session and he agreed to this approach.

Joe E. Jones, Asst. Location Engineer, Field

Witness:

Thomas L. Lewis, Party Chief

Cc:     Mr. Don Arkle
Mr. William Adams
Mr. Thomas Lewis



# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone:* 334-242-6311    *FAX:* 334-262-8041



*J.D. McInnes*
*Transportation Director*

**Bob Riley**
Governor

August 4, 2005

## MEMORANDUM

To:     Leroy Williams
        Field Supervisor

From:   Joe E. Jones,
        Asst. Location Engineer, Field

Re:     Drive Time from Montgomery Office to Lewis Crew Tuscaloosa Field Office

Purpose:  Verify drive time related to Leroy Williams Written Reprimand

In my counseling session with you dated July 28, 2005, I discussed with you the written reprimand given you by Mr. Thomas Lewis, Party Chief. Mr. Lewis, your immediate supervisor had instigated the reprimand due to excessive tardiness. The fourth tardy involved you arriving late on a Monday morning after driving from Montgomery to Tuscaloosa. You stated that it took 2 hours and 25 minutes to make the drive which would make the reporting time 7:25 a.m. I directed Mr. Lewis to make this drive himself, under the same conditions you described (time and speed limit) and report back to me. If the drive proved to be more than the allotted 2 hours, I would instruct Mr. Lewis to rescind the reprimand. However, if the drive proved to be within the allotted 2 hours, the reprimand would stand. Below is the result of the drive made by Mr. Lewis:

On August 2, 2005, Tommy drove from the Montgomery office to his Tuscaloosa office. He left promptly at 5:00 a.m. and was consciously driving the posted speed limit on the different roads along the route. Tommy noted his trip as follows:

"I left Montgomery this morning at 5:00 a.m. stopped one time at the rest area for about 5 minutes and arrived here at the office in Tuscaloosa at 6:55 a.m. This was driving the speed limit all the way. I set the cruse at 55 mph when I got just north of Prattville and when I hit the 4 lane in Centerville I set it at 65 mph. The total distance is 106.5 miles form Office to Office. This is an average speed of 55.55 mph. In no way did I exceed the speed limit."

Based on this driving time test and his report, I am now advising Mr. Lewis to proceed with the written reprimand by submitting it as an official disciplinary action on tardiness. You have already been counseled by Mr. Lewis on this matter and advised of the charge. I have advised you, as noted in my counseling report, about the consequences of being tardy and went over the rules pertaining to the matter. I also advised you that this would affect your grade sheet because it would cause a seven point deduction in your upcoming grade on your Employee Performance Appraisal.

Cc:   Mr. Don Arkle
      Mr. William Adams
      Mr. Thomas Lewis



DEFENDANT'S
EXHIBIT
4





# ALABAMA DEPARTMENT OF TRANSPORTATION
*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
*Phone: 334-242-6178     FAX: 334-269-0826*

**Bob Riley**
*Governor*

*Joe McInnes*
*Transportation Director*

August, 11 2005

## MEMORANDUM

To: Leroy Williams
    Transportation Technician
    Field Supervisor

From: Thomas W. Lewis
    Transportation Technician
    Chief of Party

RE: <u>Reprimand for Insubordination</u>

Mr. Williams, on Thursday morning August 11th 2005, I was reviewing the work the crew had done in the field on Wednesday August 10th 2005. I was very concerned when I found so little progress had been made in the field that day. As you know, this project is a high priority job and its deadline is fast approaching. The completion of this project, on time, is a must and we must do what we can to prevent any unnecessary delays.

While in the process of reviewing the raw data file, I found that it was 9:19 a.m. before the first setup was made that morning. I also found that only three cross sections were taken from 9:19 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) The file shows that only 1 hour 45 minutes was spent collecting field data from 7:00 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) I decided to take a look at the area in question again to see if I could determine the cause of the delay. I was very concerned with what I found. The area in question had break lines that had not been shot and large areas that were not covered densely enough to correctly show the contours. This is when I came to you to discuss this matter. I called you aside to show you the break lines that

DEFENDANT'S
EXHIBIT
5

1

needed to be shot. I walked you around the ridge and showed you the toes that need to be shot. I explained that as an alternative of working off the centerline points, you could have set one remote to cover the majority of the area in question, saving valuable time.

I also talked to you about time management. I explained that if you stop at a store on the way out to the job site, you just took your morning break. I asked you about your lunch hour. You explained that your lunch hour began when you got to the truck and ended when you got back out of the truck. I then explained that this was not correct. Lunch started when you finished in the field. The walk out of the woods was part of your lunch hour. At this point you began to question my interpretation of the lunch hour. I explained that this was set down by the department, not me. You then began to become argumentative. You told me I was just being picky and I was just looking for something to harass you about. You then told me if I didn't have anything else to say you were going back to work. You turned and started to walk away. I told you not to walk away that I was not finished. You then told me "if you are going to talk to me I'm going to sit down and then you can talk." I started to explain that the progress made on Wednesday was unacceptable. Then you jumped up and started saying I was harassing you and not letting you do your job and you were going to have to talk to someone about it. You told me you were working hard and doing a good job. You also told me you could not work like this. You again started to walk away I told you "Leroy, if you walk away I am going to write you up for insubordination. Do you understand?" But you walked away with out me having the opportunity to explain why it was unacceptable.

It is very discouraging to see a supervisor on probation have so little respect for his supervisor, that he walk away when there is clear concern about the progress of the project. The loss of any time on this project is detrimental to the deadline being met. I have tried to impress the importance of time management and accuracy on this project. I have spent time with you trying to share my experience and knowledge with little results. I have explained rules that you question. I have spent time in the field with you trying to show you the most efficient way to produce highly accurate maps. But, the product you turn in on a daily basis consistently has errors, and is lacking in quantity.

The only reason I can find for this is, mismanagement of your time, and inability to lead your people properly. This does not only affect you, but it reflects upon the entire crew. Your work performance does not reflect the

2

experience that you have indicated or the experience you suggest you have acquired while working with other crews in the Location Section.

Mr. Williams, it is with regret that it has come down to reprimanding you for insubordination, but you walking away from me or any other supervisor when there are such critical issues to confront and discuss is unacceptable and will not be tolerated. This being the second reprimand in the past month along with you still on probation is very disturbing. It shows a pattern of disregard for your job. As a supervisor, it is your job to set an example for your subordinates; this is not setting a good example. You have to realize this will not be allowed to continue.

In this situation I am at a loss at what punishment to suggest. The severity of your actions could have more than one form of punishment. You could receive this letter of reprimand; receive the letter of reprimand plus a suspension, demotion, or dismissal, on the first offence of insubordination.

At the least, this letter will go into your personnel records and an additional 7 points will be subtracted from your next performance appraisal. I would like to suggest at the least, a suspension be imposed, but I would like my supervisor to review this matter and ask him for a recommendation. Again, I regret having to reprimand any employee, but your actions as a supervisor, warrant strong disciplinary action.


*Thomas W. Lewis*
Thomas W. Lewis
Transportation Technician
Chief of Party


Cc: William Adams
    Joe E. Jones
    Location file

3

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LEROY WILLIAMS,                              )
                                             )
        Plaintiff,                           )
                                             )
v.                                           )    CASE NO. 2:06-cv-658-ID
                                             )
STATE OF ALABAMA DEPARTMENT                  )
OF TRANSPORTATION, JOE MCINNES,              )
in his official capacity as Director of the  )
State of Alabama Department of               )
Transportation,                             )
        Defendants.

STATE OF ALABAMA              )
                              )
COUNTY OF MONTGOMERY          )

## AFFIDAVIT

Before me, the undersigned Notary Public, personally appeared Ron Green, who is

known to me, and who being first duly sworn by me, deposes and states as follows:

"1.  My name is Ron J. Green.  I am over the age of nineteen years and have personal

knowledge of the facts set forth in this affidavit.

2.  I am employed by the Alabama Department of Transportation.  As Executive

Assistant from January 1999 to February 2005, I was responsible for administrative oversight of

the Human Resources Bureau and the Personnel Bureau.  Additionally, I served as Personnel

Director of the Personnel Bureau from August 2000 until February 2006 at which time the

Human Resources Bureau and Personnel Bureau were merged to form the Personnel and

Compliance Bureau.  Since the merger, I have served as Bureau Chief of the Personnel and

Compliance Bureau.  Since January 1999, I have been responsible for administrative oversight of

all functions of the Department related to personnel and compliance with all ALDOT EEO programs, including Title VI and Title VII.

3. I am thoroughly familiar with the Alabama Department of Transportation complaint/grievance guidelines, attached hereto as Exhibit 1. Under this complaint/grievance set of guidelines, an employee files their complaint or grievance with the Alabama Department of Transportation's Bureau of Human Resources and the matter would be investigated.

4. I have reviewed the personnel file of Leroy Williams which contains two complaints/grievances filed in accordance with the complaint/grievance guidelines.

5. The complaint form attached hereto as Exhibit 2 was never filed with the Human Resources Bureau nor was it given to me by Leroy Williams or anyone else.

6. Neither the Department nor I have any record, knowledge or recollection of the complaint form attached hereto as Exhibit 2."

**FURTHER THE AFFIANT SAYETH NOT.**

I signed this affidavit on March 1, 2007 in Montgomery, Alabama.

_____
Ron J. Green

SWORN TO AND SUBSCRIBED before me on this __1st__ day of March, 2007.

_____
Notary Public, State at Large

My Commission Expires: __6/16/10__

2

## STATE OF ALABAMA TRANSPORTATION DEPARTMENT
## COMPLAINT/GRIEVANCE GUIDELINES

### Statement of Authority

These EEO complaint/grievance guidelines have been developed pursuant
to Title VII of the Civil Rights Act of 1964 and Executive Order
11246 as amended in Executive Order 11375 of 1972.

### Coverage

**Grievances** - The Department will accept a grievance from any non-
probationary employee who believes that he/she has been adversely affected by
work assignments, working conditions or other employment factors.

**Complaints** - The Department will accept a complaint from any aggrieved person
who believes that he/she has been discriminated against by actions or
ommissions of the Department because of race, color, religion, national
origin, disability, sex or age.

### Definitions

**Aggrieved person:** any person with an alleged grievance or discrimination
complaint.

**Complainant:** any aggrieved person who files a written complaint with the State
of Alabama Transportation Department.

**Complaint:** the formal notification of alleged discrimination to the proper
authority. The complaint should contain enough information to permit an
investigation. The complaint is considered filed when it is delivered to the
proper official or office.

**Department:** the State of Alabama Transportation Department.

**Discrimination:** any direct or indirect act or practice of exclusion,
distinction, restriction, segregation, limitation, refusal, denial and/or any
other act or practice of differentiation or preference in the treatment of a
person or persons because of race, color, religion, national origin, handicap,
sex, or age.

**EEO Counselor:** an employee designated within the State of Alabama
Transportation Department who will attempt to resolve alleged complaints of
discrimination on an informal and confidential basis.

**Grievance:** any matter which adversely affects the employment or position of a
non-probationary employee or a group of employees, and which is within the
administrative discretion or control of the appointing authority of the
department. Where evidence exists that the matters of grievance were created
by political or religious opinions or affiliations or due to any other



DEFENDANT'S
EXHIBIT
1

non-merit factor, an employee or employees may file a grievance using the
Grievance Guidelines or they may appeal such matters for which an appeal is
provided by Merit System Law to the State Personnel Board.

Statement of Purpose

The State of Alabama Transportation Department is an Equal Employment
Opportunity agency. This means that the Transportation Department pledges to
swiftly and affirmatively eliminate any discrimination that may exist.

The Department's complaint/grievance guidelines were developed and
implemented based on the belief that all employees should be treated
in an equitable and impartial manner. Enforcement of this belief
helps contribute to a sound personnel management system in addition
to complying with federal and state laws.

The purpose of these guidelines is to:

1. Assure that any aggrieved person shall be afforded an immedi-
   ate and fair method for the resolution of job-related problems
   that may arise within the State of Alabama Transportation Department.

2. Provide the opportunity for any aggrieved person to informally
   and confidentially discuss individual problems outside of
   administrative channels.

3. Provide an EEO Counselor who will be responsible for
   counseling aggrieved persons and assuring that all activities
   conducted in this capacity be free from interference,
   coercion, reprisal, discrimination or any other form of
   retaliation.

4. Encourage any aggrieved person to seek acceptable resolutions
   of alleged complaints from within the established guidelines.

5. Provide any aggrieved person with a working knowledge of the
   difference between discrimination complaints and grievances.

Scope of the Complaint/Grievance Guidelines

These complaint/grievance guidelines shall apply to covered employees of the
State of Alabama Transportation Department or any aggrieved person seeking
agreeable resolutions to alleged grievances and/or complaints of
discrimination.

I. Complaints of Discrimination

Informal Complaint Guideline

Any aggrieved person who believes he/she has been discriminated against
because of race, color, religion, national origin, handicap, sex or age should
contact the State of Alabama Transportation Department's Bureau of Human
Resources within thrity (30) working days of the alleged incident.

The complaint will be reviewed to determine if it is a grievance or discrimination complaint. If it is determined to be a discrimination complaint, the Bureau of Human Resources will within fifteen (15) working days instruct the aggrieved person as to the correct and appropriate steps to follow in resolving the complaint. If it is determined that the complaint is actually a grievance instead of a form of discrimination, the aggrieved person will be informed of the proper grievance guidelines.

If it is determined that the complaint alleges some form of discrimination based on race, color, religion, national origin, disability, sex or age, the Bureau of Human Resources will then inform the EEO Counselor of the pending complaint so that the informal complaint investigation process can begin. The EEO Counselors have been selected and trained for each Division and Central Office Bureau.

The informal complaint investigation process involves the EEO Counselor having discussions with the complainant and other appropriate individuals and associates to attempt to find an acceptable resolution to the problem. The EEO Counselor will attempt to informally resolve the complaint within twenty (20) working days of being notified by the Department's Bureau Chief of Human Resources. During this period, the EEO Counselor will not only counsel and inform the aggrieved person of his/her rights, but also keep all discussions confidential and maintain a record of all ongoing activities regarding the complaint.

If a complainant is satisfied with the results achieved by using the informal complaint guidelines, then the EEO Counselor will advise the Bureau Chief of Human Resources of this fact, as part of the monthly counseling report that is submitted to the Bureau of Human Resources.

Formal Complaint Guideline

If a complaint raised by the aggrieved person is not resolved to the satisfaction of the complainant after seeking an acceptable resolution through the informal complaint guidelines, the complainant then has five (5) working days after being notified in writing by the Division or Central Office Counselor of the proposed resolution to contact the Bureau Chief of Human Resources for the purpose of requesting that a formal investigation be conducted. The complainant may contact the Bureau Chief of Human Resources either in person, in writing, or by telephone.

However, before officially considering a formal investigation, the complainant must sign a written complaint and see that this complaint is delivered to the Bureau Chief of Human Resources. Upon receiving the signed document from the complainant, the Bureau Chief of Human Resources will review the complaint for completeness and determine whether a formal investigation should be conducted. If so, the Bureau Chief of Human Resources will promptly begin investigating the complaint. If not, the Bureau Chief of Human Resources will prepare a written report that will be submitted to the Transportation Director for a final review and decision. If it is determined that a formal investigation should be conducted the person assigned to investigate the complaint will be

- 3 -

someone from the Department who has been trained in EEO techniques and who occupies a position which is not, directly or indirectly, under the jurisdiction of the head of the work unit where the alleged discriminatory act occurred.

The investigation will be completed within thirty (30) working days, and shall include a thorough review of the circumstances under which the alleged discrimination occurred, the treatment of members of the complainant's group identified in the complaint as compared with the treatment of others in the work unit area in which the alleged discrimination occurred, and any practices related to the work situation which may constitute or appear to constitute discrimination, even though they may not have been directly expressed by the complainant.

After the investigation has been completed, the Bureau Chief of Human Resources will prepare a written report that will be submitted to the Transportation Director for a final review and decision. The final decision of the Transportation Director will be conveyed to the complainant as soon as reasonably possible. If the final decision of the Transportation Director is not acceptable to the complainant, the Bureau Chief of Human Resources will advise the complainant of appropriate areas where he/she may appeal and continue to pursue a solution.

If the complaint is not resolved to the complainant's satisfaction, the complainant may appeal the decision to appropriate outside agencies. The Bureau Chief of Human Resources maintains a listing of these agencies and their addresses which will be available to the complainant.

## II. Grievances

Exceptions:

The following guidelines do not apply to the specific categories of employees and actions listed below:

1. Actions caused by reduction in forces.

2. Actions involving Civil Rights Complaints.

3. Actions which affect an employee who is serving under temporary appointment.

4. A nonselection for promotion when the sole basis for the grievance is an allegation by the employee that he/she is better qualified than the person promoted.

5. Demotions following temporary promotions when it is clearly established that the employee was informed that this service in the higher grade position would be terminated at a stated time or upon the return of the permanent incumbent.

6. Probationary employees.

7. Dismissals, demotions or suspensions for cause.  Salary ranges, Personnel
   Board decisions, group life insurance, group health benefits, reemployment
   rights, examination ratings, position classification and employee
   suitability and additional things which are not within the control of the
   Transportation Department.

Informal Grievance Guideline

To seek an acceptable resolution of a grievance, the aggrieved person must
initiate attempts to resolve the problem within ten (10) working days of the
incident either in writing or orally through the existing chain of command,
from immediate supervisor to District Engineer/Division Engineer, if assigned
to a Division, or from immediate supervisor to Bureau Chief, if assigned to
the central office.

If the grievance is not resolved to the aggrieved person's satisfac-
tion after initial contact is made, the grievance must be submitted
in writing to the District Engineer or Division Engineer/Bureau Chief,
who will be responsible for arranging a meeting to discuss the
problem with the aggrieved person and the appropriate supervisors
of the aggrieved person to try to find an acceptable resolution.
This meeting should take place within ten (10) working days
after contact has been made by the aggrieved person with the
respective unit head.

Formal Grievance Guideline

If the aggrieved person's meeting with the respective unit head fails
to produce an acceptable resolution, the aggrieved person may then
forward the grievance, in writing, to the Bureau Chief of Human Resources.
Upon receiving the signed statement of grievance, the Bureau Chief of Human
Resources will review the statement to determine whether further investigation
should be conducted.  If so, the Bureau Chief of Human Resources will have the
situation investigated either by personnel from the Bureau of Human Resources
or by the Division or Bureau EEO Counselor.  Within twenty (20) working days
after receiving the grievance, the Bureau Chief of Human Resources will be
responsible for issuing his findings to the aggrieved person and for
seeking an acceptable solution to the grievance.  Should the grievance
still not be resolved to the aggrieved person's satisfaction or it is
determined by the Bureau Chief of Human Resourcs that no further investigation
is warranted, the Bureau Chief of Human Resources will prepare a written
report that will be submitted to the Transportatioin Director for a final
review and decision.

The final decision of the Transportation Director will be conveyed in writing
to the aggrieved person as soon as reasonably possible.  If the final decision
of the Transportation Director is not acceptable to the aggrieved person, the
Bureau Chief of Human Resources will advise the aggrieved person of
appropriate areas where he/she may appeal and continue to pursue a solution.

### III. Important Facts to Remember

<u>Counseling:</u>  The EEO Counselor is prohibited from restraining any aggreived person from filing a formal complaint.  Also, if a formal complaint is filed by a complainant, the EEO Counselor, upon learning of the action, is required to notify the Bureau Chief of Human Resources in writing and furnish a summary of all actions taken and advice given during any previous contact with the complainant.

<u>Representation:</u>  An aggrieved person seeking a resolution of a complaint or greivance may be accompanied, represented and/or advised by a representative of his/her own choice.

<u>Presentation:</u>  The complainant is to have a reasonable amount of official time to present his/her complaint.  If the complainant designates a department employee as his/her representative, then the representative is to also have a reasonable amount of official time, if he/she is otherwise in an active duty status, to present the complaint.

However, it will be left up to the complainant's supervisor and the Bureau of Human Resources to decide upon the limits of utilizing official time in visiting the Bureau of Human Resources.  If necessary, representatives from the Bureau of Human Resources will be instructed to receive the complainant at his or her particular work station or other mutually agreed upon location.

<u>Rejection:</u>  A complaint or grievance may be rejected by the head of the agency or his/her designee if it is not filed within the required time limits.  Any determination to reject a grievance or complaint will be sent to the aggrieved person in writing.

<u>Date of Filing:</u>  For purposes of determining whether a complaint or grievance is filed on time, the filing date will be deemed to be the date on which it is received when delivered in person to the appropriate person or its postmark date when mailed to the appropriate person.

<u>Confidentiality:</u>  All discussions and investigations will be confidential and released only on a "need-to-know" basis as determined by the Bureau Chief of Human Resources.

APPROVED:  _____

Jimmy Butts, Director
Alabama Transportation Department

DATE:  **February 28, 1996**

*Effective 9-1-95*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

JOHNNY REYNOLDS, et al.,          )
                                  )
       Plaintiffs,            )
                                  )          CV 85 T 665 N
v.                                )
                                  )
ALABAMA DEPARTMENT OF             )
TRANSPORTATION, et al.,           )
                                  )
       Defendants.            )

## REVISED COMPLAINT PROCEDURE

Pursuant to the Court's order, defendant Alabama Department of Transportation submits the following revised complaint procedure:

**NOTICE:   THIS REVISED PROCEDURE REPRESENTS A SUBSTANTIAL CHANGE FROM THE PRIOR PROCEDURE, AND CONTAINS SIGNIFICANTLY DIFFERENT DEADLINES FOR TAKING ACTIONS NECESSARY FOR THE PROCESSING OF GRIEVANCES.    PLEASE READ THIS PROCEDURE CAREFULLY.**

<u>**GRIEVANCES**</u>. The Consent Decree and Departmental Policy mandate that all all employees enjoy a work-place free from discrimination.   The most effective accomplishment of the work of the Department requires prompt consideration and equitable adjustment of employee grievances involving discrimination.  It is the desire of the Department to adjust grievances informally, and both supervisors and employees are expected to make every effort to resolve problems as they arise.   However, it is

1

recognized that there will be grievances which will be resolved only after formal appeal and review. A grievance shall be properly commenced by submitting it on an official form, signed by the grievant, within the time limit set out below. A grievance so filed shall be processed in accordance with the following provisions of this section. Within the time limits allowed for the pending step or action, any requests for extension of any time limit herein may only be granted by the Director or his designee.

**DEFINITION OF COMPLAINT OR GRIEVANCE.** A grievance is an alleged wrong based upon the employee's race, color, creed, sex, national origin, age, or handicap. Any matter concerning allegations of discrimination or a violation of the Consent Decree, or arising from or concerning matters that are the subject of the Consent Decree, will be admitted for adjustment. Complaints not involving allegations of discrimination or matters that are the subject of the Consent Decree shall not be adjusted under this Rule.

**GRIEVANCE PROCEDURE.** Any (a) employee, (b) employee who has been terminated, or (c) applicant for full-time employment, may register a grievance/complaint. Grievants are assured of freedom from restraint, interference, discrimination or reprisal for presenting a grievance. The grievant may be represented by counsel of his choosing throughout the grievance process.

**STEP I.**    (1)    The grievance, to be properly commenced, must be submitted on an official grievance form to the immediate supervisor within 90 days of the

2

alleged incident. Provided, however, that if the complainant's immediate supervisor is a subject of the grievance, then a grievance may be properly commenced by submitting a grievance form to the Division EEO representative. Official grievance forms must be readily available to all employees and applicants. A copy of the complaint must be filed with the EEO Monitor and the attorney for the plaintiff class within Two (2) working days to be docketed and logged. Grievances or complaints received by plaintiffs' counsel shall be forwarded to the EEO Monitor or his designee within Three (3) working days of receipt by such counsel, and grievances received by the EEO Monitor or his designee will be forwarded to plaintiffs' counsel within Three (3) working days from receipt of such grievance. A copy of the complaint must be provided by the EEO Monitor to any employee made the subject of the grievance. All such complaints, to the best

3

of the grievant's ability, shall cite with specificity the reason for and nature of the complaint. A grievant is not to be harassed, nor is any adverse action to be taken against a grievant, for having filed such grievance.

(2)    Within Five (5) working days of receipt of the grievance, the immediate supervisor shall reply to the aggrieved employee in writing on an official form. Should the immediate Supervisor be named as the subject of the Complaint, then the Head of the Division, Bureau, or Section, or his designee, shall reply in writing to the complaining party within the specified time. Copies of his reply shall be furnished to any employee made the subject of the grievance and to the EEO Monitor within the same time frame. Verbal discussions of the grievance between the aggrieved employee, his supervisor and Division Head are encouraged so long as the grievant is permitted to have the EEO Monitor or other designee in attendance;

4

however, such discussions do not excuse the written reply required under this section.

(3)    In lieu of replying, the immediate supervisor may elect to refer the complaint to the Division Head within the time period for reply. The Division Head must acknowledge receipt of the grievance in writing to the aggrieved employee and to the EEO Monitor not later that the next business day after receipt of the referred grievance.

(4)    Should the supervisor or Division Head not return an answer on official forms within the established time limits, the grievance shall be deemed to be well founded and the grievant may proceed to file at the next step within the time limit outlined below.

(5)    The EEO Monitor shall maintain a daily log listing the date and time of each grievance received, assigning each a docket number to be used throughout its processing for identification and monitoring purposes, assigning an

5

investigator responsible for processing such grievance, and setting forth a schedule of deadlines for such processing that is consistent with the times prescribed in this procedure. Plaintiffs' counsel shall be given written notice of each such grievance, docket number, assigned investigator, and schedule of deadlines within Three (3) working days of receipt of each grievance by the EEO Monitor.

**STEP II.**     If the grievant has not signed a written acceptance of the proposed resolution, the grievance will automatically be submitted, within Five (5) working days of the last action required under Step I, to the EEO Monitor for a formal investigation into the alleged wrongdoing. The EEO Monitor, or his designee, shall reply to the grievant within Seven (7) working days, and submit Findings of the investigation, in writing, on an official form signed by the EEO Monitor, or his designee. A

6

copy of the Investigative Findings by the EEO Monitor shall be furnished to the Division Head, the subject of the investigation, the attorney for the plaintiff class, and any other legal representative involved at this point.

Within Ten (10) days after receipt of the grievance by the EEO Monitor or his designee, a meeting shall be heard between the EEO Monitor or his designee and the grievant at which time a written answer and proposed resolution to the grievance will be given to the aggrieved party.    If the aggrieved party so chooses, he may have a co-employee present at the meeting.    Counsel for the class or his designee shall have the right to participate in such meetings by attendance or teleconference. Said counsel shall be given notice of such meeting at least Three (3) days in advance of its occurrence.

7

**STEP III.**   (1)   If the grievant has not signed a written acceptance of the proposed resolution, the grievance will be automatically submitted, within Five (5) working days of the Step II meeting, to the Hearing Officer.

(2)   A Hearing Officer, next in order from a list of such Hearing Officers previously agreed upon by the Transportation Department counsel for the plaintiff class, shall serve as Hearing Officer, provided that the Hearing Officer is willing and available to serve in this capacity.

(3)   **HEARING PROCEDURES FOR HEARING OFFICER.** The Hearing Officer shall convene a formal hearing within Thirty (30) working days after selection, subject to the right of the Transportation Department, counsel for the plaintiff class, or Hearing Officer to extend such time for an additional period of no more than Thirty (30) days. After a formal hearing, the

8

Hearing Officer shall render findings of fact and a recommendation to the Highway Department within Ten (10) calendar days of the completion of taking testimony and evidence. The Department shall implement the recommendations of the Hearing Officer unless an appeal is taken to Step IV.

**STEP IV.**    If the Complaint or Grievance has not been resolved to the satisfaction of both parties pursuant to Step I, II and III then either party may appeal to an external arbitrator. Such arbitrator shall be selected from a panel of Seven (7) arbitrators, with Three (3) of such panel members to be designated by class counsel, Three (3) to be designated by the Department, and One (1) to be designated by agreement among the other Six. Selection of the arbitrator shall be accomplished by alternate strikes from the panel. Notice of the appeal shall be served to the panel and the other party

9

within Ten (10) working days of Step III completion. The arbitrator shall set the appeal down for hearing, serving notice to the complaining party along with the appropriate respondent, the attorney for the plaintiff class, and any legal counsel of record in any of the prior proceedings. The findings and orders of the arbitrator shall be final from which no appeal may be taken in the context of the Reynolds case. Nothing in this procedure, however, shall be construed to prevent the filing of any administrative charge or separate legal action. In the event that class counsel deems the outcome of the arbitration to constitute a violation of Consent Decree I, class counsel may file a motion with for relief the Court.

10

## RELATED PROVISIONS

1.    The Director shall provide such administrative services as may be necessary and shall exercise his authority to require the production of records or appearance of witnesses as may be required to carry out the provisions of this Rule.

2.    Failure of the grievant to appear for any scheduled hearing or to comply with any requirement set forth herein shall be deemed to mean that the grievance has been resolved.

3.    In the event that a grievance is filed by a person who, within the immediately preceding twelve months, has filed three or more other grievances that have been deemed frivolous in the final step to which they proceeded, such grievance shall not proceed through the grievance process until it has been reviewed as follows:

      (a)    The grievance shall be forwarded to the class counsel and the Department's designee for review. If both such parties deem the

11

              grievance    frivolous,    such grievance shall be denied without further proceedings.

(b)   If    either    party    deems    the grievance non-frivolous after the review called for in subparagraph (a), it shall continue through the grievance process as otherwise required above.

4.    Any written resolution of the complaint signed by the grievant will serve to terminate any other proceedings involving the same complaint, so long as the written resolution gives notice of this effect to the grievant.

5.    Copies of this grievance procedure, together with copies of the official grievance form, are to be distributed to class members. This distribution is to be accomplished by (a) posting copies at all ALDOT facilities, (b) inserting copies of the procedure with all employee paychecks as soon as practicable after the procedure is implemented, and (c)

12

providing a copy of the procedure to each newly hired employee. Postings must be conspicuous and must be made in the place ordinarily used for posting of announcements. Applications for employment with the Department shall contain a conspicuous statement notifying applicants of the existence and availability of the grievance process.

6.  Any employee who is required to attend hearings or meetings under this procedure, either as a grievant or as a witness for a grievant, shall be paid at his or her regular rate of pay for such time; provided, however, that an employee whose grievance is deemed to be frivolous at the last step to which it proceeds shall not be entitled to be paid for his or her time spent in grievance proceedings.

