IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEROY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| STATE OF ALABAMA DEPARTMENT | ) | |
| OF TRANSPORTATION, JOE MCINNES, | ) | CASE NO. 2:06-cv-658-ID |
| in his official capacity as Director of the | ) | |
| State of Alabama Department of | ) | |
| Transportation, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, the Alabama Department of Transportation ("ALDOT") and

Joe McInnes, and reply to Plaintiff's Response (Doc. No. 31) to Defendants' Motion for

Summary Judgment (Doc. No. 13) as follows:

I.    STATEMENT OF MATERIAL FACTS

      A.    **Mr. Williams had no disciplinary actions and was
considered an exceeds standards employee prior to his
promotion to Transportation Technologist.**

Doc. No. 31 at 1.

Defendants do not dispute that the Plaintiff received exceeds standards evaluations on

most of his evaluations as an Engineering Assistant, but would point out that, for the March 1,

1996, through March 1, 1997, rating period, Plaintiff received an unsatisfactory rating for

attendance (see Defendants' Evidentiary Materials (Doc. No. 15). Exhibit F); for the March 1,

1997, through March 1, 1998, rating period, Plaintiff again received an unsatisfactory rating for

attendance (Doc. No. 15, Exhibit G); and for the period March 1, 2004, through March 1, 2005,

Plaintiff received an unsatisfactory for his cooperation with coworkers due to a February 4, 2005,

conflict with a coworker (Doc No. 32, Exhibit D at 6).  Although not marked down for

punctuality, the unsatisfactory ratings for attendance demonstrate poor time management on the

part of Plaintiff.

It should also be noted that the promotion to Transportation Technologist marked the first

occasion when Plaintiff was placed in a position of responsibility as a supervisor.  Prior to the

promotion, Plaintiff had worked under the closer supervision of others and was charged with the

performance of his assigned tasks.  As a Transportation Technologist, Plaintiff was responsible

for the overall performance and supervision of a crew of employees and was under less direct

supervision.  Plaintiff's ability to perform well as an Engineering Assistant II/III did not

necessarily indicate his ability to perform at a satisfactory level as a supervisor.

> **B.    Mr. Williams was found qualified for the**
> **Transportation Technologist Classification by the State**
> **Personnel Under State of the Art Selection Procedures.**

Doc. No. 31 at 2.

Plaintiff Williams met the minimum qualifications for the position of Transportation

Technologist and was placed on the register for selection.  Defendants contend that it is

misleading to assert that ALDOT was "forced" to hire Plaintiff; he was the available candidate

for the position and was so selected.  Plaintiff has set forth no evidence of any personal or racial

animus against him on the part of those who make such selections or any attempt to have him

stricken from the list of eligibles.  Tommy Lewis, who Plaintiff asserts to be the primary actor in

the alleged discrimination against him, had no part in this selection process.

> **C.    Mr. Williams was improperly placed under the**
> **supervision of another Transportation Technologist**
> **who admits to racial prejudice.**

Doc No. 31 at 4.

Plaintiff now claims that Tommy Lewis was in the same classification as he and, therefore, had no authority to "supervise" or reprimand him. This is the first time that this particular allegation has been made in this case.  The Plaintiff's EEOC complaint makes no mention of this issue nor is this allegation contained in the Plaintiff's complaint. In his EEOC complaint the Plaintiff states:

> I was hired by the above-named employer in August 1993, as a general laborer.  On May 14, 2005, I was promoted to a transportation technologist, as a six-month probationary employee. Upon being promoted I was not properly trained or given sufficient date and information as necessary to be successful in the job.  I was constantly subjected to harassment and intimidation by my supervisor. I was demoted on September 1. 2005.
>
> Don Arkle, White, Design Bureau Chief, informed me that I was being demoted for excessive tardiness and repeated insubordination, which I deny.
>
> I believe that I was discriminated against because of my race, Black, and in retaliation for having filed a previous internal grievance based upon race against my supervisor, which is in violation of Title VII of the Civil Rights Act f 1964, as amended.  I further believe that had I been White, the issue of tardiness and insubordination would not have been a factor in being demoted.

Doc No. 15, Exhibit Y, at 1-2.

In his Complaint, Plaintiff alleged as statement of fact the following:

> 10.     In December 2003, Mr. Williams filed a grievance contending that he had been   treated unfairly by his supervisor with respect to job assignments and other issues because of his race.
>
> 11.     On May 14, 2006, Mr. Williams was appointed to a Transportation Technologist  position.  Mr. Williams was the only person on the certificate of eligibles for that position who had not already accepted another Transportation Technologist position or who did not decline the appointment.
>
> 12.     On September 3, 2005, Mr. Williams was demoted from Transportation Technologist back to the Engineering Assistant classification.  The reason set forth in Mr.     Williams demotion letter were "excessive tardiness and repeated insubordination."

