IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEROY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO 2:06-cv-658-TFM |
| | ) | |
| STATE OF ALABAMA DEP'T OF | ) | |
| TRANSPORTATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on Monday, June 18, 2007, in Montgomery,

Alabama, wherein the following proceedings were held and actions taken:

1. **PARTIES AND TRIAL COUNSEL:**

   COUNSEL APPEARING AT TRIAL

   For plaintiff:    Russell W. Adams, Esq., Temple D. Trueblood, Esq., H. Wallace Blizzard, Esq., or another attorney from Wiggins, Childs, Quinn & Pantazis, LLC;

   For defendants:    Andrew Redd, Esq. and Mitchell Alton, III, Esq.

   COUNSEL APPEARING AT PRETRIAL HEARING:

   For plaintiff:    Russell W. Adams, Esq.

   For defendants:    Andrew Redd, Esq. and Mitchell Alton, III, Esq.

2. **JURISDICTION AND VENUE:**

Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343 (a)(3), 1343 (a)(4) and 42 U.S.C.

§ 2000e-5.

Venue is proper in the United States District Court for the Middle District of Alabama as both parties reside in the Middle District of Alabama

All issues to be tried by consent of all the parties (Doc. 44, filed July 10, 2007) and 28 U.S.C. § 636(c).

3.   **PLEADINGS:**

> (1)   Complaint (Doc. 1);
> (2)   Answer  (Doc. 5);
> (3)   Defendants' Motion for Summary Judgment  (Doc. 13);
> (4)   Defendants' Brief in Support of Motion for Summary Judgment  (Doc. 14);
> (5)   Defendants' Evidentiary Submission in Support of Motion for Summary Judgment  (Doc. 15);
> (6)   Notice of Correction of Defendants' Evidentiary Submission in Support of Motion for Summary Judgment  (Doc. 17);
> (7)   Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 31);
> (8)   Plaintiff's Evidentiary Submission in Response to Defendant's Motion for Summary Judgment (Doc. 32);
> (9)   Reply Brief of Defendants (Doc. 33);
> (10)  Evidentiary Submission in Support of Reply Brief of Defendants (Doc. #34);
> (11)  Plaintiff's Motion to Strike Evidentiary Submission of Defendants or in the Alternative to Submit Additional Evidentiary Materials (Doc. #35).

4.   **CONTENTIONS OF THE PARTIES:**

**Plaintiff's Contentions:**

Mr. Williams  began work with the Alabama Department of Transportation in 1993. During the twelve years prior to his promotion to Transportation Technologist in 2005,  Mr. Williams had usually received ratings of "exceeds standards" or "consistently exceeds standards" on his prior evaluations and had never received any disciplinary action or been marked as non-compliant with the punctuality requirement.  Less than three months after his

promotion as one of the first African-American Transportation Technologists in the Design Bureau of ALDOT, Mr. Williams was removed from this classification for alleged "continual excessive tardiness" and "insubordination."    Don Arkle, the ultimate decision maker, testified that it was these reasons and not any alleged performance problems that led to Mr. Williams rollback to the lower classification of Engineering Assistant.  As shown below, these allegations are factually false and pretextual.

The engineering line of progression at ALDOT with supervisory responsibilities. The Transportation Technologist had no African-Americans prior to the filing of the *Reynolds v. Alabama Department of Transportation* and the first appointments of any significant numbers of African-Americans to that classification occurred in 1998 and 1999 under court supervised rounds of appointments where hundreds and hundreds of appointments were approved *en mass* by the Court based after the defendants had failed to develop the validated selection procedures that were required under the *Reynold*s Consent Decree.

 Mr. Williams was among the first African-Americans appointed to Transportation Technologist in the Design Bureau once the  new validated procedures were developed. The "department considers these to be state of the art examinations and the best  possible way to select candidates for the transportation technologist position."  Mr. Williams  had one of the top ten scores for Montgomery at the time of his selection and was placed on a certificate of eligibles.   ALDOT was forced to hire Mr. Williams as he was the only candidate among the top ten who said that they were available.