7.  Nothing in this procedure shall be construed to prejudice the rights of persons whose grievances had already been filed, or had arisen but had not yet been filed, prior to the effective date of this procedure. Grievances already filed prior to the effective date shall continue to be processed in accordance with prior procedures, unless all parties agree to be bound by this procedure. Persons whose grievances arose, but had not

13

yet been filed, prior to the effective date of this procedure, shall not be bound by the requirement for time of initial filing as set forth in Step I above. Instead, such persons may timely file such grievances within (a) the remaining time they would have had for filing under the prior procedure; or (b) Ninety (90) days from the effective date of this procedure, whichever is shorter.

8.    Nothing in this procedure shall be construed to prevent attorneys for the plaintiff class from taking any action they deem necessary or appropriate on behalf of the plaintiff class, or any member thereof, separately from the grievance process.

BERT S. NETTLES
SS# 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
LISA W. BORDEN
SS# 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

Attorneys for Defendant
Alabama Department of
Transportation

14

OF COUNSEL:

LONDON & YANCEY
1000 Park Place Tower
2001 Park Place North
Birmingham, Alabama  35203
(205) 251-2531

## Certificate of Service

I certify that the foregoing Revised Complaint Procedure has been served upon all counsel of record by U.S. Mail this the 8th day of August, 1995.

_____
Attorney for Defendant

15

# COMPLAINT FORM

**1.Name :  Leroy Williams**

**2.Address : 3723  Bridlewood  Drive, Montg. Al 36111**

**3.Job Title : Field Supervisor**

**4. Job Classification : Transportation Technologist**

**5. Bureau & Division : Design / Location**

**6. Name of Supervisor : Joe E. Jones / Thomas Lewis**

**7. Nature of Complaint : I was recently promoted to a Transportation Technologist / Field Supervisor , My immediate supervisor is Mr. Thomas Lewis. The position is new to me , but the work is basically the same, I ask questions when needed, haven't  missed any days of work And always helping others in areas of weakness. Mr. Lewis is constantly Harassing and making derogative statement on areas of my work skills. I have asked Mr. Lewis on several occasions to assist me and his response is always the same " You should already know this " so I use others sources to get the job done without delaying work progress. Mr. Lewis also states that I show a pattern of tardiness , this is not true. We are to leave our Montgomery office at 5:00 a.m. on Monday mornings and arrive in Tuscaloosa at 7:00 a.m. .This is violating State guide lines of speeding. Doing the post speed Limits traveling the state route 82 the estimated travel time is approximately 2hrs ,58min. The latest I have arrived is 2hrs.,20min. So Am I being told to speed putting myself and others in danger, and higher supervisor Joe E. Jones approves , with Mr. Lewis time of arrival is 1hr.55min. Mr. Lewis has a very demeaning attitude toward explaining directives so it's never clear to me what he expects or wants done on work relatives. He always leave something out, he mostly relates to a field personnel that has less experience. Mr. Lewis / Mr. Jones portray me as Floundering , Inept, argumentative and insubordinate but I am not, especially when there are two opposing forces against me. Mr. Lewis**

DEFENDANT'S
EXHIBIT
2

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures    0025

Has a way of making every situation wether it is good or bad a scenario.
Mr. Lewis does this on a regular basis regardless to whomever is
around in the office or in the field. He has made comments in such that
I'm to take myself out of a crew member and make the difference as a
supervisor , in which I find this hard to do when he continues to
chastise me in the presence of co-workers. Mr. Lewis has also made
comments about me getting a promotion with a raise , where he
received only a promotion, why should that matter to him ,if I get a
Raise or not, that is why I find this to be unethical for him to question
My finances. I am very cooperative person in all situations but when
I'm being backed in a corner I will speak up for myself.

8. I am submitting at least eight witnesses: +

William Dodd Austin
Rodney Sanders
Chan Grantham
Robbie Jones
Michael Crowe
Gary Beasley
Robert Byrd
Steve Hagler

Brandon Ward
Lawerence Brown
Willie Garette
Willie Primus
Stacy Nichols
Scott Blake

Ph, #
242-6798
To All

9. Resolution: I'm just simply asking for a fair chance to prove my
Capabilities and knowledge with a basis personnel who will be fair. I
have yet to get my six month evaluation, but I have received a two
month evaluation and a reprimand with the threat of another . These
Types of matters should prompt an immediate investigation. I propose
that I be regarded correctly, receive my forthcoming promotions  and
To receive training that has been denied to me as a field supervisor. I
Come to work to support my family and to perform my duties to the
Best of my ability, not for friendship nor to be shown favoritism . I only
asked to be given the same opportunities as everyone else.

Please See Attachments...

Sincerely,

Leroy Williams

Leroy Williams v.
ALDOT - Plaintiff's   0026
Initial Disclosures

Dec-07-05 02:30P ALD̄ '-Rdwy. Design       33 353-6555       rage 1 of 2   P.06
Yahoo! Driving Directions - Montgomery, AL to Tuscaloosa, AL

Yahoo! My Yahoo! Mail

**YAHOO!** LOCAL Maps   Welcome, lsmith732
[Sign Out, My Account]

Search the Web

**lingo**
The talk of broadband

Click here for unlimited local
long distance, U.S. Canada and
Western Europe for only $19.95 a mo

# Yahoo! Driving Directions

Maps | Driving Directions  **MY YAHOO!**

Starting from: 1409 Coliseum Blvd, Montgomery, AL 36110-2060 Save Address

Arriving at: 630 15th St, Tuscaloosa, AL 35401-4737 Save Address

Distance: 133.8 miles   Approximate Travel Time: 2 hours 24 mins       Get Reverse Directions

ⓘ We assumed that you meant **1409 Coliseum Blvd**, instead of 1409 cloiseum blvd..

New! Send to Phone | Text Only | Printable Version | Email Directions

Your Full Route
Zoom In -
1st.3city567state910
Zoom
Out

Your Destination
View Larger Map



Zoom in & Re-Center    Re-Center only

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures   0027

ⓘ We assumed that you meant **1409 Coliseum Blvd**, instead of 1409 cloiseum blvd..

**Directions**

| | |
|---|---|
| 1. | Start at **1409 COLISEUM BLVD, MONTGOMERY** - go 0.8 mi |

http://maps.yahoo.com/dd_result?newaddr=1409+cloiseum+blvd.&taddr=630+15th+st.&c...   8/14/2005

Dec-07-05 02:31P ALDOT - Rdwy - Design     334   53-6555     P.07

Case 2:06-cv-00658-TFM     Document 15-7     Filed 03/26/2007     Page 27 of 36

Yahoo! Driving Directions - Montgomery, AL to Tuscaloosa, AL                    Page 2 of 2

| 2. | Turn **L** on NORTH BLVD - go 4.2 mi |
| 3. | Take ramp onto I-65 NORTH toward BIRMINGHAM - go 77.0 mi |
| 4. | Take exit #250 onto I-459 SOUTH toward TUSCALOOSA - go 15.5 mi |
| 5. | Take the I-59 SOUTH **L** exit toward TUSCALOOSA - go 33.2 mi |
| 6. | Take exit #73/US-82 onto MCFARLAND BLVD E[US-82] - go 2.0 mi |
| 7. | Turn **L** on 15TH ST - go 1.1 mi |
| 8. | Arrive at 630 15TH ST, TUSCALOOSA, on the **R** |

## Yahoo! Travel Deals

**Car Rentals** - Search for a car rental in Tuscaloosa
**Hotels** - Search for hotels in Tuscaloosa

**Disclaimer**
*Some taxes and fees additional. Learn more.
**Sign Up For Best Fare Alerts**

When using any driving directions or map, it's a good idea to do a reality check and make sure the road still exists, watch out for construction, and follow all traffic safety precautions. This is only to be used as an aid in planning.

## Get New Driving Directions

**A** **Enter starting address**
or select from My Locations

**B** **Enter destination address**
or select from My Locations

My Locations Edit
| -- My Locations -- ▼ |

My Locations Edit
| -- My Locations -- ▼ |

Address
| 1409 Coliseum Blvd |

Address
| 630 15th St |

City, State or Zip
| Montgomery, AL 36110-206 |

City, State or Zip
| Tuscaloosa, AL 35401-4737 |

Country
| United States ▼ |

Country
| United States ▼ |

Get Directions

Learn about Mobile Phone Directions

Maps | Driving Directions | Local | Yellow Pages | Real Estate

Copyright © 2005 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy - Yahoo! Maps Terms of Use - Help - Ad Feedback

Leroy Williams v.
ALDOT - Plaintiff's     0028
Initial Disclosures

Dec-07-05 02:31P ALD T-Rdwy. Design    3  -353-6555    P.08

Yahoo! Driving Directions - Centreville, AL to Tuscaloosa, AL    Page 1 of 2



# Yahoo! Driving Directions

From brent
to Tuscaloosa, AL.

Maps | Driving Directions  🔲 MY YAHOO!

**Starting from:** Brent, Centreville, AL  Save Address

**Arriving at:** 630 15th St, Tuscaloosa, AL 35401-4737  Save Address

**Distance:** 31.9 miles    **Approximate Travel Time:** 56 mins

Get Reverse Directions

New! Send to Phone | Text Only | Printable Version | Email Directions

**Your Full Route**
Zoom In -
1st.3city567state910-
Zoom
Out

**Your Destination**
View Larger Map



© 2005 Yahoo! Inc © 2005 NAVTEC

**Traffic**
Traffic info is not yet available for this area.

Find traffic for another area.
**SmartView** ℠
See locations on this map

- Restaurants
- Hotels
- ATMs
- Gas Stations
- More

What's this?

⦿ Zoom in & Re-Center  ◯ Re-Center only

## Directions

| | | Show Turn by Turn Maps |
|---|---|---|
| 1. | Start at **BRENT BYP|AL-5], CENTREVILLE** - go 0.6 mi | |
| 2. | Take ramp onto **NEW HWY 82|US-82]** - go 1.3 mi | |

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures    0029

Dec-07-05 02:31P ALD -Rdwy. Design    3 -353-6555    P.09
Yahoo! Driving Directions - Centreville, AL to Tuscaloosa, AL    Page 2 of 2

| 3. | Continue to follow US-82 - go **28.8 mi** |
| 4. | Turn **L** on **VETERANS MEMORIAL PKWY** - go **< 0.1 mi** |
| 5. | **VETERANS MEMORIAL PKWY** becomes **15TH ST** - go **1.1 mi** |
| 6. | Arrive at **630 15TH ST, TUSCALOOSA**, on the |

When using any driving directions or map, it's a good idea to do a reality check and make sure the road still exists, watch out for construction, and follow all traffic safety precautions. This is only to be used as an aid in planning.

**Get New Driving Directions**

**A** **Enter starting address**
or select from **My Locations**

My Locations Edit

-- My Locations --

Address

Brent

City, State or Zip

Centreville, AL

Country

United States

**B** **Enter destination address**
or select from **My Locations**

My Locations Edit

-- My Locations --

Address

630 15th St

City, State or Zip

Tuscaloosa, AL 35401-4737

Country

United States

**Get Directions**

Learn about Mobile Phone Directions

Maps | Driving Directions | Local | Yellow Pages | Real Estate

Copyright © 2005 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy - Yahoo! Maps Terms of Use - Help - Ad Feedback

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures

0030

http://maps.yahoo.com/dd_result?newaddr=brent&taddr=630+15th+st.&csz=centreville%...    8/14/2005

Case 2:06-cv-00658-TFM   Document 15-7   Filed 03/26/2007   Page 30 of 36

Dec-07-05 02:32P ALDC   -Rdwy. Design        334 353-6555        P.10

**Form 13P**
**Revised (1/1/1998)**

## EMPLOYEE PERFORMANCE APPRAISAL
### STATE OF ALABAMA
#### Personnel Department

### *PREAPPRAISAL*

Employee Name: __LEROY WILLIAMS__                Social Security Number: __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__

Agency: __012/TRANSPORTATION__                   Division: __0650/DESIGN__

Classification: __ENGINEERING ASSISTANT__        Class Code: __20116__

Period Covered From: __03/01/2003__   To: __03/01/2004__

---

**RESPONSIBILITIES/RESULTS:** Responsibilities and results on which an employee will be rated should be listed below. These areas should be discussed with the employee during the Preappraisal session at the beginning of each appraisal year. Please refer to the Performance Appraisal Manual for instruction on how to develop responsibilities and results.

### RESPONSIBILITIES/RESULTS

1. Gathers information as directed so that pertinent survey data is gathered with minimal errors and without valid delay.

2. Operates basic survey equipment as directed so that daily job assignments are completed in an efficient manner without valid complaint or delay.

3. Operates personal computer as directed so that information is properly transferred with no valid delays and minimal errors.

4. Clears survey lines as directed so that access and visibility to project sites are obtained without valid delay.

5. Directs traffic and places traffic control as directed to maintain a safe work site for the traveling public and fellow employees with no occurrences of avoidable accidents.

6. Maintains survey equipment so that materials are ready for use on a daily basis with no valid delays in productivity.

7. Places target and level rods as directed so that information is properly gathered with no valid delays to daily project productivity.

8. Participates in training as directed so that knowledge of survey methods is gained and productivity is maintained with no valid delays.

9. Train other lesser-experienced employees in the method of collecting data so that informaton is properly gathered without complaints or delay.

10. Complete total station notes accurately so that the data editor may enter closure notes efficiently and survey points are properly defined with minimal errors and without valid delays.

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures        0031

Dec-07-05 02:32P ALDOT - Rdwy. Design 334 353-6555 P.11

Case 2:06-cv-00658-TFM Document 15-7 Filed 03/26/2007 Page 31 of 36

**WORK HABITS:** Provide a check in the appropriate space when the policies and procedures concerning the following areas have been discussed with the employee. In particular, the attendance and punctuality policies ould be provided to the employee in writing. For instructions, refer to the performance appraisal manual and policies of the agency.

CHECK IF DISCUSSED:

_____X_____ Attendance

_____X_____ Punctuality

_____X_____ Cooperation with Coworkers

_____X_____ Compliance with Rules

**PREAPPRAISAL SIGNATURES:** Date of Session: ____02 - 12 - 03____

Employee Signature: _Leroy Williams_

Rater Signature: _Gary A. Beasley_

Reviewer Signature: _James M. Caudl_

### MIDAPPRAISAL

Describe the employee's performance strength(s) as observed during the first half of the appraisal period.

Mr. Williams has years of experience and gathers data, as a rodman, quickly and accurately. He wastes very little energy getting unnecessary data. He helps me train new employees and is very capable operating our total station instrument. He can always be counted on to give a good days work.

Describe area(s) of the employee's performance that need improvement as observed during the first half of the appraisal period.

Mr. Williams has very few weaknesses. He could use some supervisory time over the crew. He could also use more time operating our electronic level.

Document the action plan that has been discussed to improve the areas of weakness.

I will allow Mr. Williams the opportunity to supervise some phases of our upcoming projects. He will also be given the chance to operate our electronic level in the next year.

_____

dappraisal has been held and performance has been discussed:

Date: 9-25-03

Employee Signature: _Leroy Williams_    Rater Signature: _Gary A. Beasley_

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures    0032

Dec-07-05 02:33P ALDOT Rdwy. Design 33-353-6555 P.12

Case 2:06-cv-00658-TFM   Document 15-7   Filed 03/26/2007   Page 32 of 36

Form 13P
Revised (1/1/1998)

# EMPLOYEE PERFORMANCE APPRAISAL
## STATE OF ALABAMA
### Personnel Department

## *PREAPPRAISAL*

Employee Name: <u>LEROY WILLIAMS</u>          Social Security Number: <u>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</u>

Agency: <u>012/TRANSPORTATION</u>          Division: <u>0850/DESIGN</u>

Classification: <u>ENGINEERING ASSISTANT</u>          Class Code: <u>20116</u>

Period Covered From: <u>5-18-04</u> To <u>3-1-05</u>

**RESPONSIBILITIES/RESULTS:** Responsibilities and results on which an employee will be rated should be listed below. These areas should be discussed with the employee during the Preappraisal session at the beginning of each appraisal year. Please refer to the Performance Appraisal Manual for instruction on how to develop responsibilities and results.

### RESPONSIBILITIES/RESULTS

1. PRODUCES HIGHWAY PLAN SHEETS (ELECTRONIC AND CONVENTIONAL) SO THAT THEY ARE ACCURATE AND COMPLETE, ACCESSIBLE, AND ORDERLY.

2. DRAFTS ALIGNMENTS AND GEOMETRY THAT ARE ACCURATE, IN ACCORDANCE WITH ESTABLISHED DESIGN GUIDELINES AND CRITERIA, AND COMPLETED IN A TIMELY MANNER.

3. PROVIDES AND MAINTAINS SPECIAL PLAN SHEETS (BRIDGE SHEETS, UTILITY SHEETS, TRAFFIC CONTROL PLANS), PROJECT NOTES, AND PROJECT DETAILS SO THAT ALL DRAWINGS, NOTES AND DETAILS ARE INCLUDED IN A COMPLETE AND ORDERLY PLAN ASSEMBLY.

4. REVISES PLAN SHEETS USING REPORTS AND REVIEWS FROM ENGINEERS, SUPERVISORS, AND TEAM LEADER SO THAT CORRECTIONS AND REVISIONS ARE COMPLETED IN AN ACCURATE AND TIMELY MANNER.

5. REVISES QUANTITIES AND ESTIMATES USING REPORTS AND REVIEWS FROM ENGINEERS AND SUPERVISORS, SO THAT CORRECTIONS AND REVISIONS ARE COMPLETED IN AN ACCURATE AND TIMELY MANNER.

6. CALCULATES QUANTITIES, ENTER ESTIMATES AND DATA SO THAT PAY ITEMS AND INFORMATION ARE INCLUDED IN AN ACCURATE AND TIMELY MANNER.

7. READS GUIDELINES AND DESIGN CRITERIA SO THAT HIGHWAY GEOMETRY IS DONE IN ACCORDANCE WITH CURRENT GUIDELINE CRITERIA.

8. ATTENDS TRAINING FUNCTIONS, AND SECTION MEETINGS TO ATTEND, PARTICIPATE, LEARN, INFORM OTHERS, AND APPLY KNOWLEDGE AND INFORMATION TO THE TEAM LEADER..

9. PROVIDES PROJECT CORRESPONDENCES AND MAINTAIN PROJECT FILES (ELECTRONIC AND CONVENTIONAL MEDIA) SO THAT A CHRONOLOGICAL DOCUMENTATION OF PROJECTS CAN BE RETRIEVED IN A TIMELY MANNER.

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures          0033

Dec-07-05 02:33P ALD( -Rdwy. Design          334 J53-6555          P.13

**Work Habits:** Provide a check in the appropriate space when the policies and procedures concerning the following areas have been discussed with the employee. In particular, the attendance and punctuality policies should be provided to the employee in writing. For instructions, refer to the performance appraisal manual and policies of the agency.

CHECK IF DISCUSSED:     ___X___     Attendance

                        ___X___     Punctuality

                        ___X___     Cooperation with Coworkers

                        ___X___     Compliance with Rules

**PREAPPRAISAL SIGNATURES:** Date of Session: ___May 21, 2004___

Employee Signature: _Leroy Williams_

Rater Signature: _Theresa M Barksdale_

Reviewer Signature: _____

## MIDAPPRAISAL

Describe the employee's performance strength(s) as observed during the first half of the appraisal period.

LEROY DOES NOT HESITATE TO ASK QUESTIONS OR REQUEST ASSISTANCE. LEROY IS VERY COOPERATIVE WITH HIS CO-WORKERS.

Describe area(s) of the employee's performance that need improvement as observed during the first half of the appraisal period.

LEROY NEEDS MORE ON-THE-JOB TRAINING.

Document the action plan that has been discussed to improve the areas of weakness.

LEROY WILL WORK ON ASSIGNED TASKS, AND I WILL REVIEW THEM UPON COMPLETION. LEROY WILL PARTICIPATE IN AVAILABLE TRAINING.

A midappraisal has been held and performance has been discussed:

Date: _Sept 28, 2004_

Employee Signature: _Leroy Williams_     Rater Signature: _Theresa M Barksdale_

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures
0034

Dec-07-05 02:34P ALDOT - Rdwy. Design    33    353-6555    P.14

Case 2:06-cv-00658-TEM    Document 15-7    Filed 03/26/2007    Page 34 of 36

form 13P
Revised (1/1/1998)

# EMPLOYEE PERFORMANCE APPRAISAL
## STATE OF ALABAMA
### Personnel Department

## *PREAPPRAISAL*

Employee Name: ___Leroy Williams___    Social Security Number: ___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___

Agency: ___012/Transportation___    Division: ___0850/Design___

Classification: ___Transportation Technologist___    Class Code: ___20481___

Period Covered From: ___05/16/05___ To: ___11/15/05___    *Probationary Period*

**RESPONSIBILITIES/RESULTS:** Responsibilities and results on which an employee will be rated should be listed below. These areas should be discussed with the employee during the Preappraisal session at the beginning of each appraisal year. Please refer to the Performance Appraisal Manual for instruction on how to develop responsibilities and results.

## RESPONSIBILITIES/RESULTS

Instruct employees so that project productivity standards are established and met with each project being completed without valid delay.

Assigns employees work so that all work is performed and productivity standards are met each day with each goal or project being completed without valid complaint or delay.

Operates personal computer so that information is transferred, compiled, and provided to designers with minimal errors and without valid delay.

Oversees the gathering of all field survey information so that all pertinent project data can be compiled and provided to designers with minimal errors and without valid delay.

Compiles information so that field maps, utility maps, profile maps, and requires pertinent project data are provided to designers with minimal errors and without valid delay.

Trains employees so they are afforded the opportunity to learn correct surveying methods, and are able to perform assigned tasks at a fully competent level with no valid complaints or delays.

Communicates orally with individuals so that instructions are received, information is properly exchanged, and problems are solved with no valid complaints.

Supervises and monitors employee work so that accurate performance appraisals are made and Discipline, if needed, is administered with no valid complaints from supervisors or employees.

Leroy Williams v,
ALDOT - Plaintiff's
Initial Disclosures    0035

Leroy Williams
3723 Bridlewood Dr.
Montgomery, Alabama 36111

December 7, 2005

Ms. McGhee
1130 22 Suite 2000
Birmingham, Alabama 35205

Dear Sir or Madam:

In response to the reasons given by my superiors, Mr. Tommy Lewis, Mr. Joe Jones, Mr. Don Arkle, and William Adams, at no time; was I given a fair hearing. I was constantly harassed while doing or attempting to do any of my work. As they know this was a new position and all new positions require training which I didn't receive. I feel there should have been some sort of training, whether hands on or classroom, instead, when I asked questions I was referred to as floundering and inept, argumentative and insubordinate.

It was stated that I was not able to assist one of the workers or that they could not come to me, but my question was why just one employee? Why not all of the workers? I asked one of my senior workers to assist this particular problem, since he was more experienced, to help me with work related problems since he was more familiar with the job. The problem was not disregarded, but handled by someone more familiar with the situation; therefore, it was a great help to me, since I also was learning a new job.

It was stated that I was not capable of following directions, Mr. Tommy Lewis, was never specific on what he wanted. In most cases, he would throw something at me and say do it, then complain that's not what he wanted. He never told me what he wanted, just to do it. If I asked a question about what he wanted, he would respond by saying, "You should already know this". That didn't answer my questions, only left me to guess to what specifically he wanted.

He did not help or answer my question nor did he appoint anyone else to assist me. That was a lack of his unwillingness to utilize his supervisory skills for my benefit. At no given time was I insubordinate to Mr. Lewis, but when I felt he was pressing, I attempted to go to the next supervisor in line; the doors were shut in my face.

In response to section A, paragraph B:

Tommy asked me to check in on the point and that is what I did as I was instructed. Then he said, "That's not what I meant". He said, "I meant to run a closure to find an error, from a remote point that was set." Then he wrote me up and said I didn't follow directions. That sounds more like he didn't give any directions.

Section A paragraph C

Upon leaving on the 31st of May, I was told to be at the job site at 7 a.m.; I was at the job site at 6:50a.m. I waited for an extended period of time before I contacted my supervisor to locate the crew. That was when Tommy said that he stated for us to meet in the hotel parking lot. He also stated that I was late and didn't follow instructions, when in fact, I did exactly what he said do. The job site was in Auburn which is where I was, but the hotel was in Opelika that was ten to fifteen miles out of the way from the job site. Every morning after that, we met like I was instructed previously, at the job site.

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures        0036

● Page 2                                                December 7, 2005

Section A paragraph H:

Tommy said he had to show me how to add and subtract angles.  If I asked for a revision to be sure of my work, being new in that position, was I wrong for asking for help?

Paragraph G

As far as my questions, I never had terra model training class and if some things in the menu had changed since my return to location.  So I basically needed a briefing to refresh what I have learned and what has been added since my return.

Monday, June 20th

One of my write ups were related to being tardy. I called Tommy and told him I was not feeling well and would be out that day.  He told me I should come in since I was the supervisor.  I told him I would come on anyway.  He then wrote me up and said I was tardy, and that is unfair.  Are all employees treated in this manner?  Have they received a write up for calling in?

On August 10, I was instructed to take Mr. Tommy Lewis's vehicle for service, by the Talladega District Office.  Swapping material from vehicle to vehicle took more time out from our work day.  All this was done around 8:30am, then we proceeded to the field about thirty minute drive along the way, we stopped to get a drink and biscuit at the Quick Mart Store. We arrived to the field at about 9 a.m.  We unloaded the material needed and preceded to the job site which was about a 15 minutes walk into our site and began to work.  I reviewed what was needed got, which was the distances for at least 3 set ups. We accomplished as much as possible before it started to rain at about 11a.m.  In case of rain we stop until the rain stops, it rained the remainder of the day and we spent the rest of the day training on computer skills in the office, which I explained to Tommy Lewis.  In return I got a reprimand for insubordination. He began raising his voice, and stood up over me yelling.  After seeing there was nothing I could say I walked away.  I called the next superior in line to tell them about the situation, which I received a negative response.

Instead of helping, they responded by saying, "What the hell you call me for?"  So what was I to do when I feel threaten by my superior. I was not there to fight a battle, nor win a war.  I was there to learn my job, and perform my task to the best of my ability.  I was never given a fair chance, not even given a fair amount of time to improve or learn the job.  Being harassed daily is pressure when someone of good performance, no one should have to work under those conditions.  I was told by several other employees that this was prearranged for me to fail, and I was in a no win situation, which those people asked to remain anonymous and I will respect their wishes.  My desire is to allow the truth to be established that I am a good employee.  Realizing that this may have happened previously, and the conscience thought that it may happen again is unfair to any aspiring employee.

Sincerely,

*Leroy Williams*

Leroy Williams
Engineering Assistant II/III

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures
0037

Form 1 Revised 5/88

Submit in Duplicate

APPROVED

APPROVED

**STATE OF ALABAMA PERSONNEL DEPARTMENT**

**RECOMMENDATION FOR PERSONNEL ACTION**

Approved

| 1. Name of Employee | | | 2. Social Security Number | 3. Salary |
|---|---|---|---|---|
| Leroy | | Williams | 423 80 8026 | 4.28 hour |
| First | MI | Last | | |

| 4. Position Number | 5. Class Title/Code | | 6. Class Option Title |
|---|---|---|---|
| 2199720 | Seasonal Laborer | (90102) | |

| 7. Department | 8. Division/Code | | 9. Effective Date |
|---|---|---|---|
| Highway | Fourth (3) | ( 004 ) | 9-30-92 |

| INSTRUCTIONS | KIND OF ACTION |
|---|---|

INSTRUCTIONS

Item 11 requires signature of both department heads.

Items 11, 13, 14, 15, 21 require approval of Personnel Director before action is official.

Items 12, 13, 14, 15 must have copy of letter to employee attached. If voluntary demotion, letter from employee should be attached.

Item 17 should have copy of letter of resignation or confirmatory letter from department attached.

KIND OF ACTION

10. Transfer within department ........ ☐
11. Transfer to another department ...... ☐
12. Suspension ...................... ☐
13. Demotion ....................... ☐
14. Layoff ......................... ☐
15. Dismissal ...................... ☐
16. Separation by death ............. ☐
17. Resignation .................... ☐
18. Retirement ......................
    Disability ....... ☐ Service ...... ☐
19. Expiration of temporary appointment ☒
20. Expiration of provisional appointment ☐
21. Leave Without Pay ............... ☐
22. Returned from LWOP .............. ☐
23. Returned from military leave ...... ☐
24. Change of name ................. ☐
25. Other ......................... ☐

| ITEMS AFFECTED BY ACTION | FROM: | TO: |
|---|---|---|
| 26. Department (Items 10 and 11) | | |
| 27. Division/Code (Items 10 and 11) | ( | ( |
| 28. County of Employment/Code (Items 10 and 11) | ( | ( |
| 29. Class Title/Code (Items 10, 11, 13) | ( | ( |
| 30. Class Option/Code (Items 10, 11, 13) | | |
| 31. Dates (Items 12, 21, 22, and 23) | | |
| 32. Name (Item 24) | | |

33. If action is separation, is reemployment recommended?    Yes  X  .   No ____ . (If "No", explanation must be given.)

34. Remarks.

| 35. Signed (Appointing Authority)  Div. Engr. | Date  10-8-92 |
|---|---|
| 36. Signed (Appointing Authority) | Date  10/13/92 |
| 37. Approved (Personnel Director) | Date |

| ACTION | SEX | RACE | CO. RES | EDU | VP | DEPT | DIV | EMP TYPE | CO. EMP | PART TIME | HOW PAID | RANGE DIFF. | EMP SUB | ANNUAL RAISE | PROBATION END | LEAVE | RFI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | |

DEFENDANT'S EXHIBIT A

Form 6 — Revised 1987

STATE OF ALABAMA — PERSONNEL DEPARTMENT

NOTICE OF APPOINTMENT TO LABOR POSITION

*Helped*

| | |
|---|---|
| Social Security Number 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 | PR# 49098 |

| | | Position No. 2199020 1 |
|---|---|---|
| Full Name Leroy | Williams | |
| First    Middle | Last | Location of Position   Auburn |
| Address Rte 2, Box 277-A | | |
| House or Apt. No.    Street | | Dep't.   Highway |
| Auburn | Lee | AL | 36830 | Division   Fourth |
| City | County | State | Zip Code | |
| Legal Residence   Lee | | County   Lee |
| County   AL | | Class Title   Seasonal Laborer |
| | State | Class Code   58102 |

| Date of Birth | Mo | Day | Year | Sex (Check one) | Pay Rate |
| | | | | 1. (X) Male    2. ( ) Female | |

Race check one: 1. ( ) White   2. (X) Black   3. ( ) Hispanic   4. ( ) Asian or Pacific Islander
5. ( ) American Indian or Alaskan Native   6. ( ) Other

Effective Date   8-10-92

Circle Highest Grade Completed.    1   2   3   4   5   6   7   8   9   10   11   12

Kind of Action: (X) Initial Employment    ( ) Renewal    ( ) Change of Pay    ( ) Change in title of Job

Employment Type: 1. ( ) Full-time   2. (X) Temporary (104 work days or less)   3. ( ) Part-time   4. ( ) Part-time temporary   5. ( ) Conditional

Describe duties to be performed in detail (Use the back of the form if necessary)

Employee will pick up litter, cut bushes, mow grass, prune shrubs and trees at the Welcome Center and Rest Area.

| | |
|---|---|
| Signed _____   Date 2-24-92 | Signed _____   Date 8/6/92 |
| Name of Supervisor | Appointing Authority |
| Approved _____   Date 8-12-92 | |
| Personnel Director | |

APPROVED  GHRS  8-13-92
APPROVED  SPD  8/20/92

n 3 — Revised 1990

## APPLICATION FOR EXAMINATION

RETURN TO
STATE PERSONNEL DEPARTMENT
MONTGOMERY, ALABAMA 36130

**AN EQUAL OPPORTUNITY EMPLOYER**

Sep 10 10 20 AM '93

**GENERAL INSTRUCTIONS:**

A separate application is required for each job. Do not write in shaded areas. Type or print clear... plete... form... comp...