> 13.     Similarly situated employees who did not file grievances,
> as well as similarly situated white employees who have committed
> similar infractions to those alleged against Mr. Williams have not
> been demoted or disciplined.  The reasons given for plaintiff's
> demotion are not legitimate and are a pretext for illegal
> discrimination and retaliation.

Doc No. 1 at 2-3.

Though given every opportunity in deposition to state the basis for his allegations of

discrimination and retaliation, the Plaintiff made no allegations of Mr. Lewis's working out of

class, or Mr. Lewis' lack of authority to supervise or reprimand him.  Defendants contend that

Plaintiff should be prohibited from raising this issue.  In *Jerome v. Marriott Residence Inn*

*Barcelo Crestline/AIG*, 221 Fed.Appx.844, 2006 WL 33487152 (C.A.11(Ga.)), citing *Alexander*

*v. Fulton County, Ga*., 207 F.3d 1303, 1332 (11th Cir.2000), the Court opined that "[n]o action

alleging a violation of Title VII may be brought unless the alleged discrimination has been made

the subject of a timely filed EEOC charge."  Moreover, "EEOC regulations provide that charges

should contain, among other things, '[a] clear and concise statement of the facts, including

pertinent dates, constituting the alleged unlawful employment practices.' "  *Alexander*, 207 F3d.

at 1332 (quoting 29 C.F.R. § 1601.12(a)(3)).  Plaintiff failed to do this.

Plaintiff infers that, because Tommy Lewis was offered a laborer's position with ALDOT

by Ray Bass, former Director, due to an old association between Lewis' father and Mr. Bass,

such is an indication of racism.  It should be noted that Lewis was employed by ALDOT in 1983.

It should also be noted that Mr. Bass was not involved, nor was he alleged to have been

involved, in the decision to revert Plaintiff to his EA II/III position in 2005.  The allegations

concerning Ray Bass and *Reynolds* are irrelevant and should be disregarded.  As stated in

*Denney v. City of Alb*any*, Ga.*, 247 F.3d 1172 (11th Cir.2001), "[c]ourts are reluctant to consider

4

'prior bad acts' in this context were those acts do not relate directly to the plaintiffs." *See also Bojd v. Golder Associates, Inc*., 212 Fed.Appx.860, 2006 WL 3780645 (C.A.11(Fla.)).

According to Plaintiff, Tommy Lewis is a racist because he has used a racial slur when not at work and because he has called an African American the "N" word when not at work. There has been no allegation by Plaintiff that Lewis made any racial slurs toward him or that Lewis has used any racial slurs at work.  That a person has used the "N" word or other racially offensive words in his or her lifetime does not make them a racist, nor can a reasonable inference be drawn that having uttered such words in one's lifetime, a person had discriminated against another.  Mr. Lewis, so-called admission of racial prejudice, simply has no context from which such inference can be drawn.  Perhaps the same questions should be asked of the Plaintiff. Moreover, the Plaintiff has offered no evidence that the decision-makers in his case, Jones, Adams, or Arkle, had been placed on notice that Lewis had used any racial slurs, in general, or specifically toward Plaintiff.

While it is true that the *Reynolds* case caused a promotion freeze, the time frame referenced by Lewis in deposition is in or around 1998, far removed in time from the events complained of by Plaintiff.  Although from the documents it appears that Lewis was not actually promoted to the position of Transportation Technologist Sr. until February, 2006, Lewis had been serving as acting Party Chief, and as such, was responsible for supervising Plaintiff.  As noted above, that Lewis had been working "out-of-classification" when he was supervising Plaintiff is of no moment.  Lewis, an experienced employee, had been assigned that task

Plaintiff argues that the person who requested that Mr. Lewis be permitted to work "out-of -classification was William Adams and that Adams had been a member of the white intervenor class in *Reynolds.*  While being an intervenor should not be considered as a "prior bad

act," inasmuch as the intervenors had as much right to try to protect their employment rights as the *Reynolds* class members had to assert theirs, this prior participation as an intervenor should not be accepted as proof that Adams' decision regarding Plaintiff's "roll-back" was based upon Plaintiff's race.

Lewis' ultimate promotion to Transportation Technologist Senior is unrelated to the decision to revert the Plaintiff to Engineering Assistant II/III and not relevant to the specific inquiry before this Court as to whether the Plaintiff's reversion was due to his race and whether he was retaliated for having filed grievance..

> **D.    William Adams, the Leader of the White Intervenors in the Reynolds Class   action recommended Mr. Williams' Rollback" to Don Arkle who has been found guilty of racial discrimination.**

Doc. No. 31 at 10.