Mr. Williams was then placed under the "supervision" of Tommy Lewis.  Mr. Lewis

is the individual who reprimanded Mr. Williams for his alleged "excessive tardiness" and "insubordination."   As will be shown below, Mr. Lewis was in the same merit system classification as Mr. Williams at the time he "supervised" Mr. Williams and should have had no authority to reprimand him.

Mr. Lewis admitted in his deposition that he uses racial slurs when not at work and that he has called an African-American "nigger" when not at work.  Mr. Lewis admitted that he had "heard through the crews" that Mr. Lewis was a class member in the *Reynolds* case.  Mr. Lewis also admitted that he believed the *Reynolds* case had held up his personal promotions for many years.   Within the first week that Mr. Williams was promoted to Transportation Technologist, he had a conversation with Mr.  Lewis where Mr. Lewis stated that Mr. Williams had received his  promotion due to the *Reynolds* lawsuit and that Mr. Williams had received a promotion and a raise while he had only received a promotion.

Contrary to Mr. Lewis testimony, the defendants' own documents show that Mr. Lewis was not promoted to Transportation Technologist Sr. until nine months after Mr. Williams was promoted to Transportation Technologist and that during the entire time he "supervised" Mr. Williams, Mr. Lewis held the same merit system classification as Mr. Williams. Mr. Arkle admitted that a Transportation Technologist should be supervised by a Transportation Technologist Senior and that members of the same classification should not supervise each other.

Out of 161 candidates who have been placed on the Transportation Senior register since the defendants developed validated examinations, Mr. Lewis scored 160th with a score

of 8.39.  Mr. Lewis was placed into the Field Crew Chief position on "out-of-classification" basis – in other words he was placed into the position without competition and without having gone through the state merit system and in violation of the *Reynolds* Decree and contempt orders.

The person requesting that Mr. Lewis be placed into that out-of-classification assignment was William Adams.  Mr. William Adams is the leader of a group of non-class members--consisting predominantly of white employees of the department, and now commonly referred to as the 'Adams intervenors'–who intervened in the *Reynolds* case to challenge relief sought for the African-American class.  Mr. Lewis out-of-class assignment was not approved by the Director until July 11, 2005– several months after Mr. Lewis began to "supervise" Mr. Williams.

The defendants' documents also support Mr. Williams' claim that Mr. Lewis complained that Mr. Williams got a promotion and a raise while Mr. Lewis got only a "promotion."  Mr. Lewis received no compensation for his out-of-classification assignment.  In accepting the assignment, Mr. Lewis agreed in writing not to seek additional compensation.   In making the request for the out of class assignment, Mr. Adams stated as the reason that "registers were not available."  The reason that registers were allegedly not available was the *Reynolds* litigation.

Mr. Williams testified that in addition to complaining that Mr. Williams had gotten his position through the *Reynolds* lawsuit, Mr. Lewis immediately began to yell at him in front of the persons Mr. Williams was supposed to supervise and that he would belittle him

in front of employees and countermand his orders. The defendants' documents also show that Mr. Williams accused Mr. Lewis of being prejudiced prior to his demotion even though Mr. Lewis attempted to deny this fact in his deposition. In another document, Mr. Lewis went to Mr. Williams crew to question them about the allegations of harassment made by Mr. Williams. It is clear from that document that Mr. Williams crew felt that Mr. Williams was being treated unfairly and differently from other supervisors.

No ALDOT official, other than Mr. Lewis, the person accused of prejudice and harassment ever met with the members of Mr. Williams crew. Indeed, it appears that Mr. Jones, Mr. Lewis supervisor, instructed Mr. Lewis to make this "investigation." In the same document where it is shown that the alleged harasser and discriminator is told to investigate Mr. Williams allegations, Mr. Jones informs Mr. William Adams, the leader of the Adams intervenors in the *Reynolds* case, that "Tommy said that Leroy has threatened to get a lawyer." Four days after that memo was written, Mr. Adams sent a memorandum to Don Arkle, the Design Bureau Chief, recommending that Mr. Williams be demoted from his Transportation Technologist Position.

On that very same day, Mr. Arkle concurred with the demotion. In his deposition, Mr. Arkle admitted that he never did any investigation of the facts, that he never met with Mr. Williams, and that he never bothered to look at Mr. Williams personnel file to see that he had never before had any disciplinary problems or any allegations of insubordination or tardiness. Mr. Arkle also confirmed that Mr. Williams was not demoted for his work performance but for the alleged "continual excessive tardiness" and insubordination.. Mr.