ENTER SOCIAL SECURITY NUMBER HERE

| 4 | 2 | 3 | 8 | 0 | 8 | 0 | 2 | 6 |

Name: **Leroy** (First) **Williams** (Middle) (Last)

Title of Examination for Which: **HIGHWAY MAINTENANCE TECHNICIAN I**

Address: **649 Morgan Ave** (House or Apartment No.) (Street)

**Monta** (City) **Al** (State) (County) **36104** (Zip Code)

Option (if Applicable):

Date of Birth: Mo **04** Day **21** Year **65**

Telephone Number: Home **263-1567**   Office **(519-24-36)**

Sex (Check One): [X] Male   [ ] Female

Race (Check One): 1.[ ] White   2.[X] Black   3.[ ] Hispanic   4.[ ] Asian or Pacific Islander   5.[ ] American Indian or Alaskan Native   6.[ ] Other

### EDUCATION

High School Graduate or GED? [X] Yes [ ] No   If No, circle highest grade completed   1 2 3 4 5 6 7 8 9 10 11 (12)

| Name and location of high school attended: | FROM (Mo.) (Yr.) | TO (Mo.) (Yr.) | Did you Graduate? | Date of Graduation | Area of Study |
|---|---|---|---|---|---|
| **Tuskegee Institute High** | 08 79 | 05 83 | yes | May 83 | General |

| Name and location of Colleges and Universities Attended | FROM (Mo.) (Yr.) | TO (Mo.) (Yr.) | Did you Graduate? | Fields of Study Major(s) | Minor(s) | Degree and Date |
|---|---|---|---|---|---|---|
| **Tuskegee** | 8-83 | 12-85 | yes | **Food Service** | | |

| Name and location of business, correspondence or vocational school attended | FROM (Mo.) (Yr.) | TO (Mo.) (Yr.) | Did you Graduate? | | | |
|---|---|---|---|---|---|---|
| **I.L.S.** | 8-90 | 4-92 | no | | **Comp. App + Business** | |

If you attended college, but did not graduate, show credit received   Sem. hrs. ___ Qtr. hrs. ___

List professional certificate or license if applicable ___

List below courses included in your education which are particularly related to the duties of this position.

| Subjects | Sem. hrs. | Qtr. hrs. | Subjects |
|---|---|---|---|
| **Communication Skills   math** | | **400 hrs.** | |

**DEFENDANT'S EXHIBIT B**

### COMPLETE THIS SECTION IF YOU ARE CLAIMING VETERAN'S PREFERENCE

If you claim Veteran's Preference, check the type below. Attach copies (which will not be returned) of the required documents to your application to support your claim.

1. [ ] Veteran (5 points) — Requires DD214 or document showing dates of service and type of discharge. (If this has been submitted previously & is on file with this office, you may disregard this requirement.)
2. [ ] Disabled Veteran (10 points) — Requires DD214 or other document as above & letter of disability from V.A. dated within last 6 months. V.A. letter must be kept updated until register is established or you lose the extra 5 points.
3. [ ] Veteran's widow (10 points) — Requires DD214 or other document as above & marriage & death certificates. Cannot be claimed if widow remarries.
4. [ ] Disabled Veteran's wife (10 points) — Requires DD214 or other document as above & V.A. letter of disability dated within last 6 months. Cannot be claimed unless still married to disabled veteran.
5. [ ] Permanently Disabled Veteran (10 points) — Requires DD214 or other document as above indicating veteran is permanently disabled; or DD214 or other document & V.A. letter indicating permanent disability.

### COMPLETE THIS SECTION IN ORDER TO BE SCHEDULED FOR WRITTEN EXAMS

Written exams will be given periodically in any of the places listed below for which a sufficient number of applicants express preference. Indicate by number your 1st, 2nd, and 3rd choices.

| | | | |
|---|---|---|---|
| 01 [ ] Alexander City | 07 [ ] Linden |
| 02 [ ] Andalusia | 08 [ ] Mobile |
| 03 [ ] Birmingham | 09 [1st] Montgomery |
| 04 [ ] Decatur | 10 [3rd] Selma |
| 05 [ ] Dothan | 11 [ ] Sheffield |
| 06 [ ] Anniston | 12 [ ] Tuscaloosa |

If you qualify, you will receive a notice showing the place and time you are to report for the exam.

**CERTIFICATE** (Must be signed in ink by applicant):

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of examination or employment. I further authorize the release of all relevant prior employment, military service and criminal records. If employed I agree, consistent with applicable laws, to receive compensatory time off in lieu of overtime compensation for any overtime hours worked.

Signed **Leroy Williams**   Date **8-14-93**

DATE 02/07/94

940200117

# STATE OF ALABAMA PERSONNEL DEPARTMENT
## CERTIFICATION OF ELIGIBLES

| DEPARTMENT IDENTIFICATION (DEPT./DIV.) | CLASSIFICATION (CODE/TITLE) | CLASS OPTION (CODE/TITLE) | PAGE |
|---|---|---|---|
| WY TRANSPORTATION<br>55 EQUIPMENT/PROCUREMENT SERVICES | 90241<br>HWY MAINTENANCE TECHN I | 940404342402 | 5 |

| REGISTER TYPE | EMPLOYMENT TYPE | COUNTY | VACANCIES | RACE | AGE LIMIT | SEX | O/N TRAVEL | SHIFT WORK | SALARY |
|---|---|---|---|---|---|---|---|---|---|
| CONTINUOUS OPEN-COMP | 1 PERMANENT | 51 MONTGOMERY | 1 | | | | N | 1 | 533.60 |

| METHOD OF CERTIFICATION | POSITION NUMBERS |
|---|---|
| 1 MERIT SYSTEM PLUS TIES | 1870909 |

| SSAN | NAME AND ADDRESS | RACE | V.P. | GRADE | ACT. | POSITION | |
|---|---|---|---|---|---|---|---|
| 67813593 | STACEY HOLICE A<br>1936 RIGBY ST<br>MONTGOMERY    AL 36110 | 1 | | 90.00 | C | | |
| 46621 | STANTON RANDALL T<br>4235 ATLANTA HWY<br>MONTGOMERY    AL 36109 | 1 | | 90.00 | C | | |
| 16809670 | STUCKEY BRIAN S<br>RT 2 BOX 289<br>EVERGREEN    AL 36401 | 1 | 5 | 90.00 | C | | |
| 20924266 | TATUM CHARLES F<br>RT 1 BOX 630<br>DADEVILLE    AL 36853 | 1 | | 90.00 | C | | |
| 18927617 | THOMAS JAMES H<br>RT 5 BOX 133 H<br>TROY    AL 36081 | 2 | | 90.00 | F G | | |
| 24885362 | WARE JOHNATON L<br>163 RIVERSIDE DRIVE<br>MONTGOMERY    AL 36104 | 2 | ✓ | 90.00 | C | | |
| 23808026 | WILLIAMS LEROY<br>649 MORGAN AVE<br>MONTGOMERY    AL 36104 | 2 | | 90.00 | A | 1870909 | 533.60<br>4-2-94 |
| 24067578 | WILLIAMS STEPHEN G<br>1215 NORTH 29TH ST<br>BIRMINGHAM    AL 35234 | 2 | | 90.00 | F | | 04 |
| 21986722 | WILLIAMS TERRY L<br>2656 CARTER AVE<br>MOBILE    AL 36617 | 2 | | 90.00 | L | | |
| 20721705 | WILLIAMS WILLIE F<br>419 AUBURN ST<br>MONTGOMERY    AL 36104 | 2 | ✓ | 90.00 | C | | |
| 20600567 | WILLIAMSON LEWIS R<br>P O BOX 178<br>DEATSVILLE    AL 36022 | 1 | | 90.00 | C | | |

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

APPROVED

GHES
APPROVED    4-4-94
APPROVED    4-11-94

DEFENDANT'S EXHIBIT C

| CERTIFIED—PERSONNEL DIRECTOR | DATE CERTIFIED | CERTIFICATION RETURNED—APPOINTING AUTHORITY | DATE RETURNED |
|---|---|---|---|

FORM 15B Rev. 6/84

IMPORTANT: SEE INSTRUCTIONS ON REVERSE SIDE

ORIGINAL

# APPLICATION FOR EXAMINATION

RETURN TO
STATE PERSONNEL DEPARTMENT
MONTGOMERY, ALABAMA 36130

## AN EQUAL OPPORTUNITY EMPLOYER

**GENERAL INSTRUCTIONS:**

A separate application is required for each job. Do not write in shaded areas. Type or print clearly in dark ink and sign. Complete ...

ENTER SOCIAL SECURITY NUMBER HERE

| 4 | 2 | 3 | 8 | 0 | 8 | 0 | 2 | 6 |

Name: **Leroy** (First) **Williams** (Last)   Middle

Title of Examination for Which: **E A I**

Address: **1261 AAron ST** (House or Apartment No.) (Street)

Option (If Applicable): **Hn I II**

City: **Montgomery AL.**  County: **Mont.**  Zip Code: **36104**

Date of Birth: Mo **04** Day **21** Year **65**

Telephone Number: Home **834-5717**   Office

Sex (Check One): [ ] Male  [X] Female — (marked Male)

Race (Check One):
1. [ ] White    2. [X] Black    3. [ ] Hispanic    4. [ ] Asian or Pacific Islander
5. [ ] American Indian or Alaskan Native    6. [ ] Other

**EDUCATION**

High School Graduate or GED?  [X] Yes  [ ] No   If No, circle highest grade completed  1 2 3 4 5 6 7 8 9 10 11 (12)

| Name and location of high school attended | FROM (Mo) (Yr) | TO (Mo) (Yr) | Did you Graduate? | Date of Graduation | Area of Study |
|---|---|---|---|---|---|
| Tuskegee Institute High | 09/79 | 05/83 | Yes | 05/83 | Business |

| Name and location of Colleges and Universities Attended | FROM (Mo) (Yr) | TO (Mo) (Yr) | Did you Graduate? | Field(s) of Study Major(s) | Minor(s) | Degree and Date |
|---|---|---|---|---|---|---|
| Tuskegee University | 12/83 | 12/85 | no | Food Service | ~~food service~~ | |

| Name and location of business, correspondence or vocational school attended | FROM (Mo) (Yr) | TO (Mo) (Yr) | Did you Graduate? | Field(s) of Study |
|---|---|---|---|---|
| Interactive learning | 10/90 | 4/92 | no | Computer Application |

If you attended college, but did not graduate, show credit received   List professional certificate or license if applicable
Sem. hrs. **180**   Qtr. hrs.

List below courses included in your education which are particularly related to the duties of this position.

| Subjects | Sem. hrs. | Qtr. hrs. | Subjects | | |
|---|---|---|---|---|---|
| Lotus 123 | | | Word Processing | | |
| MS DOS | | | Data Processing | | |
| Screen Printing | | | Basic Programming | | |

**DEFENDANT'S EXHIBIT D**

## COMPLETE THIS SECTION IF YOU ARE CLAIMING VETERAN'S PREFERENCE

If you claim Veteran's Preference, check the type below. Attach copies (which will not be returned) of the required documents to support your claim.

1. [ ] Veteran (5 points) — Requires DD214 or document showing dates of service and type of discharge. If this has been submitted previously & is on file with this office, you may disregard this requirement.
2. [ ] Disabled Veteran (10 points) — Requires DD214 or other document as above & letter of disability from V.A. dated within last 6 months. V.A. letter must be kept updated until register is established or you lose the extra 5 points.
3. [ ] Veteran's widow (10 points) — Requires DD214 or other document as above & marriage & death certificates. Cannot be claimed if widow remarries.
4. [ ] Disabled Veteran's wife (10 points) — Requires DD214 or other document as above & V.A. letter of disability dated within last 6 months. Cannot be claimed unless still married to disabled veteran.
5. [ ] Permanently Disabled Veteran (10 points) — Requires DD214 or other document & V.A. letter indicating veteran is permanently disabled; or DD214 or other document & V.A. letter indicating permanent disability.

## COMPLETE THIS SECTION IN ORDER TO BE SCHEDULED FOR WRITTEN EXAMS

Written exams will be given periodically in any of the places listed below for which a sufficient number of applicants express preference. Indicate by number your 1st, 2nd, and 3rd choices.

| | | | |
|---|---|---|---|
| 01 [X] Alexander City | 07 [ ] Linden |
| 02 [ ] Andalusia | 08 [ ] Mobile |
| 03 [ ] Birmingham | 09 [X] Montgomery |
| 04 [ ] Decatur | 10 [ ] Selma |
| 05 [ ] Dothan | 11 [ ] Sheffield |
| 06 [ ] Anniston | 12 [ ] Tuscaloosa |

If you qualify, you will receive a notice showing the place and time you are to report for the exam.

## CERTIFICATE (Must be signed in ink by applicant):

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of examination or employment. I further authorize the release of all relevant prior employment, military service and criminal records. If employed I agree, consistent with applicable laws, to receive compensatory time off in lieu of overtime compensation for any overtime hours worked.

Signed: **Leroy Williams**   Date **4/6/94**

## REFERENCES

List three reliable persons, not relatives or present employer, who know you well enough to give information about you

| Name | Address and Phone Number | Employer |
|------|--------------------------|----------|
| Tim Owens | #1 Ski lodge - 260-9974 | AT&T |
| Myran Perry | Max - 832-9961 | Barber |
| Angela Davis | Montgomery - 281-1359 | A-N-U-Look |

| | Yes | No |
|---|---|---|
| Do you have any physical handicaps or health problems that require special testing accommodations? | | ✓No |
| Have you ever been involuntarily terminated or forced to resign from a position? | | No |
| Have you ever been convicted of a law violation including any DUI convictions? | | ✓No |

If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet noting any mitigating or extenuating circumstances. Processing of an application or admission to a test does not preclude the subsequent removal of an applicant's name from the eligible register because of these and similar disqualifications.

## WORK HISTORY

### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME' IS ATTACHED

Begin with your PRESENT or most recent employment. list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties. (Attach additional sheets if needed.)

1. Current or Last Employer: **Department of Transportation**
Your Official Job Title: **HmT I**
Address: **4 Division 3 Distict (Lee County)**
Type of Business: **STATE**

| FROM Month Year | TO Month Year | Total Months | If part-time, number of hours per week | Beginning Salary | Ending Salary | May we contact employer? |
|---|---|---|---|---|---|---|
| 06/92 | | | | $ 4.28 per Hr | $ 533.60 per Bi-wkly | ✓Yes / No |

Number/Title of Employees You Supervised: N/A
Equipment You Operated: Road Machinery
Reason for Leaving: Relocated

Name, Title, and Phone Number of Supervisor: (C E II) Larry Smith (1-800-252-3053.

Describe Your Duties in Detail: To maintain clean & safe Hwys. (building Shoulder Paving, Flagging, Mowing, Putting up and replacing Signs, operating some Heavy Equipment. Ect. ...

2. Employer: **Olive Garden**
Your Official Job Title: **Sauce Chef**
Address: **Tucker Ga.**
Type of Business: **Food Service**

| FROM Month Year | TO Month Year | Total Months | If part-time, number of hours per week | Beginning Salary | Ending Salary |
|---|---|---|---|---|---|
| 10/90 | 04/92 | 24 | | $ 6.00 per Hr | $ 8.95 per Hr |

Number/Title of Employees You Supervised:
Equipment You Operated: Kitchen Tools Ovens, Ect.
Reason for Leaving: Relocated

Name, Title, and Phone Number of Supervisor: Tom (Store mang)

Describe Your Duties in Detail: To prepare sauces for each additional Sauce Menue.



## AVAILABILITY

Please answer the following questions carefully, you will be considered for employment only in the locations where you indicate you will accept work. You will not be considered for jobs involving overnight travel, temporary, part-time or shiftwork unless you indicate that you will accept employment under these conditions.

NOTE! If you decline three offers for consideration of appointment in the class for which you are applying, your name will be placed in the inactive section of the list of eligibles for that class. If your name is certified to an agency and you fail to reply to that agency's inquiry concerning your availability for appointment to a position, your name will be placed in the inactive section of the list of eligibles for that class. Depending on the circumstances, your name may be restored to the active section of the list of eligibles by submitting a satisfactory written explanation of your reasons for declining offers of appointment.

Please indicate in the spaces provided beneath the map of Alabama those areas of the state in which you would accept employment. You may choose a combination of up to seven counties and/or regions from the list below. If you list a region, you will be considered available for all counties in that region. The counties included in each region are listed alphabetically below the region.

**81— Northwest Alabama**
17 Colbert
30 Franklin
39 Lauderdale
40 Lawrence

**82— Huntsville/Decatur Area**
36 Jackson
42 Limestone
45 Madison
48 Marshall
52 Morgan

**83— Northeast Alabama**
10 Cherokee
25 DeKalb
28 Etowah

**84— Jasper/Winfield Area**
29 Fayette
38 Lamar
47 Marion
64 Walker
67 Winston

**85— Tuscaloosa Area**
04 Bibb
32 Greene
33 Hale
54 Pickens
60 Sumter
63 Tuscaloosa

**86— Birmingham Area**
05 Blount
22 Cullman
37 Jefferson
58 Shelby
59 St. Clair

**87— East Central Alabama**
08 Calhoun
09 Chambers
14 Clay
15 Cleburne
19 Coosa
56 Randolph
61 Talladega
62 Tallapoosa

**88— Southwest Alabama**
12 Choctaw
13 Clarke
46 Marengo
65 Washington

**89— Selma/Clanton Area**
11 Chilton
24 Dallas
53 Perry
66 Wilcox

**90— Montgomery Area**
01 Autauga
26 Elmore
43 Lowndes
51 Montgomery

**91— Phenix City/Troy Area**
03 Barbour
06 Bullock
41 Lee
44 Macon
55 Pike
57 Russell

**92— Mobile Area**
02 Baldwin
49 Mobile

**93— South Central Alabama**
07 Butler
18 Conecuh
20 Covington
21 Crenshaw
27 Escambia
50 Monroe

**94— Dothan Area**
16 Coffee
23 Dale
31 Geneva
34 Henry
35 Houston

**95— Statewide .**
If you list 95 you will be considered for vacancies throughout the state regardless of location (Relocation may be necessary).

**Where did you learn of this job?**
1) Employment Service        |
2) Job Announcement Notice  |
3) Newspaper                |
4) College Recruiter        |
5) Friends/Relatives        |
6) Department News Bulletin |

List the numbers of up to (7) seven counties and/or regions where you are willing to work:

91  90  92  86
51  41  44

If you want to be considered for appointment by **only certain** State agencies, indicate the names of up to three of those agencies below.

_____
_____
_____

Will you accept work involving extensive overnight travel?   | ✓ | Yes  |   | No
Will you accept part-time work?   | ✓ | Yes  |   | No
Will you accept temporary work for four months or less?   |   | Yes  | ✓ | No
Which shifts are you willing to accept?
    0. | ✓ | all shifts   1. |   | 1st only   2. |   | 2nd only   3. |   | 3rd only
    4. |   | 1st & 2nd only   5. |   | 1st & 3rd only   6. |   | 2nd & 3rd only

Enter the earliest date you will be available to interview for employment. (Your name will not appear on a list of eligibles until this date.)

| Month | Day | Year |
|-------|-----|------|
| 0 4 | 0 6 | 9 4 |

4406083557 8 2

Form 4 - Revised 1987                 S    , OF ALABAMA — PERSONNEL DEPART    T
10J5 03 C 2                         PROVISIONAL APPOINTMENT

| 1. Department | 2. Division | 3. Co | | No. |
|---|---|---|---|---|
| Transportation – 012 | Design –085 | Mo | | 6 |
| 5. Class Title/Code | 6. Class Option Title/Code | | | Date |
| Engineering Assistant I | None | $533.60 | | 5/3/94 |

| 9. Employment Type: 1. (X) Permanent | 2. ( ) Temporary | 3. ( ) Part-time, Permanent | 4. ( ) Part-time Temporary | 5. ( ) Conditional |
|---|---|---|---|---|
| 10. Sex Requirement | | 11. Age Restriction | 12. Date Position Vacated | |
| N/A | | | | |

GHRS

| 13. Social Security Number | 14. Full Name of Appointee | APPROVED 5M 12/8/94 |
|---|---|---|
| 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 | Leroy Williams | APPROVED 5M 12/8/94 |
| 15. Name of Previous Incumbent | 16. Reason for Leaving Position. | |

**IMPORTANT**

Submit this form in duplicate BEFORE the proposed appointee begins work. Both sides must be completely filled out.

A provisional appointment is approved only until an appropriate eligible register is established.

The law forbids successive provisional appointments of the same individual.

A provisional appointment does not confer on the appointee any status as a permanent employee. A separate application for examination must be filed by the appointee to compete for regular appointment.

17. Describe the exact nature of the work to be performed by appointee.

Draws/plots/traces cross-sections, profiles, topography, drainage sections, typical sections, plan views, contours and elevations using sources such as plans, field and level notes following oral/written instructions from supervisors.
Calculates quantities and values such as drainage, curve data, elevations and distances using a calculator.
Exchanges information orally with individuals and groups such as co-workers and property owners, following oral and/or written instructions from supervisors.
Attends meetings such as interviews, training sessions and safety meetings following oral/written instructions from supervisors and instructors in order to increase knowledge.
Enters data (writes/types/key-in) into documents and databases such as field and level books, using equipment such as computer terminals and typewriters following oral/written instructions from supervisors.
Operates equipment/instruments such as transits, levels, copiers and computers following oral/written instructions from supervisors.
Measures distance, areas, elevations, angles, curvature and height using instruments/equipment such as tape measures, electronic distance meters, levels, transits following oral/written instructions from supervisors.
Directs traffic in areas of surveying, using devices such as flags, signs, hand signals, cones, barrels, and wearing safety vests and hard hats following oral/written instructions such as supervisory directives, safety manuals and department policy in order to provide for the safety of workers and the traveling public.
Cuts/clears survey lines using equipment such as axes and chain saws following oral/written instructions from supervisors in order to obtain access and visibility of job sites.

18. Certificate of Appointing Authority: I certify that to the best of my knowledge and belief the proposed appointee is fully qualified by training and experience, to perform the duties of this position. I understand the conditions under which provisional appointments are made and certify that the need for filling this position is so urgent that it cannot await the establishment of an appropriate eligible register.

Signed _____          Date 5-11-94          Don T. Arkle
              Appointing Authority                                         Chief, Design
                                                                                    Bureau

19. Approved:

Signed _____          Date _____
              Personnel Director

20. Disapproved, for the following reasons:

Rec'd yw increase
ARD 4/2/94
PRD 93/04

Signed _____          Date _____

| ACTION | SEX | RACE | CO. RES. | EDU | VIP | DEPT | DIV | EMP. TYPE | CO. EMP | PART TIME | HOW PD | RANGE DIFF | EMP SUB | ANNUAL RAISE | PROB END | LEAVE REG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | |

DEFENDANT'S EXHIBIT E

STATEMENT OF ___ION RECOMMENDED FOR PROVISIO___ ___POINTMENT

| Name of Employee | First | MI | Last | Social Security No. | Marital Status (Check one) |
|---|---|---|---|---|---|
| | Leroy | | Williams | 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 | 1.1 ( ) Single  3.( ) Divorced<br>2.(X) Married  4.( ) Widowed |

| Date of Birth | Mo | Day | Year | Sex | Race |
|---|---|---|---|---|---|
| | 0 4 | 2 1 | 6 5 | 1.(X) Male<br>2.( ) Female | 1.( ) White  2.(X) Black  3.( ) Hispanic  4.( ) Asian or Pacific Islander<br>5.( ) American Indian or Alaskan Native  6.( ) Other |

Address: 1261 Aaron Street

| House or Apt. No. | Street | | |
|---|---|---|---|
| Montgomery | Montgomery | AL | 36104 |
| City | County | State | Zip Code |

Legal Residence: Montgomery    AL
County    State
Tele. Home (205)834-5717    Office (205)242-6221

Education: High School Graduate or GED ( )Yes ( )No    If no, circle highest grade completed    1  2  3  4  5  6  7  8  9  10  11  12

Schools Attended (Business, Vocational, College or University)

| Name | Address | From Mo. Yr. | To Mo. Yr. | Did You Graduate? | Major | Degree and Date |
|---|---|---|---|---|---|---|
| Tuskegee University - Tuskegee, AL | | 12  83 | 12  85 | No | Food Services | |
| Interactive Learning | | 10  90 | 04  92 | No | Computer Application | |

## REFERENCES

List three reliable persons, not relatives or present employer, who know you well enough to give information about you.

| Name | Address | Occupation |
|---|---|---|
| Tim Owens | Ski Lodge Apt.-Montgomery, AL | AT&T |
| Myran Perry | Max  -Montgomery, AL | Barber |
| Angela Davis | -Montgomery, AL | A-NU-Look |

| | | |
|---|---|---|
| Do you have any physical handicaps or health problems that would keep you from doing the kind of work for which you are making application? | ( ) Yes | (X) No |
| Have you ever been involuntarily terminated or forced to resign from a position? | ( ) Yes | (X) No |
| Have you ever been convicted of a law violation including any DUI convictions? | ( ) Yes | (X) No |

If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.

Beginning with your most recent employment, list in REVERSE ORDER periods of employment (Attach extra sheets if necessary.)

1. Current or Last Employer
Alabama Department of Transportation    Your Official Job Title: H.M.T. I

Address
1409 Coliseum Blvd., Montgomery, AL  36130    Type of Business: Highways (Grounds)

| FROM Month Year | TO Month Year | Total Months | If part-time, number of hours per week | Beginning Salary | Ending Salary | May we contact employer? |
|---|---|---|---|---|---|---|
| 03  94 | 05  94 | 2 | | $533.60 per B/W | $533.60 per B/W | (X) Yes ( ) No |

Number/Title of Employees you Supervise: None
Equipment you Operated: Yard Machinery
Reason for Leaving: Reclassified

Describe your Duties in Detail: To maintain and keep clean grounds; also to move material if needed.

2. Employer
Alabama Department of Transportation    Your Official Job Title: H.M.T. I

Address
4th Division - 3rd District, Auburn, AL    Type of Business: Highways

| FROM Month Year | TO Month Year | Total Months | If part-time, number of hours per week | Beginning Salary | Ending Salary |
|---|---|---|---|---|---|
| 06  92 | 03  94 | 21 | | $4.28 per hr | $533.60 per hr |

Number/Title of Employees you Supervised: None
Equipment you Operated: Road Machinery
Reason for Leaving: Relocated

Describe your Duties in Detail: To maintain clean and safe highways, building structures, paving, flagging, mowing, putting up and replacing signs, operate some heavy equipment, etc.

I hereby certify that all statements made hereon and attached hereto are true and correct to the best of my knowledge. Any significant misrepresentation may be cause for denying me the right to examination or employment.

Date  5/9/94    Signed  Leroy Williams

IMPORTANT
The statement you have filled out is not an application for examination. If you wish to compete for permanent appointment you will have to file your application for

STATE OF ALABAMA
PERSONNEL DEPARTMENT

## EMPLOYEE PERFORMANCE APPRAISAL

Form 13
(Rev. 10/87)

(Please read other side before using)

| | |
|---|---|
| Employee Name: LEROY WILLIAMS | Social Security Number: 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 |
| Class Code: 20111 | Department: TRANSPORTATION |
| Classification: ENGINEERING ASSISTANT I | Division: DESIGN |
| Position Number: 02118416 | Period Covered From: 03/01/96 To: 03/01/97 |
| | Annual Raise Effective: MAY 1997 |

**WORK HABIT RATINGS:** Check the appropriate column. Refer to the policies and procedures for your department. If an Unsatisfactory is given, comments detailing the rating must be provided to the department.

| | Satisfactory | Unsatisfactory | Work Habit Score |
|---|---|---|---|
| Attendance | | X | X 3.50 = |
| Punctuality | X | | Unsatisfactory |
| Cooperation w/Coworkers | X | | Ratings |
| Compliance with Rules (Standards of Conduct) | X | | WORK HABIT SCORE |

**TASK/RESPONSIBILITY RATINGS:** Use this scale to provide a numerical rating for each of the employee's major work tasks or responsibilities. Refer to the Position Classification Questionnaire (Form 40) in determining the tasks to be rated.

| 0 | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Does Not Meet Standards | Partially Meets Standards | Meets Standards | Exceeds Standards | Consistently Exceeds Standards |

| RATING | TASK/RESPONSIBILITY |
|---|---|
| 4 | A. OPERATES equipment |
| 3 | B. REVIEWS/EDITS survey materials |
| 3 | C. COMMUNICATES orally |
| 4 | D. GATHERS informatins |
| 4 | E. CLEARS/CUTS survey lines |
| 4 | F. MAINTAINS equipment |
| 3 | G. MONITORS/CONTROLS work areas |
| 3 | H. ATTENDS meetings/training courses |
| | I. |
| | J. |
| 28 | TOTAL OF RATINGS |

**PERFORMANCE APPRAISAL SCORE:**

| 28 | ÷ | 8 | = | 3.50 | x 10 = | 35.0 | | 3.5 | = | 31.5 |
|---|---|---|---|---|---|---|---|---|---|---|
| Total of Ratings | | Number of Ratings | | Average Task Rating | | Task Rating Score | | Work Habits Score | | Performance Appraisal Score |

**OVERALL APPRAISAL:** This employee's work:

| [ ] Does Not Meet Standards (5.4 or below) | [ ] Partially Meets Standards (5.5 - 14.9) | [ ] Meets Standards (15.0 - 24.9) | [X] Exceeds Standards (25.0 - 34.4) | [ ] Consistently Exceeds Standards (34.5 - or above) |
|---|---|---|---|---|

**APPRAISAL SIGNATURES:**

| _W.P.K._ | _Leroy Williams_ | _Geo. B. King_ |
|---|---|---|
| Rating Supervisor | Employee (Denotes discussion not necessarily agreement) | Reviewing Supervisor |
| SSN 418 - 08 - 3897 | | SSN 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 |
| 2-14-97 | 02/14/97 | 2-14-97 |
| Date | Date | Date |
| Date Rater's Comments Attached | Date Employee's Comments Attached | Date Reviewer's Comments Attached |

DEFENDANT'S EXHIBIT F



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36130-3050



February 14, 1997

*Fob James, Jr.*
*Governor*

*Jimmy Butts*
*Transportation Director*

WMR
W7A

TO:       File

FROM:     William K. Kirkland
          Field Supervisor

RE:       Performance Appraisal of Leroy Williams
          Engineering Asst. I


In reviewing the performance of Mr. Leroy Williams for the past appraisal period; I have evaluated his overall performance as "Exceeds Standards".