Again, the Plaintiff seeks to use Adams' membership of the intervenor class in Reynolds to demonstrate an impermissible racial animus, on Adams' part in the decision to revert Plaintiff to his previous position.  Plaintiff also contends that, because the phrase that "Tommy said that Leroy has threatened to get a lawyer," was contained in a memorandum reviewed by Adams prior to his decision regarding the Plaintiff, Adams had retaliated against Plaintiff.

As Defendants have stated in C above, that Adams was a member of an intervenor class in Reynolds, is not proof that Plaintiff's race was the motivating factor in Adams' decision.  Nor does the mere reference, in a memorandum, that Plaintiff had threatened to "get a lawyer," with nothing more, constitute a protected activity.  McShane v. U.S. Attorney General, 144 Fed.Appx. 779, 2005 WL 1799435 (C.A.11(Fla.)) (employee failed to show that her conduct in making inquiries as to how she could file a discrimination complaint was protected speech under Title VII).

Plaintiff seeks to discredit Don Arkle by referencing a 1996 trial in Reynolds in which Arkle was found guilty of discrimination and failing to investigate claims of discrimination. Again, such "prior bad acts" on the part of Arkle should not be considered as proof of discrimination or retaliation against the Plaintiff in 2005. As Defendants have noted in their initial Brief, the decision to revert the Plaintiff had begun before the date that the Plaintiff's purported grievance could have been filed, if even filed at all. Arkle reviewed the documentation sent to him through the supervisory chain. That he did not conduct an in-depth investigation is not an indication of racial animus or retaliation; an investigation was not mandated. Arkle was not aware of any prior complaints against Lewis which would have prompted him to search for a racial motivation in the recommendation that he reviewed. The due process rights of a probationary employee are quite limited, unlike those of an employee who as attained permanent status. Brock v. DeBray 679 So.3d. 673 (Ala.1996). That Arkle did not recall all of the particulars of the Reynolds case case is not an indication that Arkle was untruthful; the opinion that Arkle was quizzed on was issued in 1998.

###### E.    The alleged reasons for Mr. Williams demotion are pretextual.

Doc No. 31 at 13.

Occasion One**:** As explained by Mr. Lewis, on the first day of the crew's workweek, generally a Monday, the crew was required to meet in the parking lot at ALDOT's central office location in Montgomery, and from there, travel to the location where they were then working. The Plaintiff appears to contend that Lewis fabricated the charge that he was late to the meeting point, relying on Lewis indication that the pertinent date was Wednesday, June 1, 2005 and that the start time for Wednesdays was 7:00 a.m. at the remote location. Mr. Lewis admits that he may have written the date down incorrectly. In fact, Monday, May 30, 2005 was a State and

Federal Holiday, Memorial Day, so the start day of that week was Tuesday, May 31, 2005. Attached to Defendants' Exhibit R is Mr Lewis' July 28, 2005 memorandum of Work Performance Counseling Session which, at paragraph c., states that the Plaintiff arrived five minutes late to work on Tuesday, May 31, 2005.. So, Mr. Lewis incorrectly transposed the date of the tardiness. This mistake does not negate the conduct.

Occasion Two:  Plaintiff states that because he was at the work location at 7:00 a.m. on Wednesday, June 1, 2005, and because Mr. Lewis had no proof that he was not at the work location on time, he should not have received a verbal warning.  As .previously noted, Mr. Lewis stated that he informed all of the crew, including Plaintiff, to report to the motel parking lot at 7:00 a.m. and that, although the rest of the crew reported as instructed, only the Plaintiff failed to meet where directed. Referring to the Plaintiff failure to follow instructions as tardiness is, perhaps, a misnomer.  Insubordination for disregarding a supervisor's instructions , in retrospect, seems more appropriate.  Nonetheless, the Plaintiff's actions constituted a violation of his supervisor's orders and a violation of departmental rules.

Occasion Three:  On Monday, June 30, 2005, Plaintiff arrived at the Tuscaloosa office at 7:30 a.m; Plaintiff places his arrival at 7:14 a.m.  Either time constituted a tardiness.  Plaintiff alleges that he called sometime after 7:00 a.m. and told Mr. Lewis that he was not feeling well and that he was going to take a sick day (Williams' deposition at page 115:7-11).  Plaintiff has alleged that his drive time from Montgomery to Tuscaloosa is more than two hours.  Obviously, Plaintiff, who claimed to be so ill as to require a sick day, was not at home when he called Mr. Lewis to report his illness.  Based upon the time frame presented above, Plaintiff was nearly in Tuscaloosa.  This sick call-in was just a ruse for his tardiness, and this is born out by the fact that Plaintiff worked the rest of the day as if there were nothing wrong with him.