Arkle also admitted that he was not even aware that Mr. Lewis was also a Transportation Technologist and had not been appointed to the Transportation Technologist Senior classification and was "reprimanding" someone in his own classification.

Judge Thompson has previously found Mr. Arkle guilty of discrimination, retaliation and failing to investigate claims of discrimination by African-Americans and of retaliating against them for making such claims. The defendant identified the four instances of "continual excessive tardiness". Those instances were de minimus and indeed it was Mr. Lewis and not Mr. Williams who was in violation of the defendants' written polices in determining tardiness. Similarly situated white employees are not disciplined, much less demoted, for similar tardiness.

The alleged insubordination did not occur or was so trivial that it could only be a pretext for discrimination especially where Mr. Lewis was not properly Mr. Williams supervisor. Mr. Williams, a twelve year employee who had a history of receiving "exceeds standards" evaluations at virtually the same job duties was then replaced by a white employee Channin Granthem. Mr. Granthem was not even on the certificate of eligibles when Mr. Williams was appointed to his Transportation Technologist position. Mr. Granthem was with ALDOT less than three years when he was placed into Mr. Williams position. The defendants have a history and pattern and practice of discriminating against African-Americans. Additionally, ten-percent of African-American Transportation Technologist who are found by State Personnel to be qualified are rolled back to their prior classification during their probationary periods. No whites have been rolled back.

White employees who were also field supervisors and Transportation Technologists in the Design Burea – all under the supervision of Don Arkle, the final decision maker, were not demoted or allowed to advance to that classification despite having been tardy, having performance problems and having been insubordinate to supervisors.

Mr. Williams was engaged in protected activity through his participation in the ongoing *Reynolds* litigation and through his verbal complaints of discrimination and threat to get a lawyer. Here, the *Reynolds* case was ongoing and allegedly keeping Mr. Lewis from being promoted and Mr. Adams, the leader of the white intervenors in *Reynolds*, recommended Mr. Williams demotion just four days after being informed that Mr. Williams had threatened to get a lawyer and that Mr. Arkle concurred with that recommendation the same day.

### Defendants' Contentions:

The Defendants deny that they have discriminated against the Plaintiff on account of his race, in violation of the provisions of Title VII or Section 1981, as alleged. Defendants further deny that they have retaliated against the Plaintiff for having been a member of the Plaintiff class in the *Reynolds*' litigation.

The Plaintiff was employed by ALDOT on September 30, 1992. On May 14, 2005, the Plaintiff was promoted from the classification of Engineering Assistant II/III to the classification of Transportation Technologist (working title as Field Supervisor). The Plaintiff was placed on a six-month probationary period sometimes referred to as a "working test period , in accordance with the provision of 36-26-21 Code of Alabama 1975.

The Plaintiff was assigned to work under the supervision of Tommy Lewis, Chief of Party.

As a Transportation Technologist/Field Supervisor, the Plaintiff was charged with the responsibility of directing and overseeing the work of a crew of transportation employees.

During the probationary period, the Plaintiff received counseling sessions and reprimand for tardiness and insubordination.

On July 26, 2005, the Plaintiff received a written reprimand for tardiness on July 25, 2005, after having been previously warned for (1) tardiness on May 31, 2005,(2) for failing to report to the crew meeting location on June 1, 2005, and (3) for reporting to work late on June 20, 2005. The Plaintiff had also been counseled for letting his crew leave early without his supervisors' approval.

On August 11, 2005, the Plaintiff received a written reprimand for insubordination.

In addition to the instances of misconduct cited above, the Plaintiff was found to be lacking in many of the basic skills that should have been possessed of an employee promoted into the position of Transportation Technologist.

On August 15, 2005, Joe Jones, Assistant Location Engineer, Field, sent a memorandum to William Adams, Location Engineer, describing the Plaintiff's recent insubordinate conduct and the other problems that had been brought to his attention concerning the Plaintiff's job performance and tardiness. The memorandum recommended that the Plaintiff's probationary period be terminated and that the Plaintiff be reassigned to his previously held position as Engineering Assistant II/III.