Mr. Williams carries out his assigned tasks accurately and efficiently. He has a fairly good understanding of his position and performs his duties satisfactory as an E.A.I.

Mr. Williams strength is showing interest in his work and his weakness is a repeated lack of leave time. Mr. Williams and I have discussed his strengths and weaknesses and he is aware of future expectations.

Mr. Williams was given an unsatisfactory work habit score for attendance. This was due to the repeated lack of leave time. He has continued to use every hour of leave time including an occasional hour of leave without pay. I have continually stressed the importance of building time. His attendance is of great importance.


WMR/WKK/gv
cc: Location File


_Leroy Williams_                      02/14/97
Leroy Williams                        Date

_William K. Kirkland_                 2-14-97
William K. Kirkland                   Date

STATE OF ALABAMA
**PERSONNEL DEPARTMENT**

## EMPLOYEE PERFORMANCE APPRAISAL

(Please read other side before using)

Form 13
(Rev. 10/87)

Employee Name: LEROY WILLIAMS
Class Code: 20111
Classification: ENGINEERING ASSISTANT I
Position Number: 02118416

Social Security Number: 423-80-8(
Department: TRANSPORTATION
Division: DESIGN
Period Covered From: 03/01/97 To: 03/01/98
Annual Raise Effective: MAY 1998

**WORK HABIT RATINGS:** Check the appropriate column. Refer to the policies and procedures for your department.
If an Unsatisfactory is given, comments detailing the rating must be provided to the department.

| | Satisfactory | Unsatisfactory | | |
|---|---|---|---|---|
| | | | **Work Habit Score** | |
| Attendance | | X | X 3.50 = | 3.50 |
| Punctuality | X | | 1 | |
| Cooperation w/Coworkers | X | | Unsatisfactory | WORK HABIT |
| Compliance with Rules | X | | Ratings | SCORE |
| (Standards of Conduct) | | | | |

**TASK/RESPONSIBILITY RATINGS:** Use this scale to provide a numerical rating for each of the employee's major work tasks or responsibilities.
Refer to the Position Classification Questionnaire (Form 40) in determining the tasks to be rated.

| 0 | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Does Not Meet Standards | Partially Meets Standards | Meets Standards | Exceeds Standards | Consistently Exceeds Standards |

**RATING**    **TASK/RESPONSIBILITY**

| RATING | | TASK/RESPONSIBILITY |
|---|---|---|
| 3 | A. | OPERATES equipment |
| 3 | B. | REVIEWS/EDITS survey materials |
| 3 | C. | COMMUNICATES orally |
| 3 | D. | GATHERS information |
| 4 | E. | CLEARS/CUTS survey lines |
| 3 | F. | MAINTAINS equipment |
| 3 | G. | MONITORS/CONTROLS work areas |
| 3 | H. | ATTENDS meetings/training courses |
| | I. | |
| | J. | |
| 25 | | TOTAL OF RATINGS |

**PERFORMANCE APPRAISAL SCORE:**

| 25 | ÷ | 8 | = | 3.13 | x 10 = | 31.3 | — | 3.5 | = | 27.8 |
|---|---|---|---|---|---|---|---|---|---|---|
| Total of Ratings | | Number of Ratings | | Average Task Rating | | Task Rating Score | | Work Habits Score | | Performance Appraisal Score |

**OVERALL APPRAISAL:** This employee's work:

| [ ] Does Not Meet Standards (5.4 or below) | [ ] Partially Meets Standards (5.5 - 14.9) | [ ] Meets Standards (15.0 - 24.9) | [X] Exceeds Standards (25.0 - 34.4) | [ ] Consistently Exceeds Standards (34.5 - or above) |
|---|---|---|---|---|

**APPRAISAL SIGNATURES:**

_(signature)_     _Leroy Williams_     _(signature)_
Rating Supervisor     Employee (Denotes discussion not necessarily agreement)     Reviewing Supervisor

SSN 418 - 08 - 3897          SSN 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

2-13-98        02/13/98        2-13-98
Date            Date            Date

Date Rater's Comments Attached     Date Employee's Comments Attached     Date Reviewer's Comm

DEFENDANT'S EXHIBIT G



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36130-3050

February 13, 1998



*Fob James, Jr.*
*Governor*

*Jimmy Butts*
*Transportation Director*

TO:        File

FROM:    William K. Kirkland
            Field Supervisor

RE:        Performance Appraisal of Leroy Williams
            Engineering Asst. I

    In reviewing the performance of Mr. Leroy Williams for the past appraisal period, I have evaluated his overall performance as "Exceeds Standards."

    Mr. Williams carries out his assigned tasks accurately and efficiently. He has a fairly good understanding of his position and performs his duties satisfactorily as an Engineering Asst. I.

    Mr. Williams strength is showing interest in his work and his weakness is a repeated lack of leave time. Mr. Williams and I have discussed his strengths and weaknesses and he is aware of future expectations.

    Mr. Williams was given an unsatisfactory work habit score for attendance. This was due to the repeated lack of leave time. He has continued to use every hour of leave time, including an occasional hour of leave without pay. I have continually stressed the importance of building time. His attendance is of great importance.

WMR/WKK/gv
cc: Location File

_Leroy Williams_
Leroy Williams

_02/13/98_
Date

_William K. Kirkland_
William K. Kirkland

_2-13-98_
Date

Form 40-Revised 1/95

**POSITION CLASSIFICATION QUESTIONNAIRE**
STATE OF ALABAMA
Personnel Department

PCQ# 2118416
(For Dept. Use Only)

1. Employee's Name: __Leroy Williams__

2. Classification    __Engineering Assistant__

3. Working Title:    __Data Editor__

4. Department    __Transportation__

5. Division or Bureau __Design__

6. Section or Unit __Location Section__

7. Work Location (County) __Statewide__

8. Name and title of immediate supervisor (person who assigns work) __William K. Kirkland, Party Chief__

9. Position is: full-time ☒, part-time ☐, permanent ☒, temporary ☐.

10. SUPERVISION EXERCISED: Only complete this section if this position completes performance appraisals or actually participates in rating other employees. If the position functions as a lead worker and only assigns work, then list that responsibility on Item 11B as a duty.

    a. Total number of employees that this position supervises:
    b. Percentage of time spent on supervision and related duties:
    c. If this position DIRECTLY supervises 5 or less employees, give names and titles. If this position DIRECTLY supervises more than 5 employees give the number and official classification of each.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

    d. As a supervisor, does this position: (Check the activities performed)

| | | |
|---|---|---|
| Make daily work assignments? | ☐ | Interview and make hiring recommendations? ☐ |
| Approve and Disapprove leave requests? | ☐ | Recommend disciplinary actions? ☐ |
| Reassign job duties on permanent basis? | ☐ | Prepare and conduct performance appraisals? ☐ |

11. DESCRIPTION OF DUTIES PERFORMED:
a. In one or two sentences, describe the major purpose of this position.

> The major purpose is to insure all data gathered in the field is accurate and correct. The general function is to edit all raw data gathered by the survey crew. To make a coordinated file from the field, utility, and profile maps.


DEFENDANT'S EXHIBIT
H

13. FINANCIAL RESPONSIBILITY: If this position has responsibility for the controlling and/or authorizing the expenditure of funds, please describe and indicate approximate amount controlled.

| None |
| --- |

14. WORK GUIDELINES: (Only include written guidelines) List the specific laws, regulations, instructions, manuals, or procedures that must be followed in performing this job and describe how they are used.

| LIST ITEM | HOW USED |
| --- | --- |
| Guidelines for Operations | Provides policy for procedures. |
| Standard Policies | Provides a standard for daily operations. |
| Procedures and Instructions | |
| Geometric Design | Guidelines and Policies for survey |

15. SUPERVISION RECEIVED:

How is this position's work reviewed? (Check one)

- ☒ Supervisor reviews most or all of work while it is being done.
- ☐ Supervisor spot checks work as it is being done.
- ☐ Supervisor reviews most or all of work after completion.
- ☐ Supervisor spot checks work after completion.
- ☐ Supervisor does not review work.
- ☐ Other. (describe fully)

16. WORK CONTACTS: With whom, outside of co-workers in this unit, must this position regularly come in contact?

| Who Contacted | How (Phone, in person, etc.) | Purpose of Contact | How Often |
| --- | --- | --- | --- |
| John Russell | Phone, in person | | Monthly |
| | | | |
| | | | |

17. EQUIPMENT USED: List any equipment used regularly. Give percent of time spent in operation of each. For vehicles and construction and maintenance equipment operated, indicate capacity, e.g., tonnage, yardage.

| Computer | 70% | Calculator | 5% |
| --- | --- | --- | --- |
| Total Station | 1% | Typewriter | 10% |
| Plotter | 2% | | |

a. Does this position require typing?
- ☐ NO
- ☒ YES, Give % of time spent typing 5%

b. Does this position require taking shorthand?
- ☒ NO
- ☐ YES, Give % of time spent in shorthand ___%

b, Duty Statement:     (Complete Column "C" first)

- In column A, indicate PERCENTAGE of time spent on each duty (total should not exceed 100%).
- In column B, rate the duties as to their IMPORTANCE. VI - Very Important  I - Important  SI - Somewhat Important
- In column C, describe in detail each of the position's PERMANENT duties and responsibilities using your OWN words.

| A % | B Rating | C<br>Description of Duties |
|-----|----------|----------------------------|
| 30 | VI | Plots property so that all corners found and land lines are shown in the correct location. |
| 20 | SI | Places text on maps so that all information is properly labeled and can be identified by others. |
| 15 | VI | Draws field, utility and profile maps so that all information gathered is properly shown and can be transmitted for design without project delays or valid complaints. |
| 10 | I | Edits data gathered by the field crew so that all information is placed in the proper location with the correct point code assigned. |
| 5 | I | Computes data as needed by the field crew or others so that correct coordinates. |
| 5 | I | Creates DTM surfaces so that all topographic information is shown correctly and design earthwork quantities are accurate. |
| 5 | I | Organizes electronic data so that information can be easily found without delays. |
| 2 | I | Attends training courses so that knowledge of surveying methods is gained and productivity is enhanced without complaints for non-attendance |
| 2 | VI | Maintains complete backup files so that all information is stored for future reference without any loss of data. |
| 2 | VI | Communicates with coworkers so that the information gathered by the crew is complete without omissions or project delays |
| 2 | I | Gathers information as directed so that pertinent survey data is gathered with minimal errors and without valid delays. |
| 2 | I | Clears survey lines so that access and visibility to project sites are obtained without valid delay. |

12. DECISION MAKING: Give example(s) of the more important decisions made while performing the duties of this position. Then list the possible effect of error(s) on the organization or general public.

Supervisor reviews all normal drafting procedures on maps. All forms and correspondence are reviewed before being submitted to Montgomery. No consultation is made regarding placement and organization of data placed on maps. For example, placement of text describing certain points or areas that were gathered in the field. When maps are reviewed by the supervisor, all aspects of organization, content, and general outline of maps are reviewed. All errors are pointed out, and the supervisor notes what changes are to be made to correct the errors. The supervisor points out why the errors were made and how to avoid them in the future.

ITEMS TO BE COMPLETED BY IMMEDIATE SUPERVISOR AND/OR APPOINTING AUTHORITY

18. Are the statements of the employee accurate and complete? (Indicate inaccuracies and incomplete items)

YES

19. If the duties listed are for reallocation of position, what additional and/or more complex duties have been added to this position to warrant reallocation.

NONE

20. List any required licenses, registrations, certifications, or special requirements necessary to perform the job.

21. Check below the type of supervision provided by the immediate supervisor to this position.
☐ CLOSE/HANDS ON    or    ☒ GENERAL/ADMINISTRATIVE

22. Additional information and comments:

The reason for the form is to change duties of existing position.

VERIFICATION - READ CAREFULLY BEFORE SIGNING

I hereby certify that I have read the above and verify that it is, to the best of my knowledge, correct and accurate. I understand that disciplinary action could be taken against anyone who knowingly provides false information.

| | | | |
|---|---|---|---|
| _Leroy Williams_ | _11-26-01_ | | _242-6175_ |
| Signature of Incumbent | Date | | Telephone # (ATTNET) |
| _Williams_ | _11-26-01_ | _Party Chief / CE_ | _242-6175_ |
| Signature of Supervisor | Date | Title/Classification | Telephone # (ATTNET) |
| | _12-19-01_ | | |
| Signature of Appointing Authority | Date | | Telephone # (ATTNET) |

QUESTIONNAIRES **NOT** SIGNED BY ALL PARTIES **WILL BE RETURNED**

COMPLAINT FORM

APR 1997
RECEIVED

Please complete the following information completely and return to:

Your immediate supervisor, Division EEO Representative, for Ron Green, Chief, Human Resources Bureau, 1409 Coliseum Boulevard, Montgomery, Alabama  36130.

1.  Name Leroy Williams   SSN-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

2.  Address 726 West Patton Ave Montgomery Ala. 36105


3.  Your Job Classification ENGINEERING ASST I
    (or classification applied for)

4.  Your Job Title TARGETMAN
    (or job applied for)

5.  Bureau and Division Design

6.  Name of Supervisor William Keith Kirkland

7.  Nature of your complaint:

    (a)  Please indicate if your complaint is based upon discrimination. Yes_____ No___X___ If yes, please mark below what type of discrimination you are complaining about:

Race _____     Gender _____     Religion _____

National Origin _____     Disability _____


    (b)  What is the wrongful act or omission that you are complaining about?

Non Compliance with existing Consent decree article 15 paragraph 4 and order of Judge Myron Thompson in civil action No. 85-T-665-N
(If you need more space, you may attach one or more extra pages)

    (c)  Please give the date(s) on which the wrongful act or omission occurred.

May-28-99-present

    (d)  Who committed the wrongful act or omission you are complaining about?

Alabama DOT Personnel Bureau

DEFENDANT'S
EXHIBIT

8.  List the names of any witnesses who you believe have information about your complaint.

_Mack Potton, Keith Kirkland, Joe King +_

_Design Bureau_

9.  How were you affected by the wrongful act or omission?

_Not given promotion consistent with increased_

_duties assigned nor the monetary compensation_

_associated with said promotion_

10.  What resolution do you suggest for this complaint?

_Provisional Appointment to EA II/III with back pay_

_and credit for time in grade to EA II/III_

All issues of wrongdoing alleged by you and not specifically set forth on this form will be barred from future claims. However, other claims that arise after the date of this claim may be brought according to the provisions of the grievance procedure.

_Leroy Williams_
Signature of Employee

_3/31/97_
Date submitted

Complaint submitted to: _Cindy Jackson_

Alabama Department of Transportation
Article XIX: Grievance Detail by ID

Report ID: HDRHR30

Page No. 1
Run Date 05/04/2005
Run Time 13:43:47

GRIEVANCE ID:      REY00192
GRIEVANCE SOURCE:  Reynolds

EMPLOYEE_DETAIL

| | | |
|---|---|---|
| NAME OF GRIEVANT: | Williams,Leroy | |
| SSN: | 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 | |
| ETHNIC GROUP: | Black | |
| CURRENT JOBCODE: | 20115  Engineering Asst II/III | |
| JOBCODE AT FILING: | 20111  Engineering Assistant I | |

| | |
|---|---|
| EMPLOYEE ID: | 069321 |
| GENDER: | Male |
| EMPLOYMENT STATUS: | Active |
| CURRENT BUREAU/DIVISION: | 0850  Design Bureau |
| BUREAU/DIVISION AT FILING: | 0850  Design Bureau |

GRIEVANCE_DETAIL

| | |
|---|---|
| GRIEVANCE DATE: | 04-01-1997 |
| DISCRIMINATION TYPE(S): | No Discrimination |

| | |
|---|---|
| NOTICE TO ATTORNEYS DATED: | |
| GRIEVANCE ISSUE(S): | Promotion/Reclassification |

STEP 1

| | |
|---|---|
| INITIAL RESPONSE DATE: | |
| SUPERVISOR: | |
| FINDINGS: | Unfounded |
| RESPONSE: | Settled |

| | |
|---|---|
| STATUS: | Resolved |
| RESPONSE DATE: | 04-21-2005 |

STEP 2

| | |
|---|---|
| FINDINGS DUE DATE: | |
| INVESTIGATOR: | |
| MEETING DATE: | |
| FINDINGS: | |
| RESPONSE: | |

| | |
|---|---|
| STATUS: | |
| MEETING LOCATION: | |
| MEETING TIME: | |
| RESPONSE DATE: | |

STEP 3

| | |
|---|---|
| OFFICER ASSIGNMENT DATE: | |
| HEARING OFFICER: | |
| HEARING DATE: | |
| FINDINGS DUE DATE: | |
| FINDINGS: | |
| RESPONSE: | |
| RESPONSE PARTY: | |

| | |
|---|---|
| STATUS: | |
| HEARING TIME: | |
| EXTENSION DATE: | |
| RESPONSE DATE: | |

STEP 4

| | |
|---|---|
| ARBITRATION REQUEST DATE: | |
| ARBITRATOR: | |
| ARBITRATION DATE: | |
| FINDINGS DUE DATE: | |
| FINDINGS: | |

| | |
|---|---|
| STATUS: | |
| SELECTION DATE: | |
| ARBITRATION TIME: | |

Form 13
Revised (1/1/1999)

## EMPLOYEE PERFORMANCE APPRAISAL
### STATE OF ALABAMA
#### Personnel Department

Number of Steps

Employee Name: ___LEROY WILLIAMS___

Social Security Number: ___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___

Agency: ___012/TRANSPORTATION___

Division: ___0850/DESIGN___

Classification: ___ENGINEERING ASSISTANT___

Class Code: ___20116___

Period Covered From: __03/01/2001__ To: __03/01/2002__

Annual Raise Effective: __MAY 2002__

---

**APPRAISAL SIGNATURES:** Signatures are to be provided after the form has been completed.

| Rating Supervisor | Employee | Reviewing Supervisor |
|---|---|---|
| SSN __418__ - __08__ - __3897__ | | SSN __419__ - __60__ - __2797__ |
| Signature | Signature | Signature |
| Feb. 14, 2002 | 02/19/02 | 2-14-02 |
| Date | Date | Date |
| WKK | | |
| Initial if comments are attached | Initial if comments are attached | Initial if comments are attached |

---

**PERFORMANCE APPRAISAL SCORE:** Locate the Responsibility Score on the back of this form and write it in the appropriate space. Locate the Disciplinary Score, also on the back of this form, and write it in the appropriate space. The Disciplinary Score is subtracted from the Responsibility Score to derive the Performance Appraisal Score.

| 20.0 | − | 0.0 | = | 20.0 |
|---|---|---|---|---|
| Responsibility Score | | Disciplinary Score | | Performance Appraisal Score |

This employee's work:

| Does Not Meet Standards (6.6 or below) | Partially Meets Standards (6.7 – 16.6) | Meets Standards (16.7 – 26.6) | Exceeds Standards (26.7 – 36.6) | Consistently Exceeds Standards (36.7 - 40) |
|---|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ | ☐ |

---

**WORK HABITS:** Check the appropriate box for each work habit area. If "Noncompliance" is to be marked, a step of the discipline system (warning, reprimand, suspension) must have been taken with the employee during the appraisal period. See the Disciplinary Actions area on the back of this form for disciplinary documentation.

| | Compliance | Noncompliance |
|---|---|---|
| Attendance | ☒ | ☐ |
| Punctuality | ☒ | ☐ |
| Cooperation with Coworkers | ☒ | ☐ |
| Compliance with Rules | ☒ | ☐ |

DEFENDANT'S EXHIBIT J



**ALABAMA DEPARTMENT OF TRANSPORTATION**
1409 Coliseum Boulevard, Montgomery, Alabama 36130-3050

February 19, 2002



*Paul Bowlin*
*Transportation Director*

*Don Siegelman*
*Governor*

Mr. William F. Adams
Location Engineer
Location Section, Design Bureau
Montgomery, Alabama

Re:    Performance Appraisal of Leroy Williams, Data Editor, Engineering Assistant.

On this date, I interviewed with Mr. Leroy Williams regarding his performance appraisal for the last period. Mr. Williams accepted the position of Data Editor on June 6, 2001. His Form 40 did not reflect those responsibilities until November. Mr. Williams brought this to attention. Therefore, he was appraised with his previous responsibilities.

The past performance of Mr. Williams was scored as "Meets Standards". Mr. Williams is an adequate employee. He performs his duties as requested. He has continued to exhaust his leave until recently and has not shown additional effort to exceed standards.

Mr. Williams prefers to be scored as exceeding standards to warrant a two-step increase in salary. I am unable to score him higher than his performance. Over the full appraisal period, Mr. Williams has performed as scored.

He was initially appraised on his current responsibilities. He was scored as "Meets Standards" under those responsibilities. His response was "as long as I get a raise in pay, the score is ok." After I confirmed a "Meets Standards" was only a one step raise in salary, Mr. Williams decided to challenge his score and not to sign the appraisal.

Mr. Williams requested the Data Editor position and has the ability. He has struggled to learn this position and is making progress. He meets standards as a new Data Editor. The standard may be raised over the next appraisal period due to experience.

Data Editor is a high level EA position and requires a large amount of independence, knowledge, and an understanding of practical application. This is very different from manual labor required from introductory EA's. A higher standard is set.

Mr. Williams is a valued employee and an important part of Location Survey. Much is expected from Data Editors and Leroy will work to exceed standards.

I personally believe Meets Standards should warrant a two-step annual raise in salary and this may have caused employees to be scored at higher levels in the past. It is my responsibility to score all employees truthfully and by their performance, without regard to their annual raise in salary.

Sincerely,

Wm. Keith Kirkland
Chief of Party

cc:    File
       Mr. Leroy Williams

## COMPLAINT FORM

Please complete the following information completely and return to:

Your immediate supervisor, Division EEO Representative, or Ron Green, Chief, Human Resources Bureau, 1409 Coliseum Blvd., Montgomery, Alabama 36130.

1.    Name: Leroy Williams

2.    Address: 3526 Gilmer Avenue, Montgomery, AL 36105

3.    Job Classification: Engineering Assistant

4.    Job Title: Engineering Assistant

5.    Bureau & Division: Design/ Location

6.    Name of Supervisor: William Mac Rotten

7.    Nature of complaint: Mr. Rotten removed me from the Data Editor position to the field in retaliation for my attendance and participation in the Accelerated University Training program and/or special affirmative action training

(a)    Is your complaint based upon discrimination __X__ Yes _____ No
(If yes, please indicate below what type of discrimination you are complaining about)

Race __X__    Gender _____    Religion _____
National Origin _____    Disability _____    Retaliation __X__

(b)    What is the wrongful act or omission that you are complaining about?

Please see above

(attach additional pages if needed)

(c)    Please specify the date(s) in which the wrongful act or omission occurred.

July, 2000

(d)    Who committed the wrongful act or omission you are complaining about?
William Mac Rotten



DEFENDANT'S EXHIBIT

8.    List the names of any witnesses who you believe have information about your complaint.

My supervisor has information about my complaint.

9.    How were you affected by the wrongful act or omission?

The Data Editor position was a stepping stone to the CE classification. The Design Bureau issued a brochure indicating that candidates for the CE classification in our division must first hold the Data Editor position. I will not be able to move from my current position in the field into a CE position. I will first have to return to a Data Editor position and I will be unable to do that until the position opens again and I am once again provided the opportunity to fill the position. Mr. Rotten's action has delayed my progression and career development with ALDOT and I believe that he has done so on the basis of my race and in retaliation for my participation in the special affirmative action training.

10.    What resolution do you suggest for this complaint?

I propose that I be returned to the Data Editor position. I also do not want the time I have spent away from the position to adversely affect any future promotion to the CE classification.

All issues of wrongdoing alleged by you and not specifically set forth on this form will be barred from future claims. However, other claims that arise after the date of this claim may be brought according to the provisions of the grievance procedure.

_Leroy Williams_
Signature of Grievant

_10 - 05 - 00_
Date Submitted

Complaint Submitted To:_____

CAMPBELL, WALLER & POER, L.L.C.

ATTORNEYS AT LAW

2100-A SOUTHBRIDGE PARKWAY, SUITE 450
BIRMINGHAM, ALABAMA 35209

205-803-0051
FAX 205-803-0053

Wendy T. Tunstill

Direct Dial: (205) 803-7314
E-mail: wendyt@cwl-law.com

January 23, 2003

<u>VIA FACSIMILE AND U.S. MAIL</u>

Kell A. Simon, Esq.
Gordon, Silberman, Wiggins & Childs
1400 SouthTrust Tower
Birmingham, AL 35203

Re:    *In the Matter of LeRoy Williams - Grievance No. 736*

Dear Kell:

This letter will confirm our earlier telephone conversation in which you stated that Mr. Williams has withdrawn the above-reference grievance.

Sincerely,

Wendy T. Tunstill

cc:    Sandi Dietz
Tamula Yelling, Hearing Officer
Michael Cooper

DEFENDANT'S EXHIBIT

11/30/00     736
- Jay to attorneys
✓ Step 1:
  - Rejects
✓ - Pending
✓ Make copy for me.

# GRIEVANCE REPLY FORM

This reply must be completed by the supervisor or division head and provided to the grievant within five days of the docketing of the grievance.

Name of grievant:              Leroy Williams

Docket No:                      736

Name of Person Responding:      William Adams

In reference to the above complaint, Mr. Williams was "rolled back" to a Senior Targetman position on July 10, 2000 due to a critical manpower shortage in our field crews. We had to temporarily collapse one crew and reassign its members to other crews until we can hire additional personnel to fully staff all of our crews. This decision was discussed with and approved by the Director's office.

It is noted that Mr. Williams was in the Data Editor position for approximately one-month prior to being reassigned to the Senior Targetman position. It is also noted that the Data Editor and Senior Targetman positions are both classified as Engineering Assistant, which is Mr. Williams' current classification.

Seniority was the prevailing rule on these temporary changes. Mr. Williams was the last Data Editor to be appointed and therefore he was temporarily reassigned as a targetman. The crew Mr. Williams was reassigned to has a very experienced data editor who can help train Mr. Williams as time allows.

The Data Editor position is a critical position in our field crews and requires a very in-dept working knowledge of computers and drafting procedures. This position requires a person to be on the job on a regular basis as the information gathered by the crew each day must be processed so that jobs can be completed in a timely manner.

A Data Editor vacancy was created on August 18, 2000, when an employee took a leave of absence to return to school. This position was filled by a person already assigned to the crew in which the vacancy occurred and was in training under the data editor who left. Mr. Williams was considered for this vacancy, but based on a memorandum from Ms. Roslyn Cook-Deyampert dated June 26, 2000, that stated employees involved in the Accelerated University will have very little office time, it was decided not to try to assign Mr. Williams to a Data Editor position at this time. Mr. Williams had been away from the job for training on 27 of the 65 workdays since that time.

As stated earlier, Mr. Williams is to be trained for the Data Editor position by Mr. Vernon as time allows. Mr. Vernon is a very experienced Data Editor and will hopefully have Mr. Williams trained and ready to assume the Data Editor position in the seventh crew when it is reactivated.

Greivance Reply Form
Page 2
Docket No 736

Mr. Williams was not the only person effected by these temporary assignments and some employees were rolled back to lower classified positions than the classification that they currently hold. Hopefully these assignments will only be for a short period of time and the Department will be able to hire employees so that we can fully staff all seven crews at which time Mr. Williams will be once again assigned to a Data Editor Position.

Mr. Williams' contention that an individual must hold a Data Editor position to be qualified for a CE position will be determined by State Personnel and not the Design Bureau.

If the grievant accepts this explanation as resolution to his complaint, he should indicate in the space provided below. Acceptance of this response will terminate any further proceedings on this complaint. If the grievant chooses to reject this explanation as resolution, he should so indicate in the space provided. Rejecting this offer of resolution will move the complaint to the next level of investigation.

WFA/tj

Cc:    Don T. Arkle
       Location Section

ACCEPT:

-------------------------------------------------
Leroy Williams                              Date

REJECT:

*Leroy Williams*
Leroy Williams                              Nov. 29, 2000
                                            Date





## ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard
Montgomery, AL 36130-3050

Phone No. 334/242-6775 - Fax No.: 334/353-6505

**JOE McINNES**
**TRANSPORTATION DIRECTOR**

**BOB RILEY**
**GOVERNOR**

February 22, 2005

### Attendance/Punctuality Guidelines

Alabama Department of Transportation employees work a normal 40-hour week. A typical workday is 8 hours with a meal break, not included in the 8-hour work time, and not to exceed 60 minutes in duration. Additionally, a rest break is included for both the first half and last half of the work shift not to exceed 15 minutes in duration. The typical work week is Monday -- Friday beginning at 8:00 a.m. and ending at 5:00 p.m. each day. Any deviations in the work week and/or work times are as directed by the employee's supervisor. Employees should be at their work station at 8:00 a.m., not on their way to work or in the parking lot.

If for any reason, an employee will be late or cannot report to work, the supervisor should be notified at the start of the day or as soon as possible. Also, the supervisor should be informed if the employee needs to leave the work site at any time other than a regularly scheduled break period including lunch and/or rest breaks. It is necessary that an appropriate leave slip be prepared, signed, and filed for any such time. Failure to report absences, including arriving at work late or leaving the work site early, or excessive absences could result in disciplinary actions.

### Acknowledgment

I acknowledge that I have received and read the above Attendance/Punctuality Guidelines. I have full knowledge of the contents of this policy, and I understand that I am subject to and shall be expected to comply with this policy.

_____
Employee
Leroy Williams

_Feb 28/05_
Date

DEFENDANT'S EXHIBIT
M



**ALABAMA DEPARTMENT OF TRANSPORTAT...**
1409 Coliseum Boulevard, Montgomery, Alabama  36110
P.O. Box 303050, Montgomery, Alabama 36130-3050



*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

May 12, 2005

Leroy Williams
3723 Bridlewood Drive
Montgomery, AL  36111

| | |
|---|---|
| Job Classification: | 20481 – Transp. Technologist |
| Biweekly Entrance Salary: | $1041.50 |
| Salary Range: | $1041.50 - $1741.80 Bi-weekly |
| Location: | Design/Montgomery |
| Number of Vacancies: | 7 |
| Rank: | 7 |

Dear Mr. Williams:

We want to congratulate you on being selected for the classification of Transportation Technologist in the Alabama Department of Transportation. Your appointment will be effective May 14, 2005, at a starting salary of $1041.50 bi-weekly.

As you have already discussed with Mr. Jones, you should report to your crew assignment at 5:00 a.m. in the NW parking lot on Monday, May 16, 2005.

We appreciate your interest in our Department and look forward to continuing our association.

Yours very truly,

*Don T. Arkle*

Don T. Arkle
Design Bureau Chief

DEFENDANT'S EXHIBIT
N

# Leroy Williams

1400 Coliseum Blvd
Montgomery, AL 36130

Phone (334) 242-8644
E-mail Williamsl@dot.state.al.us

| | | |
|---|---|---|
| **Education** | November 7, 1990 – May 28, 1991<br>Interactive Learning System | Atlanta, GA |
| | August 1979 – May 1983<br>Tuskegee Institute High School | Tuskegee, AL |
| **Work History** | August 1993 – Present<br>Alabama Department of Transportation | Montgomery, AL |
| **Computer Application** | Introduction To Basic Computer Operation<br>(Windows, word processing, Lotus, etc...) | |
| **Professional Employee Training** | December 7, 1993 – August 27, 2004<br>Alabama Department of Transportation | Montgomery, AL |

**Engineer Assistant**

I started with the Alabama Department of Transportation on location section survey crew on May 28, 1994 as a provisional Engineering Assistant (EA I). After serving five years my experience in the field and office proved that I was an asset to my section, and therefore, I was granted permanent status as an EA on March 27, 1999. I continued working in the field and office for the next several years, and I was privileged to obtain employee training provided by the Alabama Department of Transportation (see attached sheet). I preformed various tasks, learned to operate instruments such as total stations, levels, global positioning system, (GPS), and notebook / desktop computers that used software such as Terramodel, MicroStation, etc. On May 18, 2004, I was transferred to Roadway Design where I am presently employed as an EA 2/3. Since then, I have acquired even more experience with computer software applications, completed training on the updated version of MicroStation V8, and I have familiarized myself with InRoads. Through these trainings have my abilities have been polished and my knowledge has blossomed. I am consistently completing assigned task in a timely matter which is a criteria that is required for this position. My previous background in conjunction with my present experience qualified me to provide supervised training in the previously stated applications to others.

| | |
|---|---|
| **Objective** | I am expressing my gratitude by applying for an appointment for the classification: 20481-Transportation Technologist / Design. |



DEFENDANT'S
EXHIBIT

O

Alabama Department of Transportation
Employee Training History

eport ID:  HDTRN020

mplid:   069321     Name: Williams,Leroy
ace:           Sex: Male
ob Code: 20115     Job Description: Engineering Asst II/III

| ourse | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|---|---|---|---|---|---|---|---|
| 4100 | Commercial Driver License--employee Trng | 2 | 12/07/1993 | 12/08/1993 | Completed | | 21.0 |
| 00104 | Algebra | 2 | 01/01/1994 | 04/30/1994 | Completed | | 40.0 |
| 00505 | Geometry | 1 | 01/01/1995 | 05/31/1995 | Completed | | 40.0 |
| 00100 | Aldot Classification Structure Review | 1 | 05/06/1996 | 05/10/1996 | Completed | | 1.0 |
| 00505 | Geometry  (in-service Math Program) | 2 | 12/06/1996 | 02/21/1997 | Completed | | 47.0 |
| 17109 | Career Path Training | 2 | 03/01/1997 | 03/31/1997 | Completed | | 2.0 |
| 00505 | Geometry | 1 | 03/05/1998 | 05/18/1998 | Completed | Pass | 48.0 |
| 18285 | 1997 Performance Appraisal System Video | 1 | 06/17/1998 | 06/30/1998 | Completed | | 2.0 |
| 01284 | Trigonometry | 1 | 10/01/1998 | 11/23/1998 | Completed | | 12.0 |
| 00065 | Prevention Of Sexual Harassment | 3 | 12/02/1999 | 12/16/1999 | Completed | | 6.0 |
| 00229 | Interpersonal Communication Strategies | 2 | 07/10/2000 | 07/14/2000 | Completed | | 6.0 |
| 00186 | Diversity in the Workplace | 0001 | 07/17/2000 | 07/17/2000 | Completed | | 6.0 |
| 00166 | How To Handle Difficult People | 3 | 07/17/2000 | 07/20/2000 | Completed | | 6.0 |
| 00272 | Project Management | 2 | 07/19/2000 | 08/07/2000 | Completed | | 6.0 |
| 00249 | How To Make Dynamic Presentations | 3 | 07/21/2000 | 08/03/2000 | Completed | | 7.0 |
| 00203 | Dealing With Multiple Priorities & Demands | 3 | 07/21/2000 | 08/15/2000 | Completed | | 6.0 |
| 00289 | Conflict Management | 2 | 08/16/2000 | 09/11/2000 | Completed | | 6.0 |
| 00248 | Policies & Procedures | 2 | 08/18/2000 | 08/25/2000 | Completed | | 3.0 |
| 00250 | Image Projection/ethics In The Workplace | 4 | 08/23/2000 | 08/24/2000 | Completed | | 6.0 |
| 00209 | Situational Leadership | 3 | 09/13/2000 | 09/14/2000 | Completed | | 6.0 |
| 00216 | Contract Plan Reading | 6 | 09/21/2000 | 09/27/2000 | Completed | | 6.0 |
| 00217 | Tecnical Report Writing | 3 | 09/27/2000 | 09/27/2000 | Completed | | 7.0 |
| 00388 | Manuals Course | 1 | 09/28/2000 | 09/28/2000 | Completed | | 3.0 |
| 000171 | Basic Surveying | 1 | 10/02/2000 | 10/06/2000 | Completed | | 30.0 |
| 01004 | Aggregate Technology | 1 | 10/11/2000 | 10/12/2000 | Completed | | 12.0 |
| 000504 | Geometric Roadway Design | 1 | 10/16/2000 | 11/03/2000 | Completed | | 32.0 |
| 01050 | Automated Drafting With Microstation | 1 | 10/16/2000 | 11/15/2000 | Completed | | 36.0 |
| 01037 | Advanced Surveying | 1 | 10/23/2000 | 11/15/2000 | Completed | | 30.0 |
| 01054 | Employment Law For State Mgrs. And Supervisors | 1 | 11/13/2000 | 11/13/2000 | Completed | | 6.0 |
| 01099 | Positive Discipline | 1 | 11/14/2000 | 11/14/2000 | Completed | | 6.0 |
| 01101 | Performance Appraisal | 1 | 11/15/2000 | 11/15/2000 | Completed | | 6.0 |
| 01060 | Grammar And Word Usage | 2 | 11/21/2000 | 11/28/2000 | Completed | | 6.0 |
| 01101 | Performance Appraisal | 2 | 12/05/2000 | 12/06/2000 | Completed | | 6.0 |
| 01116 | Time Management | 2 | 12/05/2000 | 12/12/2000 | Completed | | 6.0 |
| 01115 | Telephone Dynamics | 2 | 12/13/2000 | 12/13/2000 | Completed | | 6.0 |
| 01044 | Contract Plan Reading | 2 | 12/14/2000 | 12/14/2000 | Completed | | 3.0 |
| 01141 | Nuclear Safety | 1 | 12/15/2000 | 12/15/2000 | Completed | | 7.0 |
| 01245 | Project Liability | 1 | 03/19/2001 | 03/26/2001 | Completed | | 7.0 |
| 01240 | Inroads/select Cad Version 8 Workflow Training | 3 | 06/25/2001 | 07/27/2001 | Completed | | 35.0 |
| 990307 | Prev. of Violence In Workplace | 0006 | 02/04/2002 | 02/04/2002 | Completed | | 7.0 |
| 990375 | Career Path Training | 0048 | 04/15/2002 | 04/15/2002 | Completed | | 3.5 |
| 990375 | Career Path Training | 0094 | 08/28/2003 | 08/28/2003 | Declined Offer | | 4.0 |
| 990698 | MicroStation V8 Essentials | 0002 | 08/23/2004 | 08/27/2004 | Completed | | 32.0 |
| 990375 | Career Path Training | | | | Course Waitlist | | 0.0 |

Form 40 - Revised 1/04

# POSITION CLASSIFICATION QUESTIONNAIRE
STATE OF ALABAMA
Personnel Department

PCQ# 2118416
(For Dept. Use Only)

1. Employee's Name   Leroy Williams
2. Classification   Transportation Technologist .
3. Working Title Field Supervisor
4. Department Department of Transportation
5. Division or Bureau Design
6. Section or Unit Location Section
7. Work Location (County) Statewide
8. Name and title of immediate supervisor (person who assigns work)  Thomas W. Lewis  Chief of Party
9. Position is: full-time [x],  part-time [ ], permanent [x], temporary [ ].

10. SUPERVISION EXERCISED:  Only complete this section if this position completes performance appraisals or actually participates in rating other employees.  If the position functions as a lead worker and only assigns work, then list that responsibility on item 11B as a duty.

    a. Total number of employees that this position supervises: 3
    b. Percentage of time spent on supervision and related duties:  100%
    c. If this position DIRECTLY supervises 5 or less employees, give names and titles.  If this position DIRECTLY supervises 5 or more employees give the number and official classification of each.

    | | |
    |---|---|
    | Channin Grantham EA II/III | |
    | Rodney Sanders   EA I | |
    | Robbie Jones     EA I | |

    d. As a supervisor, does this position:  (Check the activities performed)

    | | | |
    |---|---|---|
    | Make daily work assignments? | [ x ] | Interview and make hiring recommendations? [ ] |
    | Approve and Disapprove leave requests? | [ ] | Recommend disciplinary actions? x |
    | Reassign job duties on permanent basis? | [ ] | Prepare and conduct performance appraisals? [ x ] |

11. DESCRIPTION OF DUTIES PERFORMED:

    a. In one or two sentences, describe the major purpose of this position.

    To assign and oversee the daily operation of the Survey Crew.
    Being responsible for all calculations, equipment, and problem solving related to the survey work both in the field and in the office, must be completely knowledgeable on all equipment and mathematics involved in survey work.

DEFENDANT'S EXHIBIT
P

| Equipment manual | Operating electronic level, H.P. 48, Geodimeter, and other electronic equipment |
|---|---|
| Guidelines for operation | Daily operational procedures for knowledge of the job, Governs data collection accuracy and tolerances as well as format for submission |
| Geometric Design of Highways and Streets | Guidelines and policies for State Survey |

How is this position's work reviewed?  (Check one)
[ ] Supervisor reviews most or all of work while it is being done.
[X] Supervisor spot checks work as it is being done.
[ ] Supervisor reviews most or all of work after completion.
[ ] Supervisor spot checks work after completion.
[ ] Supervisor does not review work.
[ ] Other. (describe fully)

16.  WORK CONTACTS:  With whom, outside of co-workers in this unit, must this position regularly come in contact?

| Who Contacted | How (Phone, in person, etc.) | Purpose of Contact | How Often |
|---|---|---|---|
| General public | Phone, in person, etc. | Survey | Monthly |
| Courthouse | Phone, in person, etc. | Survey | Monthly |
| Utility | Phone, in person, etc. | Survey | Often |
| Property Owners | Phone, in person, etc. | Survey | Often |

17.  EQUIPMENT USED:  List any equipment used regularly.  Give percent of time spent in operation of each.  For vehicles and construction and maintenance equipment operated, indicate capacity, e.g., tonnage, yardage.

| Total Station | 20% | Electronic Level | 10% |
|---|---|---|---|
| Data Collector | 10% | Carry all | 5% |
| H.P. 48 Calculator | 10% | | |
| Digital Planimeter | 10% | | |

a. Does this position require typing?
[x] NO
[ ] YES--Give % of time spent in typing [   ] %

b. Does this position require taking shorthand?
[x] NO
[ ] YES--Give % of time spent in shorthand      %

b. Duty Statement:  *(Complete Column "C" first)*
- In column A, indicate PERCENTAGE of time spent on each duty (total should not exceed 100%).
- In column B, rate the duties as to their IMPORTANCE. VI-Very Important  I-Important  SI-Somewhat Important
- In column C, describe in detail each of the position's PERMANENT duties and responsibilities using your OWN words.

| A % | B rating | C Description of Duties |
|---|---|---|
| 20 | VI | Instructs employees so that project productivity standards are established and met with each project being completed without valid delay. |
| 15 | VI | Assigns employees work so that all work is performed and productivity standards are met each day with each goal or project being completed without valid complaint or delay. |
| 15 | VI | Operates personal computer so that information is transferred, compiled, and provided to designers with minimal errors and without valid delay. |
| 15 | VI | Oversees the gathering of all field survey information so that all pertinent project data can be compiled and provided to designers with minimal errors and without valid delay. |
| 10 | VI | Compiles information so that field maps, utility maps, profile maps, and requires pertinent project data are provided to designers with minimal errors and without valid delay. |
| 10 | VI | Trains employees so they are afforded the opportunity to learn correct surveying methods, and are able to perform assigned tasks at a fully competent level with no valid complaints or delays. |
| 10 | VI | Communicates orally with individuals so that instructions are received, information is properly exchanged, and problems are solved with no valid complaints. |
| 5 | VI | Supervises and monitors employee work so that accurate performance appraisals are made and Discipline, if needed, is administered with no valid complaints from supervisors or employees. |

(Attach additional sheets if necessary)

12. DECISION MAKING: Give example(s) of the more important decisions made while performing the duties of this position. Then list the possible effect of error(s) on the organization or general public.

| |
|---|
| Progress of Field work, crew assignments, calculation accuracy and tolerance as well as format for submission. |

13. FINANCIAL RESPONSIBILITY: If this position has responsibility for controlling and/or authorizing the expenditure of funds, please describe and indicate approximate amount controlled.

| |
|---|
| |

14. WORK GUIDELINES: (Only include written guidelines) List the specific laws, regulations, instructions, manuals, or procedures that must be followed in performing this job and describe how they are used.

| LIST ITEM | HOW USED |
|---|---|
| AASHTO Manual | Set controls and develop designs that meet standards |

ITEMS TO BE COMPLETED BY IMMEDIATE SUPERVISOR AND/OR APPOINTING AUTHORITY

18.   Are the statements of the employee accurate and complete? (Indicate inaccuracies and incomplete items)
      YES
19.   If duties listed are for reallocation of position, what additional and/or more complex duties have been
      added to this position to warrant reallocation. N/A

20.   List any required licenses, registrations, certifications, or special requirements necessary to perform the job.
      N/A
21.   Check below the type of supervision provided by the immediate supervisor to this position.
      [X  ] CLOSE/HANDS ON     or     [ ] GENERAL/ADMINISTRATIVE

22.   Additional information and comments (additional sheets may be attached, if necessary).

| Item # | The reason for this form 40 is to establish the duties of a newly promoted employee. |
|--------|--------------------------------------------------------------------------------------|
|        |                                                                                      |
|        |                                                                                      |
|        |                                                                                      |

VERIFICATION - READ CAREFULLY BEFORE SIGNING

I hereby certify that I have read the above and verify that it is , to the best of my knowledge, correct and accurate.
I understand that disciplinary action could be taken against anyone who knowingly provides false information.

_Leroy Williams_                    05/25/05                                      242-6175
Signature of Incumbent              Date                           Telephone # (ATTNET)

_Thomas W. Lewis_     5/25/05   Chief of Party  Trans. Tech. 242-6175
Signature of Supervisor      Date    Title/Classification   Telephone # (ATTNET)

_DTM-_                      06/17/05
Signature of Appointing Authority    Date                   Telephone # (ATTNET)



# ALABAMA DEPARTMENT OF TRANSPORTATION
### *Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
*Phone: 334-242-6178      FAX: 334-269-0826*



*Joe McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

July, 26 2005

## MEMORANDUM

To:         Leroy Williams, Transportation Technologist
            Field Supervisor

From:       Thomas W. Lewis
            Chief of Party

RE:         <u>Reprimand for Repeated Tardiness</u>

Mr. Williams, on Monday, July, 25 2005 you reported to this office in Tuscaloosa at 7:14a.m. You are given 2 hours of driving time from the Montgomery office to this office. Your reporting time in Montgomery is 5:00am and therefore if your report to the office here in Tuscaloosa any time after 7:00am you are considered late for work (tardy).

This is the 4th time you have been tardy since May, 16th 2005, the day you were assigned to this crew. Please refer to the following:

Occasion One:  On Wednesday June, 1 2005 you reported to the parking lot in Montgomery at 5:05a.m. which was 5 minutes late. At that time I informed you that being tardy was unacceptable.  This was a verbal warning.

Occasion Two:   The very next day I instructed the crew to meet in the parking lot of the motel where everyone was staying in Auburn. You did not report at that location and I had to be told by another crew member where you were.  That in itself is an infraction because you did not do as instructed. All other crew members reported just as I had instructed.  I told you on that day you were late, because you were not where I told you to be at 7:00a.m. I



DEFENDANT'S
EXHIBIT

Q

explained if you were late again you would be subject to disciplinary actions. This was a second verbal warning.

Occasion Three: On Monday, June 20th you did not arrive at the office in Tuscaloosa until 7:30a.m. You called me that day and told me your stomach was bothering you. Even though you told me you were sick you went on out and worked the rest of the day like there wasn't anything wrong. I explained to you the importance of being on time to set an example for the crew members you supervise. This was a third verbal warning and a pattern had developed.

Occasion Four: And now on Monday, July 25th, you did not report to the office here in Tuscaloosa until 7:14a.m. You did not notify me even as I talked with you on the Southern Linc BEFORE 7:00a.m. That in its self is grounds for a Repimand. I am mystified as to why you did not mention to me that you were going to be late because you should have been very aware that being tardy is not acceptable.

The policies set down by our department plainly state that you must notify your supervisor if you are going to be late and that excessive tardiness will not be tolerated.

Consider this written reprimand as the next step in the disciplinary process concerning your being tardy. The first steps included the verbal warnings already mentioned. Also consider this as a warning that the next time you are tardy you will be charged LWOP and you will receive another discipline (possibly another reprimand and/or a suspension).

This is a very serious matter and it will be reflected on your next grade sheet. I trust you understand that you must adhere to the rules set forth by the Department or you can cause serious injury to your career. I should also remind you that you are still in the early stages of your six-month probationary period as a Transportation Technologist and this type of behavior is detrimental to your being assessed as a dependable employee. And certainly as a Field Supervisor, you should be setting the example for the subordinates in your crew.

Thomas W. Lewis
Chief of Party




# ALABAMA DEPARTMENT OF TRANSPORTATION
### 1409 Coliseum Boulevard, Montgomery, Alabama 36110
### P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311*     *FAX: 334-262-8041*

*J.D. McInnes*
*Transportation Director*

*Bob Riley*
*Governor*

**July 28, 2005**

# MEMORANDUM

Counseling Session

Leroy Williams, Transportation Technologist
Field Supervisor

Re:     Probationary Performance Concerns

On this date, a counseling session was held with Leroy Williams, referenced above. Also present was Mr. Thomas Lewis, Party Chief, who is Leroy's immediate supervisor. My concerns involved several areas that were well documented by Mr. Lewis (see attached). I felt it necessary to immediately discuss those concerns with Leroy so that he could concentrate on improving in those areas. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Leroy was promoted to Transportation Tech as a Field Supervisor and reported to Tommy on May 16, 2005. Leroy is presently being assessed during his six month probationary period and is now at his second month in the classification/job. Tommy has been keeping me informed on Leroy's progress or lack thereof. After two months, it has become obvious to me that Leroy is lacking in many areas as a Field Supervisor and this has me concerned. The following is a summation of the meeting and of the notes used for the session:

**Working Skills**

Leroy shows a definite weakness in math skills as related to surveying. For example, he was unable to calculate angles, azimuths until Tommy showed him how. Leroy told me now knows how and can do them easily. My concern is that he writes all these things down as he is taught because he may forget. Since he has had high school geometry, three courses in geometry through the ALDOT, one course in trigonometry through the ALDOT, and several years in Location Surveying, I would have assumed that he would have garnered these skills necessary to do the job. I advised Leroy that he had to concentrate on improving these skills and that he should ask Tommy for hands on training. I also advised Leroy to take good notes and KEEP them to refer to so that he is not susceptible to losing the skill through a lack of good memory. We cannot have a crew standing around for an extended time because Leroy is spending too much time doing a calculation or is wasting time because Leroy doesn't know how to do a needed calculation.

He shows a lack of skills concerning checking his work in the field to ensure accuracy. Tommy had to instruct him several times about this and even to the point of demanding that he do the "checks". Leroy had been argumentative with Tommy concerning this directive which is unacceptable. There have been errors made that have caused a waste of time already because Leroy did not do as he was told. This is a common knowledge skill that Leroy should have learned through the years he has worked in a crew. I advised Leroy that he is being held responsible for doing the work accurately and timely....and for sure, to check his work if for no other reason than his supervisor told him to. I advised him to glean knowledge and



DEFENDANT'S
EXHIBIT
B

written by
T. Lewis

had open had a layer *Isolated* hiding all other layers with the information you were looking for. Evening after working with this file many times you did not recognize the information you had worked with in the past was not showing up.

h. Math skills
1. On June 2nd, I had to show you how to add and subtract angles. I also had to show you how to convert a bearing to an azimuth. I actually had to draw you a diagram to show you how to do this.

i. Managing you workers
1. You have come to me and said the reason you don't get as much work done as I think you should is because of the people you supervise. You say that they don't know what to do. You said to me that the men should know they need to cut the stub down low, so you think you don't have to tell them to do this. I tell you its not that they don't know this, it's that they are not going to do it unless you tell them to. It is easier to cut them up high. If you can't the worker's that you supervise to get the job done, then you are not doing your job as a supervisor. You can't take this personally it's a job and it has to be done correctly. It is your job to tell them to cut the stub down low. Don't assume that they should already know to do this. At some point you have to let these people know you mean business.

j. Training your workers
1. I have been confronted by one of your subordinates that they can't go to you and ask how to do something. They say that you want take the time to explain it to them where they can understand it. Now this employee has to go to some one else to learn the task. There again training employees is a skill you have to have in order to be a supervisor.

I. Prejudges
a. Accusing me of being prejudges will not be tolerated.
b. Nothing I have said to you has been in a prejudice manner.
c. We all must learn to communicate in a professional manner and that is the way I was speaking to you.
d. When you are a supervisor, you must learn how to speak to your employees and your employers, especially those that are over you. You are to treat your superiors just as what they are, supervisor.

*written by*
*T. Lewis*

B.   **Checking you work**
    I have told you time and time again time again about checking
    your field work. It's the only way you can be efficient. All of this
    could still fall under not following directives

1  On May 17th, I found out you had had a problem the day before. I
    told you needed to be checking your work to keep things like that
    from happening.

2.  June 15th, I had to tell you to check your work again to see if you
    had the sufficient information that was needed to cover the area in
    question.. I explained to you that all you had to do was load the
    information that you had gathered and see if it covered the area
    properly.

3.  July 19th, once again I had to tell you to check your work after
    running some 3,000 ft of traverse without checking a previously
    established point. I explained that all you have to do is load one of
    the previously established coordinates and stake it out to find a
    point and see how much you have missed it. I have provided you
    with a laptop to keep in the truck to do this with. You have the
    files on the computer with this information. This is a tool that you
    need to use. Even as I was telling you this, you were telling me the
    information you were gathering was good " it looks good when I
    downloaded it. It must be good. After I made you go back and
    check the traverse what did you find? You found you had over a 1
    foot err. Now you have spent almost 2 days trying to find the err.
    This is time wasted.

C.   **Working Skills**
  g. Computer Skills

1.  May 16th, the day that you first started on this job, I asked you what
    kind of experience you had with the computer.  You stated that you
    had been a data editor and you knew a good bit about terra model.

2.  July 6th, I had to give you a lesson on how to draw a line in  terra
    Model and how to draw points by station offset.  I have also had to
    show you how to load image files into model.  These are basic
    skills in model that one of your standing should already know.

3.  Monday, July 18th I had to show you how to write out a points file
    in a station offset format, but yet you told me that you were a data
    editor and you knew a good bit about the program.

4.  July 27th, I had to explain how to draw an alignment up on the
    computer. This is the same thing I had to show you back on
    July 6th.  How to draw a line. The problem I saw on this day was.
    You had the information to draw the alignment with, but you did
    not know how to retrieve the information. The Terramodel file you



Mr. Leroy Williams
Work Performance
Counseling Session
July 28, 2005

A    *Not Following directions*

1  May 16th , 2005, the first day you reported to this office we all sat down and discussed that you, as a supervisor, do not have the  authority to let people off with out my approval. We also discussed work times, and the importance of not being late.

   a. Work Times
      1. On May 16th, we discussed what the work times were:
         5:00 a.m. to 5:00 p.m. Monday
         7:00 a.m. to 5:00 p.m. Tuesday and Wednesday
         7:00 a.m. to 7:00 p.m. Thursday.

   b. May 24th I took you out and showed you the new project and what work we need to do, I explained when working around the Interchanges you should not set radial points with out checking them for accuracy. When we started checking our files an err was found. After going back checking I realized that you had set radial points to work off of. I told you go run a closure loop on the points, not once but twice before you did it the way I had told you to

   c. Tuesday, May 31st you came into the parking lot in Montgomery 5 minutes late. On this same date, I instructed you to meet with me in the parking lot of the motel at 7 a.m.
   d. Wednesday, June 1st you were not at the motel parking lot, where I had instructed you to be the day before. You took this upon yourself not to follow my instructions and you did not notify me of this. You informed Rodney instead of your supervisor. I do not know where you were, so as far as I'm concerned you were late that day also.
   e. Thursday, ~~July 28,~~th you let everyone go at 1:00 p.m. with out my approval, then you told me you let them go at 2:00 p.m.  This is insubordination.

After having talked with Leroy as summarized above, I feel confident he now understands that Tommy and I are concerned about his lack of performance and his weaknesses in certain areas. One of the main things that I repeatedly suggested that he do concerning retaining training that Tommy provides, is to take good notes and refer back to them as needed. I feel confident that he now understands fully what is expected and how he needs to go about improving. I assured him that Tommy will be right there to help him with areas where he is weak. However, Leroy now understands that he is ultimately responsible for his performance, for his retention of knowledge. He is ultimately responsible for doing his best to at least meet standards required to earn the right to become a permanent employee in the Transportation Technologist classification at the end of the six month probationary period. I told Leroy that his "mid appraisal" (three months) was approaching in about a month and that we would reassess at that time. I told him that we would be meeting often if Tommy did not report vast improvements in all areas. He said he understood. I assured Leroy that it is our desire to see him improve and we will try our best to help him do that.

NOTE: As noted above, I am recommending to Tommy to delay submitting the written reprimand pertaining to tardiness until he makes the drive directly from Montgomery to Tuscaloosa. He is to leave at 5:00 a.m. sharp and be very conscious to drive the speed limit at all times and note the time it takes to make the trip. If the time is more than the allotted two hours, then the reprimand will be rescinded. If the drive proves to fall within the two hours, then the reprimand will become an official disciplinary action on Leroy Williams. Leroy had been explained this during the counseling session and he agreed to this approach.

_____
Joe E. Jones, Asst. Location Engineer, Field

Witness:     _____
Thomas L. Lewis, Party Chief

Cc:     Mr. Don Arkle
        Mr. William Adams
        Mr. Thomas Lewis

Example: Leroy said he did not hear one of the directives to meet at a motel on a particular morning (see attachment). Since ALL other crew members heard the directive, and even the man sitting beside Leroy heard the directive, it is a mystery to me how he did not hear it as well. It seems to me that Leroy simply wanted to do what HE wanted to do and ignored the directive. This is not acceptable. I advised Leroy that he must always be cooperative and do what he is told. Since he is the Field Supervisor, he must be the FIRST to set the example for the rest. I also told Leroy that it is his responsibility to be informed EVERY day as to matters such as this. It is a shame that all subordinates reported as instructed and Leroy, the Field Supervisor, did not.

## Tardiness

We discussed all FOUR times Leroy has been noted as arriving for work late by Tommy. Leroy did not deny that he was late but only that he was not as late as Tommy had noted. I advised Leroy that the amount of time he is late is not the issue but, rather, the fact that he was late is the issue. First, his being the second in charge of a crew as a supervisor demands that he set the example by NEVER being late and certainly not being late often. I made sure he understood that work rules are to be adhered to without question. Being tardy is not acceptable and will be dealt with swiftly if a pattern develops...which in Leroy's case, the pattern has developed. Secondly, since every crew works as a "unit", it is imperative that all members be at work on time or the whole crew suffers.

Since Leroy had been warned THREE previous times about tardiness infractions, Tommy gave a written reprimand the fourth time when Leroy arrived at the office late on Monday morning (see attached reprimand for details). However, because Leroy stated that the allotted drive time from Montgomery to Tuscaloosa is not a reasonable drive time, I have asked Tommy to withhold the reprimand UNTIL he personally makes the drive himself under the same conditions that Leroy made. Leroy says the drive takes 2 hours and 25 minutes if you drive the speed limit. The difference in the drive time allowed and what Leroy says it takes is roughly 25 minutes. The allotted time is two hours but Tommy tells me the crew is always there on Mondays around 6:40 to 6:50 a.m. If this is true, then according to Leroy, the crew has to be driving at a high rate of speed and this is not acceptable. If Tommy proves the drive to be less than two hours under the same conditions that Leroy describes, then the reprimand stands. If the drive is proven to take more than two hours, then I recommended to Tommy that he rescind the reprimand. HOWEVER, I advised Leroy that the first three warnings will remain on record and that the next infraction of tardiness WILL RESULT in a reprimand. He said he understood and seemed to have no problem with that approach.

What causes concern for me is that this "two hour" drive time has been in place for MORE than a year now and was put in place by the previous Party Chief, Joe King. Not one time has any individual in that crew ever mentioned that the drive time was not long enough. We will assess this carefully as Leroy's career could be adversely affected if the two-hour drive time is accurate. A reprimand is not given lightly because it is such a negative on one's grade sheet. An addendum will be inserted below on the results of the drive/test that Tommy has been instructed to do.

Within this entire subject is an included fact that Leroy was driving his personal vehicle those times he was late. I made sure he understood that if he chooses to drive his private vehicle (we furnish transportation in the Carryall), then he is obligated to arrive at the allotted time and for sure BEFORE the carryall. He said he understood. I also advised him that his privilege of driving his private vehicle could be revoked if he persisted in being late while driving his own vehicle. By his traveling in the Carryall, we can assure that he will arrive on time and his problem will be should be solved.

I warned Leroy that arriving at the parking lot on Mondays at 5:00 a.m. is mandatory and is not debatable. If a person arrives later than 5:00 a.m., then he is late. If the time for arrival at the Field Office is set at 7:00 a.m. by the Party Chief, and it is an accurate allotment, then if one arrives AFTER 7:00 a.m., he is late. Those are the rules and they are not up for question. He said he understood.

## SUMMARY:

direction from Tommy on all work because Tommy has many years of experience as a Field Supervisor and is one who has a vast knowledge of Location Surveying procedures.

He shows a severe lack of skills in working with Terramodel. Even though this is not a highly required skill to be a good Field Supervisor, it is desirable. Since Leroy had been a Data Editor for over a year, I would have assumed that he had a pretty good working knowledge of Terramodel and could build basic alignments and/or retrieve data as needed. According to Tommy, this is not the case. Leroy had advised Tommy on his first day that he knew Terramodel and had a good understanding. Leroy noted on his resume and his application that he worked in the Data Editor job for a good while. I have advised Leroy to ask either Tommy or the Data Editor in the crew to show/teach him what he needs to know to work efficiently in the program....and to be able to find and retrieve data as needed without delaying the work process. I again advised making good notes and hanging on to them for reference in the future.

From discussions with Tommy over the last two months, I am concerned that Leroy does not have a really good grasp of what is required on a survey, even on a daily basis. Once again, Leroy should have accumulated enough knowledge and experience over his years in a survey crew to make him highly efficient and skilled and knowledgeable about what is needed to complete a survey. This is not the case according to the overall operations that Tommy has been reporting to me. Tommy says he is having to work late many nights just to catch up on his work because he is spending so much time teaching/showing Leroy how and what to do. Also, Tommy says he is spending too much time checking and correcting errors made in the field due to bad procedures. Again, Leroy told me in his interview that he was a better qualified candidate for the job because of his experience in Location Surveying AND because of the training that had been offered by the ALDOT. Leroy is not exhibiting the qualities that I expected from him because of his experience he talked about. I advised Leroy that the lack of knowledge pertaining to what is needed on a daily basis is a surprise to me after having interviewed him and having read his resume. I told him he needed to concentrate really hard on getting a better feel for what is required by asking questions and communicating closely with Tommy and the Data Editor. If he will do this, progress will not be hampered due to "floundering" caused by his ineptness.

Once again, I advise Leroy to take good notes and then hang on to them for reference.

Leroy shows a lack of management skills in that he cannot effectively supervise his subordinates. Leroy stated to Tommy that he was not getting as much work done as he could "...because his people didn't know what to do." I told Leroy that correcting this problem was his job. As a field supervisor, and according to his form 40, one of his tasks is to train subordinates so the surveys are done efficiently and accurately and without delay. I advised Leroy that he must separate himself from the "worker" mentality and become more aggressive in the supervision and training aspect of the job. If the subordinate doesn't know what to do, then he must show him. If the subordinate doesn't perform well or is "dragging around" then he must approach that individual and square him away. One of the subordinates even complained to Tommy that they couldn't get Leroy to explain things to him. That subordinate then would have to ask somebody else how to do a certain chore. I advised Leroy to be focused on his subordinates' weaknesses and do all that he can to teach them. The very least Leroy should do is make sure that he communicates clearly to them what it is he wants them to do at any given time. After a while, they too will be expected to catch on and do their work without specific and continuous directives when performing redundant tasks.

### Doesn't Follow Directives

This concerns me greatly. Tommy noted several directives that he had given Leroy at different times and that Leroy had ignored them or did not react to them. (see attachments). This is not acceptable. I informed Leroy that if Tommy gives a directive and it is not illegal or harmful, then he must do his best to do exactly what was told him. If he ignores or simply does not do what the supervisor asks or directs, then he actually is being insubordinate. I made sure Leroy understood that insubordination is one of those things that can cause termination on the FIRST offence. I asked Leroy if he would allow a subordinate to ignore or disobey a directive. He answered "No". He then seemed to understand that he should be then cooperative with Tommy and do as he directed EVERY time. I told Leroy that if he did not agree with the directive, not to ignore it, but go ahead and do it. THEN, while alone with Tommy, voice his suggestion that the task be done a different way. Tommy may not change his mind but then again, he might.

*written by T. Lewis*

f.  Telling me the reason we are in a racial lawsuit is because we did not train employees is not an appropriate way to talk to your superior and it will not be tolerated.

II.  Transfers
   a.  There will be no transfers from the crew you are with now, at least not for the reason that you gave me earlier.
   b.  Just because you think I'm being too hard on you is not reason enough to be asking for a transfer.

Summary

It has become an every day thing. I have to show you how to do some miner task in Terramoldel, how to run a closure loop, how to set up files to work with. I am spending so much time trying to train you to do you job, I have to work late just to complete my work. I could understand spending this much time training a new Supervisor that had no experience in surveying. But you have been exposed to so much information in the past working with the Location Section along with the other Sections. I can not understand why you have not learned these skills in the past.

In the interview with Mr. Jones, you told him you had the skills to be a supervisor. When you came out to the field you told me you had the skills to be a supervisor. Now, you are being held responsible for your work as a supervisor and you want to tell me you were not trained in the skills you need to be a supervisor. I know the people you worked under as a rodman, instrument operator, and data editor. I don't think it was that you weren't taught these skills, and I don't think you took it upon yourself to learn the skills that you were exposed to. In the event of this, now you are blaming every one else for your lack of skills. That to me, is not an excuse. If you want to continue being a supervisor you must improve you skill. There is a big gap between where you are now and where you need to be between now and the end of your probation. If you don't improve as much as need to your probation could be extended or you could be released. I want you to understand this is a serious matter and one you need to work hard on. I will work with you as much as I can to help you improve your skills but in the end it's up to you to learn and show me you can be a supervisor.

 

## ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

Telephone: 334-242-6311    FAX: 334-262-8041

Bob Riley
Governor

J.D. McInnes
Transportation Director

August 4, 2005

# MEMORANDUM

To:     Leroy Williams
        Field Supervisor

From:   Joe E. Jones,
        Asst. Location Engineer, Field

Re:     Drive Time from Montgomery Office to Lewis Crew Tuscaloosa Field Office

Purpose: Verify drive time related to Leroy Williams Written Reprimand

In my counseling session with you dated July 28, 2005, I discussed with you the written reprimand given you by Mr. Thomas Lewis, Party Chief. Mr. Lewis, your immediate supervisor had instigated the reprimand due to excessive tardiness. The fourth tardy involved you arriving late on a Monday morning after driving from Montgomery to Tuscaloosa. You stated that it took 2 hours and 25 minutes to make the drive which would make the reporting time 7:25 a.m. I directed Mr. Lewis to make this drive himself, under the same conditions you described (time and speed limit) and report back to me. If the drive proved to be more than the allotted 2 hours, I would instruct Mr. Lewis to rescind the reprimand. However, if the drive proved to be within the allotted 2 hours, the reprimand would stand. Below is the result of the drive made by Mr. Lewis:

On August 2, 2005, Tommy drove from the Montgomery office to his Tuscaloosa office. He left promptly at 5:00 a.m. and was consciously driving the posted speed limit on the different roads along the route. Tommy noted his trip as follows:

"I left Montgomery this morning at 5:00 a.m. stopped one time at the rest area for about 5 minutes and arrived here at the office in Tuscaloosa at 6:55 a.m. This was driving the speed limit all the way. I set the cruse at 55 mph when I got just north of Prattville and when I hit the 4 lane in Centerville I set it at 65 mph. The total distance is 106.5 miles form Office to Office. This is an average speed of 55.55 mph. In no way did I exceed the speed limit."

Based on this driving time test and his report, I am now advising Mr. Lewis to proceed with the written reprimand by submitting it as an official disciplinary action on tardiness. You have already been counseled by Mr. Lewis on this matter and advised of the charge. I have advised you, as noted in my counseling report, about the consequences of being tardy and went over the rules pertaining to the matter. I also advised you that this would affect your grade sheet because it would cause a seven point deduction in your upcoming grade on your Employee Performance Appraisal.

Cc:     Mr. Don Arkle
        Mr. William Adams
        Mr. Thomas Lewis


DEFENDANT'S
EXHIBIT
S



**ALABAMA DEPARTMENT OF TRANSPORTATION**
*Design Bureau*
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P. O. Box 303050, Montgomery, Alabama 36130-3050
*Phone: 334-242-6178      FAX: 334-269-0826*





*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

August, 11 2005

## MEMORANDUM

To: Leroy Williams
    Transportation Technician
    Field Supervisor

From: Thomas W. Lewis
    Transportation Technician
    Chief of Party

RE: Reprimand for Insubordination

Mr. Williams, on Thursday morning August 11th 2005, I was reviewing the work the crew had done in the field on Wednesday August 10th 2005. I was very concerned when I found so little progress had been made in the field that day. As you know, this project is a high priority job and its deadline is fast approaching. The completion of this project, on time, is a must and we must do what we can to prevent any unnecessary delays.

While in the process of reviewing the raw data file, I found that it was 9:19 a.m. before the first setup was made that morning. I also found that only three cross sections were taken from 9:19 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) The file shows that only 1 hour 45 minutes was spent collecting field data from 7:00 a.m. to 11:15 a.m. (that is allowing 20 minutes to take the last 6 shots in the file.) I decided to take a look at the area in question again to see if I could determine the cause of the delay. I was very concerned with what I found. The area in question had break lines that had not been shot and large areas that were not covered densely enough to correctly show the contours. This is when I came to you to discuss this matter. I called you aside to show you the break lines that


DEFENDANT'S
EXHIBIT
I

1

needed to be shot. I walked you around the ridge and showed you the toes that need to be shot. I explained that as an alternative of working off the centerline points, you could have set one remote to cover the majority of the area in question, saving valuable time.

I also talked to you about time management. I explained that if you stop at a store on the way out to the job site, you just took your morning break. I asked you about your lunch hour. You explained that your lunch hour began when you got to the truck and ended when you got back out of the truck. I then explained that this was not correct. Lunch started when you finished in the field. The walk out of the woods was part of your lunch hour. At this point you began to question my interpretation of the lunch hour. I explained that this was set down by the department, not me. You then began to become argumentative. You told me I was just being picky and I was just looking for something to harass you about. You then told me if I didn't have anything else to say you were going back to work. You turned and started to walk away. I told you not to walk away that I was not finished. You then told me "if you are going to talk to me I'm going to sit down and then you can talk." I started to explain that the progress made on Wednesday was unacceptable. Then you jumped up and started saying I was harassing you and not letting you do your job and you were going to have to talk to someone about it. You told me you were working hard and doing a good job. You also told me you could not work like this. You again started to walk away I told you "Leroy, if you walk away I am going to write you up for insubordination. Do you understand?" But you walked away with out me having the opportunity to explain why it was unacceptable.

It is very discouraging to see a supervisor on probation have so little respect for his supervisor, that he walk away when there is clear concern about the progress of the project. The loss of any time on this project is detrimental to the deadline being met. I have tried to impress the importance of time management and accuracy on this project. I have spent time with you trying to share my experience and knowledge with little results. I have explained rules that you question. I have spent time in the field with you trying to show you the most efficient way to produce highly accurate maps. But, the product you turn in on a daily basis consistently has errors, and is lacking in quantity.

The only reason I can find for this is, mismanagement of your time, and inability to lead your people properly. This does not only affect you, but it reflects upon the entire crew. Your work performance does not reflect the

2

experience that you have indicated or the experience you suggest you have acquired while working with other crews in the Location Section.

Mr. Williams, it is with regret that it has come down to reprimanding you for insubordination, but you walking away from me or any other supervisor when there are such critical issues to confront and discuss is unacceptable and will not be tolerated. This being the second reprimand in the past month along with you still on probation is very disturbing. It shows a pattern of disregard for your job. As a supervisor, it is your job to set an example for your subordinates; this is not setting a good example. You have to realize this will not be allowed to continue.

In this situation I am at a loss at what punishment to suggest. The severity of your actions could have more than one form of punishment. You could receive this letter of reprimand; receive the letter of reprimand plus a suspension, demotion, or dismissal, on the first offence of insubordination.

At the least, this letter will go into your personnel records and an additional 7 points will be subtracted from your next performance appraisal. I would like to suggest at the least, a suspension be imposed, but I would like my supervisor to review this matter and ask him for a recommendation. Again, I regret having to reprimand any employee, but your actions as a supervisor, warrant strong disciplinary action.


Thomas W. Lewis
Transportation Technician
Chief of Party


Cc: William Adams
    Joe E. Jones
    Location file

3



# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone:* 334-242-6311    *FAX:* 334-262-8041



*J.D. McInnes*
*Transportation Director*



*Bob Riley*
*Governor*

August 15, 2005

## MEMORANDUM

To:      William F. Adams, Location Engineer

From:    Joe E. Jones
         Asst. Location Engineer, Field

Re:      Recommendation of Discipline

         Leroy Williams, Transportation Technologist (Probationary Employee)
         Field Supervisor
         SECOND REPRIMAND by SUPERVISOR
         Charge:  Insubordination

On August 11, 2005, Leroy Williams and Thomas Lewis met with me in my office to discuss the above referenced. I will refer to Mr. Williams as Leroy and Mr. Lewis as Tommy.

Tommy had called me from the field on the morning of August 11, 2005 to inform me that he was about to charge Leroy with insubordination. He briefly explained the situation to me. I then instructed him to bring Leroy with him and meet with me at 3:00 p.m.

Please see the attached written reprimand for details that led up to this disciplinary action. Generally, the insubordination charge was made because Leroy angrily walked off from Tommy during a meeting where Tommy was counseling/instructing Leroy on work matters. Tommy warned Leroy twice not to walk away and even warned him the second time that if he did, he would be charged with insubordination. Leroy walked away anyway.

During the meeting in my office, Leroy confirmed that he did walk away. However, Leroy said he did so only because Tommy was being demeaning and "talking down to him". Tommy denies this. I advised Leroy that a subordinate never terminates a meeting that a supervisor has called or disregards a directive unless it is unlawful or is dangerous. I also advised him that he should have finished listening to the supervisor, done what he asked, and then file a report/complaint as to the demeaning treatment that he said he received. I advised him that the reaction from him was unacceptable and shows a blatant disregard for the supervisor's authority to the point of insubordination.

At one point in our meeting, Leroy said that Tommy is "constantly" harassing him and "will not let him do his job". According to Tommy, he has never harassed Leroy but has indeed corrected him, trained him, and advised him of the rules and how they are to be followed. Tommy says that Leroy is defensive and has become more and more argumentative when he tries to instruct/train him. Tommy said that Leroy has threatened to "get a lawyer" during one of their sessions.



DEFENDANT'S
EXHIBIT
4

When I asked Leroy if he was accurate when he said, " Tommy constantly harasses and demeans me ALL the time", he said he was accurate. Leroy even said that ALL of the crew members had asked him, "...why does Tommy harass you like this ALL the time?" I asked Leroy was he sure that ALL members had asked him this and he said yes. I instructed Tommy to have a meeting with his crew as soon as possible and see if this accusation was accurate. Tommy said he would and would make a full report. On this date, Tommy had that meeting, with Leroy present, and has advised me that NONE of the personnel confirmed they had ever witnessed his harassing or demeaning Leroy. Please see the attached report on the meeting.

According to Tommy, Leroy is not handling the responsibilities of Field Supervisor well at all (see counseling session on July 28, 2005). This includes things like; he is not knowledgeable enough to handle the technical issues; not doing well at supervising his personnel; not managing time well; not following established rules concerning tardiness and lunch/break times; not retaining instructions/knowledge that Tommy is offering him. As a result, he reports that progress is being severely hampered. Tommy reports that the field operations are severely lacking in production and that even the minimal data being collected is often faulty because Leroy is not following procedures laid down by Tommy. In addition, field operations are lagging because Leroy is not managing time well at all.

For example, Tommy said that on August 11 one of the things (just prior to the insubordination) he was attempting to counsel Leroy on was his use of work time and making sure that the work effort was being maximized. Tommy said Leroy was defensive and said he was working hard. Tommy was trying to relate some times that were recorded in the Total Station that showed the work history on certain dates. Leroy stated that he didn't know what the clock on the instrument showed but that he was getting to work in the field in a timely manner. However, Tommy has presented documents (see attached) that show a history of the FIRST "setup" recorded in the instrument for several days. Those times are compared to another crew which is working out of the same office, doing similar work on the same project within a ¼ mile of each other. The document shows that the other crew consistently had a recorded setup time of roughly an hour BEFORE Leroy's crew did each morning. The document seems to exhibit a pattern of Leroy NOT getting to the job site in a timely manner. Tommy advised me that Leroy doesn't agree with the exhibit. Tommy has assured me that he checked the clock on the instrument and it is accurate.

Summary:

Leroy is a probationary employee in the classification of Transportation Technologist and is performing that probationary period in the job title of Field Supervisor. He is roughly at the three-month point in the period. Leroy has several years experience in Location Surveying, including experience as a Data Editor within a crew. Because of this experience and the training/classes Leroy has taken advantage of, I expected him to be a much more effective Field Supervisor. This is not proving to be the case. Tommy is a Party Chief with many, many years of Location Surveying experience. I have confidence in his knowledge and skills in Location Surveying because he was a successful Field Supervisor for all those years. Based on those years of experience, Tommy is attempting to help Leroy develop good technical skills along with good procedures to maximize efforts in the field. In essence, here is a successful and experienced supervisor attempting to train, advise, and counsel a subordinate who is a probationary employee in training. At the same time, he is attempting to cause Leroy to focus more on the responsibility of setting a good example for HIS subordinates by following all rules and regulations.

Leroy was not expected to "be up and running" since he is in a probationary period. However, he was expected to perform well in the technical areas and expected to stay open to critique and instruction by the Party Chief in those areas where he is weakest. Once he receives this critique/instruction, I would expect him to note it and react to it by conforming and by following those instructions. It seems, though, that Leroy takes offence to Tommy's critique and to his tutoring. It is apparent that Leroy interprets this as harassment. It seems to me that Leroy should concentrate more on being more receptive to learning all he can from Tommy's vast experience as a Location Surveyor (including all aspects of the job), as a long time Field Supervisor, and now as a Party Chief. Being argumentative and defensive when his supervisor is trying to counsel and train him is counterproductive and uncalled for. For some reason, Leroy seems to think that Tommy is being harassing when, according to Tommy, he is only trying to help Leroy learn how

to do the job in an accurate and timely manner with minimal effort. This seems like a reasonable approach to me.

Leroy has broken the rules pertaining to tardiness for which he received a written reprimand. Now, he has received a written reprimand for insubordination: all within the first three months of his probationary period. It seems that Leroy is resisting all supervision by Tommy and is ignoring the rules in place for things such as those for tardiness and other rules. According to Tommy, Leroy even was argumentative about the lunch hour and how it is to be handled. All of this is unacceptable for ANY employee of any job title but is surely not acceptable from a supervisor who needs to be setting the example for his subordinates. All other personnel are held to the same standards of following rules and for being cooperative. I see no reason for Leroy to be the exception. The rules and regulations set forth by State Personnel, ALDOT, and the Location Section seem to be fair to me. I don't consider the rules unreasonable and see no reason any employee would have trouble following them.

It is now my conclusion that Leroy has not represented himself well in his job title of Field Supervisor. However, his performance is fairly secondary to his seemingly hostile attitude of assuming a supervisor is being harassing when they are giving instructions and directives. Usually, this type attitude might be expected from a new employee who is making an adjustment to our rules and regulations and to our work habits at the ALDOT. Leroy, however, has worked several years in our survey crews and should be well aware of our rules and regulations. To be argumentative and insubordinate to his supervisor is just not acceptable. This attitude along with his weak job performance is, according to Tommy, causing a serious lack of progress on a job that has a very important timeline to be met. The evidence attached concerning the "late morning" setups recorded in the instrument and then the unsatisfactory response to Tommy's instructions seem to bear Tommy's feelings out. The reprimands for tardiness and for insubordination seem to make a case that this employee is not meeting standards at this point.

Tommy says in his written reprimand that he is not sure how severe the punishment should be. However, he says that he would recommend at least a suspension. I concur in that a suspension should be the minimum disciplinary result. I would suggest, however, that serious consideration be given to other choices. Since Leroy is a probationary employee, and on being judged on his job performance, on his abilities to follow directives, and on his sense of cooperation, his successes and failures are magnified even more. It is during this time that the Department is depending on supervisors to judge whether or not a probationary employee meets or does not meet standards. It is then the supervisor(s) who should make a judgment based on good information and evidence, and then present a recommendation that is beneficial and reasonable to the Department.

Thus, it is my recommendation that Leroy not be allowed to continue in the Transportation Technologist classification. The reports given to me by his supervisor, Tommy Lewis, show that he is proving less than desirable as a Field Supervisor for which he was hired. If Leroy is unwilling to react positively to discipline, training, corrective counseling, or warnings, then his tenure in this probationary period should be stopped now.




# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311      FAX: 334-262-8041*

*Bob Riley*
*Governor*

*J.D. McInnes*
*Transportation Director*

August 19, 2005

## M E M O R A N D U M:

TO:       Mr. Don T. Arkle
          Design Bureau Chief

FROM:     William F. Adams
          Location Engineer

RE:       Probationary Period of
          Leroy Williams

Mr. Williams was appointed to the classification of Transportation Technologist in the job title of Field Supervisor effective May 14, 2005. Mr. Williams was assigned to Mr. Tommy Lewis's crew. Since beginning with Mr. Lewis's crew, Mr. Williams has been reprimanded for excessive tardiness on July 26, 2005, and for insubordination on August 11, 2005, as shown in the attached documentation from Mr. Lewis and Mr. Joe Jones, Assistant Location Engineer.

Mr. Williams' lack of respect for the rules established by the Department, Bureau and Location Section and for his supervisor as shown by his actions is totally unacceptable. For these reasons, I am recommending that Mr. William's probation be ended at this time and that he be reassigned to his former classification of EA II/III in the Design Section.

Let me know if you have any questions or need additional information regarding this recommendation.  Please indicate your concurrence with this recommendation by signing in the space provided below.

Concur:  _____        Date: _8-19-05_
         Don T. Arkle

Attachments

DEFENDANT'S
EXHIBIT



## ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

*Telephone: 334-242-6311    FAX: 334-262-8041*



*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

August 22, 2005



## MEMORANDUM

**TO:**     **Mr. Ron Green**
        **ALDOT Personnel Director**

**FROM:**   Don T. Arkle
        **Design Bureau Chief**

**RE:**     **Probationary Employee**
        **Leroy Williams, Transp. Tech.**
        **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**

This is a request to terminate a probationary employee's appointment. Mr. Leroy Williams was appointed to the classification of Transportation Technologist on May 14, 2005. Since that time he has been reprimanded for excessive tardiness and insubordination. The attached documentation explains in great detail the events that led up to this request.

It would be appreciated if this action can be taken as quickly as possible and Mr. Williams returned to his previous Engineering Assistant II/III classification.

If you have questions or need additional information, please let me know.

DTA/cj



DEFENDANT'S EXHIBIT

W




# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama  36110
P.O. Box 303050, Montgomery, Alabama 36130-3050

Bob Riley
*Governor*

*Joe McInnes*
*Transportation Director*

September 1, 2005

Mr. Leroy Williams
Alabama Department of Transportation
Design Bureau
1409 Coliseum Blvd.
Montgomery, AL  36110

Re:  Transportation Technologist Appointment

Dear Mr. Williams:

This is to inform you that your appointment in the Transportation Technologist classification that was effective May 14, 2005, has been terminated as of September 3, 2005. You will revert back to your Engineering Assistant II/III position in the Roadway Design Section of the Design Bureau and should report to Adenrele Odutola at 8 a.m. on Tuesday, September 6, 2005.  Your salary will also be reduced to the rate you were making at the time of the appointment ($966.20 plus the 6% cost of living increase).

This action is being taken because of your continual excessive tardiness and repeated insubordination.  You were given numerous warnings and two written reprimands all with no noted improvement in your behavior.

As you know, any new appointment carries a six-month probationary period before it becomes permanent.  At this time you are just over three months into that test period.  For the above reasons it has been determined that you have not satisfactorily performed and/or responded to our efforts to correct your behavior.  Therefore, this appointment should be terminated at this point.

We regret that this action is necessary, but trust that you will use it for the betterment of your career.

Sincerely,

Don T. Arkle
Design Bureau Chief

DTA
cc:  Mr. William Adams
     Mr. Joe Jones
     Mr. Ron Green
     State Personnel



DEFENDANT'S EXHIBIT
X

EEOC FORM 131 (6/01)

# U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Ron Green, Personnel Director<br>ALABAMA DEPARTMENT OF TRANSPORTATION<br>1409 Coliseum Blvd.<br>Montgomery, AL 36110 | **Leroy Williams** |
| | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**130-2005-06637** |

## NOTICE OF CHARGE OF DISCRIMINATION
### (See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by   **13-OCT-05**   a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by                    to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by   **29-SEP-05**
   to   **Debra B. Leo, ADR Coordinator, at (205) 212-2033**
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| Veneda K. Jordan,<br>Enforcement Supervisor | **Birmingham District Office**<br>**Ridge Park Place**<br>**1130 22nd Street, South**<br>**Birmingham, AL 35205** |
|---|---|
| EEOC Representative | |
| Telephone:   **(205) 212-2129** | |

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

DEFENDANT'S EXHIBIT

| Date<br>**Sep 14, 2005** | Name / Title of Authorized Official<br>**Bernice Williams-Kimbrough,**<br>**District Director** | Signature |
|---|---|---|

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 130-2005-06637 |

and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Mr. Leroy Williams** | **(334) 284-2005** | **04-21-1965** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3723 Bridlewood Drive, Montgomery, AL 36111** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ALABAMA DEPT OF TRANSPORTATION** | **500 or More** | **(334) 242-6166** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1409 Coliseum Blvd., Montgomery, AL 36110** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **05-14-2005**  Latest **09-01-2005**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the above-named employer in August 1993, as a general laborer. On May 14, 2005, I was promoted to a transportation technologist, as a six-month probationary employee. Upon being promoted I was not properly trained or given sufficient data and information as necessary to be successful in the job. I was constantly subjected to harassment and intimidation by my supervisor. I was demoted on September 1, 2005.

Don Arkle, White, Design Bureau Chief, informed me that I was being demoted for excessive tardiness and repeated insubordination, which I deny.

I believe that I was discriminated against because of my race, Black, and in retaliation for having filed a previous internal grievance based on race against my supervisor, which is in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe that had I been White, the issues of tardiness and insubordination would not have been a factor in being demoted.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Sep 09, 2005**  Date  *Leroy Williams*  Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Dec-07-05 02:30P ALL -Rdwy. Design 3 -353-6555 P.04

Case 2:06-cv-00658-TFM Document 15-33 Filed 03/26/2007 Page 1 of 13

# COMPLAINT FORM

**1.Name : Leroy Williams**

**2.Address : 3723 Bridlewood Drive, Montg, Al 36111**

**3.Job Title : Field Supervisor**

**4. Job Classification : Transportation Technologist**

**5. Bureau & Division : Design / Location**

**6. Name of Supervisor : Joe E. Jones / Thomas Lewis**

**7. Nature of Complaint :** I was recently promoted to a Transportation
Technologist / Field Supervisor , My immediate supervisor is Mr.
Thomas Lewis. The position is new to me , but the work is basically the
same, I ask questions when needed, haven't missed any days of work
And always helping others in areas of weakness. Mr. Lewis is constantly
Harassing and making derogative statement on areas of my work skills.
I have asked Mr. Lewis on several occasions to assist me and his
response is always the same " You should already know this " so I use
others sources to get the job done without delaying work progress.
Mr. Lewis also states that I show a pattern of tardiness , this is not true.
We are to leave our Montgomery office at 5:00 a.m. on Monday
mornings and arrive in Tuscaloosa at 7:00 a.m. .This is violating
State guide lines of speeding. Doing the post speed
Limits traveling the state route 82 the estimated travel time is
approximately 2hrs ,58min. The latest I have arrived is 2hrs.,20min. So
Am I being told to speed putting myself and others in danger, and
higher supervisor Joe E. Jones approves , with Mr. Lewis time of
arrival is 1hr.55min.
Mr. Lewis has a very demeaning attitude toward explaining directives
so it's never clear to me what he expects or wants done on work
relatives. He always leave something out, he mostly relates to a field
personnel that has less experience. Mr. Lewis / Mr. Jones portray me as
Floundering , Inept, argumentative and insubordinate but I am not,
especially when there are two opposing forces against me. Mr. Lewis

DEFENDANT'S
EXHIBIT
2

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures
0025

Leroy Williams
3723 Bridlewood Dr.
Montgomery, Alabama 36111

December 7, 2005

Ms. McGhee
1130 22 Suite 2000
Birmingham, Alabama 35205

Dear Sir or Madam:

In response to the reasons given by my superiors, Mr. Tommy Lewis, Mr. Joe Jones, Mr. Don Arkle, and William Adams, at no time was I given a fair hearing. I was constantly harassed while doing or attempting to do any of my work. As they know this was a new position and all new positions require training which I didn't receive. I feel there should have been some sort of training, whether hands on or classroom, instead, when I asked questions I was referred to as floundering and inept, argumentative and insubordinate.

It was stated that I was not able to assist one of the workers or that they could not come to me, but my question was why just one employee? Why not all of the workers? I asked one of my senior workers to assist this particular problem, since he was more experienced, to help me with work related problems since he was more familiar with the job. The problem was not disregarded, but handled by someone more familiar with the situation; therefore, it was a great help to me, since I also was learning a new job.

It was stated that I was not capable of following directions, Mr. Tommy Lewis, was never specific on what he wanted. In most cases, he would throw something at me and say do it, then complain that's not what he wanted. He never told me what he wanted, just to do it. If I asked a question about what he wanted, he would respond by saying, "You should already know this". That didn't answer my questions, only left me to guess to what specifically he wanted.

He did not help or answer my question nor did he appoint anyone else to assist me. That was a lack of his unwillingness to utilize his supervisory skills for my benefit. At no given time was I insubordinate to Mr. Lewis, but when I felt he was pressing. I attempted to go to the next supervisor in line; the doors were shut in my face.

In response to section A, paragraph B:

Tommy asked me to check in on the point and that is what I did as I was instructed. Then he said, "That's not what I meant". He said, "I meant to run a closure to find an error, from a remote point that was set." Then he wrote me up and said I didn't follow directions. That sounds more like he didn't give any directions.

Section A paragraph C

Upon leaving on the 31st of May, I was told to be at the job site at 7 a.m.; I was at the job site at 6:50a.m. I waited for an extended period of time before I contacted my supervisor to locate the crew. That was when Tommy said that he stated for us to meet in the hotel parking lot. He also stated that I was late and didn't follow instructions, when in fact, I did exactly what he said do. The job site was in Auburn which is where I was, but the hotel was in Opelika that was ten to fifteen miles out of the way from the job site. Every morning after that, we met like I was instructed previously, at the job site.

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures    0036

**Form 13P**
**Revised (1/1/1998)**

# EMPLOYEE PERFORMANCE APPRAISAL
## STATE OF ALABAMA
### Personnel Department

### *PREAPPRAISAL*

Employee Name: __Leroy Williams__          Social Security Number: __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__

Agency: __012/Transportation__          Division: __0850/Design__

Classification: __Transportation Technologist__          Class Code: __20481__

Period Covered From: __05/16/05__  To: __11/15/05__    *Probationary Period*

---

**RESPONSIBILITIES/RESULTS:** Responsibilities and results on which an employee will be rated should be listed below. These areas should be discussed with the employee during the Preappraisal session at the beginning of each appraisal year. Please refer to the Performance Appraisal Manual for instruction on how to develop responsibilities and results.

### RESPONSIBILITIES/RESULTS

Instruct employees so that project productivity standards are established and met with each project being completed without valid delay.

Assigns employees work so that all work is performed and productivity standards are met each day with each goal or project being completed without valid complaint or delay.

Operates personal computer so that information is transferred, compiled, and provided to designers with minimal errors and without valid delay.

Oversees the gathering of all field survey information so that all pertinent project data can be compiled and provided to designers with minimal errors and without valid delay.

Compiles information so that field maps, utility maps, profile maps, and requires pertinent project data are provided to designers with minimal errors and without valid delay.

Trains employees so they are afforded the opportunity to learn correct surveying methods, and are able to perform assigned tasks at a fully competent level with no valid complaints or delays.

Communicates orally with individuals so that instructions are received, information is properly exchanged, and problems are solved with no valid complaints.

Supervises and monitors employee work so that accurate performance appraisals are made and Discipline, if needed, is administered with no valid complaints from supervisors or employees.

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures    0035

Dec-07-05 02:33P ALD(  -Rdwy. Design        334 )53-6555        P.13

**Work Habits:** Provide a check in the appropriate space when the policies and procedures concerning the following areas have been discussed with the employee. In particular, the attendance and punctuality policies should be provided to the employee in writing. For instructions, refer to the performance appraisal manual and policies of the agency.

CHECK IF DISCUSSED:

| | | |
|---|---|---|
| X | Attendance |
| X | Punctuality |
| X | Cooperation with Coworkers |
| X | Compliance with Rules |

---

**PREAPPRAISAL SIGNATURES:** Date of Session: _May 21, 2004_

Employee Signature: _Leroy Williams_

Rater Signature: _Theresa M Barkshile_

Reviewer Signature: _____

---

### MIDAPPRAISAL

Describe the employee's performance strength(s) as observed during the first half of the appraisal period.

LEROY DOES NOT HESITATE TO ASK QUESTIONS OR REQUEST ASSISTANCE. LEROY IS VERY COOPERATIVE WITH HIS CO-WORKERS.

Describe area(s) of the employee's performance that need improvement as observed during the first half of the appraisal period.

LEROY NEEDS MORE ON-THE-JOB TRAINING.

Document the action plan that has been discussed to improve the areas of weakness.

LEROY WILL WORK ON ASSIGNED TASKS, AND I WILL REVIEW THEM UPON COMPLETION. LEROY WILL PARTICIPATE IN AVAILABLE TRAINING.

A midappraisal has been held and performance has been discussed:

Date: _Sept 28, 2004_

Employee Signature: _Leroy Williams_    Rater Signature: _Theresa M Barkshile_

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures    0034

Form 13P
Revised (1/1/1998)

**EMPLOYEE PERFORMANCE APPRAISAL**
**STATE OF ALABAMA**
**Personnel Department**

*PREAPPRAISAL*

Employee Name: LEROY WILLIAMS                Social Security Number: 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

Agency: 012/TRANSPORTATION                   Division: 0850/DESIGN

Classification: ENGINEERING ASSISTANT        Class Code: 20116

Period Covered From: 5-18-04 To 3-1-05

**RESPONSIBILITIES/RESULTS:** Responsibilities and results on which an employee will be rated should be listed below. These areas should be discussed with the employee during the Preappraisal session at the beginning of each appraisal year. Please refer to the Performance Appraisal Manual for instruction on how to develop responsibilities and results.

### RESPONSIBILITIES/RESULTS

1. PRODUCES HIGHWAY PLAN SHEETS (ELECTRONIC AND CONVENTIONAL) SO THAT THEY ARE ACCURATE AND COMPLETE, ACCESSIBLE, AND ORDERLY.

2. DRAFTS ALIGNMENTS AND GEOMETRY THAT ARE ACCURATE, IN ACCORDANCE WITH ESTABLISHED DESIGN GUIDELINES AND CRITERIA, AND COMPLETED IN A TIMELY MANNER.

3. PROVIDES AND MAINTAINS SPECIAL PLAN SHEETS (BRIDGE SHEETS, UTILITY SHEETS, TRAFFIC CONTROL PLANS), PROJECT NOTES, AND PROJECT DETAILS SO THAT ALL DRAWINGS, NOTES AND DETAILS ARE INCLUDED IN A COMPLETE AND ORDERLY PLAN ASSEMBLY.

4. REVISES PLAN SHEETS USING REPORTS AND REVIEWS FROM ENGINEERS, SUPERVISORS, AND TEAM LEADER SO THAT CORRECTIONS AND REVISIONS ARE COMPLETED IN AN ACCURATE AND TIMELY(6) MANNER.

5. REVISES QUANTITIES AND ESTIMATES USING REPORTS AND REVIEWS FROM ENGINEERS AND SUPERVISORS, SO THAT CORRECTIONS AND REVISIONS ARE COMPLETED IN AN ACCURATE AND TIMELY MANNER.

6. CALCULATES QUANTITIES, ENTER ESTIMATES AND DATA SO THAT PAY ITEMS AND INFORMATION ARE INCLUDED IN AN ACCURATE AND TIMELY MANNER.

7. READS GUIDELINES AND DESIGN CRITERIA SO THAT HIGHWAY GEOMETRY IS DONE IN ACCORDANCE WITH CURRENT GUIDELINE CRITERIA.

8. ATTENDS TRAINING FUNCTIONS, AND SECTION MEETINGS TO ATTEND, PARTICIPATE, LEARN, INFORM OTHERS, AND APPLY KNOWLEDGE AND INFORMATION TO THE TEAM LEADER..

9. PROVIDES PROJECT CORRESPONDENCES AND MAINTAIN PROJECT FILES (ELECTRONIC AND CONVENTIONAL MEDIA) SO THAT A CHRONOLOGICAL DOCUMENTATION OF PROJECTS CAN BE RETRIEVED IN A TIMELY MANNER.

Leroy Williams v.
ALDOT - Plaintiff's    0033
Initial Disclosures

**WORK HABITS:** Provide a check in the appropriate space when the policies and procedures concerning the following areas have been discussed with the employee. In particular, the attendance and punctuality policies ould be provided to the employee in writing. For instructions, refer to the performance appraisal manual and policies of the agency.

CHECK IF DISCUSSED:

__X__   Attendance

__X__   Punctuality

__X__   Cooperation with Coworkers

__X__   Compliance with Rules

**PREAPPRAISAL SIGNATURES:** Date of Session: ___02 - 12 - 03___

Employee Signature: _Leroy Williams_

Rater Signature: _Gary A. Beasley_

Reviewer Signature: _James M. Cantu_

## MIDAPPRAISAL

Describe the employee's performance strength(s) as observed during the first half of the appraisal period.

mr. williams has years of experience and gathers data, as a rodman, quickly and accurately. He wastes very little energy getting unnecessary data. He helps me train new employees and is very capable operating our total station instrument. He can always be counted on to give a good days work.

Describe area(s) of the employee's performance that need improvement as observed during the first half of the appraisal period.

Mr. williams has very few weaknesses. He could use some supervisory time over the crew. He could also use more time operating our electronic level.

Document the action plan that has been discussed to improve the areas of weakness.

I will allow mr. Williams the opportunity to supervise some phases of our upcoming projects. He will also be given the chance to operate our electronic level in the next year.

dappraisal has been held and performance has been discussed:

Date: 9-25-03
Employee Signature: _Leroy Williams_    Rater Signature: _Gary A. Beasley_

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures        0032

**Form 13P**
**Revised (1/1/1998)**

## EMPL ´EE PERFORMANCE APPR/ ´AL
### STATE OF ALABAMA
#### Personnel Department

### *PREAPPRAISAL*

Employee Name: <u>LEROY WILLIAMS</u>  Social Security Number: <u>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</u>

Agency: <u>012/TRANSPORTATION</u>  Division: <u>0850/DESIGN</u>

Classification: <u>ENGINEERING ASSISTANT</u>  Class Code: <u>20116</u>

Period Covered From: <u>03/01/2003</u>  To: <u>03/01/2004</u>

---

**RESPONSIBILITIES/RESULTS:** Responsibilities and results on which an employee will be rated should be listed below. These areas should be discussed with the employee during the Preappraisal session at the beginning of each appraisal year. Please refer to the Performance Appraisal Manual for instruction on how to develop responsibilities and results.

### RESPONSIBILITIES/RESULTS

1. Gathers information as directed so that pertinent survey data is gathered with minimal errors and without valid delay.

2. Operates basic survey equipment as directed so that daily job assignments are completed in an efficient manner without valid complaint or delay.

3. Operates personal computer as directed so that information is properly transferred with no valid delays and minimal errors.

4. Clears survey lines as directed so that access and visibility to project sites are obtained without valid delay.

5. Directs traffic and places traffic control as directed to maintain a safe work site for the traveling public and fellow employees with no occurrences of avoidable accidents.

6. Maintains survey equipment so that materials are ready for use on a daily basis with no valid delays in productivity.

7. Places target and level rods as directed so that information is properly gathered with no valid delays to daily project productivity.

8. Participates in training as directed so that knowledge of survey methods is gained and productivity is maintained with no valid delays.

9. Train other lesser-experienced employees in the method of collecting data so that informaton is properly gathered without complaints or delay.

10. Complete total station notes accurately so that the data editor may enter closure notes efficiently and survey points are properly defined with minimal errors and without valid delays.

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures    0031

Dec-07-05 02:31P ALD  -Rdwy. Design    3  -353-6555    P.09
Yahoo! Driving Directions - Centreville, AL to Tuscaloosa, AL    Page 2 of 2

| 3. | Continue to follow US-82 - go 28.8 mi |
| 4. | Turn **L** on VETERANS MEMORIAL PKWY - go < 0.1 mi |
| 5. | VETERANS MEMORIAL PKWY becomes 15TH ST - go 1.1 mi |
| 6. | Arrive at 630 15TH ST, TUSCALOOSA, on the |

When using any driving directions or map, it's a good idea to do a reality check and make sure the road still exists, watch out for construction, and follow all traffic safety precautions. This is only to be used as an aid in planning.

**Get New Driving Directions**

**A** Enter starting address
or select from My Locations

My Locations Edit
-- My Locations --

Address
Brent

City, State or Zip
Centreville, AL

Country
United States

**B** Enter destination address
or select from My Locations

My Locations Edit
-- My Locations --

Address
630 15th St

City, State or Zip
Tuscaloosa, AL 35401-4737

Country
United States

**Get Directions**

Learn about Mobile Phone Directions

Maps | Driving Directions | Local | Yellow Pages | Real Estate

Copyright © 2005 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy - Yahoo! Maps Terms of Use - Help - Ad Feedback

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures
0030

Dec-07-05 02:31P AL⎯-Rdwy. Design    3⎯-353-6555    P.08

Yahoo! Driving Directions - Centreville, AL to Tuscaloosa, AL    Page 1 of 2



# Yahoo! Driving Directions

From brent
to Tuscaloosa, AL,

Maps | **Driving Directions**  [MY YAHOO!]

**Starting from:** Brent, Centreville, AL Save Address

**Arriving at:** 630 15th St, Tuscaloosa, AL 35401-4737 Save Address

**Distance:** 31.9 miles    **Approximate Travel Time:** 56 mins

Get Reverse Directions

New | Send to Phone | Text Only | Printable Version | Email Directions



**Your Full Route**
Zoom In -
1st.3city567state910
Zoom
Out

**Your Destination**
View Larger Map

© 2005 Yahoo! Inc ©2005 NAVTEQ

**Traffic**
Traffic info is not yet
available for this area.

Find traffic for another area.
SmartView ™
See locations on this map

• Restaurants
• Hotels
• ATMs
• Gas Stations
• More

What's this?

○ Zoom in & Re-Center    ○ Re-Center only

| Directions | | Show Turn by Turn Maps |
|---|---|---|
| 1. | Start at **BRENT BYP[AL-5]**, **CENTREVILLE** – go 0.6 mi | |
| 2. | Take ramp onto **NEW HWY 82[US-82]** – go 1.3 mi | |

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures

0029

http://maps.yahoo.com/dd_result?newaddr=brent&taddr=630+15th+st.&csz=centreville%...    8/14/2005

| 2. | Turn L on NORTH BLVD - go 4.2 mi |
| 3. | Take ramp onto I-65 NORTH toward BIRMINGHAM - go 77.0 mi |
| 4. | Take exit #250 onto I-459 SOUTH toward TUSCALOOSA - go 15.5 mi |
| 5. | Take the I-59 SOUTH L exit toward TUSCALOOSA - go 33.2 mi |
| 6. | Take exit #73/US-82 onto MCFARLAND BLVD E[US-82] - go 2.0 mi |
| 7. | Turn L on 15TH ST - go 1.1 mi |
| 8. | Arrive at 630 15TH ST, TUSCALOOSA, on the R |

## Yahoo! Travel Deals

**Car Rentals** - Search for a car rental in Tuscaloosa
**Hotels** - Search for hotels in Tuscaloosa

**Disclaimer**
*Some taxes and fees additional. Learn more.
Sign Up For Best Fare Alerts

When using any driving directions or map, it's a good idea to do a reality check and make sure the road still exists, watch out for construction, and follow all traffic safety precautions. This is only to be used as an aid in planning.

## Get New Driving Directions

**A** Enter starting address
or select from My Locations

**B** Enter destination address
or select from My Locations

My Locations Edit
-- My Locations -- ▼

My Locations Edit
-- My Locations -- ▼

Address
1409 Coliseum Blvd

Address
630 15th St

City, State or Zip
Montgomery, AL 36110-206

City, State or Zip
Tuscaloosa, AL 35401-4737

Country
United States ▼

Country
United States ▼

Get Directions

Learn about Mobile Phone Directions

Maps | Driving Directions | Local | Yellow Pages | Real Estate

Copyright © 2005 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy - Yahoo! Maps Terms of Use - Help - Ad Feedback

Leroy Williams v.
ALDOT - Plaintiff's 0028
Initial Disclosures

Dec-07-05 02:30P AG5B-AG5B Fdwy Design 3-333-6555 P.06

Yahoo! Driving Directions - Montgomery, AL to Tuscaloosa, AL   Page 1 of 2

Case 2:06-cv-00658-TFM   Document 15-33   Filed 03/26/2007   Page 11 of 13

Yahoo! My Yahoo! Mail

**YAHOO! LOCAL** Maps

Welcome, lsmith732
[Sign Out, My Account]

Search
the Web

lingo
The talk of broadband

Click here for unlimited local
long distance, U.S. Canada and
Western Europe for only $19.95 a mo

# Yahoo! Driving Directions

Maps | **Driving Directions**  MY YAHOO!

**Starting from:** 1409 Coliseum Blvd, Montgomery, AL 36110-2060 Save Address

**Arriving at:** 630 15th St, Tuscaloosa, AL 35401-4737 Save Address

**Distance:** 133.8 miles   **Approximate Travel Time:** 2 hours 24 mins

Get Reverse Directions

ⓘ We assumed that you meant 1409 **Coliseum** Blvd, instead of 1409 cloiseum blvd..

News Send to Phone Text Only | Printable Version | Email Directions



**Your Full Route**
Zoom In -
1st.3city567state910
Zoom
Out

**Your Destination**
View Larger Map

© 2005 Yahoo Inc © 2005 NAVTEQ

**Traffic**
Traffic info is not yet
available for this area.

**Find traffic for another area.**
**SmartView** ™
See locations on this map

- Restaurants
- Hotels
- ATMs
- Gas Stations
- More

What's this?

Zoom in & Re-Center   Re-Center only

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures
0027

ⓘ We assumed that you meant 1409 **Coliseum** Blvd, instead of 1409 cloiseum blvd..

**Directions**

Show Turn by Turn Maps

| 1. | Start at 1409 **COLISEUM BLVD, MONTGOMERY** - go 0.8 mi |
|----|---------------------------------------------------------|

Has a way of making every situation wether it is good or bad a scenario.
Mr. Lewis does this on a regular basis regardless to whomever is
around in the office or in the field. He has made comments in such that
I'm to take myself out of a crew member and make the difference as a
supervisor , in which I find this hard to do when he continues to
chastise me in the presence of co-workers. Mr. Lewis has also made
comments about me getting a promotion with a raise , where he
received only a promotion, why should that matter to him ,if I get a
Raise or not, that is why I find this to be unethical for him to question
My finances. I am very cooperative person in all situations but when
I'm being backed in a corner I will speak up for myself.

8. I am submitting at least eight witnesses: +

| | |
|---|---|
| William Dodd Austin | Brandon Ward |
| Rodney Sanders | Lawerence Brown |
| Chan Grantham | Willie Garette |
| Robbie Jones | Willie Primus |
| Michael Crowe | Stacy Nichols |
| Gary Beasley | Scott Blake |
| Robert Byrd | |
| Steve Hagler | |

Ph. #
242-6798
To ALL

9. Resolution: I'm just simply asking for a fair chance to prove my
Capabilities and knowledge with a basis personnel who will be fair. I
have yet to get my six month evaluation, but I have received a two
month evaluation and a reprimand with the threat of another . These
Types of matters should prompt an immediate investigation. I propose
that I be regarded correctly, receive my forthcoming promotions  and
To receive training that has been denied to me as a field supervisor. I
Come to work to support my family and to perform my duties to the
Best of my ability, not for friendship nor to be shown favoritism . I only
asked to be given the same opportunities as everyone else.

Please See Attachments...

Sincerely,

Leroy Williams

Leroy Williams v.
ALDOT - Plaintiff's
Initial Disclosures

0026

● Page 2                                                    December 7, 2005

Section A paragraph H:

Tommy said he had to show me how to add and subtract angles.  If I asked for a revision to
be sure of my work, being new in that position, was I wrong for asking for help?

Paragraph G

As far as my questions, I never had terra model training class and if some things in the menu had
changed since my return to location.  So I basically needed a briefing to refresh what I have learned
and what has been added since my return.

Monday, June 20th

One of my write ups were related to being tardy. I called Tommy and told him I was not feeling well and
would be out that day.  He told me I should come in since I was the supervisor.  I told him I would come
on anyway.  He then wrote me up and said I was tardy, and that is unfair.  Are all employees treated in
this manner?  Have they received a write up for calling in?

On August 10, I was instructed to take Mr. Tommy Lewis's vehicle for service, by the Talladega District
Office.  Swapping material from vehicle to vehicle took more time out from our work day.  All this was
done around 8:30am, then we proceeded to the field about thirty minute drive along the way, we
stopped to get a drink and biscuit at the Quick Mart Store. We arrived to the field at about 9 a.m.  We
unloaded the material needed and preceded to the job site which was about a 15 minutes walk into our
site and began to work.  I reviewed what was needed got, which was the distances for at least 3 set
ups. We accomplished as much as possible before it started to rain at about 11a.m.  In case of rain we
stop until the rain stops, it rained the remainder of the day and we spent the rest of the day training on
computer skills in the office, which I explained to Tommy Lewis.  In return I got a reprimand for
insubordination. He began raising his voice, and stood up over me yelling.  After seeing there was
nothing I could say I walked away.  I called the next superior in line to tell them about the situation,
which I received a negative response.

Instead of helping, they responded by saying, "What the hell you call me for?"  So what was I to do
when I feel threaten by my superior.  I was not there to fight a battle, nor win a war.  I was there to learn
my job, and perform my task to the best of my ability.  I was never given a fair chance, not even given a
fair amount of time to improve or learn the job.  Being harassed daily is pressure when someone of
good performance, no one should have to work under those conditions.   I was told by several other
employees that this was prearranged for me to fail, and I was in a no win situation, which those people
asked to remain anonymous and I will respect their wishes.  My desire is to allow the truth to be
established that I am a good employee.  Realizing that this may have happened previously, and the
conscience thought that it may happen again is unfair to any aspiring employee.


Sincerely,

*Leroy Williams*

Leroy Williams
Engineering Assistant II/III

Leroy Williams v.
ALDOT - Plaintiff's    0037
Initial Disclosures

**State of Alabama**
**Personnel Department**
64 North Union Street
P.O. Box 304100
Montgomery, Alabama 36130-4100
(334) 242-3389
www.personnel.state.al.us

Announcement Date: May 28, 2003
Revised Date: February 28, 2007

**Announcement of Continuous Merit System Examination**

# Transportation Technologist - 20481

### ANALYSIS AND PLANNING - 439
### Annual Rate: $30,888.00 - $52,915.20

**Department:** Transportation
**Location:** Statewide

### TYPE OF EXAMINATION

An open-competitive register will be established. All applicants who apply for the Transportation Technologist - Analysis and Planning Option job will be required to assemble for an examination. The total exam time is approximately 7 ½ hours, however, candidates will be at the exam site for a longer period of time. The Transportation Technologist - Analysis and Planning Option examination consists of four different components: 1) Plan Reading Exercise, 2) Technical Reading and Writing Exercise, 3) Role-Play Exercise, and 4) Scheduling Exercise. The Plan Reading Exercise requires the candidate to review a set of instructions and roadway plan sheets and then respond to questions about the plan. The Technical Reading and Writing Exercise requires the candidate to review instructions, a technical manual, and data related to the manual in order to prepare a written response to an inquiry. The Role-Play Exercise requires the candidate to meet with an individual during a video-taped session in order to discuss a problem situation. The Scheduling Exercise requires the candidate to serve in the role of a Transportation Technologist in the Analysis & Planning option and complete a work schedule, assigning employees to specific projects and tasks.

All applicants will receive a How-To-Prepare Booklet approximately three weeks prior to the examination. Scores from the assembled examination (plus Veterans Preference Points) will count as 100% of an applicant's final score.

### QUALIFICATIONS NEEDED TO APPLY

High School Diploma/GED and 5 years of civil engineering experience in the Analysis and Planning area performing one or more of the following duties: reading/interpreting plans or maps; checking/editing plans or maps; computing raw field data; analyzing safety, accident, or traffic data or reports; researching historical data, trends, or deeds; inspecting bridges, roadways, or right-of-way for maintenance or repairs; project inspection; or related duties.
OR
High School Diploma/GED and 6 years of civil engineering experience, 3 years of which must be in the Analysis and Planning area performing one or more of the following duties: reading/interpreting plans or maps; checking/editing plans or maps; computing raw field data; analyzing safety, accident, or traffic data or reports; researching historical data, trends, or deeds; inspecting bridges, roadways, or right-of-way for maintenance or repairs; project inspection; or related duties.
OR
High School Diploma/GED and 6 years of experience as an Engineering Assistant at ALDOT in any work area.
OR
Bachelor's degree* in Civil Engineering, Civil Engineering Technology, or Geomatics.

### KIND OF WORK

Employees in the Analysis and Planning Option of this classification begin performing paraprofessional technical work in the various areas of civil engineering such as traffic, multimodal, bridge inspection, or surveying. Job duties might include supervising an assigned phase of Transportation Planning activities, serving as Assistant to the Chief Bridge Inspector in a division, serving as a statewide Field Supervisor or Division Survey Party Chief, serving as a District Permit Engineer, or conducting various other analyses or planning activities. Employees might supervise lower level assistants in the completion of duties. A superior reviews work while in progress and at its conclusion.

### HOW TO APPLY

Use an Application for Examination form. You can get the form at this office or at an Alabama Employment Service office. It can also be downloaded from our web site. You must send your application to the State Personnel Department. This announcement will remain open until further notice. The State Personnel Department is not responsible for late receipt of applications due to the mail service or fax malfunctions. Photocopied applications are accepted. Facsimile applications are also accepted. Our fax number is 334-242-1110. The register will be updated as new administrations of the examination are completed.

**Individuals currently on the register <u>DO NOT</u> need to reapply to remain eligible for employmen**


DEFENDANT'S
EXHIBIT
AA

**THE STATE OF ALABAMA IS AN EQUAL OPPORTUNITY EMPLOYER**

**\*Please refer to the State Personnel Department web site for complete information on our policy on accepting
post-secondary and advanced degrees.**

Except for pretest information provided by State Personnel to all applicants, you should not directly or indirectly obtain information about examinations. If you do, the State Personnel Director may do several things. One, you may not be given an examination. Two, you may be disqualified after an examination. Three, your name may be removed from a register. Or four, your name may not be certified from the register. (Rules of the State Personnel Board, Chapter 670-x-9). According to the Code of Alabama, 36-26-47, a willful violation of exam security is a misdemeanor. Any person who is convicted of this type of misdemeanor will not get a state job. If they are officers or employees of the state, they will be required to forfeit their office or position for five years.

If you know of anyone who has violated this policy, you should contact the Examination Manager at the State Personnel Department.

Report ID: HDTRN020

**Alabama Department of Transportation**
**Employee Training History**

Emplid:   000073    Name: Austin,William D
Race:        Sex: Male
Job Code: 20482    Job Description: Transportation Technlgst,Sr

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|-------------|----------------|-------|-----|------------|-----------|----------|
| 000104 | Algebra | 1 | 01/11/1990 | 05/09/1990 | Completed | | 52.0 |
| 90208 | Radiological Safety Course | 1 | 05/22/1990 | 05/23/1990 | Completed | | 14.0 |
| 91128 | Construction Inspectors Trng Course Series | 1 | 01/01/1991 | 01/31/1991 | Completed | | 6.0 |
| 000104 | Algebra | 1 | 01/07/1991 | 04/05/1991 | Completed | | 48.0 |
| 91121 | Bitum Concrete Paving/surface Treatment/seal Coats | 1 | 01/25/1991 | 01/25/1991 | Completed | | 5.0 |
| 91165 | Employee Trng/preventing Sexual Harassment | 1 | 03/01/1991 | 04/30/1991 | Completed | | 3.0 |
| 93357 | Employee Trng/preventing Sexual Harassment | 1 | 07/01/1993 | 07/29/1993 | Completed | | 2.0 |
| 95309 | Prevention Of Racial Slurs And Harassment | 3 | 07/01/1995 | 07/31/1995 | Completed | | 2.0 |
| 000100 | Aldot Classification Structure Review | 1 | 05/06/1996 | 05/10/1996 | Completed | | 1.0 |
| 98053 | Windows Nt Workstation 4.0 Orientation | 2 | 02/02/1998 | 02/23/1998 | Completed | | 7.0 |
| 98068 | Microsoft Word  7.0 (introduction) | 2 | 02/09/1998 | 02/10/1998 | Completed | | 14.0 |
| 000357 | Celebrating Diversity In The Workplace | 8 | 05/05/1998 | 05/28/1998 | Completed | | 6.0 |
| 98053 | Windows NT Workstation 4.0 Management Overview for | 03 | 05/26/1998 | 05/26/1998 | Completed | | 6.0 |
| 98285 | 1997 Performance Appraisal System Video | 1 | 06/17/1998 | 06/30/1998 | Completed | | 2.0 |
| 000505 | Geometry | 1 | 10/01/1998 | 12/19/1998 | Completed | Pass | 45.0 |
| 00065 | Prevention Of Sexual Harassment | 3 | 12/02/1999 | 12/16/1999 | Completed | | 6.0 |
| 990307 | Prev. of Violence In Workplace | 0002 | 01/04/2002 | 01/04/2002 | No Show | | 7.0 |
| 990307 | Prev. of Violence In Workplace | 0006 | 02/04/2002 | 02/04/2002 | Completed | | 6.0 |
| 990375 | Career Path Training | 0048 | 04/15/2002 | 04/15/2002 | Declined Offer | | 3.5 |
| 990375 | Career Path Training | 0094 | 08/28/2003 | 08/28/2003 | Declined Offer | | 4.0 |
| 990699 | NGS Trng-FBN/CBN & CORPS/OPUS | 0004 | 06/17/2004 | 06/17/2004 | Completed | | 4.0 |
| 990778 | GPS Derived Heights | 0002 | 09/22/2004 | 09/22/2004 | Completed | | 8.0 |
| 990307 | Prev. of Violence In Workplace | 0069 | 10/27/2005 | 10/27/2005 | Completed | | 7.0 |
| 990787 | Racial Harassment | 0037 | 12/02/2005 | 12/02/2005 | Cancelled Excused | | 6.0 |
| 990237 | First Aid & CPR Training | 0094 | 04/10/2006 | 04/10/2006 | Completed | | 6.0 |
| 990786 | Racial Harss Prevention Supv | 0029 | 10/26/2006 | 10/26/2006 | Cancelled Excused | | 6.0 |
| 990698 | Essential MicroStation (CADD) | 0031 | 02/12/2007 | 02/16/2007 | Cancelled Excused | | 32.0 |


DEFENDANT'S EXHIBIT
BB

Report ID: HDTRN020

**Alabama Department of Transportation**
**Employee Training History**

Page No. 1
Run Date 03/06/2007
Run Time 11:03:16

Emplid:    048418    Name: Nichols,Stacey C
Race:         Sex: Male
Job Code: 20481       Job Description: Transportation Technologist

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|--------------|----------------|-------|-----|------------|-----------|----------|
| 92225 | Contract Plan Reading | 1 | 02/14/1992 | 07/08/1992 | Completed | | 48.0 |
| 93357 | Employee Trng/preventing Sexual Harassment | 1 | 07/13/1993 | 07/29/1993 | Completed | | 2.0 |
| 95309 | Prevention Of Racial Slurs And Harassment | 4 | 08/01/1995 | 08/31/1995 | Completed | | 2.0 |
| 000100 | Aldot Classification Structure Review | 1 | 05/06/1996 | 05/10/1996 | Completed | | 1.0 |
| 98053 | Windows Nt Workstation 4.0 Orientation | 2 | 02/02/1998 | 02/23/1998 | Completed | | 7.0 |
| 98068 | Microsoft Word  7.0 (introduction) | 2 | 02/09/1998 | 02/10/1998 | Completed | | 14.0 |
| 000357 | Celebrating Diversity In The Workplace | 8 | 05/05/1998 | 05/28/1998 | Completed | | 6.0 |
| 98053 | Windows NT Workstation 4.0 Management Overview for | 03 | 05/26/1998 | 05/26/1998 | Completed | | 6.0 |
| 98285 | 1997 Performance Appraisal System Video | 1 | 06/17/1998 | 06/30/1998 | Completed | | 2.0 |
| 00065 | Prevention Of Sexual Harassment | 3 | 12/02/1999 | 12/16/1999 | Completed | | 6.0 |
| 00322 | Career Path And Sup. Mgmt. Orient./update Program | 1 | 06/28/2000 | 06/28/2000 | Completed | | 3.0 |
| 990307 | Prev. of Violence In Workplace | 0006 | 02/04/2002 | 02/04/2002 | Completed | | 7.0 |
| 990375 | Career Path Training | 0047 | 04/09/2002 | 04/09/2002 | Declined Offer | | 3.5 |
| 000649 | Interpersonal Communication Sk | 0001 | 08/13/2002 | 08/13/2002 | Completed | | 6.0 |
| 000357 | Diversity In The Workplace | 0001 | 08/27/2002 | 08/27/2002 | Completed | | 6.0 |
| 000538 | Grammar & Word Usage For Busin | 0002 | 09/05/2002 | 09/05/2002 | Completed | | 6.0 |
| 990375 | Career Path Training | 0094 | 08/28/2003 | 08/28/2003 | Declined Offer | | 4.0 |
| 000382 | Effective Supervision | 0005 | 10/16/2003 | 10/16/2003 | Completed | | 6.0 |
| 990713 | NGS Trng-FBN/CBN & CORPS/OPUS | | 06/14/2004 | 06/14/2004 | Completed | | 4.0 |
| 990375 | Career Path Training | 0157 | 09/15/2004 | 09/15/2004 | Declined Offer | | 3.5 |
| 001210 | Supervisory Skills: The Ultima | 0008 | 07/26/2005 | 07/26/2005 | Cancelled Excused | | 6.0 |
| 000049 | Advanced Surveying | 0006 | 08/08/2005 | 08/12/2005 | Cancelled Excused | | 40.0 |
| 001224 | Technical Report Writing | 0010 | 08/25/2005 | 08/25/2005 | Cancelled Excused | | 6.0 |
| 990564 | SOI/ Interview and Selection | 0037 | 09/13/2005 | 09/13/2005 | Cancelled Excused | | 7.0 |
| 001004 | Performance Appr for Supv | 0016 | 09/14/2005 | 09/15/2005 | Cancelled Excused | | 12.0 |
| 001024 | Positive Discipline-Supervisor | 0009 | 09/16/2005 | 09/16/2005 | Cancelled Excused | | 6.0 |
| 000589 | How To Handle Difficult People | 0023 | 09/21/2005 | 09/21/2005 | Cancelled Excused | | 4.0 |
| 001151 | Situational Leadership | 0021 | 09/22/2005 | 09/22/2005 | Cancelled Excused | | 4.0 |
| 990787 | Racial Harassment | | | | Course Waitlist | | 8.0 |

Report ID: HDTRN020

**Alabama Department of Transportation**
**Employee Training History**

Emplid:    036470    Name: Kirkland,William K
Race:        Sex: Male
Job Code: 20482    Job Description: Transportation Technlgst,Sr

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|-------------|----------------|-------|-----|------------|-----------|----------|
| 990452 | InRoads Reporting w/XML | 0002 | 05/23/2005 | 05/27/2005 | Completed | | 24.0 |
| 990787 | Racial Harassment | 0017 | 06/22/2005 | 06/22/2005 | Completed | | 6.0 |
| 990929 | Micro. V8 Update & InRoads Bas | 0001 | 07/11/2005 | 07/15/2005 | Completed | | 32.0 |
| 991138 | Using Bentley ProjectWise | 0002 | 09/26/2006 | 09/27/2006 | Completed | | 8.0 |

Report ID:  HDTRN020

Alabama Department of Transportation
Employee Training History

Emplid:  036470    Name: Kirkland,William K
Race:      Sex: Male
Job Code: 20482    Job Description: Transportation Technlgst,Sr

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|--------------|----------------|-------|-----|------------|-----------|----------|
| 001284 | Trigonometry | 1 | 01/05/1987 | 04/30/1987 | Completed | | 52.0 |
| 91165 | Employee Trng/preventing Sexual Harassment | 1 | 03/01/1991 | 04/30/1991 | Completed | | 3.0 |
| 92080 | 25th Annual Surveying And Mapping Conference | 1 | 11/06/1991 | 11/08/1991 | Completed | | 9.0 |
| 93075 | 26th Annual Surveying And Mapping Conf/opt Wksp | 1 | 10/28/1992 | 10/30/1992 | Completed | | 9.0 |
| 990380 | Advanced Terramodel Training | 1 | 04/19/1993 | 04/21/1993 | Completed | | 20.0 |
| 93334 | Supervisory Survival Skills I | 2 | 06/30/1993 | 06/30/1993 | Completed | | 7.0 |
| 93116 | Performance Appraisal I:  Orientation | 4 | 08/24/1993 | 08/24/1993 | Completed | | 8.0 |
| 94093 | 27th Annual Surveying & Mapping Conference | 1 | 11/03/1993 | 11/05/1993 | Completed | | 19.0 |
| 94074 | Performance Appraisal I:  Orientation | 1 | 12/01/1993 | 12/01/1993 | Completed | | 7.0 |
| 94167 | Managing The Marginal/problem Employee | 1 | 02/11/1994 | 02/11/1994 | Completed | | 7.0 |
| 94376 | Terramodel Advanced Training | 1 | 09/20/1994 | 09/29/1994 | Completed | | 24.0 |
| 95074 | 28th Annual Surveying & Mapping Conf. | 1 | 10/26/1994 | 10/28/1994 | Completed | | 18.0 |
| 95139 | Grammar & Writing For Government Supervisors | 1 | 12/14/1994 | 12/14/1994 | Completed | | 7.0 |
| 95114 | Windows 3.1 | 3 | 01/12/1995 | 01/13/1995 | Completed | | 14.0 |
| 95252 | Defensive Driving/driver Improvement/safety Course | 2 | 05/01/1995 | 05/31/1995 | Completed | | 3.0 |
| 95309 | Prevention Of Racial Slurs And Harassment | 4 | 08/01/1995 | 08/31/1995 | Completed | | 2.0 |
| 990264 | Annual Surveying And Mapping Conference | 1 | 10/25/1995 | 10/27/1995 | Completed | | 18.0 |
| 96071 | Hp-48 Gx  "basics" | 1 | 11/07/1995 | 11/13/1995 | Completed | | 6.0 |
| 96067 | First Aid And Cpr Training | 6 | 04/01/1996 | 04/30/1996 | Completed | | 8.0 |
| 000100 | Aldot Classification Structure Review | 1 | 05/06/1996 | 05/10/1996 | Completed | | 1.0 |
| 990264 | Annual Surveying And Mapping Conference | 1 | 10/23/1996 | 10/25/1996 | Completed | | 20.0 |
| 97174 | Class Ii Basic Gov't & Aldot | 1 | 02/06/1997 | 02/26/1997 | Completed | | 6.0 |
| 97072 | Employment Law For State Supervisors | 2 | 02/25/1997 | 02/26/1997 | Completed | | 6.0 |
| 97204 | Class V Decision Making/problem Solving | 1 | 03/01/1997 | 03/31/1997 | Completed | | 7.0 |
| 97175 | Class Iii Communications/writing & Grammar Skills | 2 | 03/01/1997 | 03/31/1997 | Completed | | 4.0 |
| 97245 | Class Iv Leadership/conflict | 1 | 05/01/1997 | 05/31/1997 | Completed | | 6.0 |
| 97246 | Class Vi - Planning Vs Organizing | 2 | 06/01/1997 | 06/30/1997 | Completed | | 6.0 |
| 98046 | Surveying & Mapping Conference (31st Annual) | 1 | 10/29/1997 | 10/31/1997 | Completed | | 15.0 |
| 98035 | New Performance Appraisal Training | 3 | 12/02/1997 | 12/03/1997 | Completed | | 6.0 |
| 98285 | 1997 Performance Appraisal System Video | 1 | 06/17/1998 | 06/30/1998 | Completed | | 2.0 |
| 000049 | Advanced Surveying | 2 | 01/11/1999 | 03/29/1999 | Completed | Pass | 51.0 |
| 99311 | Nhi#13065 - Introduction To Highway Hydraulics | 01 | 05/18/1999 | 05/21/1999 | Completed | | 28.0 |
| 99406 | Fundamental Skills Program | 1 | 07/16/1999 | 09/30/1999 | Completed | | 12.0 |
| 00106 | Geodesy For Engineers And Surveyors | 1 | 11/17/1999 | 11/18/1999 | Completed | | 6.0 |
| 00065 | Prevention Of Sexual Harassment | 3 | 12/02/1999 | 12/16/1999 | Completed | | 8.0 |
| 00322 | Career Path And Sup. Mgmt. Orient./update Program | 1 | 06/28/2000 | 06/28/2000 | Completed | | 3.0 |
| 01112 | Surveying & Mapping Conference | 1 | 10/18/2000 | 10/20/2000 | Completed | | 24.0 |
| 990158 | Ethics Training | 0011 | 06/28/2001 | 06/28/2001 | Completed | | 1.5 |
| 990283 | Hydrologic Course 101 | 0001 | 10/01/2001 | 10/02/2001 | Completed | | 15.0 |
| 990307 | Prev. of Violence In Workplace | 0006 | 02/04/2002 | 02/04/2002 | Completed | | 7.0 |
| 990375 | Career Path Training | 0003 | 04/05/2002 | 04/05/2002 | Declined Offer | | 3.5 |
| 990375 | Career Path Training | 0094 | 08/28/2003 | 08/28/2003 | Declined Offer | | 4.0 |
| 990699 | NGS Trng-FBN/CBN & CORPS/OPUS | 0002 | 06/15/2004 | 06/15/2004 | Completed | | 4.0 |
| 990375 | Career Path Training | 0157 | 09/15/2004 | 09/15/2004 | Declined Offer | | 3.5 |
| 990778 | GPS Derived Heights | 0001 | 09/20/2004 | 09/20/2004 | Completed | | 8.0 |
| 990698 | MicroStation V8 Essentials | 0006 | 02/07/2005 | 02/11/2005 | Completed | | 40.0 |
| 000504 | Geometric/Roadway Design | 0006 | 02/27/2005 | 03/03/2006 | Completed | | 0.0 |
| 990823 | ArcGis Intro & ArcView & ArcIn | 0002 | 04/11/2005 | 04/12/2005 | Completed | | 8.0 |
| 990911 | InRoads Advanced Backbone Road | 0001 | 05/16/2005 | 05/18/2005 | Completed | | 24.0 |

Alabama Department of Transportation
Employee Training History

Report ID:  HDTRN020

Emplid:   026887    Name: Harris,Robert A
Race:     Sex: Male
Job Code: 20481    Job Description: Transportation Technologist

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|--------------|----------------|-------|-----|------------|-----------|----------|
| 000505 | Geometry | 1 | 01/10/1990 | 05/07/1990 | Completed | | 60.0 |
| 001284 | Trigonometry | 1 | 01/07/1991 | 04/11/1991 | Completed | | 48.0 |
| 91165 | Employee Trng/preventing Sexual Harassment | 1 | 03/01/1991 | 04/30/1991 | Completed | | 3.0 |
| 92225 | Contract Plan Reading | 1 | 02/14/1992 | 07/08/1992 | Completed | | 34.0 |
| 990380 | Advanced Terramodel Training | 1 | 04/19/1993 | 04/21/1993 | Completed | | 20.0 |
| 94376 | Terramodel Advanced Training | 1 | 09/20/1994 | 09/29/1994 | Completed | | 24.0 |
| 95114 | Windows 3.1 | 3 | 01/12/1995 | 01/13/1995 | Completed | | 14.0 |
| 95309 | Prevention Of Racial Slurs And Harassment | 4 | 08/01/1995 | 08/31/1995 | Completed | | 2.0 |
| 96071 | Hp-48 Gx "basics" | 1 | 11/07/1995 | 11/13/1995 | Completed | | 6.0 |
| 000100 | Aldot Classification Structure Review | 1 | 05/06/1996 | 05/10/1996 | Completed | | 1.0 |
| 98053 | Windows Nt Workstation 4.0 Orientation | 2 | 02/02/1998 | 02/23/1998 | Completed | | 7.0 |
| 98068 | Microsoft Word  7.0 (introduction) | 2 | 02/09/1998 | 02/10/1998 | Completed | | 14.0 |
| 000357 | Celebrating Diversity In The Workplace | 8 | 05/05/1998 | 05/28/1998 | Completed | | 6.0 |
| 98053 | Windows Nt Workstation 4.0 Management Overview for | 03 | 05/26/1998 | 05/26/1998 | Completed | | 6.0 |
| 000049 | Advanced Surveying | 2 | 01/11/1999 | 03/29/1999 | Completed | Pass | 60.0 |
| 00065 | Prevention Of Sexual Harassment | 3 | 12/02/1999 | 12/16/1999 | Completed | | 8.0 |
| 00322 | Career Path And Sup. Mgmt. Orient./update Program | 1 | 06/28/2000 | 06/28/2000 | Completed | | 3.0 |
| 990307 | Prev. of Violence In Workplace | 0006 | 02/04/2002 | 02/04/2002 | Completed | | 7.0 |
| 990375 | Career Path Training | 0005 | 04/08/2002 | 04/08/2002 | Declined Offer | | 3.5 |
| 000649 | Interpersonal Communication Sk | 0001 | 08/13/2002 | 08/13/2002 | Completed | | 6.0 |
| 000357 | Diversity In The Workplace | 0001 | 08/27/2002 | 08/27/2002 | Completed | | 6.0 |
| 000538 | Grammar & Word Usage For Busin | 0002 | 09/05/2002 | 09/05/2002 | Completed | | 6.0 |
| 000707 | Orientation -Maint/Inspect | | 05/19/2003 | 05/19/2003 | Completed | | 1.0 |
| 990352 | Critic Insp Tech Steel Bridges | 0003 | 06/10/2003 | 06/13/2003 | Completed | | 28.0 |
| 001109 | Routine Safety Meeting | | 09/09/2003 | 09/09/2003 | Completed | | 1.0 |
| 000003 | CPR Compliance Trn for Drivers | 0008 | 09/11/2003 | 09/11/2003 | Completed | | 2.0 |
| 000201 | Bridge Insp Refresher Training | 0012 | 10/21/2003 | 10/22/2003 | Completed | | 12.0 |
| 990237 | First Aid & CPR Training | 0083 | 01/14/2004 | 01/14/2004 | Completed | | 7.0 |
| 990248 | Stream Stability & Scour @ Hwy | 0002 | 03/30/2004 | 03/30/2004 | Completed | | 8.0 |
| 990300 | Bridge Refresher Training | 0008 | 11/03/2004 | 11/04/2004 | Completed | | 16.0 |
| 990817 | ABIMS Scanned Image Training | 0002 | 11/30/2004 | 11/30/2004 | Completed | | 8.0 |
| 990375 | Career Path Training | 0181 | 12/10/2004 | 12/10/2004 | No Show | | 3.5 |
| 990698 | MicroStation Essentials (CADD) | 0023 | 06/13/2005 | 06/17/2005 | Completed | | 32.0 |
| 990787 | Racial Harassment | 0017 | 06/22/2005 | 06/22/2005 | Completed | | 6.0 |
| 991044 | GPS Sub Process for Height Mod | 0001 | 02/27/2006 | 03/01/2006 | Completed | | 24.0 |
| 991182 | Ala Height Modernization Forum | 0001 | 03/06/2007 | 03/06/2007 | Enrolled | | 8.0 |
| 000382 | Effective Supervision | | | | Course Waitlist | | 0.0 |
| 000201 | Bridge Insp Refresher Training | | | | Course Waitlist | | 0.0 |

Report ID: HDTRN020

Alabama Department of Transportation
Employee Training History

Page No. 1
Run Date 03/06/2007
Run Time 11:13:04

Emplid:   075279    Name: Grantham,Channin K
Race:        Sex: Male
Job Code: 20481    Job Description: Transportation Technologist

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|--------------|----------------|-------|-----|------------|-----------|----------|
| 000152 | Automated Drafting w Microst J | 0011 | 05/03/2004 | 05/07/2004 | Completed | | 32.0 |
| 990682 | MicroStation V8 Updated | 0002 | 06/28/2004 | 06/29/2004 | Cancelled Excused | | 7.0 |
| 990686 | InRoads Upgrade 8.2 to 8.5 | 0002 | 06/29/2004 | 07/02/2004 | Cancelled Excused | | 21.0 |
| 990682 | MicroStation V8 Updated | 0003 | 07/12/2004 | 07/13/2004 | Completed | | 7.0 |
| 990686 | InRoads Upgrade 8.2 to 8.5 | 0003 | 07/13/2004 | 07/16/2004 | Completed | | 21.0 |
| 990201 | PC Literacy | 0041 | 04/14/2006 | 04/14/2006 | Cancelled Excused | | 6.0 |
| 990787 | Racial Harassment | | | | Course Waitlist | | 8.0 |
| 000102 | Aldot Manual Course | | | | Course Waitlist | | 0.0 |
| 990460 | Basic Contract Plan Reading | | | | Course Waitlist | | 0.0 |
| 000168 | Basic Mathematics | | | | Course Waitlist | | 0.0 |

**Alabama Department of Transportation**
**Employee Training History**

Report ID:  HDTRN020

Emplid:    002805     Name: Blake,Scott J
Race:        Sex: Male
Job Code: 20481      Job Description: Transportation Technologist

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|-------------|----------------|-------|-----|------------|-----------|----------|
| 000505 | Geometry | 2 | 01/12/1999 | 03/16/1999 | Completed | Pass | 49.0 |
| 001284 | Trigonometry | 1 | 10/01/1999 | 12/20/1999 | Completed | | 10.0 |
| 00065 | Prevention Of Sexual Harassment | 3 | 12/02/1999 | 12/16/1999 | Completed | | 6.0 |
| 990307 | Prev. of Violence In Workplace | 0006 | 02/04/2002 | 02/04/2002 | Completed | | 7.0 |
| 990375 | Career Path Training | 0048 | 04/15/2002 | 04/15/2002 | Completed | | 3.5 |
| 000294 | Contract Plan Reading | 0003 | 10/05/2004 | 11/16/2004 | Completed | | 48.0 |
| 990815 | Applied Aerial Mapping & Remot | 0001 | 12/09/2004 | 12/09/2004 | Completed | | 8.0 |
| 990307 | Prev. of Violence In Workplace | 0069 | 10/27/2005 | 10/27/2005 | Completed | | 7.0 |
| 000706 | New Employee Orientation | | 08/30/2006 | 08/30/2006 | Completed | | 3.0 |
| 000171 | Basic Surveying | 0023 | 12/11/2006 | 12/15/2006 | Cancelled | Excused | 30.0 |
| 000650 | Interview & Selection | 0028 | 01/05/2007 | 01/05/2007 | Completed | | 7.5 |
| 000171 | Basic Surveying | 0024 | 02/12/2007 | 02/16/2007 | Completed | Pass | 30.0 |
| 991180 | Temporary Traffic Control | 0004 | 03/06/2007 | 03/06/2007 | Completed | | 7.0 |
| 000049 | Advanced Surveying | 0010 | 04/24/2007 | 04/27/2007 | Enrolled | | 32.0 |

Report ID: HDTRN020

**Alabama Department of Transportation**
**Employee Training History**

Page No. 1
Run Date 03/06/2007
Run Time 11:14:09

Emplid:    041941      Name: McKinnon Jr,William
Race:        Sex: Male
Job Code: 20481      Job Description: Transportation Technologist

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|-------------|----------------|-------|-----|------------|-----------|----------|
| 00065 | Prevention Of Sexual Harassment | 3 | 12/02/1999 | 12/16/1999 | Completed | | 6.0 |
| 000168 | Basic Math | 3 | 03/20/2000 | 03/29/2000 | Completed | Pass | 50.0 |
| 00922 | Algebra Phase II | 0001 | 09/11/2000 | 09/15/2000 | Completed | Pass | 25.0 |
| 990307 | Prev. of Violence In Workplace | 0006 | 02/04/2002 | 02/04/2002 | Completed | | 7.0 |
| 990375 | Career Path Training | 0048 | 04/15/2002 | 04/15/2002 | Completed | | 3.5 |
| 990375 | Career Path Training | 0094 | 08/28/2003 | 08/28/2003 | Declined Offer | | 4.0 |
| 990699 | NGS Trng-FBN/CBN & CORPS/OPUS | 0002 | 06/15/2004 | 06/15/2004 | Completed | | 4.0 |
| 990237 | First Aid & CPR Training | 0094 | 04/10/2006 | 04/10/2006 | Completed | | 6.0 |
| 990786 | Racial Harss Prevention Supv | 0029 | 10/26/2006 | 10/26/2006 | Completed | | 6.0 |
| 990787 | Racial Harassment | | | | Course Waitlist | | 8.0 |

Report ID:  HDTRN020

<div align="center">Alabama Department of Transportation
Employee Training History</div>

Emplid:    048405     Name: Nichols,Troy L
Race:      Sex: Male
Job Code: 20482     Job Description: Transportation Technlgst,Sr

| Course | Course Title | Session Number | Begin | End | Attendance | Pass/Fail | Duration |
|--------|--------------|----------------|-------|-----|------------|-----------|----------|
| 91110 | First Aid/cardiopulmonary Resuscitation (cpr) | 1 | 01/01/1991 | 01/31/1991 | Completed | | 8.0 |
| 93205 | Contract Plan Reading | 1 | 01/12/1993 | 04/19/1993 | Completed | | 42.0 |
| 93357 | Employee Trng/preventing Sexual Harassment | 1 | 07/13/1993 | 07/29/1993 | Completed | | 2.0 |
| 95309 | Prevention Of Racial Slurs And Harassment | 4 | 08/01/1995 | 08/31/1995 | Completed | | 2.0 |
| 000100 | Aldot Classification Structure Review | 1 | 05/06/1996 | 05/10/1996 | Completed | | 1.0 |
| 98053 | Windows Nt Workstation 4.0 Orientation | 2 | 02/02/1998 | 02/23/1998 | Completed | | 7.0 |
| 98068 | Microsoft Word 7.0 (introduction) | 2 | 02/09/1998 | 02/10/1998 | Completed | | 14.0 |
| 000049 | Advanced Surveying | 1 | 03/02/1998 | 06/04/1998 | Completed | Pass | 48.0 |
| 000357 | Celebrating Diversity In The Workplace | 8 | 05/05/1998 | 05/28/1998 | Completed | | 6.0 |
| 98053 | Windows NT Workstation 4.0 Management Overview for | 03 | 05/26/1998 | 05/26/1998 | Completed | | 6.0 |
| 98285 | 1997 Performance Appraisal System Video | 1 | 06/17/1998 | 06/30/1998 | Completed | | 2.0 |
| 00065 | Prevention Of Sexual Harassment | 3 | 12/02/1999 | 12/16/1999 | Completed | | 6.0 |
| 990307 | Prev. of Violence In Workplace | 0006 | 02/04/2002 | 02/04/2002 | Completed | | 7.0 |
| 990375 | Career Path Training | 0050 | 04/15/2002 | 04/15/2002 | Completed | | 3.5 |
| 990375 | Career Path Training | 0094 | 08/28/2003 | 08/28/2003 | Declined Offer | | 4.0 |
| 990237 | First Aid & CPR Training | 0071 | 09/12/2003 | 09/12/2003 | Cancelled Excused | | 7.0 |
| 990699 | NGS Trng-FBN/CBN & CORPS/OPUS | 0004 | 06/17/2004 | 06/17/2004 | Completed | | 4.0 |
| 990375 | Career Path Training | 0157 | 09/15/2004 | 09/15/2004 | Declined Offer | | 3.5 |
| 990778 | GPS Derived Heights | 0003 | 09/23/2004 | 09/23/2004 | Completed | | 8.0 |
| 001004 | Performance Appr for Supv | 0022 | 09/14/2005 | 09/15/2005 | Cancelled Excused | | 12.0 |
| 001024 | Positive Discipline-Supervisor | 0011 | 09/16/2005 | 09/16/2005 | Cancelled Excused | | 6.0 |
| 000589 | How To Handle Difficult People | 0024 | 09/21/2005 | 09/21/2005 | Cancelled Excused | | 4.0 |
| 990237 | First Aid & CPR Training | 0094 | 04/10/2006 | 04/10/2006 | Completed | | 6.0 |
| 990786 | Racial Harss Prevention Supv | 0029 | 10/26/2006 | 10/26/2006 | Completed | | 6.0 |
| 990787 | Racial Harassment | | | | Course Waitlist | | 8.0 |

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LEROY WILLIAMS, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF ALABAMA DEPARTMENT )<br>OF TRANSPORTATION, JOE MCINNES, )<br>*etc.*, )<br>)<br>    Defendants. ) | **CASE NO. 2:06-cv-658-ID** |

**DEFENDANTS' EVIDENTIARY SUBMISSION IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants, the State of Alabama Department of Transportation and Joe

McInnes, by and through their undersigned counsel, and submit the following evidentiary

materials in support of their Motion for Summary Judgment and Memorandum Brief, filed

contemporaneously herewith:

**Excerpts from the Deposition of Leroy Williams**

**Affidavit of Don Arkle**

**Affidavit of William Adams**

**Affidavit of Joe Jones**

**Affidavit of Thomas Lewis**

**Affidavit of Ron Green**

**EXHIBITS**

**A.**    Form 11-Seasonal Laborer dated 10/8/92

B.    Application for Examination-Highway Maintenance Technician I

C.    Certificate of Eligibles

D.    Application for Examination-Highway Maintenance Technician II

E.      Form 4-Provisional Appointment-Engineering Assistant I

F.      Employee Performance Appraisal dated 2/14/97

G.      Employee Performance Appraisal dated 2/13/98

H.      Position Classification Questionnaire dated 11/26/01

I.      Complaint Form dated April 1997

J.      Employee Performance Appraisal dated 2/19/02

K.      Complaint From dated 10/5/00

L.      Letter dated 1/23/03 withdrawing Grievance No.736

M.      Attendance/Punctuality Guidelines dated 2/22/05

N.      Letter dated 5/12/05-appointment to Transportation Technologist.

O.      Leroy Williams resume

P.      Position Classification Questionnaire dated 5/25/05

Q.      Reprimand for Repeated Tardiness dated 7/26/05

R.      Counseling Session Memorandum dated 7/28/05

S.      Driving Time confirmation Memorandum dated 8/4/05

T.      Reprimand for Insubordination dated 8/11/05

U.      Recommendation for Discipline dated 8/15/05

V.      Memorandum to Don T. Arkle dated 8/19/05

W.      Memorandum to Ron Green dated 8/22/05

X.      Letter to Williams dated 9/1/50 termination probation

Y.      E.E.O.C. Charge of Discrimination

Z.      Complaint Form

AA.     State Personnel Announcement-Transportation Technologist

BB.     Computer printouts of Training for employees

RESPECTFULLY SUBMITTED
TROY KING
ATTORNEY GENERAL

s/ Andrew W. Redd
Jim R. Ippolito, Jr. (IPP001)
Assistant Attorney General
Chief Counsel

Andrew W. Redd (RED001)
R. Mitchell Alton, III (ALT003)
Assistant Attorneys General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
Telephone:  (334) 242-6350
Facsimile:  (334) 264-4359
redda@dot.state.al.us

3

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **LEROY WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **STATE OF ALABAMA DEPARTMENT** | )    **CASE NO. 2:06-cv-658-ID** |
| **OF TRANSPORTATION, JOE MCINNES,** | ) |
| ***etc.*,** | ) |
| | ) |
| **Defendants.** | ) |

**CERTIFICATE OF SERVICE**

      I hereby certify that, on **March 26, 2007**, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECT system, which will send notification to the following:

Mr. Russell W. Adams, Esq.
Wiggins, Childs, Quinn & Pantazis, L.L.C.
Attorneys at Law
301 19th Street, North
Birmingham, Alabama  35203
ATTORNEY FOR PLAINTIFF

                          s/ Andrew W. Redd
                          Andrew W. Redd (RED001)
                          Assistant Attorney General
                          Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
(334) 242-6350 (office)
(334) 264-4359 (facsimile)
altonm@dot.state.al.us

4