Occasion Four:  Again, Plaintiff offers an excuse for being tardy.  On July 14, 2004, Plaintiff did not report to the Tuscaloosa office until 7:14 a.m.  Plaintiff had been involved in a telephone conversation with Mr. Lewis prior to 7:00 a.m. but had not bothered to let Mr. Lewis know that he was running late.  Plaintiff blames Mr. Lewis for his tardiness, claiming that the had to pull off of the road in order to take down detailed instructions from Mr. Lewis.  Plaintiff asserts that his safety demanded that he pull over rather than taking the call while traveling. Plaintiff has use a portion of Mr. Lewis' deposition testimony to support his position, but he failed to include the following:

> Q.    But it is possible?
>
> A.    I don't know if it was possible or not.  Because I wasn't—
>       my statement here shows that it was 14 minutes after seven
>       o'clock and I know my instructions didn't take 14 minutes
>       to take down.
>
> Q.    But you don't remember what the instructions were so you
>       don't know how long  they were?
>
> A.    It was very short instructions.  I remember it was short
>       because I was talking to Mr. Jones at the same time.

Deposition of Tommy Lewis (Doc No. 32, Exhibit C), at 68:21 through 69: 11.

It is highly unlikely that the Plaintiff and Mr. Lewis engaged in a nearly quarter hour instructional session, just as it is unlikely that the Plaintiff actually pulled off of the road to take notes. And why, if he was running late, didn't the Plaintiff bother to let Mr. Lewis know?  This is just another excuse offered by the Plaintiff to justify yet another incidence of tardiness.

Plaintiff also argues that the two hour drive time allowance was insufficient, claiming that the trip to Tuscaloosa from Montgomery requires two hours and twenty-four minutes.  The two hour trip time was not established by Mr. Lewis, but, rather, by a predecessor, Joe King. There had been no complaints by others that the time allowed was insufficient.  Plaintiff's support for his contention is a MapQuest printout routing through Birmingham to Tuscaloosa,

which is not the most direct route.  The shortest route is via U.S. Highway 82.  A recent

MapQuest printout reflects the drive time via Birmingham as 2 hours 2 minutes.  (See

Defendants' Supplemental Evidentiary Submission, filed contemporaneously herewith,

Exhibit CC.)

Defendants' position with respect to Plaintiff's act of insubordination is explained in their

initial brief.  Irrespective of how Plaintiff wishes to couch his actions, the simple fact is that he

walked away from his supervisor despite having been warned that doing so would result in a

charge of insubordination.

Although Plaintiff may have been involved in the same type of work as a Transportation

Technologist as he had performed as an Engineering Assistant II/III, there are differences in the

positions.  As an EA II/III, Plaintiff was responsible for his individual assignments and was

under close supervision by the Field Supervisor.  (See Doc. No. 15, Exhibit H, paragraphs 12

and 15).  As a Transportation Technologist, Plaintiff was charged with the overall supervision of

a crew of employees, was responsible for the work performed by that crew, and was also under

less direct supervision.  (See Doc No. 15, Exhibit P at paragraph 15.)

When Plaintiff reverted to his previous position as EA II/III, his postion as Field

Supervisor was temporarily filled by William McKinnon, a white male.  Subsequently, the

position was filled by Willie Primus, a black male, who has remained in that position.  (See

Defendants' Supplemental Evidentiary Submission, Affidavit of Joe E. Jones.)

## CONCLUSION

For the reasons set forth in their initial Brief and herein, Defendants' Motion for

Summary Judgment as to the Plaintiff's claim of discrimination and retaliation should be

granted.

RESPECTFULLY SUBMITTED
TROY KING
ATTORNEY GENERAL


s/ Andrew W. Redd
Jim R. Ippolito, Jr. (IPP001)
Assistant Attorney General
Chief Counsel


Andrew W. Redd (RED001)
Assistant Attorney General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
Telephone:  (334) 242-6350
Facsimile:  (334) 264-4359
redda@dot.state.al.us

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEROY WILLIAMS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| STATE OF ALABAMA DEPARTMENT | ) | CASE NO. 2:06-cv-658-ID |
| OF TRANSPORTATION, JOE MCINNES, | ) | |
| in his official capacity as Director of the | ) | |
| State of Alabama Department of | | |
| Transportation, | | |
| | | |
|     Defendant. | | |

**CERTIFICATE OF SERVICE**

I hereby certify that, on **June 5, 2007**, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECT system, which will send notification to the following:

Mr. Russell W. Adams, Esq.
Wiggins, Childs, Quinn & Pantazis, L.L.C.
Attorneys at Law
301 19th Street, North
Birmingham, Alabama  35203
ATTORNEY FOR PLAINTIFF


s/ Andrew W. Redd
Andrew W. Redd (RED001)
Assistant Attorney General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
(334) 242-6350 (office)
(334) 264-4359 (facsimile)
redda@dot.state.al.us