On August 19, 2005, William Adams sent a memorandum to Don Arkle, Design Bureau Chief, describing the Plaintiff's poor job performance, tardiness and insubordination, further concurring with the recommendation of Mr. Jones. Mr. Arkle concurred with the recommendation from below and, in turn, sent a memorandum to Ron Green, ALDOT Personnel, requesting that the Plaintiff' probation be terminated and that he be reassigned to his former classification. The Plaintiff's probation was terminated and he was reassigned to his former position effective September 3, 2005.

The Plaintiff filed a complaint with the E.E.O.C. on or around September 14, 2005 alleging the he had been discriminated against on account of his race, black, and that the had suffered retaliation for having previously filed an internal grievance. The Plaintiff alleged that upon being promoted, he was not properly training or given sufficient data and information as necessary to be successful on the job. The Plaintiff complained that he was constantly subjected to harassment and intimidation by his supervisor.

In the complaint filed on July 24, 2006, the Plaintiff alleged to have filed a grievance in December 2003 alleging that he had been treated unfairly by his supervisor with respect to job assignments and other issues, because of his race. The Plaintiff further alleged that similarly situated employees who did not file grievances, as well as similarly situated white employees who have committed similar infractions as those alleged against him were not "demoted" nor disciplined.

The Plaintiff's allegations concerning his supervisor Tommy Lewis, working out of class was not raised in the EEOC charge, nor in the complaint, nor in the Plaintiff's responses in deposition. Plaintiff's first allegation regarding this issue was made in his response to

Defendants' motion for summary judgment. Irregardless, Lewis was assigned the task of Party Crew Chief and given the responsibility of supervising the plaintiff and his crew.

The Defendants contend that the actions taken with respect to the Plaintiff were based upon the factors listed above i.e. tardiness, insubordination and poor job performance/lack of job skills, and not on account of his race nor for having filed a grievance(s).

Tommy Lewis denies that he suggested to the Plaintiff that his (Plaintiff's) promotion was due to the *Reynolds*' lawsuit or that his (Lewis') action with respect to the supervision of the plaintiff were motivated by race or plaintiff being a member of the plaintiff class in *Reynolds*.

The Defendants contend that the Plaintiff has failed to set forth any comparators by which to demonstrate that the Defendants' actions were pretextual and not based on legitimate business reasons. The Defendants contend that the same decision would have been made, irrespective the Plaintiff's race or his having engaged in constitutionally protected activity.

5.    **STIPULATIONS BY AND BETWEEN THE PARTIES:**

There are no substantive stipulations at this time.

6.    The jury selection and trial of this cause, which is to last three (3) days, are set for **September 24, 2007** at **10:00 a.m.** at the United States Courthouse in Montgomery, Alabama.

7.    A trial docket will be mailed to counsel for each party approximately **three (3) weeks** prior to the start of the trial term. The parties shall files any requested pretrial briefs, voir dire questions, motions in limine, fully briefed, and jointly prepared proposed

jury instructions,[1] together with citations of law thereon, on or before three weeks prior to jury selection, unless said time is shorted by the court on motion of either party.

8. On or before three weeks prior to jury selection the parties shall identify deposition parts or other documents expected to be used at trial. Within seven (7) days thereafter, the adverse party shall identify any responsive parts of depositions expected to be used at trial. Within three (3) days of the designation of such responsive parts, the adverse party shall designate any part desired as rebuttal thereto.

9. On or before thirty (30) days prior to the trial date, the parties shall exchange witness lists, exhibits, and other tangible evidence to be used at trial. Written objections shall be filed no later than twenty-one (21) days prior to the trial date, otherwise the same shall be deemed genuine and admissible into evidence. Objections shall set forth grounds and legal authorities.

10. Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

11. All deadlines not otherwise affected by this order will remain as set forth in the Amended Scheduling Order (Doc. 8) entered by the court on August 30, 2006;

---

[1] The parties shall work together and prepare joint jury instructions. Any instructions they cannot agree on shall be clearly marked with proposed instructions by each party.

12.    All understandings, agreements, deadlines, and stipulations contained in this Pretrial

Order shall be binding on all parties unless this Order be hereafter modified by Order

of the court.


DONE this 17th day of July, 2007.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE